**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. _____**

ROBIN FLEMING, MISS AMERICA IP,
INC., MISS AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC,

       Plaintiffs,

v.                                                                    **JURY TRIAL DEMAND**

GLENN F. STRAUB, CRAIG T. GALLE,
KATHLEEN A. FIALCO, and PALM BEACH
POLO, INC.,

       Defendants.

_____/

## COMPLAINT

Robin Fleming, Miss America IP, Inc., Miss America's Scholarship Foundation, Inc., and

MAO IP Holding Company, LLC sue Glenn F. Straub, Craig T. Galle, Kathleen A. Fialco, and

Palm Beach Polo, Inc.  The Plaintiffs allege the following in support of their thirty-two causes of

action against the Defendants, against whom the Plaintiffs seek $500,000,000 in damages:

### PRELIMINARY STATEMENT

1.      This case involves a fraud monstrous in scope and harm. The perpetrator of this

fraud is Glenn F. Straub ("**Straub**").  He is a 78-year-old self-proclaimed "billionaire" with a long

history of fraud in his business dealings and predation upon women with almost incomprehensible

depravity. A former Atlantic City casino owner, Straub uses threats and efforts to humiliate,

intimidate, and extort his targets. He uses his lawyers, including Craig T. Galle ("**Galle**"), to create

false documents and file malicious lawsuits to cause his targets harm, as Straub directs. Straub and his lawyer here, Galle, have done this many times. And they are doing it now.

2.      At risk is nothing less than Miss America – the organization, its assets, and its future, along with the scholarships and positive experiences the organization provides to empower future generations of young women. At its helm is Robin Fleming ("**Ms. Fleming**"), a superbly qualified business leader with a stellar reputation in the pageant industry who purchased the organization and all its assets in late 2022 and has run it successfully ever since. Indeed, Ms. Fleming embodies the ideals and hopes that have always animated the Miss America organization: she is a fashion entrepreneur and business professional, who has always had a passion for empowering women.

3.      This is not the first time Straub has engaged in fraud or predation upon young women, as is set forth herein. His modus operandi to defraud typically involves the use of solely owned alter-ego LLCs and fraudulent documents to obtain the prize. His predation upon women typically involves threats, intimidation, and extortion, sometimes with the use of fraudulent documents drawn by his lawyer, to obtain sex-on-demand. This typically involves a set-up – or "grooming" – of the woman that features the lure of money or financing from him, presenting as a wealthy and generous grandfather-type who only wishes to help the young woman or her causes. He provides them gifts of cash or pays for services when needed. Once the bait is taken, he springs the trap (or, as he says, "there's always a kicker"). He then demands that the target submit to his wishes, or he will "destroy" her using threats, intimidation, and extortion simultaneously to apply maximum pressure. In some cases, he has his lawyers create fraudulent documents and pursues malicious litigation to increase the pressure. Some of the women go into hiding or flee, and some just say no. Those who say no to him after taking the bait are then sued to collect on their alleged

"debts" or to cause their eviction from accommodations he arranged prior to springing his trap. Currently, Straub is out on bond, awaiting a criminal trial on felony charges of harassment and filing fraudulent liens against an ex-girlfriend's property. *See State of Florida v. Glenn F. Straub*, Case No. 2020CF000527AXXXMB.

4.       Straub used all of these tools against Plaintiffs. Straub's target was initially Ms. Fleming herself but she rebuffed his sexual advances before he was ready to spring his trap. So, he shifted his focus to a different prize – the possible acquisition of the Miss America organization – when it came up for sale at the end of 2022. He knew that Ms. Fleming, with her reputation and experience in the pageant industry, and her noble aspirations for empowering young women, would be an acceptable purchaser for the non-profit. Straub also knew that he would not be an acceptable purchaser because he has a criminal record that includes, among others, charges of battery against a young woman and a civil record of fraud that includes, among other things, the use of fraudulent documents created by his lawyer to defraud his targets.

5.       Straub also knew that Ms. Fleming did not wish to use her personal assets for such a purchase. So Straub encouraged Ms. Fleming to acquire the Miss America Organization and assets with him financing the $4.1M reserve that would be required for the purchase, as the Miss America Organization was heavily in debt. This was the bait.

6.       Straub also recommended that she use Galle, his own lawyer and co-conspirator here, to acquire Miss America. Straub said Galle would be less expensive than her own attorney. Straub and Galle would spring the trap after her acquisition of Miss America.

7.       Ms. Fleming, unaware of Straub's or Galle's history, relied on Straub's promise and brought the Miss America deal to the table based solely on her merit. Although she would not have purchased Miss America without Straub's promise, she qualified for the purchase based on

her own assets. Straub was not involved whatsoever in this transaction. And there was nothing amiss with the documents for the two limited liability companies she formed, with Galle's assistance, on December 28, 2022, which were used for the purchase. The Miss America entities were solely owned by her. Thus, she brought and negotiated the deal with the Miss America Organization ("MAO") on her own, and she alone signed the agreement on December 30, 2022. As of that date, she solely owned, through her two entities, Miss America.

8.      Straub was still not ready to spring the trap. He had no claim to the Miss America assets. Better for him to loan the Miss America entities some of the money – with the Miss America assets as collateral – and then ensure they defaulted on the loan. So, Galle drafted a Promissory Note (the "Note") for Ms. Fleming to sign in January 2023 that featured an accelerated payback period (*one year* versus the three years Straub had promised Ms. Fleming) and only a fraction of what Straub had promised her (*$525,000* versus the promised $4.1M). The Note also listed as collateral all the assets of Miss America in the possession of the buyer. If the Miss America entities defaulted, upon information and belief, Straub thought he would own the Miss America assets and obtain indirectly what he could not obtain directly. In fact, the Note was designed to do just that.

9.      Seeing little choice, Ms. Fleming signed the Note in January 2023 but negotiated a slight extension for payback until February 2024, after the next revenue-generating pageant. Throughout the rest of 2023, Ms. Fleming led Miss America back from the brink of bankruptcy with skill and diplomacy, dealing adroitly with legacy creditors and lawsuits arising from the unpaid obligations of the prior organization. Straub was not involved with the operations of Miss America and provided little financial assistance throughout 2023. What he did provide was tallied on a line of credit held by his solely owned entity, Palm Beach Polo, Inc. ("Palm Beach Polo").

10.     Surprising Straub, Ms. Fleming paid off the Note in full in February 2024. Thus, at this point he still had no claim to any assets. And Ms. Fleming was making good headway negotiating and resolving the entities' few remaining creditors. In fact, she had little need for him.

11.     Separate from his scheme to acquire Miss America, Straub had other ongoing business ventures featuring malicious litigation. In March 2024, he asked Ms. Fleming to serve as a proxy plaintiff for him in a new lawsuit to be brought against individual board members of the Property Owners Association ("**POA**") where she (and Straub) lived. He intended to use the baseless litigation to force the resignations of the board members in the hopes of installing a new board willing to unwind Straub's prior sale and 99-year lease of land to the POA. Straub had previously filed suit against the POA in Palm Beach County Circuit Court for that purpose under the name of Palm Beach Polo, Inc. in November 2023 (Case No. 50-2023-CA-016225-XXXAMB).

12.     On March 14, 2024, Ms. Fleming refused Straub's unethical request.

13.     Straub exploded with rage. By this time, Ms. Fleming had refused his sexual advances, paid back the accelerated Note, and now refused to assist him as his unethical proxy in litigation. Most significantly, he had no leverage over her.

14.     It was time to spring the trap, even without a legitimate claim to any assets of Miss America.

15.     In March 2024, Straub began a blitzkrieg: simultaneous  threats and efforts to intimidate, extort, and defame Ms. Fleming and her children.

16.     He first threatened her verbally over the phone, at meetings, and by texts that he was shutting down Miss America, that he was sick of her behavior, she was a failure, she was over the hill, and that he doesn't have time for her "shit." He threatened to ruin her reputation and drag

her children into the public humiliation. He further threatened that she either sign over the company to him or he will send a public notice to all the state directors that she has been fired and is mentally ill unless she agrees to what he says at any time and be completely subservient to him. He told her that he already had a press release drawn up to tell the world who she is.

17.     True to form, he then issued multiple letters to her asserting she was suspended and then terminated from *his employment.* Ms. Fleming responded with restraint, reminding Straub that he was her banker and not the owner of Miss America, and that if he were suddenly the owner, then he had participated in a fraud over the past 15 months by pretending she was the owner.

18.     A few weeks later, he presented the first of many false documents to her that Galle created purporting to support Straub's claim of ownership of Miss America. Metadata was curiously stripped from all the documents that were initially produced. Later, Ms. Fleming and her counsel were able to obtain a different copy of the key document – the purported operating agreement for Miss America Competition, LLC purportedly showing Straub as owner on December 28, 2022 – from a different source with metadata intact. **That metadata indicated that Galle actually created the document in August of 2023 (and used the wrong name of the entity, to boot). Thus, it was fraudulent.** The other relevant documents were patently false as well.

19.     Next, Straub engaged in a public campaign of defamation that included Zoom calls with more than 1,000 Miss America state directors other members, licensees, and contractual partners across the nation using the false documents to assert ownership and accuse Ms. Fleming of misconduct and breaches of fiduciary duties.

20.     Next, he had his lawyer, Larry Zink ("**Zink**"), file a lawsuit in Palm Beach Circuit Court on April 25, 2024 (Case No. 2024-CA-3851) alleging Straub's ownership based on the

fraudulent documents created by Galle. In fact, Straub, through Zink, captioned the lawsuit as if he were the owner of the Miss America entities; *i.e.,* he was suing Ms. Fleming through the fiction that he *already owned* her own entities.

21.     And even as litigation was ongoing, the 'billionaire' continued to scream Luciferian threats to Ms. Fleming, in the presence of his lawyers, that were designed to maximize her emotional distress:

- "I am Hamas, you are Israel!"

- "I am Hitler!"

22.     At this point, Ms. Fleming had learned of Straub's history – that he used his virtually unlimited wealth to take what he wished and to destroy women who said "no." This case, she knew, involved both. She was both terrorized and defamed – terrorized with a very real chance of absolute financial ruin for her and her children and publicly – nationally – accused of misconduct against the very entity that is the culmination of her life's work. All this by a man who, by his actions, is the diametric antipode of what Miss America represents to young women.

23.     As a result of Straub's malicious campaign, the 103-year-old Miss America brand has been embroiled in a vile morass of extortion and fraud, its reputation and name forever tarnished, causing untold economic and non-economic damages to both the Miss America entities and to Ms. Fleming.

24.     As a postscript, Straub just filed (November 22, 2024) additional litigation asserting ownership – a fraudulent petition for bankruptcy in federal court with "Miss America Competition, LLC," as Debtor[1] and Straub as the putative "Sole Member and Manager" of the entity, which is

---

[1] Case 24-22288-EPK (Bankr. Ct., S.D. Fla.). Miss America Competition, LLC is not a party here, but is also owned by Ms. Fleming.

false for all the reasons set forth herein. At the same time, Straub filed a "Suggestion of Bankruptcy" on behalf of "Miss America Competitions, LLC" (plural) in state court. The federal Petition is based on the same false documents Straub used in the state court action to assert ownership of Miss America Competition, LLC, coupled with the Miss America financial information he obtained thorough discovery liberally granted in the state court action. The Petition in federal court was designed to stop the state court action and shift the case to federal court just as Plaintiffs were preparing to depose Straub in the lower court. This is both forum shopping and abusive litigation.

25.     Further, Miss America Competition, LLC is not bankrupt and has no debt. Miss America did not file for bankruptcy. This is further chaos and confusion sown by Straub. Plaintiffs are responding to the bankruptcy petition by filing an Emergency Motion to Dismiss on November 25, 2024.

26.     Fighting on multiple fronts is part of fighting Straub, who has stated to Ms. Fleming that he has $150,000,000.00 he will use to "break her" (his words). In fact, he showed her his account statement from UBS (showing in excess of $150,000,000 in the account) as he told her he would "spend whatever necessary" to shut her down and to "break her."

27.     Other women might give up under the onslaught from such a monster. Ms. Fleming chooses to fight, for herself and for Miss America.

## JURISDICTION AND VENUE

28.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

29.     This Court also has original jurisdiction pursuant to 15 U.S.C. § 1121 over claims brought under 15 U.S.C. § 1111-29 (Trademarks).

30.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

31.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## THE PARTIES

32.     Robin Fleming is an individual, *sui juris*, residing and doing business in Palm Beach County, Florida.

33.     Miss America Competition, LLC (**"MAC"**) is an active Florida limited liability company, Entity No. L23000003074, which, on December 28, 2022, Ms. Fleming formed solely as Miss America Pageant, LLC. On January 6, 2023, Ms. Fleming changed its name to Miss America Competition, LLC, although the Florida Secretary of State website indicates an effective date of January 12, 2023. Since its formation, Fleming has solely owned and controlled MAC, with its principal place of business at Fleming's residence in Palm Beach County, Florida (the term "MAC" will be used herein to refer to either MAC or Miss America Pageant, LLC, unless otherwise indicated). Although it is not a taxable entity, Ms. Fleming obtained an Employer Identification Number for MAC from the Internal Revenue Service on May 2, 2024. The personal property assets of Miss America (memorabilia, etc.) are now held by MAC. Exhibit 1.

34.     Miss America IP, Inc. (**"MAIP"**) is an active Florida corporation, Entity No. P24000029927, initially formed by Ms. Fleming on December 28, 2022, as a limited liability company ("Miss America IP, LLC"). A taxable entity, Ms. Fleming obtained an Employer

Identification Number for MAIP from the IRS on January 9, 2023. Ms. Fleming converted MAIP to an "S" corporation on March 15, 2023, with the IRS effective January 1, 2024. Since its formation it has been solely owned and controlled by Fleming with its principal place of business at Fleming's residence in Palm Beach County, Florida (the term "MAIP" will be used herein to refer to either Miss America IP, LLC or Miss America IP, Inc.). Ms. Fleming has filed tax returns and paid all taxes for MAIP since its formation. MAIP, in conducting pageants, engages in interstate commerce through the use of 50+ state directors, national advertising, national streaming broadcasts, the use of the internet, email and other forms of interstate communications. Ex. 2.

35.     MAO IP Holding Company, LLC (**"IP Holding"** aka "MAO IP") is an active Delaware limited liability company, File No. 5594190, that Ms. Fleming formed on August 28, 2014, with its principal place of business at Fleming's residence in Palm Beach County, Florida. Prior to December 30, 2022, IP Holding was an active, wholly owned subsidiary of the Miss America Organization. IP Holding held all of the intellectual property assets of Miss America. Upon the acquisition of Miss America, Ms. Fleming acquired IP Holding, through MAIP, but the intellectual property assets remain within IP Holding. Ms. Fleming, through MAIP, owns 100% of the membership interests of IP Holding and its assets, which is the intellectual property of Miss America. Ex. 3.

36.     Miss America's Scholarship Foundation, Inc. ("**MASF**") is an active Florida non-profit corporation, Entity No. N23000014313, initially incorporated in Delaware as Miss America's Outstanding Teen on September 15, 2021, and then renamed as MASF in August 2023, and domesticated in Florida on October 30, 2023. Its principal place of business is Ms. Fleming's residence in Palm Beach County, Florida. Fleming serves as MASF's Chairman of the Board, President, Secretary, and Treasurer. Ex. 4.

37.     Glenn F. Straub is an individual, sui juris, residing and doing business in Palm Beach County, Florida.

38.     Craig T. Galle is an individual, sui juris, residing and doing business in Palm Beach County, Florida. Galle is a licensed Florida attorney. Upon information and belief, he has formed hundreds of entities, including LLCs, for clients. He has been Straub's primary lawyer for 30 years. Upon information and belief, he speaks to Straub four times a day, on average. He is involved in Straub's business acquisitions "all the time."

39.     Kathleen A. Fialco (**"Fialco"**), is an individual, sui juris, residing and doing business in Palm Beach County, Florida. Upon information and belief, Fialco is the Controller for Palm Beach Polo, Inc.

40.     Palm Beach Polo, Inc. is a Florida corporation, Entity No. P93000063428, which Straub 100% owns, with its principal place of business located in Palm Beach County, Florida. Ex. 5.

### *Other Relevant Entities*

41.      The Miss America Organization, Inc. ("**MAO**") was a Delaware not-for-profit corporation, File No. 7070962, incorporated on September 28, 2018. MAO has a 103-year history of empowering women and providing significant scholarship opportunities through its various historic entities. In December 2022, MAO negotiated with AIM (see below) to sell the MAO assets. As of the date of sale, December 30, 2022, Shantel Krebs was President of MAO. MAO was dissolved on January 20, 2023. Ex. 6.

42.     Miss America's Outstanding Teen, Inc., ("**MAOT**") was a Florida not-for-profit corporation, Entity No. F05000001804, incorporated on March 22, 2005. It became inactive in Florida in 2021 and was subsequently domesticated in Delaware on September 15, 2021. Ex. 7

43.      American Icon Marketing, LLC ("**AIM**") is an active Florida limited liability company, Entity No. L22000518378, which Ms. Fleming formed on December 9, 2022. Since its formation, Ms. Fleming has solely owned and controlled AIM, with its principal place of business at Fleming's residence in Palm Beach County, Florida. Ms. Fleming used AIM to negotiate with MAO for the purchase of the MAO assets. Ex. 8.

*Non-entity*

44.      Miss America Competitions, LLC (plural) is not an entity registered in Florida.

**MATERIAL FACTS REGARDING THE ACQUISITION OF MISS AMERICA**

*Ms. Fleming's Background*

45.      Ms. Fleming, a graduate of DePaul University with a B.A. in Integrated Marketing Communications, is a professional business woman and, at one point, was a Vice-President of an iconic cereal brand, overseeing a sales force of over 100. She also founded several businesses, including a specialty retail store in 2005 in Wellington, Florida, featuring prom, pageant and wedding party dresses.

46.      At the time, Ms. Fleming resided in Southfields, a division of Palm Beach Polo Country Club ("**PBPCC**"), a gated community in Wellington, Florida, touted on its website as "a landmark of luxury living and world-class sporting … one of the leading private country clubs and residential communities in South Florida."

47.      In or around 2008, she met Straub briefly at a charity fund raiser when he was the President and owner of the PBPCC. She had no further contact with him until 2021.

48.      Ms. Fleming began her relationship with MAO as a Platinum Brand Partner and Designer in August 2008 and became the holder of all Miss America's intellectual property licenses from 2009 to 2012.

49.     Ms. Fleming ran a specialty retail store in Wellington while working concurrently as a designer and licensee of a globally known entertainment brand.

50.     Ms. Fleming moved out of PBPCC and Palm Beach County in 2014.

51.     In 2017, Ms. Fleming became the producer and director of the Miss Florida USA and Miss California USA Pageants, successfully producing pageants and other events between March 2017 and May 2023 and earning recognition throughout the industry.

52.     Throughout 2022, Ms. Fleming worked as licensed franchisee and director of Miss Florida USA.

53.     Ms. Fleming returned to Palm Beach County and PBPCC in March 2021 and next encountered Straub at the Stallion Restaurant in late 2021.

### *The Public Face of Straub*

54.     Straub, a former Atlantic City casino owner and Florida real estate developer, is a self-proclaimed billionaire who purchased PBPCC at a government auction in 1993, when it was described as a 2,250-acre community with 10 polo fields, a 4,200 stadium, 45 holes of golf, 100 rental villas, three clubhouses, and 458 acres of developable land. https://www.newspapers.com/article/the-palm-beach-post-glenn-f-straub-buys/17690131/.

55.     Straub subsequently served as the President of PBPCC but now serves on the Board of Directors as a "Declarant". Upon information and belief, he remains a major PBPCC shareholder and owns (or controls) the lease for the Stallion restaurant in the PBPCC.

56.     At all relevant times herein, Straub resided in PBPCC near Ms. Fleming's residence.

57.     Ms. Fleming was unaware of Straub's criminal record and history of fraud – as described herein – until 2024.

### *Straub Sees Opportunities with Ms. Fleming*

58.     In late 2021, when encountering Ms. Fleming at the Stallion Restaurant, Straub presented as a wealthy and elderly man in his mid-70s keenly interested in her passion for businesses that empowered women and her passion for the pageant industry. He inquired about her past experiences and connections in the industry. In all such conversations he acted strictly as a grandfather-type figure and potential benefactor, not as a potential romantic interest. He also spoke of God and his own family, often crying when he spoke of his daughters.

59.     Straub asked her to meet with him to discuss various business opportunities and women's empowerment issues, generally over lunch or dinner at the Stallion restaurant.

60.     These business meetings became a regular occurrence, generally once or twice a week. Most of the time Straub invited others to attend the meal as well and he always paid the tab. He stated that he did not want to dine alone and did not like to cook. During these meetings he made no overtures of a romantic or sexual nature to Ms. Fleming.

61.     Ms. Fleming never solicited Straub's financial support for any business ventures. Straub, however, proposed several business opportunities to her, such as being the editor of a magazine he controlled that could be re-focused to women's issues, or to assist her in creating a high-end dress-making shop.

62.     Straub flaunted his wealth. Straub invited Ms. Fleming, always with friends or her children to various events on his luxurious 185-foot mega-yacht called "4 Roses." Straub was generous at charitable events that Ms. Fleming attended. Again, there were no overtures of a romantic or sexual nature.

### *Straub Offers to Serve as her "Banker" to Acquire the Miss Universe Organization*

63.     Upon information and belief, in the summer of 2022, the Miss Universe organization was receiving offers for its purchase in the range of $20 million. Straub offered to Ms. Fleming to finance its purchase for $20 million with her as owner and him as banker. At or around the same time, Ms. Fleming approached MAO, as she was aware it was struggling and entertaining offers for its purchase, but MAO showed only lukewarm interest at the time, as it had several offers to vet that were much farther along in discussions,. MAO told Ms. Fleming that MAO would contact her at a later date.

64.     A text from SH, Straub's girlfriend at the time, to Ms. Fleming corroborates Straub's role as would-be financier, not owner, of any pageant acquisition. As context, SH was 24 years old at the time, Straub was 76. Upon information and belief, Straub had brought a lawsuit against SH painting her as a prostitute and abuser of him, in an effort to coerce her back into a relationship with him. After bringing the lawsuit, Straub had inquired of Ms. Fleming about a future role for SH in the Miss America or Miss Universe organization. Apparently, SH was not pleased with the role that Ms. Fleming suggested might be appropriate for her and texted Ms. Fleming:

> SH, August 29, 2022, 6:16 PM:
>
> > Robyn, I would've appreciated if you would've asked me what my position in the company would've been instead of telling me. It is my boyfriend **who would be providing the financial backing.** (emphasis added)

65.     The text indicates that Straub's girlfriend believed him to be a potential financial backer to Ms. Fleming, not a future owner.

66.     Ms. Fleming was agreeable to Straub's proposition to provide financial backing for the deal and thereafter she communicated with contacts at both Miss Universe and Miss America in early August 2022.

### *Ms. Fleming Rejects Straub's Request for Sex*

67.     After Ms. Fleming had discussed her qualifications and made an offer to the Miss Universe organization with Straub's backing of $20 million, but before any response had been received, Straub asked after a dinner on the evening of September 15, 2022, to change the nature of their relationship to "friends with benefits," which she understood to be a request that she have sex with him. This was immediately after his break-up with SH (which followed litigation by Straub against SH, as set forth herein).

68.     Notwithstanding the maximum leverage that Straub enjoyed over Ms. Fleming at this precise moment – with the potential acquisition of *the Miss Universe organization* hanging in the balance – Ms. Fleming firmly but politely rejected his offer by text the next day, September 16, 2022, beginning at 3:48 pm: "I like our relationship exactly as it is, fun business chatter/ambitions with a smattering of humor…I am too conservative for anything else." Ex. 9.

69.     Straub texted "Check" two minutes later and never asked the question again.

### *Straub Says – "I'm a Banker" – in the Effort to Acquire Miss Universe*

70.     A few weeks later, in early October 2022, the General Counsel for the Miss Universe organization wanted to meet Ms. Fleming's banker.

71.     An exchange of texts on October 3 demonstrates that Straub understood he was to be the banker.

Ms. Fleming, October 3, 2022, 8:22 PM:

> So the good news is [t]he General Counsel for Miss [U]niverse just asked me to have a conference call with you!!!!!!!!!

Curiously, Straub suggests only he be on the call:

> … Better just me, faster if they want to know anything about who or what we are.

Ms. Fleming says no, she will be on the call:

> I don't want it to be only you…This is my livelihood and I am bringing this to the table and I am to be involved – *they know you have [t]he $$ on my word* bc I don't lie but the terms need be good as well…So you know business but I know these people and pageantry and together we can be unbeatable.

And Straub replies:

> …you make the deal. ***I'm a banker***! Ex. 10. (emphasis added)

72.     In the end, Straub never met or spoke with the General Counsel or any representative of the Miss Universe organization.  Ms. Fleming, however, provided Straub's name to the Miss Universe team as her financier.

73.     For reasons unknown at the time, the Miss Universe organization stopped responding to her inquiries and was soon sold to a foreign purchaser.

74.     Much later, in 2024, Ms. Fleming learned that the reason the Miss Universe Organization ceased negotiations with her was it had learned, in conducting a criminal background check on Straub, that he had allegedly choked a 22-year-old young woman in 2012 at a polo match. The woman called the police, who arrested Straub for criminal battery but Straub, in response, filed a civil action against her and others for libel and slander in the District Court of Palm Beach County (Case No. 50-2012-CA-017439). The civil case was later dismissed and the criminal case closed.

***Straub Agrees to Serve as a Banker to Acquire the Miss America Organization***

75.     Almost immediately after the Miss Universe deal fell through, in early October 2022, MAO reached out to Ms. Fleming, based on her previous inquiries, to re-engage in an acquisition conversation. Straub orally agreed to Ms. Fleming to finance the acquisition.

***Ms. Fleming Provides the Specific Financing Terms to Straub***

76.     The board members of MAO were familiar with Ms. Fleming as she, through one of her businesses, had been both a licensee of the Miss America Brand for many years and a Platinum Sponsor.

77.     On October 27, 2022, Ms. Fleming provided the specific financing terms for the Miss America deal to Straub via text that would limit his risks "*as a bank*" and the need for "*three years*" to pay back the loan.

> Ms. Fleming, October 27, 2022, 9:47 PM:
>
> > We have a shot at Miss America this coming week… I'm getting all financials today – and can work up details on paper . . . I have really good news about the Miss America deal. I don't have to pay the 3 ½ million dollars debt but I just have to restructure it, and have operating cash for the first year. That limits your exposure *as a bank*, and it should be more fun to do a project with less pressure.
> >
> > And I will ask you to help me restructure the debt to something manageable, obviously I still need a loan but it will be repaid *within three years*. (emphasis added). Ex. 11.

78.     Straub orally agreed to finance the debt for three years.

***Ms. Fleming Commences Negotiations and Asks for a Guarantee from Straub***

79.     On November 1, 2022, Ms. Fleming made a personal $250.00 good faith payment to MAO to commence negotiations concerning her possible purchase of the Miss America assets.

80.     On December 4, 2022, beginning at 5:11 pm, Ms. Fleming stated: "I just realized that I do not have any guarantee of funds from you …"

81.     Straub did not respond to the text. On several occasions, Ms. Fleming discussed a potential agreement with Straub whereby his daughter, Kelly Straub Hull, would be a passive part-owner and Ms. Fleming would be a part-owner and CEO of Miss America, but Straub never agreed to specific terms regarding his daughter, to shared ownership, or to a guarantee of funds.

### Ms. Fleming Forms AIM to Negotiate with MAO

82.     On December 9, 2022, Ms. Fleming filed Articles of Organization to form AIM for the purpose of conducting negotiations with MAO. Ms. Fleming organized and operated AIM as a member-managed limited liability company ("LLC") pursuant to Fla. Stat. § 605.0407. Ms. Fleming alone is listed as the member, manager and registered agent of AIM.

83.     Ms. Fleming chose not to adopt an operating agreement for AIM and there is no requirement to have an operating agreement for an LLC in Florida, especially when there is a single member. As such, Ms. Fleming alone could exercise the powers of the LLC.

84.     Further, after formation of any LLC, additional persons can only become a member, where there is no operating agreement, "[w]ith the consent of all the members." § 605.0401(3)(c). Thus, there can be no additional members to AIM without Ms. Fleming's consent and she did not consent to any additional members to AIM.

85.     On December 14, 2022, beginning at 1:46 pm, Ms. Fleming forwarded additional terms for the acquisition of MAO via text to Straub. The terms include, among other things, a requirement for AIM to provide proof of financial capacity to operate and manage MAO while continuing the due diligence necessary for the asset purchase.

86.     MAO then conducted a background check on Ms. Fleming. Although Ms. Fleming had discussed with MAO a possibility that Ms. Hull could be a potential co-owner, that had come

to naught at this point because Straub would not discuss terms or put them in writing. Ms. Fleming passed the background check.

### *Ms. Fleming Offers to Discuss the Details of Splitting MAO Ownership with Straub*

87.    On December 18, 2022, beginning at 5:03 am, Straub texted to Ms. Fleming a reference to the possibility to have Ms. Hull serve as the "Chairman of the Board and majority owner of Miss America with her other stock holder ([Ms. Fleming]) as President and Chief Executive Officer. Along with the Financing from her Billionaire father."

88.    This text indicates that Straub was clearly offering financing, and that, possibly, his daughter would become majority owner.

89.    In response, Ms. Fleming texted to Straub: "let's discuss the stock split and my ability to draw or establish my compensation so I am comfortable, and of course it'll be a thrill to be the president and CEO!"

90.    This text indicates that Ms. Fleming was amenable to sharing ownership with Ms. Hull but needed to discuss the details of her compensation.

91.    Straub did not respond to this text. Further, no discussions ever took place and nothing was put in writing. In short, there was never an agreement by which Ms. Fleming would share ownership with Ms. Hull or that she would receive compensation from Straub.

### *Ms. Fleming Continues to Negotiate through AIM to Buy the MAO Assets*

92.    On December 22, 2022, Ms. Fleming, through AIM, with the assistance of her attorney, Galle, delivered a confidential Binding Letter of Intent ("LOI") to MAO offering to purchase the Miss America Assets. Ms. Fleming signed the letter as the President/Chief Executive Officer of AIM.

93.     MAO had received several bids for the purchase of the assets, but chose Ms. Fleming because of its familiarity with her and their desire to make sure that, going forward, the Miss America contests would be preserved, successful and that she would maintain the high standards that set Miss America apart from all other similar national contests for women.

94.     On December 22, 2022, MAO issued a resolution directing its Board Chair to accept the LOI from AIM and "begin negotiations of a purchase agreement to be ratified by the board upon completion."

95.     On December 26, 2022, Ms. Fleming, through AIM, with the assistance of Galle, drafted and executed a Nondisclosure and Confidentiality Agreement as "Buyer" and Shantel Krebs as "Seller" for both MAO and IP Holding.

96.     On December 27, 2022, in an email from Mr. Dermot Horgan, intellectual property counsel for MAO, to counsel for MAO, he states he spoke to "Bob Roberts" (aka Straub) who "described his group as the 'money people'" to Mr. Horgan. Mr. Horgan provided no information to Straub and stated that "he [Straub] did not seem to know who we were even though we were returning his call." Ms. Fleming was not on the email and was unaware of Straub's use of the alias, "Bob Roberts," at this time. The email shows that, in communications with intellectual property counsel for MAO, Straub was (1) using a fictitious name, and (2) representing himself as the financier, not the prospective owner.

### Ms. Fleming Forms Miss America Pageant, LLC and MAIP

97.     On December 28, 2022, Ms. Fleming, with the assistance of Galle, filed Articles of Organization for Miss America Pageant, LLC and MAIP with the Florida Department of State. Like AIM, Ms. Fleming organized and operated Miss America Pageant, LLC and MAIP LLC as member-managed LLCs pursuant to Fla. Stat. § 605.0407.

***Florida State Records Are Dispositive: Ms. Fleming Was Sole Managing Member of Miss America Pageant, LLC and is Sole Managing Member of Miss America Competition, LLC***

98.    Florida Department of State, Division of Corporations, records ("State records") for MAC (Document # L23000003074) (Ex. 1) indicate that only Ms. Fleming is a member of MAC:

- Ms. Fleming formed Miss America Pageant, LLC by filing Articles of Organization on December 28, 2022, as its registered agent, manager, and only member. The principal place of business is her home address.

- Ms. Fleming amended the Articles on January 6, 2023, to change the name from Miss America Pageant, LLC, to MAC (the document was not entered into State records until January 12, 2023). Galle submitted the Cover Letter.

- Ms. Fleming filed the annual report for Miss America Pageant, LLC, on January 19, 2023 (due to a backlog at the Florida Department of State office, the new name – MAC – was not reflected in State records until March 2023, so the report was filed under the existing name) and the annual report for MAC on March 8, 2024. She filed an Amended Annual Report for MAC on May 13, 2024. The amended report clarifies that Ms. Fleming is not only Manager, but Sole Member of MAC. The amended report was necessitated by the fraudulent acts of Straub and Galle described below that took place in April 2024.

- Ms. Fleming also filed a "Statement of Authority" on May 13, 2024, denying any authority of Straub or Galle to act on behalf of MAC. This submission was also necessitated by the fraudulent acts of Straub and Galle described below that took place in April 2024.

- Straub then filed a document with the Division of Corporations regarding Miss America Competitions, LLC [plural] on May 20, 2024, captioned as "Articles of Amendment" in an effort to remove Ms. Fleming's name as Manager and replace it with Straub's. Straub's filing misspelled the current name of the entity (*i.e.,* Miss America Competition, Inc. [singular]; falsely claimed that the entity was formed on December 28, 2022 (Miss America *Pageant*, LLC, was formed on December 28, 2022, not MAC); and lacks the signature of Ms. Fleming, which would be necessary to replace her as Manager. The Division of Corporations voided Straub's filing.

- Upon learning of Straub's fraudulent filing, Ms. Fleming filed the "Statement of Fact" on July 1, 2024, which set forth the basis for the Division of Corporations to "VOID" Straub's submission. The statement indicates that Straub has no authority to change the name of MAC, Ms. Fleming has been the only manager of MAC since

inception, and she has never authorized anyone to change any records with the Secretary of State.

99.     In sum, State records establish unequivocally that Ms. Fleming has always been the sole managing member of Miss America Pageant, LLC (as of December 28, 2022) and MAC (as of January 12, 2023).

***Florida State Records Are Dispositive: Ms. Fleming Is Sole Managing Member of MAIP***

100.    State records for MAIP (Document # L23000003087) (Ex. 2) indicate that:

- Ms. Fleming filed the Articles of Organization for MAIP on December 28, 2022. There has been no subsequent name change. MAIP's place of business was her home address.

- Ms. Fleming personally filed the Annual Reports on January 19, 2023, and again on January 23, 2024. She filed an Amended Annual Report on May 13, 2024, which indicates that Ms. Fleming is not only Manager, but also Sole Member. The Amended Annual Report was necessitated by the fraudulent acts of Straub and Galle described below that took place in April 2024.

- Straub attempted to file a document dated April 16, 2024, with the Division of Corporations regarding MAIP, captioned as "Articles of Amendment," in an effort to remove Ms. Fleming's name as Manager and replace it with Straub's. The filing was rejected by state officials.

- There are no documents in the State records indicating anyone other than Ms. Fleming is a member of MAIP.

101.    In sum, State records establish clearly that Ms. Fleming has always been the sole managing member of MAIP. Straub made one effort to challenge that authority with a fraudulent document filed in April 2024 with the Division of Corporations, but the document was rejected.

102.    Further, as the sole managing member of MAC and MAIP since their formation, Ms. Fleming alone could exercise the powers of the LLCs as set forth in Fla. Stat. § 605.0109.

103.    Notably, the terms 'owner' and 'member' are often used synonymously in Florida with respect to LLCs.

104.     As the sole managing member and owner of the LLCs, Ms. Fleming's interests in MAC and MAIP include the rights to 100% of their profits and losses and the right to receive distributions.

### There Are No Valid "Operating Agreements" for MAC or MAIP

105.     Ms. Fleming chose **not** to adopt an operating agreement for either entity and there is no requirement to have an operating agreement for an LLC in Florida, especially when there is but a single member.

106.     Because Ms. Fleming chose not to have operating agreements, management remains entirely vested in her.

107.     Further, any purported operating agreement for MAC or MAIP would be void without Ms. Fleming's agreement.

108.     Significantly, when an LLC is formed in Florida without an operating agreement, additional persons can only become members of the LLC with the consent of all the members. Fla. Stat. § 605.0401(3)(c). Thus, there can be no additional members to MAC or MAIP without Ms. Fleming's consent, just as Ms. Fleming cannot simply draft an operating agreement for Palm Beach Polo, back-date it, and claim she is a member of Palm Beach Polo – and entitled to its assets – without Straub's consent.

109.     Ms. Fleming did not consent to any other persons becoming members of MAC or MAIP. In particular, she did not ever consent to Straub or Galle becoming members.

110.     Further, operating agreements are simply contracts that are only binding if agreed to by the members of the LLC. Ms. Fleming did not agree to any operating agreement for either entity.

111.    In sum, Ms. Fleming did not adopt an operating agreement for MAC or MAIP, did not consent to any additional members to MAC or MAIP who might propose an operating agreement, and did not agree to any operating agreement for MAC or MAIP. Any such purported operating agreement(s) are void *ab initio*. Any such purported operating agreement for either entity is also fraudulent.

### *Ms. Fleming Moves Ahead Without any Agreement from Straub to Share Ownership*

112.    On December 29, 2022, beginning at 8:15 am, Ms. Fleming asked Straub via text, "Since it looks like we're moving ahead, can we have a conversation about the details where I fit in?" Straub responded, "No problem but I can't get my head out of the commode," complaining of sickness on the day before the acquisition. Straub did not ever follow-up with Ms. Fleming about the "details," apparently due to his "sickness."

113.    At the time of purchase, Straub had played no role whatsoever in the transaction other than to promise Ms. Fleming that he would finance the reserve. He was not in any way associated with MAC (including its predecessor, Miss America Pageant, LLC) or MAIP, and did not participate in the negotiations. Indeed, he was never even identified to MAO.

### *The Asset Purchase Agreement for Miss America*

114.    Although MAO received several proposals to purchase the assets of Miss America, MAO's Executive Board chose Ms. Fleming to purchase and steward the Miss America assets, brand, and mission. Ms. Fleming was selected because of her reputation of prior success overseeing the Miss America brand, her experience in event production, and her commitment to the standards and values of Miss America.

115.    Before the acquisition, Ms. Krebs and Ms. Fleming agreed to change the name from Miss America Pageant, LLC, to MAC because the term "pageant" was no longer desired.

Ms. Fleming requested Galle execute the name change by email and text on December 30, 2022. Ms. Fleming believed Galle would file the name change electronically that day but, unknown to her at the time, he did not do so until January 6, 2023, when he emailed to Ms. Fleming the name change documents to print out and sign, and he included instructions for sending in a check. She subsequently overnighted the documents to the Florida Secretary of States offices.

116.    On behalf of Ms. Fleming, Galle drafted three documents to complete the acquisition: the Asset Purchase Agreement ("APA"), the Membership Interest Assignment, and the Bill of Sale and Assignment.

117.    Neither Straub nor Galle attended the closing of the purchase of the Miss America assets with Ms. Fleming.

118.    The APA states that it sells and transfer all of Seller's assets to Ms. Fleming, through both MAC and MAIP, free and clear of encumbrances except as disclosed therein, in return for cash ($100), which was agreed upon by Sellers and Ms. Fleming at closing to be a credit from the good faith payment, and a "Buyer reserve" of $4,160,736.69, a sum equal to the Seller's total outstanding debt due creditors. The Buyer, however, has "the absolute and unconditional right to negotiate the amounts, legitimacy, legality and accuracy of the Seller debt" with creditors. The Buyer also has the right to acquire 100% of the membership interests of IP Holding from Seller. Ex. 12.

119.    According to the APA, however, all but a few excluded assets were encumbered by a Small Business Administration ("SBA") loan. Thus, title to the encumbered assets would not be conveyed at closing.

120.    The assets generally included the assets listed in Exhibit A to the APA, as well as proprietary information, lists of customers, trademarks, service marks, copyrights, films,

recordings, social media accounts, intellectual property, paintings, artwork and other tangible property, as well as all cash, notes and accounts receivable.

121.    On December 29, 2022, Ms. Fleming, on behalf of the two entities, MAC and MAIP, ("Buyer"), signed the APA, and on December 30, 2022, Shantel Krebs, on behalf of MAO, IP Holding, and MAOT ("Seller"), signed the APA to sell the Miss America assets. MAO held the physical assets (memorabilia, etc.), while IP Holding held the intellectual property assets.

*MAIP Acquires IP Holding, Which Holds the Intellectual Property Assets of Miss America*

122.    Due to Galle's delay in changing the entity's name from Miss America Pageant, LLC, MAC did not yet exist when the APA was signed. Thus, while the APA included both MAC and MAIP as the two entities that constituted the "Buyer," MAIP was the only Buyer in existence on December 30, 2022. Further, as a result of the encumbrance, no assets were actually transferred to MAIP on December 30, 2022.

123.    Separately, Ms. Fleming, through MAIP, acquired all of the membership interests of IP Holding from MAO through the second document drafted by Galle, the Membership Interest Assignment from MAO to MAIP signed on December 30, 2022. Ex. 13. As a result, as of December 30, 2022, Ms. Fleming, through MAIP, became the sole member of IP Holding, which still held the encumbered intellectual property assets.

124.    Separately, Ms. Fleming, through MAC, acquired all of the personal property assets of MAO (memorabilia, etc.) through the third document drafted by Galle, the "Bill of Sale and Assignment" from MAO to MAC signed on December 30, 2022. Because the name change had not yet taken effect, the assets could not be conveyed until January 12, 2023, the effective date of the name change from Miss America Pageant, LLC, to MAC. Ex. 14.

125.     As a result, no later than January 12, 2023, when the name was changed to MAC, Ms. Fleming owned, through MAC, all the personal property assets of MAO, but they were encumbered and still held by MAO.

126.     All the other assets, including the revenue-generating intellectual property assets, also encumbered, remained with IP Holding, which was owned by Ms. Fleming, through MAIP.

127.     On January 9, 2023, Ms. Fleming obtained an EIN number for MAIP and since then has paid all taxes owed by MAIP.

128.     As of January 12, 2023, when the Note from Palm Beach Polo was signed by Ms. Fleming to pay off the SBA loan, it was on behalf of MAC as the Borrower, whose only assets could ever be the encumbered personal property assets of MAO. Neither MAIP nor IP Holding was a borrower named in the Note. Further, the security interests in the Note were the revenues and monies of the Borrower (MAC), not MAIP or IP Holding.

129.     The SBA loan was paid in full the same day, on January 12, 2023, by Palm Beach Polo. Following payback of the SBA loan, the assets held by MAO and IP Holding were no longer encumbered.

130.     On January 18, 2023, a MAO Special Meeting of the Board of Directors was held in which Ms. Krebs acknowledged the payback of the SBA loan and Ms. Fleming provided an update to the Board as "the New Owner." Ex. 15.

131.     On January 20, 2023, Ms. Fleming filed an amended Operating Agreement for IP Holding with the Secretary of State of Delaware, in accordance with Delaware law, naming herself, through MAIP, as its sole member and 100% owner. Upon information and belief, unlike Florida LLCs, Delaware requires LLCs to have operating agreements. As of this date, Ms. Fleming's membership interests in IP Holding were unencumbered.

132.     On February 24, 2023, Ms. Fleming filed a Restatement of Formation for IP Holding with the Secretary of State of Delaware, with her as the Authorized Person.

133.     Thus, Ms. Fleming became the sole owner of 100% of the interests, through MAIP, of IP Holding and the intellectual property assets of Miss America.

### *MAC Acquires the Personal Property Assets of Miss America*

134.     As for MAC, once the SBA loan was paid in full, the personal property assets were no longer encumbered.

135.     As a result, Ms. Fleming became the sole owner, through MAC, of all personal property assets conveyed by the Bill of Sale and Assignment. Such property did not generate revenues and, therefore, MAC did not require an EIN from the IRS, and it does not need to pay taxes.

136.     In sum, it was Ms. Fleming's experience and reputation that made her a qualified and competitive purchaser of Miss America; it was Ms. Fleming who negotiated the deal with MAO; it was Ms. Fleming who financially qualified for the purchase; it was Ms. Fleming who attended the closing; it was Ms. Fleming who signed her name on all the relevant documents; it was Ms. Fleming who acquired ownership of the MAO assets through the Buyer entities (MAC and MAIP); and it was Ms. Fleming who operated (and operates) the Miss America business thereafter.

137.     Nevertheless, Ms. Fleming relied upon Straub's offer to fully fund the reserve with a three-year loan in negotiating the purchase of the Miss America assets.

138.     Upon information and belief, Straub never intended to enter into any written agreement with Ms. Fleming whereby he would pay her for an equity share of the Miss America

assets for his daughter and then, in addition, pay Ms. Fleming a salary as CEO. Instead, he intended to take control of 100% of the Miss America assets through fraud.

### Galle's Role Prior to Acquisition: Emails Show an Attorney-Client Relationship

139.    In the fall of 2022, Straub recommended to Ms. Fleming that she use Galle as her attorney for the acquisition of the Miss America assets because he was "good but inexpensive." Ms. Fleming agreed that Galle would be her attorney and began copying Galle on emails to Straub.

140.    Thereafter Ms. Fleming sought legal advice from Galle regarding the acquisition of the Miss America assets and Galle provided legal advice regarding the acquisition.

141.    Ms. Fleming understood that the Miss America entities would be charged for Galle's legal services through Palm Beach Polo.

142.    There are approximately 162 emails between Ms. Fleming and Galle up through the date of the acquisition. The emails show Ms. Fleming seeking legal advice from Galle and Galle providing legal advice to her in respect of her acquisition of Miss America.

143.    For example, on November 17, 2022, Ms. Fleming sent an email to Galle and Straub regarding an offer for Miss America, which was up for sale. She asked for help "from an attorney" with writing the letter to the MAO and she states, "I have done all the due diligence, they have revenues right now of about $1million and debt of $6+ million." She then set forth the details of the offer, which includes this provision:

> Robin Fleming to immediately take over operations as CEO/President and Chairman of the board to reorganize the debt, (timeline 3-9 month projected) and then once all debt restructured to satisfaction, pay off any remaining debt to receive all assets (intellectual property, crowns, oil portraits etc.) At such time the board will dissolve, and Miss America will resurrect as a for profit entity moving forward.

144.    The email confirms that Ms. Fleming, while seeking Galle's legal advice, brought the Miss America deal to the table, conducted the due diligence, was engaged in negotiations with MAO, and that the anticipated debt re-organization should only take three to nine months.

145.    On November 18, 2022, Ms. Fleming sent an email to Straub and Galle regarding the Letter of Intent to be submitted to MAO. The letter states that Ms. Fleming will license the pageant, reorganize MAO, take over day-to-day operations, and that "Robin Fleming will purchase" at the end of the reorganization if all is good. Ms. Fleming would also be installed as CEO and she would name board members.

146.    The email confirms that Ms. Fleming's intent was to purchase and be in sole control of MAO.

147.    On November 21, 2022, Ms. Fleming sent an email to Galle, providing "more terms as I get information from the 7pm call."

148.    The email confirms that Ms. Fleming alone was negotiating with MAO and seeking legal advice from her attorney, Galle.

149.    On November 21, 2022, Ms. Fleming sent an email to Galle with changes in red to the General Terms and Conditions he had provided to her in his prior draft of a letter of intent, which included provisions for Girlbossing, Inc. ("GB" or "GI"), an entity solely owned by Ms. Fleming, to take over day-to-day operations of MAO, with Ms. Fleming as CEO and Chairwoman of the Board of GB.

150.    The email confirms that Ms. Fleming's intent was to have sole control and ownership of Miss America once she acquired it through her solely controlled entity, GB, and that she was seeking legal advice from Galle and he was providing legal advice to her.

151.    On December 2, 2022, Ms. Fleming forwarded the same email to Straub and asked him and Galle to "wordsmith with good legal words." Galle is a lawyer, not Straub.

152.    On December 3, 2022, Ms. Fleming sent an email to Galle with further edits to the Letter of Intent.

153.    On December 4, 2022, Galle sent a revised draft Letter of Intent back to Ms. Fleming.

154.    These interactions show, again, that Galle was acting as Ms. Fleming's attorney.

155.    The Letter of Intent indicates that Ms. Fleming, through GB, was to acquire all assets and take over day-to-day operations.

156.    The Letter also confirms that Ms. Fleming intended to have sole control and ownership of Miss America inasmuch as GB was solely owned by her.

157.    On December 4, 2022, Ms. Fleming sent an email to Galle requesting a confidentiality provision be added to the Letter of Intent. There are several additional emails with Galle regarding edits to the Letter of Intent, including a confidentiality provision. The emails again show Galle acting as her attorney.

158.    On December 4, 2022, Ms. Fleming sent another email to Straub and Galle, stating "no where is there anything in writing that says Glenn will do this for me.  I know he keeps his word, but I am concerned about losing my house to Miss America if Glenn backs out.  LMK." Straub and Galle did not respond.

159.    The email to both Straub and Galle shows that Ms. Fleming intended to control MAO alone but is relying on Straub to provide financing.

160.    On December 20, 2022, Ms. Fleming sent an email to Galle asking him to provide legal advice regarding an independent contractor agreement for winners of the Miss America title.

161.    On December 22, 2022, the Board of Directors of MAO directed their Board Chair, Shantel Krebs, to execute the Letter of Intent with AIM to begin negotiations. Ms. Fleming forwarded the letter to Galle and sought his legal advice.

162.    On December 23, 2022, Ms. Fleming sent an email to Galle regarding revisions to the Asset Purchase Agreement.

163.    On December 23, 2022, Ms. Fleming, on behalf of AIM, sent an email to Galle attaching the Letter of Intent signed by Shantel Krebs of MAO.

164.    On December 23, 2022, Ms. Fleming, on behalf of AIM, referred to Galle as "our attorney" in an email to Shantel Krebs at MAO and copies Galle on the email (Galle is also copied on several subsequent emails). Galle did not object to being identified as "our attorney" by Ms. Fleming on behalf of AIM.

165.    On December 23, 2022, Ms. Fleming, on behalf of AIM, also sent to Galle the listed debts sent by Shantel Krebs.

166.    On December 24, 2022, Ms. Fleming, on behalf of AIM, sought legal advice from Galle to add requests for certain records as part of the purchase agreement.

167.    On December 26, 2022, Ms. Fleming, on behalf of AIM, sent Galle documents received from Shantel Krebs regarding MAOT.

168.    On December 26, 2022, Ms. Fleming, on behalf of AIM, sent an email for Galle's review and legal advice regarding a "simplified litigation overview" for MAO and the "Threat of Future Litigation" and a list of MAO debts.

169.     On December 26, 2022, Galle, at the direction of Ms. Fleming, drafted the Non-Disclosure and Confidentiality Agreement ("NDA") with MAO and IP Holding. The NDA is a

legal document signed by Ms. Fleming as CEO of AIM and Galle lists his name and address below her name.

170.    On December 26, 2022, Ms. Fleming sent Galle an email with details about negotiations between Shantel Krebs of MAO and attorneys representing a D.C. leaseholder regarding discussions to settle an existing debt of MAO.

171.    On December 26, 2022, Ms. Fleming responded to an email from Kelly Hull, Straub's daughter, regarding intellectual property ("IP") issues, wherein Ms. Hull states "I know Craig is on this and I have confidence he is on top of all this."

172.    On December 26, 2022, Galle sent an email to Ms. Fleming with a copy of the "Due Diligence List" for the acquisition, which documents were returnable to him at the Galle Law Group, P.A.

173.    On December 28, 2022, Galle, at the direction of Ms. Fleming, drafted the Articles of Organization and formed Miss America Pageant, LLC and MAIP. He named her as "Manager" of each entity and indicated that "Glenn wants to close this Friday" (*i.e.,* December 30, 3022).

174.    On December 28, 2022, Ms. Fleming sent an email to Galle asking, "Do we have proof of funds for the debt amount? Just asking as I know Glenn was working on it…"

175.    On December 29, 2022, Galle sent an email to Shantel Krebs attaching the revised APA, stating that most of MAO's proposed revisions were accepted.

176.    The email shows that Galle was working on behalf of AIM and Ms. Fleming as their attorney, and that he provided legal advice to facilitate the acquisition.

177.    On December 29, 2022, Counsel for MAO responded directly to Counselor Galle, The Galle Law Group, P.A., with additional edits to the APA.

178.     On December 30, 2022, Ms. Fleming, on behalf of AIM, sent an email directing Galle to change the name of Miss America Pageant, LLC to Miss America Competition, LLC. There are numerous further emails between counsel for MAO and Galle, as counsel for AIM, and Ms. Fleming regarding the terms of the APA.

179.     On December 30, 2022, Ms. Fleming also sent a text to Galle, stating: "Good morning Craig… Can you change the name of the LLC from Miss America pageant to Miss America Competition? I think we will have a big press problem on our hands with the continued use of the word pageant since all the beauty pageants actually got rid of the word 10 years ago."

180.     On December 30, 2022, Galle sent by email to Counsel for MAO the countersigned APA and drafts of the Bill of Sale and Membership Interest Assignment to complete the acquisition.

181.     Notably, Straub was absent on all emails with the Seller.

182.     Galle did not change the name of Miss America Pageant, LLC to MAC until January 6, 2023 (effective January 12, 2023). Ms. Fleming paid for the name change.

183.     Ms. Fleming understood that Galle's legal fees would be paid by the Miss America entities.

184.     These emails and many others show that Galle, a member of the Florida Bar, had created an attorney-client relationship with Ms. Fleming to assist her in the acquisition of Miss America.

185.     To assist her in the acquisition of Miss America, Galle drafted and/or edited every document involved in the acquisition, drafted and/or edited and filed the documents needed to form Miss America Pageant, LLC, MAC, and MAIP, and provided legal advice to Ms. Fleming all along the way.

186.     Yet Galle failed to disclose any conflicts of interest to Ms. Fleming arising from his ongoing work for Straub. Notably, Straub was absent on all emails with the Seller, MAO.

## MATERIAL FACTS AFTER THE ACQUISITION OF MISS AMERICA

### *Ms. Fleming is the Undisputed Owner of Miss America*

187.     Immediately following the closing of the APA on December 30, 2022, Ms. Fleming assumed her role as CEO and Owner of Miss America and began directing its business and operations.

188.     Ms. Fleming worked closely with Shantel Krebs, Chair of MAO's Board of Directors, immediately after the acquisition as the new owner.

189.     Ms. Krebs introduced Ms. Fleming as "The New Owner" of MAO at the January 18, 2023, "Special Meeting" of the MAO Board of Directors. The minutes read included the board resolution that the APA between MAO and the Miss America entities (MAC and MAIP) was approved. The Board welcomed Ms. Fleming as "The New Owner." Ms. Fleming then briefed the board members on the transition and her vision of where the new Miss America is headed, the future role of board members, staffing, upcoming competitions, and other issues. The Board then resolved to dissolve the Board and close the organization (MAO).

190.     On January 19, 2023, Ms. Fleming scheduled and conducted a Zoom meeting to more than 1,200 stakeholders, announcing her new ownership and leadership and outlining a number of changes to be made for the organization and its competitions.

191.     On January 23, 2023, Ms. Fleming sent an email to all State Executive Directors referencing her new "ownership and leadership" and outlining a number of changes to be made for the organization and its competitions.

192.     Thus, all parties to the APA, as well as the stakeholders of MAO, understood that ownership and leadership was now vested in Ms. Fleming.

193.     Further, Ms. Fleming was introduced in various emails by Ms. Krebs (MAO Board Chair) and by Liz Brown (MAO Manager) as the new owner of MAO to third parties (sponsors, vendors, and others) in early 2023.

194.     Since the acquisition, Ms. Fleming has worked tirelessly on behalf of the Miss America brand, including by regularly holding meetings with local and state leaders and stakeholders, negotiating contracts with third parties, and planning and organizing various events, including, most notably, the Miss America 2024 Event. In October 2023, Ms. Fleming enacted a three-year alliance and fundraising campaign, which raised scholarship funds for the Miss America Scholarship Foundation and funding for women's health initiatives with the premier national health thought leader, the American Heart Association's GO RED for Women Initiative. Through this partnership, Ms. Fleming brough back fitness as a Miss America competition and secured an established sponsor to highlight fitness, reviving nationwide interest in a brand that had barely survived the coronavirus pandemic. As a mother of a West Point graduate and active-duty Army officer, Ms. Fleming also restored Miss America's defunct relationship with the USO in February 2023. Under Ms. Fleming's steady hand, Miss America fielded its first active-duty military titleholder, who was the first to stand on the Field of Roses at the Kentucky Derby, drive the Pace Car for the Daytona 500, and attend a Presidential State of the Union in crown and sash, among other iconic events.  In addition, since acquiring Miss America, Ms. Fleming has filed all income, franchise, and annual report taxes; authored, distributed, and assigned over 600 licenses throughout the United States, District of Columbia, and Puerto Rico; envisioned, planned and executed more than ten days and nights of events for over 2,600 people for the Miss America contest in 2024; paid for all aspects of the Miss America 2024 and Miss America Homecoming 2024 contests; and

hired the necessary staff and worked tirelessly preparing for the upcoming Miss America 2025 contest.

195.     In dealing directly with third parties since the acquisition, Ms. Fleming has represented herself as CEO and, where relevant, as Owner.

196.     For example, on January 16, 2023, Ms. Fleming responded to a vendor ("Didit"), identifying herself as "the new owner of Miss America."

197.     On February 20, 2023, in an email from Ms. Fleming to attorney Dermot Horgan in response to a question about the relationships between the entities, Ms. Fleming states:

> Hi Dermot.
>
> I am the managing member AKA the owner of the Miss America IP LLC, and MAO IP Holding Company LLC is a wholly owned subsidiary of Miss America IP LLC.
>
> All of the assets, the 102+ year history and the fame belong to Miss America IP LLC and as such, me.
>
> I have 100 years of history in six warehouses in Atlantic City, New Jersey that are storage facilities in my name.

198.     In another email dated March 8, 2023, Ms. Fleming states, in response to a request to clarify Miss America ownership from a partner at the Atlantic City law firm of Cooper Levensen:

> Jill,
>
> To respond to the document request attached is the Florida filing, and yes, Glenn Straub is the BANKER and/or BACKER however you would like to term that initiative, and understandably, he is not to show up in any manner as having an operating role at Miss America, which he does not have in the least, outside of providing funds…"

199.     Later on March 8, 2024, Ms. Fleming thanks the attorney from Cooper Levenson and states, "Thank you so much. I'm going to do my very best to steer Miss America in the right direction to kick off the next 100 years!  HAPPY WOMAN'S DAY!!"

200.    Notably, Galle is copied on the March 8, 2023, email and did not object to the characterization of Straub as BANKER or BACKER.

201.    Since the acquisition, Ms. Fleming has operated Miss America successfully as CEO and Owner, through MAC and MAIP. There is no evidence – no documents, emails or texts from Straub or Galle (or anyone for that matter) – that assert Straub ownership or challenge Ms. Fleming's ownership of Miss America until March and April 2024, *15 months after the acquisition* by Ms. Fleming.

### Straub Admits He is the Banker and Ms. Fleming has a Handle on Her "Flagship"

202.    More than a year after her acquisition of Miss America, Straub acknowledged he was solely Ms. Fleming's banker. On January 10, 2024, in a series of texts, Straub asks Ms. Fleming how he should introduce himself to others at the upcoming Miss America pageant. *Straub suggests he use the term "banker":*

Straub, January 10, 2024, 5:47 AM:

If you have any ideas about if I'm put in a spot that some one would ask me or Michel what do I do with Miss America
The answer is ?
***A banker ?*** A coffee drinker ? A office mover ? Landloard ? Father of the chairman of the board father local repressive
?????
But serious! There might be a big name but little $$$ (emphasis added)

Straub, 5:50 AM:

Security?
How have you handled a OLD male with long hair that has also a EGO and history ,toy,and a mascot like Michael

Straub, 5:59 AM:
Policy maker person that breaks Ties , helper , person that's rebuilds broken organizations,
??????

Straub, 6:06 AM:

> Too old to say anything about MA future
> Person that deals with any LEGAL PROBLEMS fashion designer
> Sponsor sales ?

Straub, 6:07 AM:

> Member of the board

Ms. Fleming, 8:24 AM:

> Financial benefactor and super fan of women's empowerment.

Straub, 8:25 AM:

> Sounds good.

203.     Then, on January 23, 2024, Straub texted Ms. Fleming at 4:50 a.m. and asks her for financial information for the next year and her estimates on "money in and expenses out now that you seem to have a handle on your flagship."

### *Straub Attacks a Black Man at the 2024 Miss America Competition*

204.     On January 14, 2024, Ms. Fleming was alerted by Ryan Brown that security at the Miss America Competition reported an incident where an "old man" claiming to be the father of the Chairman of the Board attacked a talent judge, "a black man," because the judge was talking to a white woman. The "old man" who attacked the black man was Straub, who admitted to such on a text to Ms. Fleming the next day:

Straub, January 15, 2024, 5:18 AM:

> So you as a being a women can't understand yet the ( father daughter battle that not over yet )of black man from liberal California-around where father can see .
> I'm sure there not nothing there of a judge talking after the show but in Florida , south of the MASON DIXON LINE from a father from Arkansas, there never going to be a happy ending .
> Tell your ,I'm sure talented stud to ask the parents first or explain his reasons.
> [Emoji of smiling face with sunglasses]

205.     At a "Conciliation Conference" held in July 2024, Straub again admitted to accosting the black judge at the competition because the man was black, and Straub was a racist.

206.     In sum, MAO and Ms. Fleming, through her entities, entered into an enforceable contract for the sale of the MAO assets that has never been challenged, to this day, by either party to the contract. Further, Straub is not an intended beneficiary of the contract and has no standing to challenge its validity. Moreover, since her acquisition, Ms. Fleming has successfully represented herself as the Owner and CEO, and successfully operated Miss America as Owner and CEO, performing all functions in exemplary fashion.

207.     Straub, for his part, served only as a banker or "financial benefactor" to Miss America during this period. And as the instigator of a racially motivated attack against a black judge at the 2024 Miss America Competition.

208.     Significantly, *during the 15 months after the acquisition*, neither Straub nor Galle ever raised an objection to Ms. Fleming's ownership of Miss America until March 2024, when she rejected the last demand from Straub.

### *Galle's Role After Acquisition: Emails Show the Attorney-Client Relationship Continued*

209.     Galle continued to serve as Ms. Fleming's attorney after the acquisition. There are more than 360 emails between Ms. Fleming and Galle post-acquisition.

210.     For example, on January 11, 2023, Ms. Fleming asked Galle for legal advice regarding the accelerated terms of the Note, and he advised her that she would not be personally liable on the Note and to talk to Straub about the terms.

211.     On January 15, 2023, Ms. Fleming asked Galle for legal advice regarding Interrogatories served by the Bryan Cave law firm about a prior debt, and Galle reviewed the file and responded to Bryan Cave on her behalf.

212.     On January 30, 2023, Ms. Fleming again asked Galle for legal advice ("I need some real help…") regarding a demand letter from a vendor, "Didit." Galle responded to the vendor on her behalf.

213.     On March 18, 2023, Galle sent an email to Bryan Cave regarding a debt owed by legacy MAO. He states, "I represent Robin Fleming, Miss America Pageant, LLC and Miss America, LLC." He then states that the subpoenas Bryan Cave issued were invalid and sets forth the basis for his position.

214.     On April 24, 2023, Galle did not wish to represent Ms. Fleming and Miss America any longer and Galle suggested he transfer all the corporate files to attorney Anthony Barbuto, who at the time was providing legal advice on website privacy and proposed licenses. Ms. Fleming agreed to the transfer of the corporate files to attorney Barbuto, and Galle then did so via email, copying Ms. Fleming. The entirety of the files transferred appears to be only the APA agreement, the Membership Interest Assignment, and the Bill of Sale.

215.     Significantly, the files transferred by Galle to Barbuto did not include any documents that, as set forth below, Straub and Galle later contended were created *before* that date. As set forth below, Plaintiffs can demonstrate that all such documents were actually fabricated after this date by Galle and are fraudulent. If Galle had created the documents before April 24, 2023, he had an ethical obligation – a duty of care – to produced them to Mr. Barbuto when he transferred the files. He did not. Those documents did not yet exist.

### FRAUDS #1, 2: STRAUB, GALLE, FIALCO AND PALM BEACH POLO

### Galle's False Application to the IRS for an EIN (Fraud #1)

216.     In assuming her role as Owner and CEO on January 2, 2023, Ms. Fleming sent an email to Galle advising that she needed an Employer Identification Number for MAC in order to

open a checking account. She offers to file for the EIN "if you don't have time?"

217.    Galle offered to make the EIN request for her.

218.    Because the name change had not yet occurred from Miss America Pageant, LLC, to Miss America Competition, LLC, the EIN request to the IRS was for a non-existent company. As such it is void. Ms. Fleming was unaware of this fact because she thought Galle had already submitted the name change from Miss America Pageant, LLC to Miss America Competition, LLC. She also thought that an EIN would be appropriate if MAC were to engage in revenue-generating business. Galle did not advise her that he had not yet requested the name change.

219.    As a result, Galle's application for an EIN of January 3, 2023, was fraudulent. Not only was the company not in existence at the time, Galle, with Fialco's assistance, inserted Straub's name as "MBR" and Straub's address for the business.

220.    Ms. Fleming was the sole member of Miss America Pageant, LLC according to State records, and had not consented to adding Straub as a member or to use his address.

221.    Further, upon information and belief, the type of entity indicated on the request to the IRS was for an EIN for a "Partnership." MAC was a sole-member LLC (once the name change was effective) and never a partnership.

222.    Straub, Galle, and Fialco were aware that they had no authority to insert Straub's name as a Member of any Miss America entity nor use his address. Nor was Miss America Pageant, LLC, a partnership. Upon information and belief, Galle signed the application to the IRS "under penalties of perjury" affirming that it was "true, correct, and complete."

223.    The IRS issued the EIN the same day, January 3, 2023, reflecting, as Galle had requested, Straub's name as "MBR" and Straub's address. Ex. 16.

224.    The false application constitutes a willful fraudulent act by Straub and Galle, which Fialco, as controller for Palm Beach Polo, assisted, against Ms. Fleming and the Miss America entities. Upon information and belief, it also constitutes a "fraud and false statement" under IRS Code 26 U.S.C. § 7206. For attorney Galle, it also constitutes a violation of Florida Bar Rule 4-4.1 and a breach of his fiduciary duty of loyalty to Ms. Fleming and the Miss America entities.

*Galle Whites-Out Straub's Name from the IRS Response Letter (Fraud #2)*

225.    On January 3, 2022, Ms. Fleming texted Galle: "On my way to Bank of America need the articles of incorporation with my name on it."

226.    The same day Galle provided Ms. Fleming a whited-out version of the fraudulent EIN received from the IRS that had Straub's name whited out, concealing the original fraud. Ex. 17.

227.    Ms. Fleming was unaware of the whited-out portion because the whited-out document appeared to have been scanned and printed without trace of white-out.

228.    Galle recently admitted under oath to "white-ing" it out. Altering the document under these circumstances was a second fraudulent act on his part, especially when he knew it was to be presented to a bank. For attorney Galle, it also constitutes a violation of Florida Bar Rule 4-4.1 and a breach of his fiduciary duty of loyalty to Ms. Fleming and the Miss America entities.

229.    Upon information and belief, Fialco, controller for Palm Beach Polo, was aware that Galle had whited-out the documents.

230.    Galle asserted in testimony that Ms. Fleming asked him to white it out.

231.    First, even if true, this would not excuse his first fraud in submitting the false application to the IRS. He, as her attorney, knew that she was the sole member of Miss America

Pageant, LLC. Indeed, he drafted the Articles of Organization for Miss America Pageant, LLC. And he knew that she would be the sole member of MAC.

232.    Second, even if true, this would not be an excuse for whiting out Straub's name from the IRS letter, which was an official government document to be used in an account application to a bank. It was now a doubly false document – false in the information provided to the IRS and now false in altering the response from the IRS – and Galle, as an attorney, knew this.

233.    Third, *it is not true:* Ms. Fleming did not ask him to white it out. It is simply not credible that Ms. Fleming would ask Galle to white-out a document to conceal Galle's fraud *perpetuated against her* so that the EIN for her LLC would now be in Straub's name. More credible is her testimony that she only realized something was amiss at the bank when the business name and address on the form did not match the State records listing the business name and address for MAC.

234.    Fourth, Ms. Fleming had no motive to conceal Galle's fraud; indeed, she had the opposite motive. Rather, it was Galle who submitted the fraudulent document on behalf of Straub, using Straub's name. Thus, both Galle and Straub had considerable motive to conceal their fraud.

235.    Fialco, for her part, was aware of the fraud as she maintained a physical file on Ms. Fleming that had just two documents: the APA agreement and the EIN letter from the IRS with Straub's name dated January 3, 2023. As the Controller for Palm Beach Polo, she was aware of the fraud. [Later in 2024, when she shared the file upon demand by Ms. Fleming, Fialco jumped up with apparent remorse and demonstrated her knowledge of the fraud, stating "you need to fix this! MAC has your name and address [in the State records]. There's not a single piece of paper that says he [Straub] owns it!"].

236.    But on January 3, 2023, Ms. Fleming, unsure of what had taken place with MAC, waited for the Florida Secretary of State to process the name change, but after a week without an update, submitted her request to the IRS for an EIN for MAIP, instead of MAC, and received it on January 9, 2023. She then opened a checking account for MAIP and not MAC.

237.    More than a year later, Ms. Fleming secured an EIN for MAC, too, in an abundance of caution following the start of Straub's campaign against her. On May 2, 2024, the IRS confirmed that the correct MAC entity was Miss America Competition, LLC [singular] and that Ms. Fleming was the sole member.

238.    The above conduct of Straub, Galle, Fialco, and Palm Beach Polo constitutes fraud.

### FRAUD #3: STRAUB, GALLE AND PALM BEACH POLO

#### Straub Reneges on Promise to Fully Fund the Reserve Over Three Years

239.    On January 5, 2023, Straub, in a call with Ms. Fleming, for the first time spoke with Shantel Krebs of MAO. Straub introduced himself as "Bob the Banker" and asked Shantel questions about the debts of legacy MAO. Ms. Krebs responded by email to Ms. Fleming the next day, saying "we want to keep people like Bob happy, you can tell he is the money, guy … It was so cute talking to him."

240.    Ms. Fleming was taken aback by Straub's use of a "nickname," but Ms. Krebs appeared content with "Bob the Banker" and did not press him for his last name.

241.    Later, Straub explained his use of a nickname or alias stemmed from his desire for privacy as a very wealthy financier.

242.    Following the meeting, Ms. Fleming asked Straub to fully fund the reserve, but Straub reneged on his promise.

243.    Straub stated, instead, that he would serve as her lender on a debt-by-debt basis. The most pressing debt was owed to the SBA.

244.    Galle, at Straub's direction, then drafted the Note between Palm Beach Polo and MAC dated January 12, 2023, for the amount of $525,000 to be paid to the SBA. The Note, however, was to *be paid back in less than a year* (*i.e.,* by the end of 2023, but was later extended until early 2024 due to the scheduled revenue-generating pageant to be held in January 2024). Ex. 18.

245.    Significantly, the Note granted Palm Beach Polo a security interest in the collateral pledged by the Borrower – MAC – should a default occur. The agreement describes the collateral as all revenues and monies in bank accounts of Borrower through the date the loan is paid.

246.    The Note was designed to result in a default by the Miss America entities and seizure of assets by Straub through Palm Beach Polo. Straub and Galle apparently did not realize, however, that MAC did not have any revenues or monies or even a checking account. It held only the personal property of Miss America. Thus, if Ms. Fleming, through the Miss America entities, failed to pay according to the revised terms, Straub would have a right to nothing as collateral except for the personal property of Miss America – not the revenue-generating intellectual property held by MAIP and IP Holding.

247.    Straub, through his assurances and discussions with Ms. Fleming over almost a year, coupled with his displays of extreme wealth and the capacity to easily fund the acquisition of Miss America, induced Ms. Fleming to reasonably believe that he would fully fund the reserve as promised. Straub knew his material representations to Ms. Fleming regarding funding were false when made and he intended Ms. Fleming to rely upon the misrepresentations.

248.    In reliance thereupon, Ms. Fleming acquired Miss America.

249.     Ms. Fleming paid the Note in full in February 2024 in accordance with its revised terms. But even after paying the Note, Ms. Fleming is exposed to litigation and financial ruin arising from the remaining debts of legacy MAO that Straub refuses to finance. As a result, she and the Miss America entities have suffered damages proximately caused by Straub's and Galle's fraud in inducing her to acquire Miss America with the intent to renege on the promise of financing the $4.1M reserve.

250.     For his part, Galle encouraged Ms. Fleming to acquire Miss America, drafted the Note designed to force her default, and knew, or should have known, that Straub had no intention to fund Ms. Fleming but, instead, to wrest control from her.

251.     The above conduct constitutes fraudulent inducement on the part of Straub and Galle.

### THREATS, INTIMIDATION, AND EXTORTION #1: STRAUB, GALLE AND PALM BEACH POLO

### Straub, through Galle, Requests Ms. Fleming Act as his Proxy in Abusive Litigation

252.     On or about March 12, 2024, Straub, through Galle, sent Fleming an email attaching a draft complaint alleging a claim against the individual board members of the Palm Beach Polo Owners Association ("POA") with a fill-in-the-blank for plaintiff.

253.     Straub told Fleming he would pay the expenses of the proposed lawsuit against the individual POA Board members, which he intended as a tool to unwind Straub's prior sale and lease of land to the POA. Straub pressured Ms. Fleming to serve as the plaintiff.

254.     Upon information and belief, Straub wanted to attack the individual Board members in the litigation in the hope of forcing their resignations and installing a new board willing to vacate the land sale and lease transaction. Straub already had litigation pending against the POA using Palm Beach Polo as Plaintiff. (Case No. 50-2023-CA-016225-XXXA-MB).

255.    Straub called Ms. Fleming repeatedly on March 12 (four times), March 13 (two times), and March 14 (seven times), explaining it was her civic duty to serve as his proxy in the lawsuit.

256.    Ms. Fleming began keeping detailed contemporaneous notes of the conversations to record her recollection and as business records.

### *Ms. Fleming Says No*

257.    On a call at 4:37 pm on March 14, 2024, Ms. Fleming advised Straub that she was declining to participate in his proxy suit, stating she did not want to sue individual people in her community.

258.    Upon information and belief, Straub was enraged by Ms. Fleming's rejection of his sexual advance in September 2022, her success in paying the Note to Palm Beach Polo in February 2023, and her rejection of his unethical request to serve as his proxy in litigation on March 14, 2023. He had no leverage over her.

### *Straub Explodes - The Threats, Intimidation and Extortion Begin*

259.    Straub did not accept no for an answer. On a call at 10:37 am on March 15, 2024, that lasted 23 minutes, Straub told her he was "shutting down Miss America" because "it is a waste of time" and she "cannot be controlled." Ms. Fleming's notes state:

> Glenn demanded that I come into the office to discuss the lawsuit and and when I reminded him I was not signing for it, informed me he was 'shutting down' Miss America. . . he continues to yell that he is sick of my behavior and that he is shutting everything down because I cannot be controlled that he doesn't care about any Miss America anything it is a waste of time, and that I am not allowed to go to West Palm Beach, I am to meet him in the office in 30 minutes. He tells me I am nothing I am a failure, my dress shop is a failure, that I am not a business person, I don't know how to do business, his time is way more valuable than my time, and I am over the hill and that he doesn't have time for my shit. I let him know that I cannot cancel my appointments and I will call him immediately afterwards and we can talk about anything he wants to talk about then. I tell him I am sorry he is upset, and

that I understand he doesn't want to be the banker anymore, and I will start wrapping things up so he doesn't have to worry about any more money requests.

260.     Straub texted her at 9:14 pm that night, again threatening her with shutting down Miss America and that he has a press release ready. Ms. Fleming called Straub at 9:33 pm on a call that lasted 33 minutes where Straub threatened to bring her children into the "public humiliation" and that he will send letters to all state directors falsely claiming she is mentally ill and has been fired unless she turns over the company to him, agrees to do whatever he says, and be completely subservient to him:

> I call Glenn and ask if there is anything in particular he wants to discuss at our Saturday meeting and I can bring those materials to the meeting, he tells me to stop talking and proceeds with a tirade about me for another 40 minutes threatening me again to ruin my reputation, drag my children into the public humiliation, and that I better be prepared to sign over the company to him, the checkbooks, the accounting software, he will send a public notice to all the state directors that I have been fired and am mentally ill unless I agree to do what he says at any time and be completely subservient to him. Glenn says I have no more chances left unless I choose to cooperate, and he already has a press release to drawn up to the tell the world who I am and that I will be finding out the hard way how this is going to go, that I will have to learn a lesson.

261.     The next day, on March 16, 2024, Straub sent a letter to Ms. Fleming notifying her of her "Temporary Suspension and Investigation" by the Companies – "Miss America Competitions, LLC and Miss America IP, LLC." The letterhead, which had never been seen before, misspells MAC (*i.e.,* it uses the plural), an unlikely error if one were truly the owner of MAC. It also misspells Ms. Fleming's name in the address block, again an unlikely error if one were truly the owner of a company "managed" by Ms. Fleming.

262.     The letter also states she is "commanded to produce all of the financial records of the Companies," also an unlikely request if one were truly the owner of MAC dealing with a rogue manager.

263.     Later that day, Ms. Fleming met Straub, at his request, at Stallion Restaurant, at 1:30 pm. Her notes recorded the following:

> 1:30pm Meet Glenn Straub at PBPC Stallion restaurant and am seated with Glenn while we wait for the 'witness' Michel Precikowski to arrive to take notes. Michel arrives and I give him a pad of paper and a pen to make all the notes. Glenn repeats his threats to me and demands that I turn over all control of Miss America to him or be humiliated in the press on Monday morning, that Glenn has Jose Lambiet a private investigator on payroll and that he will instruct Jose who is already writing a press release and the article at Glenn's direction. While eating, the owner of the Stallion restaurant Juan comes by and asks me how I am doing, and chats briefly with Glenn and Michel.
>
> I ask Glenn to provide proof of his ownership of Miss America and he responds that is what the courts are for, that it will take me three years of civil litigation to see proof and that he will spend whatever it takes. I respond that the litigation alone would ruin Miss America and he agrees and says it would be all on me, unless I agree to his terms.
>
> Glenn says the terms by which he will NOT ruin me are 1. Total control of Miss America 2. All checks and bank accounts turned over to him 3. All credit cards given to him 4. I will always be subservient 5. I will meet at any time of day or night or weekday or weekend at any point that he wishes to discuss anything because his time is far more valuable than mine 6. I will enact all his changes to Miss America because it is a dinosaur and needs to change, 7 I agree to hire more people to do his bidding 8. I turn over all contacts to all State Directors
>
> Glenn tells Michel to take a picture of the notes for his phone so Glenn has a copy and then to give me the notes Michel took down so I know what I need to do. Micheal gives me the notes, I see he wrote Glenn was the banker and not the owner which was what I said to Glenn.
>
> As we leave the restaurant Glenn says he is 'sorry he has to do this to me,' but that maybe I will learn my lesson and he will give me until 8pm Sunday to let him know which direction he needs to go.

264.     Numerous subsequent conversations with Straub featured long monologues about himself and about "Robin's Company" (in itself, an admission of Ms. Fleming's ownership) and what he wants to do with it, but allowing for Ms. Fleming to participate in some fashion.

265.     On April 9, 2024, Straub demanded that she sign a piece of paper stating that he is the owner of Miss America. She told him no and that he was the banker, not the owner. He repeated

the demand on April 10 in a 67-minute call and she repeated her answer, stating it would be a fraud on MAO and all its licensees.

266.    Also on April 9, 2024, Straub gave Ms. Fleming a second "Notice of Temporary Suspension and Investigation" letter dated April 5, 2024, using the same misspelled letterhead, this time offering to lift her suspension upon her "acknowledging [she has] no (zero) ownership interest in the [Miss America entities]."

### Straub Threatens to Sue Her Personally and to Take Her House

267.    On April 10, 2024, Straub threatened to sue Ms. Fleming personally and that she would lose her house if she continues to keep signing as CEO "for any legal situations." He threatened to seek punitive damages.

268.    Paradoxically, on April 11, 2024, Straub left a voicemail to Ms. Fleming admitting that he had no concern if Miss America failed because he is "not associated with Miss America…."

### Straub Threatens to Defame Her

269.     On April 12, Ms. Fleming called Straub in response to Straub's texts stating he is firing her. On the call Straub threatens to "email all the State Directors and tell them I am stealing money from Miss America, and tells me he will do everything to embarrass me that he can." On this day, Straub hands her the first version of a fraudulent operating agreement for MAC as described below.

270.    On April 15, 2024, Straub gave Ms. Fleming a third letter, purportedly a "Termination Notice," directing her to return all records to Fialco within 24 hours.

271.    On April 16, 2024, Ms. Fleming responded in writing to Straub, rejecting his Termination Notice and his claimed interest in the Miss America entities and the Miss America

assets. She reminds him he is solely the banker. On this day, Galle sends a second version of the fraudulent operating agreement for MAC as described below, and a fraudulent operating agreement for MAIP, as described further below.

### *Straub Defames Her and Threatens Her Employee*

272.     On April 24, 2024, Straub, again falsely claiming to be the Director of the Miss America entities, sent a letter to Ryan Brown, National Field Director for Miss America residing in Hawaii who has worked with Miss America for over 20 years. He works for Ms. Fleming. Straub falsely advised Mr. Brown that Ms. Fleming was "suspended for cause" and then "terminated for cause" and that he was the "sole Member, sole Director, and Manager" of the Miss America entities, and "the only person to whom [Ryan Brown] should report and take direction from…." Straub claimed that Ms. Fleming was "acting in concert" with others to "interrupt, interfere with, and cause substantial damage to the Companies' businesses." Straub then advised Mr. Brown that, if he responds to Straub, he can keep his job. If he does not, he will be a party to the lawsuit being filed against Ms. Fleming.

273.     Mr. Brown will corroborate the above at trial.

274.     Upon information and belief, Galle drafted the letter to Mr. Brown. Mr. Galle is compensated by Palm Beach Polo for such services.

### *Straub Sues Her Personally*

275.     On April 25, 2024, just nine days after she rejected the "Termination Notice," Straub initiated an action by filing a Verified Complaint in Palm Beach County Circuit Court, Case No. 2024-CA-3851 AI, wrongfully and without authority, purportedly in the names of the Miss America entities and IP Holding against Ms. Fleming and MASF (the "Straub Lawsuit"). The Straub lawsuit was filed by long-time Straub attorney, Larry Zink.

276.     Straub filed his lawsuit with an illegal purpose – to take possession of Miss America, property that belongs to Ms. Fleming, when she would not turn it over in response to his initial threats and efforts to intimidate and extort.

277.     The lawsuit is based on the fraudulent documents of ownership drafted by Galle that are addressed herein. Because the documents are patently fraudulent as established herein, the only purpose of the Straub lawsuit is to perpetuate the fraud.

### *Straub Publicly Defames Her in Letters Sent Across the Nation*

278.     On April 29, 2024, Straub sent a personal letter to the Miss America directors and licensees, members, and contractual partners across the country, claiming to be the owner of Miss America, the Miss America assets, and the Miss America entities. Addressees included all 51 State Directors and others with no affiliation to Miss America. Straub also caused the letter to be posted on the internet,[2] where it remains today. In this letter, Straub made various false claims including the following:

> In late December 2022 I purchased all the assets of the former Miss America Organization, the then owner and operator of the Miss America Pageant. I purchased the Miss America Pageant as well as the Miss America Outstanding Teen Competition including all of their assets and intellectual property through Miss America Competitions LLC, and Miss America IP LLC of which I am 100% owner/member, the sole Director and a manager.
> …..
> Recently you may have seen correspondence from the former CEO of Miss America, Robin Fleming, who I hired to run the Miss America Pageant and who now claims to own the Pageant.
> …..
> Robin Fleming was terminated from her role as CEO, President and Manager of Miss America Competitions, LLC and Miss America IP, LLC after we received damaging information and conducted an extensive audit of her conduct while working with organization. I had hoped to handle the termination in a private manner to protect the integrity of our organization but she has chosen to publicize this action in an attempt to drag out her relationship with the organization and to

---

[2] https://accessglobal.media.clients.ellingtoncms.com/uploads/froala_editor/files/straub%20email.pdf

promote side businesses' [sic] that she created which were used to enrich her personal persona and to benefit her financially.

…..

Internal audits unearthed multiple abnormalities which led to her suspension on March 16, 2024. An extensive audit revealed misuse of funds, unauthorized payments to herself which were disguised as payments to staff, and multiple further breaches of fiduciary duties. On April 15, 2024 Robin Fleming was terminated as from her position. [sic]

…..

Additionally, the investigation revealed that Robin Fleming halted organizational review of vital computer records by changing all computer access passwords as we attempted to conduct the audit and still, to this day, she refuses to provide access to banks and credit cards.

Further, she instructed a Miss America state director to no longer do business with our largest tenured qualified vendor in an attempt to divert attention away from the audit, she formed a company with virtually the same name through the Florida Secretary of State ending the relationship with the Miss America Foundation which handled scholarships and donation responsibilities and hid the formation of the separate entity from us for her and her immediate family's personal gain leaving the Miss America organization in a very vulnerable position.

Now, faced with the audit results and a $20 million dollar lawsuit, Robin Fleming is making the fictitious claim that she 'owns' the Miss America companies…
She signed the Asset Purchase Agreement as 'Manager,' a position I hired her for…All legal paperwork as well as wire transfers and cancelled checks clearly and obviously indicate that I am the sole owner of Miss America.

…..

Robin Fleming has continued the ruse of ownership in order to unilaterally control and block access to bank accounts, credit cards, official Miss America social media outlets, and to hide a substantial amount of assets included in the purchase agreement and paid for in full by my company.

279.    Upon information and belief, the letter was drafted by Galle, whose services were paid for by Galle through Palm Beach Polo.

280.    None of the above was true; Ms. Fleming was not terminated; there were no concerns; there were no abnormalities; there was no audit; and there was no investigation. The claims are also cruel, because they created mistrust and confusion that harmed, not only Ms. Fleming, but the Miss America brand and mission. Straub's conduct is perhaps one of the most egregious examples of the pot calling the kettle black. Straub, a vindictive con artist who has

attempted to seize and exploit an organization by and for women for his own personal aggrandizement, is accusing Ms. Fleming, a woman who has embodied and championed the values of Miss America, of defrauding Miss America stakeholders and jeopardizing its noble mission. His conduct is, tellingly, antithetical to the values of the very organization he claims to own and respect.

281.    Straub also caused the April 29, 2024, letter to be published in Casino.org. As a former casino owner, Straub understood that accusations of embezzlement and financial improprieties would make it difficult for Ms. Fleming to return future Miss America events to casinos, where such events were held for decades due to their large-capacity arenas, ability to provide financial underwriting, and prominent national stage for the pageant.

282.    On May 1, 2024, in response to Straub's letters of April 29, 2024, former officers of MAO drafted a letter signed by Shantel Krebs, the former Chair and Managing Member of MAO and former President of Miss America's Outstanding Teen, Inc. (now MASF); Karie Ross, former Secretary of MAO; and Ryan Brown, former Treasurer of MAO. The letter was emailed to all State Directors and Licensees:

> The entire Board voted unanimously to transfer the assets to Robin Fleming...to continue the legacy of the Miss America mission… Robin Fleming was known to MAO through a prior license agreement wherein MAO entrusted the good will of the brand of MAO to Ms. Fleming and a company owned by her. She faithfully protected the mission the MAO brand represented, and always acted in good faith to the satisfaction of MAO, and has a demonstrated commitment to the empowerment, support, and protection of women and girls of all ages.
>
> It was against this backdrop that the Board of MAO sold its assets and transferred its legacy to Robin Fleming as the sole owner and President of both Miss America Competition, LLC, and Miss America IP, LLC.
>
> This declaration represents the collective stance of the board, which has trust and confidence in Robin Fleming's continued demonstrations of leadership.

*Straub Publicly Defames Her in Zoom Calls Held Across the Nation*

283.    On May 2, 2024, at 2:00 PM, Straub sent an email via press@ missamericapress.com inviting all of Miss America's contractual partners and licensees across the country to a "Zoom Q&A" concerning changes to Miss America leadership.

284.    In response to the Zoom invitation, on May 2, 2024, Attorney Stuart J. Moskovitz, as counsel for Ms. Fleming and the Miss America entities, issued a cease-and-desist letter to Straub's attorneys Zink and Galle, demanding that the "Zoom Q&A" not occur, and placing them on notice that proceeding would support a claim of tortious interference with a contract and tortious interference with a business relationship and seeking $100,000,000 in punitive damages.

285.    In further response to the Zoom invitation, on May 2, 2024, Attorney Collin O'Brien of Latimer Levay Fyock, LLC, intellectual property and litigation counsel for MAIP and its wholly owned subsidiary, IP Holding, sent a letter to Straub demanding that he cease and desist the use of the Trademarks that comprise a portion of the Miss America Assets purchased, owned, and controlled by Fleming through the Miss America entities, and that the failure to comply will be viewed as willful infringement.

286.    On May 3, 2024, notwithstanding the two demand letters from attorneys threatening legal action and punitive damages of $100,000,000, Straub hosted the unauthorized "Miss America" Zoom meeting, with invitations sent across the nation to members of the press, all State Directors, licensees, and contractors and posted on the internet in public chat forums, during which he misrepresented himself to the public as the owner of the Miss America entities and the Miss America assets, willfully infringing the Miss America Trademarks, and falsely claiming and introducing Stacy Annone and Lauren Malis as the new managers of the Miss America entities and Miss America. At one point there were over 1,000 participants on the call.

287.     Upon information and belief, the Zoom calls were conducted from Straub's office at Palm Beach Polo.

288.     On the Zoom call, Straub continued to defame Ms. Fleming and create confusion and doubt regarding the Miss America entities by falsely claiming that: Ms. Fleming is not the owner of the Miss America entities; Ms. Fleming was terminated as CEO of the Miss America entities; an alleged audit revealed that Ms. Fleming had mishandled the money of the Miss America entities; Ms. Fleming changed all the passwords to the various financial accounts of the Miss America entities to block Straub from accessing them; Straub is the day-to-day operator of Miss America (not Ms. Fleming); and that Ms. Fleming was evading service of the lawsuit he initiated against her.

289.     On May 9, 2024, Straub sent a similar email invitation to Miss America's State Directors, licensees, and contractual partners, and posted on public chat forums, concerning a second unsanctioned "Miss America" Zoom meeting he intended to host. Counsel for Ms. Fleming sent an email to Straub's counsel again demanding that Straub cease and desist from such improper actions. On May 10, 2024, notwithstanding the above demands that he cease and desist from such actions, Straub hosted a second unsanctioned "Miss America" Zoom at which he repeated defamatory remarks and reiterated harmful misrepresentations concerning Miss America and Ms. Fleming. There were approximately 45 people on the second call.

290.     Just days ago, on November 25, 2024, Straub made a post in a public forum, which made the following statements: "The defendant recently admitted in open court that they were funding their legal defenses through Miss America including money earmarked for scholarships. This reckless practice is putting Miss America in financial and legal jeopardy and I will not allow

this to destroy all that you have worked so hard to accomplish." Also on November 25, 2024, Straub made the same statement in an e-mail to the Executive Directors.

291.    The fact that Straub and his lawyer were warned twice by cease-and-desist letters from counsel threatening punitive damages of $100,000,000 yet decided to proceed three separate times constitutes overwhelming evidence of the malice and willfulness behind their campaign.

292.    In sum, Straub's threats and efforts to intimidate, extort, and defame Ms. Fleming following her rejections of him include a blitzkrieg of personal attacks against her directly, threats against her employee, threats against her children, defamatory public attacks intentionally made nationally and repeatedly in front of all stakeholders in MAO, and a financially ruinous lawsuit against her personally that is designed to destroy her and force Miss America into bankruptcy.

### FRAUD #4: STRAUB, GALLE, FIALCO AND PALM BEACH POLO

### Galle Creates, for Straub, a Fraudulent Operating Agreement for MAC

293.    Simultaneous with the above public efforts to extort and defame Ms. Fleming to force her to give up ownership of Miss America, Straub and Galle also drafted fraudulent documents to take ownership directly.

294.    On Thursday, April 11, 2024, during a meeting with Straub starting at 9:30 a.m. and ending at about 2:00 p.m., Straub put a call from Galle on speaker phone without advising Galle that Ms. Fleming was present. According to Ms. Fleming's journal entry:

> Craig tells Glenn on speakerphone that *Craig drew up an operating agreement* to have Glenn be the sole member and manager and Glenn asked him who signed those documents and Craig said "Glenn your name is on it"… I remind him that Glenn saying he is the owner is fraud, and I am not participating in any fraud…I tell Glenn I would like to see the new document that says he is the owner, and Glenn says he will give it to me tomorrow at our next meeting, but that he is the owner of Miss America I am not to write anymore checks. (emphasis added)

295.    On Friday, April 12, 2024, the first fraudulent Operating Agreement ("**MAC/OA#1**") (Ex. 19) created by Galle, dated December 28, 2022, was physically handed to Ms. Fleming by Straub. According to Ms. Fleming's journal entry:

> I meet Glenn in offices with Alex Domb, and Tiffany Richtmyer and in front of both witnesses Glenn, proceeds to give Alexander Domb the so-called operating agreement document and asks to make a copy for me of 'Operating Agreement' by which he is claiming ownership of Miss America. Problem is that the operating agreement is dated December 28 and says Miss America Competition LLC and names Glenn as the manager, member and tax member, it is just stamped with with signature but the only entity in existence at the time was Miss America Pageant LLC and I am the manager. I inform Alex that the OA is a fraudulent document and Glenn says a letter is going out to all the directors stating that I am removed as Manager and CEO and he is also firing Kelly Hull as the Chairman of the Board. I let him know he has no authority by which to make any decisions for any of the Miss America entites or brand, and I let him know that is tortious interference with my business and licenses and I will sue him for defamation and punitive damages. He tries to continue the conversation and says even if he is just the banker he has a right to hold the audit, and I let him know I think our conversations and business relationship is over, as II will be seeking an attorney and will be in touch next week, and I leave, I drive to Anthony Barbuto's office, show him the fake operating agreement and tell him to help me get a lawyer. He says he will help, and sends an email to Atty David George who is currently in litigation with Glenn Straub already, over Glenn filing fraudulent liens on Jessica Nicodemo's property...Glenn texts me later in the evening from his second phone and in the text asks if I will accept service on behalf of my kids and then says I am not allowed to share his texts with anyone as they are 'privileged'. He is now threatening my children again.

296.    Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo and emailed to Fialco at Palm Beach Polo and then printed out by Fialco and given to Straub before the meeting.

297.    Attorney Alex Domb, one of the witnesses, corroborated the outline of Ms. Fleming's account above when he testified on August 20, 2024.

298.    First, an "operating agreement" is a secondary document that, even if authentic, does not prove ownership.

299.    Second, the document is fraudulent. As set forth above, State records establish that, as a matter of law, Ms. Fleming became the sole member of Miss America Pageant, LLC upon its formation on December 28, 2022, and then became the sole member of Miss America Competition, LLC, effective January 12, 2023, upon its name change. Nothing has changed those facts. She remains the sole member of MAC today. As such, she owns 100% of its assets.

300.    Third, Ms. Fleming chose not to create an Operating Agreement for MAC. As the sole member of MAC, only she has the power to approve an Operating Agreement for MAC. She did not approve an Operating Agreement for MAC. She did not sign an Operating Agreement for MAC. She did not sign MAC/OA#1. Thus, MAC/OA#1 is void for that reason alone.

301.    Fourth, the circumstances of the disclosure of MAC/OA#1 indicate it was of recent fabrication. According to Ms. Fleming's journal entry above, Galle stated to Straub on speaker phone on April 11, 2024, that Galle drew it up and put Straub's name on it (to which Straub did not object). This suggests that Galle fabricated MAC/OA#1 as part of a conspiracy with Straub on or about April 11, 2024. This was also the exact same time Straub was attempting to extort Ms. Fleming to sign over MAC. Further, the circumstances of the disclosure – more than 15 months after Ms. Fleming formed MAC, a period during which neither Galle nor Straub challenged her ownership of MAC until she rejected Straub – are also consistent with recent fabrication.

302.    Fifth, MAC/OA#1 is titled as a "Limited Liability Company Agreement of Miss America Competition, LLC," with an effective date of December 28, 2022. *There was no entity in existence by that name at that time*. That name did not take effect until January 12, 2023. Thus, MAC/OA#1 is void for that reason as well.

303.    Sixth, MAC/OA#1 appears to be a "cut-and-paste" job from a real estate development company document, not for a business involved in the pageant industry. Indeed, the "Purpose" of the Company set forth in Section 4 is "to own and develop real property located in St. Lucie County, Florida." It also states that there are 1,000 "Units" that have been issued and are outstanding and has other provisions inappropriate for the pageant industry. These features are inconsistent with Ms. Fleming's purpose for and capital structure of MAC. They are consistent, however, with a quick cut-and-paste by Galle for Straub to use against Ms. Fleming to further the fraud based on prior operating agreements in real estate deals. These inconsistencies are further evidence of fraud.

304.    Seventh, MAC/OA#1 features a stamp signature for "GLENN F. STRAUB," which is consistent with Galle's April 11, 2024, statement that Galle put Straub's name "on it." In other words, it was not signed by Straub, let alone Ms. Fleming. The Division of Corporations requires a signature by the Registered Agent. Thus, MAC/OA#1 is again void.

305.    Notably, Ms. Fleming immediately objected to MAC/OA#1 when the copy was handed to her and she pointed out its obviously fraudulent nature – the incorrect entity name, an improper stated purpose, and a lack of signature.

306.    In sum, MAC/OA#1 is patently fraudulent, the defects almost laughable if not so serious in potential effect.

### FRAUD #5: STRAUB, GALLE AND PALM BEACH POLO

### Galle Creates a Second Version of the Fraudulent Operating Agreement for MAC

307.    On April 16, 2024, in apparent response to Ms. Fleming's comments about the fraudulent nature of MAC/OA#1, Galle sent by email to then-counsel for Ms. Fleming (attorneys Stuart Moskovitz and Anthony Barbuto) a single .pdf document attaching a second version of the

Operating Agreement for MAC (**"MAC/OA#2"**) (Ex. 20) and an Operating Agreement for MAIP (**"MAIP/OA"**) (Ex. 21).

308.    Incredibly, MAC/OA#2 appears to be Galle's effort to correct the three defects Ms. Fleming identified in MAC/OA#1; that is, Galle was attempting to replace his first clumsily drafted fraudulent document with a better one, as if no one would notice the substitution.

309.    For example, MAC/OA#2 features a different entity name than MAC/OA#1 in an apparent effort to correct the name based on Ms. Fleming's comments on April 12. But it was changed from the singular "Miss America Competition, LLC" in version #1 to the plural "Miss America Competitions, LLC" in version #2. But *it is still the wrong name*. On December 28, 2022, the correct entity in State records was Miss America Pageant, LLC. It was not changed to Miss America Competition, LLC, until January 12, 2023. Thus, there was no such entity in existence on that date. MAC/OA#2 is void for that reason alone.

310.    Further, it is likely that Straub and Galle, in their effort to correct the wrong name, referred to Sunbiz.org for the correct spelling. This is likely because Sunbiz.org featured the plural spelling beginning with the name change to Miss America Competition, LLC, on January 12, 2023. It was a typographical error that was later corrected. This is further evidence that MAC/OA#2 was created after January 12, 2023 (not on December 28, 2022) and is, therefore, fraudulent.

311.     Given that MAC/OA#1 was fraudulent because it was not created on December 28, 2022, bears the wrong name for the entity, and was not authorized by Ms. Fleming, its pedigree does not improve with further alteration. Both MAC/OA#1 and MAC/OA#2 are fraudulent and void.

312.    Significantly, upon examination of the single .pdf attachment containing MAC/OA#1 and MAIP/OA sent by Galle by email on April 16, 2024, it appears that the metadata

for the .pdf had been removed. Upon information and belief, metadata is present in .pdf files unless intentionally removed.

313.    Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo.

### FRAUD #6: STRAUB, GALLE AND PALM BEACH POLO

### Galle Creates a Third Version of Fraudulent Operating Agreement for MAC

314.    On August 20, 2024, Ms. Rina Osle, Straub's Assistant Controller at Palm Beach Polo, testified that she received a Word version of MAC/OA#1 by email from Galle on April 11, 2024, to print out for Straub in preparation for his April 12 meeting with Ms. Fleming. Ms. Osle recalled that it contained the stamped name of Straub when she printed it out but not any notes. When shown the notes on the document presented at the hearing, she recognized them as Straub's.

315.    Counsel for Ms. Fleming requested Counsel for Straub to produce the Word version of the operating agreement for MAC. It was produced but without the email to which it was attached. Ex. 22.

316.    The Word version ("**MAC/OA#3**") is similar to the first version with the same defects as set forth above (*i.e.,* it bears the date of December 28, 2022, when MAC was not in existence at the time, it has the wrong purpose, etc.) but it bears a different "signature" from the first version – a typed "Glenn F. Straub" in a blue font, not his stamped name as in the first version. Most significantly, the metadata shows that it was created on August 25, 2023, at 6:36 p.m. by Galle, not December 28, 2022, as is purported (see Ex. 22). Thus, it is also a fraudulent document.

317.    Galle testified that he only knew about version two, the .pdf with an actual signature (and no metadata). Ms. Osle showed that to be a false statement by Galle, as she testified Galle

gave her version three – a different Word version resembling version one, on April 11, 2023, to print out for Straub's meeting with Ms. Fleming on April 12, 2023.

318.    Thus, the Word version of the purported operating agreement for MAC shows conclusively that it was created well after December 28, 2022 (*i.e.,* on August 25, 2023), and is fraudulent. The fact that Straub's counsel, Galle and Zink, have put forth more than one version of what they claim is an original document is further evidence of fraud.

319.    In sum, MAC/OA#1, 2 and 3 are patently fraudulent, the defects almost laughable if not so serious in potential effect.

### FRAUD #7: STRAUB, GALLE AND PALM BEACH POLO

### Straub and Galle Create the Fraudulent Operating Agreement for MAIP

320.    The MAIP/OA document was contained in the same .pdf received from Galle on April 16, 2023. Ex. 21. It is also fraudulent.

321.    First, as set forth above, State records establish that, as a matter of law, Ms. Fleming became the sole member of Miss America IP, LLC upon its formation on December 28, 2022. Nothing has changed that fact. She remains the sole member of MAIP today. As such, she owns 100% of its assets.

322.    Second, Ms. Fleming chose not to create an Operating Agreement for MAIP. As the sole member of MAIP, only she has the power to approve an Operating Agreement for MAIP. She did not approve an Operating Agreement for MAIP. She did not sign an Operating Agreement for MAIP. She did not sign MAIP/OA. Thus, MAIP/OA is void for that reason alone.

323.    Third, the circumstances of the disclosure of MAIP/OA indicate it was of recent fabrication. Produced on April 16, 2024, along with MAC/OA#2, which metadata from its Word version indicates was created on August 25, 2024, MAIP/OA is substantively identical – except in

name and purpose – to that document. This suggests that Galle fabricated MAIP/OA on or after August 25, 2023.

324.    Fourth, Galle provided the document while Straub was attempting to extort Ms. Fleming to sign over MAIP following her refusal to serve as his proxy. This was more than 15 months after she formed MAIP, a period during which neither Galle nor Straub challenged her ownership of MAIP. The timing of the document's release is evidence of fraudulent intent.

325.    Significantly, MAIP/OA is part of the .pdf document that had its metadata stripped, which is also evidence of fraudulent intent.

326.    Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo.

327.    In sum, MAIP/OA is patently fraudulent, the defects also almost laughable if not so serious in potential effect.

### THREATS, INTIMIDATION AND EXTORTION #2: STRAUB, GALLE AND PALM BEACH POLO

#### Straub Threatens Ms. Fleming at the "Conciliation Conference"

328.    On July 18, 2024, the court in the Straub's Lawsuit ordered a "conciliation conference" in an effort to resolve Straub's claims without further litigation. The court set no guidelines and the conference – with no judge, mediator or arbitrator present – took place in person on July 29, 2024, without restrictions. Both Straub and Ms. Fleming attended with their counsel. Notably, the parties made no agreement as to confidentiality or to any privilege regarding the conference. Nor were these settlement discussions.

329.    Straub used the opportunity to directly threaten, intimidate and extort Ms. Fleming in a continuing effort to terrorize her. These actions on his part constitute further criminal activity and, as such, would not be protected by any confidential agreement or assertion of privilege.

330.    During the conference Straub stated that he had one of his agents – Joseph Annone – a Wells Fargo employee – access Ms. Fleming's bank accounts, both for MASF and her personal account, without authority. Upon information and belief, Mr. Annone was recently terminated by Wells Fargo and is the husband of the woman – Stacy Annone – whom Straub has indicated would be his choice as CEO for Miss America. Straub indicated that he knew Ms. Fleming had a precise amount of money total in two personal accounts at Wells Fargo. This was accurate information and confirms that Straub did, in fact, employ an agent to illegally obtain private financial information of Ms. Fleming in violation of federal law.

331.    Next, Straub stated he intended to file for bankruptcy on behalf of her Miss America entities using the fraudulent operating agreements described herein and the banking information he obtained from Mr. Annone.

332.    Next, Straub admitted to hiring Chase Scott to defame Ms. Fleming and that he would direct Mr. Scott to defame Ms. Fleming in every way possible, including associating Ms. Fleming with the "Chrisley family", the husband and wife who were involved in Miss USA at the State level and went to jail for bank fraud committed several years *before* Ms. Fleming met them.

333.    Next, Straub stated he had hired private investigators to "dig up all the dirt" on Ms. Fleming, seeking to uncover all her marriages and information that she was allegedly practiced in defrauding people, and stating that he would send this information to all local and State Directors.

334.    Next, Straub affirmed he would shut down Miss America by defaming her, bankrupting the organization, and wouldn't care at all because he was "so important" and had "better things to do" with his time.

335.    Next, Straub stated that even if she gave him her ownership interests, he didn't care and would pursue her for $2 million in unfounded damages.

336.    Straub admitted accosting a black judge at the pageant because the man was black and Straub was a racist.

337.    Straub declared himself to be Hamas and Ms. Fleming was Israel.

338.    Straub declared himself to be Hitler to Ms. Fleming.

339.    Straub said he will be ready in two weeks to start "grooming girls" in his office with a modeling school and runway, much as he had "groomed" Ms. Fleming.

340.    Straub stated that the only reason the FBI met with her (at her request) was because they wanted to find out more about her following allegations from him that she had engaged in criminal activity.

### *Straub Defames Her in Letters Sent Across the Nation*

341.    On September 1, 2024, Straub sent a letter on Palm Beach Polo letterhead by email to over 65 State Executive Directors for Miss America across the nation, stating Ms. Fleming had been fired for cause and was "concealing" all passwords:

> For 13 months until Ms. Flemings [sic] dismissal with cause (including for changing and concealing all passwords) Straub ran the organization behind the scenes. . . . We all know money can be shifted from account to account and creative bookkeeping can produce almost any result. But we believe you are all intelligent enough to know that it was his personal commitment all along that has been financing everything from the organization's debt to salaries to the national pageant.

342.    Upon information and belief, the letter was drafted by Galle, whose services were paid for by Galle through Palm Beach Polo.

343.    Most recently, on September 26, 2024, Straub sent another letter to the State Executive Directors via email, again on Palm Beach Polo letterhead, in which he claims she is unfit, misusing funds, and crafting "a wild tale of ownership:"

> Robin admitted that she is using funds earmarked for Scholarships to pay her personal legal defense bills…We also learned how Robin is unfit to be the steward of the organization... I had to step in with only 2 days left to secure registration ownership of the Miss America brand.  Robin's carelessness meant that if we had waited just 48 hours more anyone could register and own your brand... She was removed from her position with cause for mismanagement and misuse of funds and this is just another attempted excuse for her defense... Following her dismissal, she crafted this wild tale of ownership, changed the bank account passwords to protect the money she is making from you and the organization, tried to take possession of my Intellectual Property and almost all the museum items

344.    Upon information and belief, this letter was also drafted by Galle, whose services were paid for by Galle through Palm Beach Polo.

345.    Defendants' defamatory conduct has caused devastating harm to the Miss America brand and, by extension, Ms. Fleming as the owner and steward of that brand. The Miss America brand is monetized through licensing arrangements, which generate income to fund the Miss America scholarships, events, and other operations. Each State Director is a licensee of the Miss America brand and pays a licensing fee back to the Miss America entities. In addition, there are hundreds of local licensees under the supervision of the State Directors that, likewise, pay a licensing fee back to the Miss America entities. These licensees use the Miss America brand to raise funds for local pageants and other events promoting the Miss America brand and mission. Thus, creating confusion and mistrust among licensees, sponsors, and the general public vis-à-vis the Miss America entities results in cascading and compounding damage.

346.    For example, following Straub's defamatory statements, multiple State Directors and the entire Miss America board in one state have parted ways with the Miss America entities. Setting aside the expense associated with replacing these grassroots agents, the result of their

departure is that robust fundraising activities for local pageants and to fund the licensing fee to the Miss America entities are not occurring. Because Ms. Fleming will not allow women in these regions to suffer the consequences of this loss, the Miss America entities must now accept nominal licensing fees and fund the pageants and other events that otherwise would usually have been funded by local licensees.

347.    Multiple paid sponsors that not only provide revenue directly, but also support the Miss America entities and their licensees in their revenue-generating activities, have also withdrawn their paid sponsorships. Other business opportunities, such as a potential arrangement with a prominent LA production company to return the Miss America competition back to television, have also vanished.  In a particularly devastating blow, organizers of the iconic Macy's Thanksgiving parade withdrew their invitation to have Miss America participate in the parade, which has been a yearly tradition since the 1940s. While the Miss America entities do not receive payment for Miss America's participation in the Thanksgiving parade, the lost opportunity to showcase Miss America to millions of television viewers is an incalculable loss.

348.    As a result of Defendants' defamatory conduct, those who once invested their time, money, and passions into the Miss America program, or partnered with the Miss America brand to achieve symbiotic returns, have either lost faith in Ms. Fleming to safeguard their investment or withdrawn their investment to avoid enriching Straub, who is the antithesis of what Miss America stands for. Whatever the reasoning, the result is the same: Miss America and Ms. Fleming have, and are currently, suffering extraordinary injury due to the defamatory conduct of Straub.

### *FRAUD #8, 9: STRAUB, GALLE AND PALM BEACH POLO*

#### *Straub and Galle Create Fraudulent "Meeting Minutes" (Fraud #8)*

349.    On July 17, 2024, immediately before day one of a scheduled two-day hearing regarding Straub's motion for a preliminary injunction, counsel for Straub sent two documents by email to Ms. Fleming's counsel. Counsel for Straub indicated that he had received these documents from Galle that morning and Straub's counsel intended to use them at the hearing that day, notwithstanding the lack of notice to Ms. Fleming and her counsel.

350.    The first document is a .pdf without any metadata. It purports to be "Minutes of Initial Meeting of the Member and Director of Miss America Pageant, LLC, that purportedly took place on December 30, 2022, at 3:00 pm between Straub and non-member Galle, and similar Minutes for MAIP, LLC that purportedly took place immediately thereafter from 3:35 pm until 3:55 pm. Both "Meeting Minutes" are fraudulent. Ex. 23.

351.    First, authentic "minutes" of any meeting of an LLC would be a secondary document and not a document establishing ownership of an LLC.

352.    Second, the Meeting Minutes are not authentic. State records establish, as a matter of law, that Ms. Fleming became the sole member of Miss America Pageant, LLC (later Miss America Competition, LLC) and of MAIP, LLC, upon their formation on December 28, 2022. Nothing has changed those facts. State records indicate Ms. Fleming remains the sole member of MAC and of MAIP today. As such, she owns 100% of their assets.

353.    Third, as the sole member of the LLCs, Ms. Fleming alone had the authority to conduct a meeting. She did not conduct a meeting of either LLC on December 28, 2022. She did not choose to have a meeting with herself and record the meeting of herself speaking to herself.

Nor did she authorize anyone to conduct a meeting on her behalf for either entity she just formed that day. There were no meetings of either LLC that day.

354.    Fourth, the self-serving .pdf document was stripped of metadata, just as the first copies of the clumsily drafted "operating agreements" described previously. As described previously, a Word version of the MAC "operating agreement" obtained from Ms. Osle revealed that the document – and likely the MAIP "operating agreement" that was substantively identical to it – were both created in August 2023 by Galle and thus both documents were fraudulent for that reason (and myriad others). These circumstances make it more likely this document is also recently made by Galle and fraudulent.

355.    Fifth, the timing of the disclosure of the Meeting Minutes in August 2024, after Straub had been engaged for almost five months in a concerted effort to wrest control of Miss America from Ms. Fleming, is more than suspicious, especially after a 15-month period where there was no challenge to her ownership.

356.    Sixth, it is suspicious that during the first alleged meeting for each entity for which the Meeting Minutes relate, there was no mention of, or adoption of, either purported operating agreement that was purportedly signed that day.

357.    Seventh, the reason for a lack of metadata was alluded to at the hearing in July 2024, where Galle testified that his laptop was stolen in Ecuador in January 2023, conveniently just after the acquisition of Miss America by Ms. Fleming. Presumably, all his electronically-stored documents regarding the acquisition were lost at that time and explains why no documents with metadata exist, just scanned copies of paper documents in .pdf format. But if that were true, then Ms. Osle would not have been in possession of a Word document (MAC/OA#3) in April 2024 that was purportedly created in December 2022.

358.     In sum, the Meeting Minutes presented on July 17, 2024, immediately before the hearing and without notice, are fraudulent.

359.     Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo.

### *Straub and Galle Create A Fraudulent "Pledge Agreement" (Fraud #9)*

360.     The second document in the production of July 17, 2024, is a Word document that purports to be a "**Pledge Agreement**" dated December 30, 2022. Ex. 24. It purports to be a draft agreement between Palm Beach Polo and Ms. Fleming individually. It is not signed by anyone. Indeed, Galle testified that Ms. Fleming did not sign it. As an unsigned agreement, it has no legal effect.

361.     It is also not authentic.

362.     First, it is an electronic Word document with no metadata. Upon information and belief, all Word documents have metadata unless intentionally removed.

363.     Second, if Galle's laptop was stolen in Ecuador in January 2023 as he testified and he could not produce the original "operating agreements" with metadata as described above, he cannot now claim to have an electronic Word document – "the Pledge Agreement" – that dates back to December 2022. This is evidence of recent fabrication and associated stripping of metadata.

364.     Third, if the Pledge Agreement were authentic, it indicates that the "Pledgor" – Ms. Fleming – *owns membership interests* in Miss America Pageant, LLC, and MAIP, which Straub now argues she does not have. Further, if it were authentic, it indicates that the "Beneficiary" – Palm Beach Polo – *only has a security interest* in those membership interests. In

short, the "Pledge Agreement" is actually consistent with Ms. Fleming's ownership of Miss America, not Straub's.

365.    Fourth, the Pledge Agreement bears errors that are consistent with Galle's other cut-and-paste jobs from prior work for Straub. For example, the amount of the "Pledge" is written as: "FOUR MILLION ONE HUNDRED SIXTY THOUSAND SEVEN HUNDRED THIRTY-SIX AND 79/100 ($3,375,000.00) U.S. Dollars," where *the two amounts do not agree.* Further, it references quarterly payments, "membership interests," and a "membership certificate," none of which is consistent with the provisions in the Note that Ms. Fleming eventually signed.

366.    Notably, the Pledge Agreement includes broad provisions for default. For example, a default could occur by the filing of a petition in bankruptcy against the Pledgor. This, too, is consistent with a scheme to wrest control of Miss America from Ms. Fleming.

367.    Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo.

368.    In sum, the Pledge Agreement is not authentic: it was not created in December 2022, it was stripped of metadata, and it is fraudulent. Further, it bears no signatures. It has no legal effect on the issue of ownership but is yet further evidence of fraud on the part of Galle and Straub.

### FRAUD #10: STRAUB, FIALCO AND PALM BEACH POLO

#### Fialco Creates the Fraudulent Payments Spreadsheet

369.    On July 12, 2024, Fialco, the controller for Palm Beach Polo, was deposed. She stated she has worked for Straub for 17 or 18 years. She handles the financials, the accounting for Straub. She keeps all of Straub's "corporate books" for the companies that he owns and controls in her office. She testified that she does not have any corporate books relating to Miss America in

her office; Palm Beach Polo does not handle the taxes for the Miss America entities; she has never seen an employment contract for Ms. Fleming; she is not aware of any compensation paid to Ms. Fleming; she is not aware of any audit ever being performed on the Miss America entities; and that Palm Beach Polo does not have access to Miss America's American Express accounts.

370.    In response to the subpoena for her deposition *duces tecum* in July 2024, she brought with her a spreadsheet purporting to include all payments made on behalf of MAC by Palm Beach Polo between December 1, 2022, and December 31, 2023. Ex. 25.

371.    There are two problems with the spreadsheet. The first is that it is fraudulent, indicating that two American Express bills of legacy MAO were paid by Palm Beach Polo on December 28, 2022. This date is before the acquisition of the MAO assets. The payments were actually made on January 26, 2023, as reflected in the American Express account statements in Ex. 26.

372.    Upon information and belief, these two false entries were intended to support Straub's contention that he had made payments before the acquisition and thereby played a role in the acquisition. In fact, he made no payments to American Express or any creditor of MAO until after the acquisition was complete, when he provided partial financing on accelerated terms.

373.    The second problem with the spreadsheet is certain inaccurate entries, which will be resolved at a later date.

374.    In sum, the spreadsheet is demonstrably fraudulent by simply comparing the purported dates of payment with the actual payment dates on the American Express account statements.

### *FEDERAL TRADEMARK VIOLATIONS – STRAUB AND PALM BEACH POLO*

375.     At all relevant times, IP Holding (aka MAO IP Holding Company, LLC) has owned and held the Trademarks of Miss America. MAIP now holds all of the membership interests in IP Holding, pursuant to the Membership Interest Assignment of December 30, 2022. Further, the Amended Operating Agreement of IP Holding reflects Ms. Fleming's signature, as 100% member of MAIP, the sole member of IP Holding. As such, Ms. Fleming, through MAIP, owns the Miss America Trademarks.

376.    The Miss America Trademarks owned by IP Holding include multiple live registrations of "Miss America" trademarks. They include Serial No. 71693423, first registered in 1956 for the Mark "Miss America," for the "PROMOTION OF EDUCATION THROUGH THE GRANTING OF SCHOLARSHIPS, THE RECIPIENTS BEING SELECTED IN LOCAL, STATE, AND NATIONAL CONTESTS, BASED ON SUCH FACTORS AS BEAUTY, PERSONALITY AND TALENT." Ex. 27

377.    On May 2, 2024, Straub sent an invitation via email using the domain name <press@missamericapress.com for a "Miss America Live Zoom" conference to be held on May 3, 2024, to Miss America's contractual partners and licensees across the country. Ex. 28.

378.    Straub created the domain name with an outside vendor (Jeremy Ables of JC Productions, which vendor is being sued separately by the Miss America entities for theft of intellectual property in federal court) that is identical or confusingly similar to the Miss America mark (<xxx@missamerica.org>) and was created with the bad faith intent to profit from its use. It is part of Straub's fraudulent scheme to wrest control of Miss America from Ms. Fleming by making it appear that the email is from the true owner of Miss America. Ms. Fleming never approved, either personally or on behalf of the Miss America entities, the use of this domain.

379.    A series of text messages on April 29, 2024, and May 2, 2024, between Straub and Ables indicate the origin of the domain name to be used for the invitation (aka the "press release"):

Straub, April 29, 2024, at 4:55 PM:

> Gut through to chase and you should be receiving the copy of the press release Read it and if a problem call me I'm not back up in the air until 745 pm

Jeremy Ables, April 29, 2024, at 4:57 PM:

> Just spoke to chase, working to get it now, also putting your info on the press@missamericapress.com which is the address the press release will come from, just in case the sender wants to look it up to determine if it's spam or creditable

> Here is the info we are using for the domain ownership: MISS AMERICA COMPETITION LLC GLENN F STRAUB MBR 11199 POLO CLUB RD WELLINGTON, FL 33414

Straub, April 29, 2024, at 7:04 PM:

> Did you receive and send my letter to state and local ? I leave at 7:30 tonight out of Hartford to west Palm. Please text or call me if not

Jeremy Ables, May 2, 2024, at 9:56 AM:

> Glenn, we are about to send out the press release for your zoom today. Here is the copy we are using in the email. Do you suggest any changes?

380.    The text messages indicate that Straub used a former vendor of Miss America to create and own an email domain that is identical or confusingly similar to legitimate Miss America domain names.

381.    The invitation sent from the new email domain features the logo "Miss America" in large font as the header and falsely references Straub's "ownership of the Miss America Competitions, LLC, Miss America IP, LLC & MAO IP Holding Company, LLC."

382.    The invitation also states that Straub will be answering questions pertaining to the future of the Miss America program under his leadership.

383.     In response to Straub's invitation, attorney Stuart J. Moskovitz, then-counsel for the Miss America entities and Ms. Fleming, issued a cease-and-desist letter via email to Straub's attorneys, Zink and Galle, setting forth the relevant law, demanding that the "Zoom Q&A" not occur, and placing them on notice that proceeding with the Zoom call would support a claim of tortious interference with business relationships and tortious interference with contracts, and that he would be seeking punitive damages of $100,000,000.00.

384.     Also in response to Straub's Zoom invitation of May 2, 2024, attorney Collin O'Brien of Latimer Levay Fyock, LLC, IP counsel for MAIP and its wholly owned subsidiary, IP Holding, sent a letter directly to Straub via email the same day demanding that he cease and desist the use of the Trademarks that comprise a portion of the Miss America assets purchased, owned, and controlled by Ms. Fleming through the Ms. America entities.

385.     Notwithstanding the objections raised by two attorneys, on May 3, 2024, Straub hosted an unauthorized "Miss America" Zoom meeting during which he misrepresented himself to stakeholders across the country as the owner of the Miss America entities and the Miss America assets, and misusing the Trademarks of Miss America.

386.     On May 7, 2024, Straub made unauthorized efforts to change the registration of the Trademarks with the Federal Trademark System, without Ms. Fleming's knowledge or consent, evidenced, in part, by the documents attached as Exhibit 27. Attorney Dermot Horgan submitted the request to the U.S. Patent and Trademark Office on behalf of Straub. Mr. Horgan was formerly the attorney for IP Holding who was fired by Ms. Fleming in October 2023.

387.     On May 9, 2024, Straub sent a similar email invitation to Miss America's licensees and contractual partners across the country concerning a second unsanctioned "Miss America"

Zoom meeting he intended to host. Counsel Moskovitz issued another email demand to Straub's counsel again demanding that Straub cease and desist from such improper actions.

388.    On May 10, 2024, despite the various written demands that Straub cease and desist from such actions, he hosted a second unsanctioned "Miss America" Zoom at which he reiterated harmful misrepresentations concerning Miss America and Ms. Fleming, again misusing the Trademarks in so doing. There were approximately 40 participants on the call among the various licensees and contractual partners.

389.    Straub used email and the internet to host the Zoom calls with participants across the country.

390.    Upon information and belief, Straub used his office at Palm Beach Polo to conduct the Zoom calls.

391.    Straub's use of the Miss America registered mark – a nationally famous, iconic trademark used in interstate commerce since 1956 – was likely to cause confusion or mistake and was made with the specific intent to deceive and wrongfully profit from the commercial use of the trademark.

392.    The above misconduct by Straub constitutes trademark infringement, unfair competition, trademark dilution, and cyberpiracy.

### The RICO Claims

### Overview

393.    An enterprise, for purposes of the federal RICO Act, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Florida's RICO statute, (Fla. Stat. §§ 895.01 *et seq.*) uses a similar definition. (§ 895.02(5)).

### The Enterprise

394.   Here, Straub and Galle worked together to defraud Ms. Fleming and the Miss America entities. Upon information and belief, Galle worked for Straub for 27 years as his attorney and, at all relevant times herein, as his agent.

395.   For example, it was Galle who obtained the false EIN for Straub, whited-out the IRS response for Straub, drafted the Promissory Note for Straub with accelerated terms and greatly reduced loan amount, sent the proxy complaint to Ms. Fleming for Straub, participated in the malicious lawsuit brought against her by Straub (even testifying for Straub), and drafted multiple fraudulent documents seemingly on demand for Straub, including fraudulent operating agreements, meeting minutes, and a pledge agreement. Shockingly, during much of this time he was also acting as attorney for Ms. Fleming.

396.   Given that Straub, according to his own testimony, doesn't use computers, Galle's role is integral to the fraudulent scheme here. Straub could not have done it without Galle.

397.   Palm Beach Polo is used throughout the scheme. It is Straub's solely owned entity that serves as the financial conduit between Straub and Galle; *e.g.,* Straub pays Galle through Palm Beach Polo to perform the above "services" and it was also the conduit to fund the Promissory Note for the Miss America entities and for certain other expenses of the entities. Straub also uses Palm Beach Polo as his alter ego in the lawsuit he is pursuing against board members of the POA as well as in lawsuits against numerous women he has dated who say no to him (he has also used other solely owned entities for the same purpose). Palm Beach Polo is intertwined with Straub and Galle. It is also the means by which Straub conceals his identity.

398.    Thus, Straub, Galle, and Palm Beach Polo (and, on occasion, another Straub solely owned entity serving the same purpose) constitute an "Enterprise" for purposes of federal and state RICO violations.

### The RICO "Pattern of Racketeering Activity"

### Overview – Federal RICO

399.    Racketeering activity, for purposes of the federal RICO Act, means any of a number of prohibited acts, including wire fraud (18 U.S.C. § 1343), tampering with or retaliating against a witness or victim (§§ 1512-13), or interference with commerce, robbery, or extortion (§ 1951).

400.    Wire fraud under § 1343 requires "(1) the intentional participation in a scheme to defraud and (2) the use of the interstate wires in furtherance of the scheme." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). The second element of wire fraud contains two sub-elements: (1) communications need to use interstate wires and (2) communications need to further the fraudulent scheme. The Eleventh Circuit Court of Appeals has held that wire fraud applies to communications made over the telecommunications network, even if the communications were local. *United States v. Jasen*, 693 F. App'x 801, 803 (11th Cir. 2017).

401.    Extortion under § 1951 "contains two elements: (1) extortion, and (2) interference with interstate commerce." *United States v. Bornscheuer*, 563 F.3d 1228, 1236 (11th Cir. 2009).

402.    Extortion includes "fear of economic loss as well as fear of physical violence." *Bornscheuer*, 563 F.3d at 1236 (11th Cir. 2009) (quoting *United States v. Grassi*, 783 F.2d 1572, 1577 (11th Cir.1986)).

403.    A pattern of racketeering activity, for purposes of federal RICO, "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter

[1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5).

### *Overview – State RICO*

404.    Racketeering activity, for purposes of the Florida RICO Act (Fla. Stat. §§ 895.01 *et seq.*), means "to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit" any of a number of prohibited acts that are chargeable as crimes under certain Florida statutes, including fraud generally (Ch. 817), communications fraud (Ch. 817.034), forgery (Ch. 831), tampering with or harassing or retaliating against a victim (Ch. 914.22 and 914.23), extortion (Ch. 836.05), and any conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1).

405.    State extortion claims are determined by the federal definition of extortion under the Hobbs Act (18 U.S.C. § 1951), *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 n.2 (11th Cir. 2004), but state extortion claims do not require interference with interstate commerce.

406.    A pattern of racketeering activity under Florida law requires at least two incidents of racketeering conduct within five years. Fla. Stat. § 895.02(7).

407.    Reviewing the predicate acts cited below show that Straub and Galle, using Palm Beach Polo or another solely owned entity of Straub, have engaged in a pattern of racketeering activity under both federal and state RICO laws.

### *RICO Predicate Case #1: "JN"[3]*

408.    In March 2017, Straub, through Palm Beach Polo, sued his ex-girlfriend, JN, to foreclose fraudulent liens on her property in Palm Beach County Circuit Court (Case 50-2017-CA-

---

[3] Each of the individual women who were targeted by Straub have been anonymized for purposes of the Complaint.

003219-XXXX-MB). Galle represented Palm Beach Polo in this action, which ultimately gave rise to a criminal case against Straub for fabricating the liens he sought to foreclose, in Palm Beach County Circuit Court (Case 50-2020-CF-000527-AXXX-MB). Galle drafted the fraudulent liens for the civil action.

409.    Evidence from the criminal case includes police transcripts of controlled phone calls between Straub and JN, after he had filed false liens on her house, putting her house in foreclosure, wherein Straub does not deny that he put his hands around her neck and threatened to kill her and then admitted the liens were simply part of his plan to keep her from selling her house and leaving him.

410.    In short, Straub was extorting her with threats of physical violence and severe economic harm to force her to stay with him, using Galle to file the false liens on her property Upon information and belief, law enforcement testimony will establish the following controlled telephone call took place between JN and Straub, with a Palm Beach Sheriff's Office detective on the line, beginning at 9:33 am on April 14, 2017 [Ex. 29, pp. 31-38]:

> …..
> STRAUB: So to me, I devised a plan to go ahead and say she'll have to get with me and we filed it through a different courthouse or through some other way to go ahead and say, okay, if you sell that house you're gonna have to come – we're gonna have to have meetings and we're gonna have to see each other. Maybe, um, you won't just leave me.
>
> STRAUB: So I was – I was trying to protect my relationship with you; thinking that you're just gonna sell and take off on me. And so that was my way of trying to do – you can either believe that…So I wanted you to be, um, obligated to me and that's what the – obligated to come to me that I would still – I didn't want a penny of it. I wanted to go ahead and do it. So being frivolous maybe Craig, uh, overreacted or didn't think about it 'cause he's not emotionally – he's just trying to protect my interest…
> …
> JN: Okay. So all of the things that you did were just your attempt to keep me?

STRAUB: A hundred percent, honey, a hundred percent. Not any – not any if ands or buts so I just –

…

JN: …But if you're dating this woman and you have feelings for her. I'm – I'm happy for you. I want you to be happy. I don't want you to be tortured or upset. But if – if you're gonna move on with her are you gonna take the fake liens off my house?

STRAUB: No, no. I didn't say that yet. I said that will handle on its own. I don't want you to believe that – honey, I would take – it's not – if you would understand what that thing's for, it's just to have you clear through me that we're gonna meet just like I did with my ex-wife this week…

JN: ……why would you not just – if you're moving on, take those fake liens off my house. I don't understand.

STRAUB: I probably can. If I'm – if – now that you told me, Glenn, I wasn't moving to Melbourne; I was moving to Jupiter. And I'm saying it there's some way that's like [SS]. I had a little bit of feeling for [SS].[4] You – I had a –

JN: I know and you—

STRAUB: -- hell of a lot more feelings –

JN: -- you did the same thing –

STRAUB: little more feeling (unintelligible).

JN: -- to [SS].

STRAUB: Okay. And I bankrupted her, honey.

JN: Yeah, I know you did.

STRAUB: I finally got it to the – she can't get credit for the next five years. And I'm saying, I don't want to be that vicious person…I just wanna talk with you. I want to be around you. Maybe we can be friends… I would ver easily, if there was some protection that you could give me that we're still gonna be – you're an intricate part of my fucking life.

…

JN: So these liens were … just to keep me in your life?

---

[4] "SS" was sued by Straub, through Palm Beach Polo, by Galle, for allegedly failing to pay back "loans" Straub made to her in 2013 (Case No. 13-CA-018218). She subsequently filed for bankruptcy protection.

STRAUB: It was. That's what – it was there to keep you in the life.

STRAUB: …And so our relationship went sour because maybe I tried something or let my boys take care of things like they have for 27 years down here.

STRAUB: -- I was gonna go ahead and do – I'm gonna -- I was gonna go ahead and do – take the time and prove to you to get on your knees and say, hey, Glenn, back off. I'll – I'll do whatever you want me to do. I'll sign your piece of paper. That was me going after your charity. I don't care…

JN: Well, you texted me … and said, This is not gonna to end unless – unless one of us dies." Do you understand that language – how scary that was to me?

STRAUB: Yeah. Well, no, it means that we're gonna – I'm gonna – uh, Honey, I don't give in….I do not give in. So I would attack by going to your, um – uh – your university. I'll go ahead and donate money to the universities to turn your plan down because I'm –

JN: Oh, you're talking about my business?

STRAUB: Yeah. Honey, I'm – I'm that bad….

JN: So you were gonna try to ruin my business by – to keep me with you?

STRAUB: Sorry, hon.

JN: That's –

STRAUB: Sorry…I know…It's sick.

JN: Glenn, and it's…fucking twisted.

STRAUB: -- that's what I am. I know but I am that – I need to win. And so -

JN: By destroying … somebody?

STRAUB: I know. Sorry, honey. But I am a winner.

411.    The above indicates that the subject Enterprise (Straub, Galle, and Palm Beach Polo) was engaged in racketeering activity in 2017 as defined by 18 U.S.C. §§ 1961 and 1951(b)(2) and Fla Stat. §§ 895.02 and 836.05 in extorting JN using threats of physical harm and severe economic loss – the illegitimate foreclosure on her home and the destruction of her business – to

gain Straub's objective, either (or both) the illegitimate acquisition of her property or the unlawful and detestable surrender of her freedom to live where, how, and with whom she wished. The false documents – the fake liens drafted by Galle – were a key tool used by the Enterprise.

412.    Notwithstanding all of the above, JN chose to fight, and the criminal matter against Straub for filing false liens and grand theft is still pending in State court. Straub, in fact, is out on bond.

413.    True to form, Straub sued JN and her friend, CC, in January 2019 for invasion of privacy and conspiracy in Palm Beach County Circuit Court regarding the recording of a similar Straub phone call made prior to the Sheriff's office controlled call above. (Case 50-2019-CA-001140XXXX-MB). Mr. Zink represented Straub in this lawsuit, which the court dismissed by summary judgment. Upon appeal, summary judgment was affirmed.

### *RICO Predicate Case # 2: OL*

414.    In 2019, OL, a 31-year-old resident of Connecticut, met Straub, who encouraged her to come to Florida to interview for a well-paying position at Palm Beach Polo. (Case No. 9:21-cv-80842-RAR).

415.    When OL came to Florida in January 2020 to interview for the position, Straub explained to her that "sexual relations would constitute part of any arrangement for [OL] to work for Palm Beach Polo." He later attempted to have sex with her in the apartment he had offered for her use during her stay. She refused.

416.    He told her "[t]his is what I do. I like beautiful women. I'm not like Jeffrey Epstein, who has thirteen (13) year-olds. This is what I enjoy."

417.    She refused the offer and asked to be reimbursed for her travel expenses. Straub sent her a check for $1,000 purportedly as partial reimbursement of her travel expenses, but the

back of the check stated that "negotiation of this check shall act as a full release of all claims and liabilities."

418.    OL chose not to sign it. Instead, in May 2021, she brought suit in federal court (S.D. Fla.) alleging federal and state sexual discrimination and retaliation claims against Palm Beach Polo. (Case No. 9:21-cv-80842-RAR). Palm Beach Polo was represented by Zink.

419.    In addition to violating federal and state sexual discrimination and retaliation laws, Straub and Palm Beach Polo violated Fla Stat. 838.15 (commercial bribe receiving) by soliciting a benefit (sex) in violation of the duties of an employer and officer of the company (Palm Beach Polo), which is a third-degree felony in Florida, punishable by imprisonment for more than one year. As such, it constitutes a prohibited act under 28 U.S.C. § 1961(1) and a predicate for federal RICO purposes. It also constitutes a violation of Florida's RICO statute, Fla. Stat. § 895.02, as a prohibited act under Fla. Stat. §796.07 (soliciting prostitution) and, hence, a predicate for state RICO purposes.

### RICO Predicate Case # 3: KW

420.    The following evidence will be presented at trial.

421.    In November 2022, KW was a 38-year-old bartender at the Stallion Restaurant. She first met Straub, a customer, when he attempted to reach his hand towards her leg and under her skirt and she said, "don't you dare!"

422.    Later Straub told her he was in the process of purchasing the Miss America Pageant and that she would be "perfect to compete." Straub offered her his phone number and she threw it in the trash.

423.    On or about January 31, 2023, KW was having dinner at the restaurant when she was approached by Straub, who told her (falsely) he had "just become the owner of Miss America."

He told her he was starting a "women's empowerment movement" and that she could be the leader, voice, and face of the movement. He then suggested she could work with the Miss America organization as a Vice-President.

424.   Straub, under the ruse that KW could meet Ms. Fleming at lunch to discuss employment with Miss America, instead had his driver take her to his yacht where he began to offer opportunities to her "for you and your family's future…Just see what GOD Laid out for you." Ms. Fleming was not invited to the lunch.

425.   Straub commenced unrelenting efforts to bed KW, harassing her with texts and voicemails and stalking her at her house to induce her to enter into a personal relationship with him, at one point offering her $250,000 to quit her job and work for Miss America. He also texted her "Come over if you feel up to me rubbing your feet with my tongue."

426.   She refused his requests and did not return his voicemails or texts, some of which indicated he was aware of when she was at work and when a car was in her driveway at her home.

427.   On February 15, 2023, Straub sent her, by email, an "Independent Contractor Agreement" that featured her name as the "Contractor" and Bentley Trader – another Straub solely owned entity created by Galle – as the "Company" that sets forth a contract for Straub's "personal assistance and emotion [sic] support companion services for the Company's Principal" in return for $5,000 per month "provided that the Scope of Services has been adequately performed …as determined by the Principal of the Company in his sole and absolute discretion." Pay would increase to $5,000 per week if she ceased working her other jobs. Strobe specifically told her that "companion services" meant sexual intercourse. She said no, calling it an agreement to be a prostitute.

428.    Straub refused to take no for an answer and continued to harass and barrage her with text messages. He would speak to her at the restaurant while she worked because she would not take his calls or respond to his texts.

429.    To avoid Straub's advances, she repeatedly used her dog (actually, a friend's dog she was keeping) as an excuse to avoid being in his presence. He complained to her that the dog interfered with "their time together." She overheard Straub tell his assistant, Michael Presicowski, that they needed to "get rid of the dog."

430.    Next, Straub convinced KW to meet him at the Hard Rock Hotel and Casino over lunch to discuss her future employment with Miss America and, while the "meeting" was taking place, had one of his attorneys or agents go to her house and release the dog from her backyard. The dog was then involved in an incident with a neighbor and KW was forced to rush home.

431.    Next, one of Straub's attorneys (Anthony Barbuto) filed an affidavit on behalf of "an anonymous client" alleging that the dog was vicious, subjecting the dog to possible euthanasia. The dog was held by Animal Control for 10 days but eventually released to KW.

432.    Straub subsequently disclosed information that indicated he was behind the incident because he knew the name of the actual dog owner – a male friend of KW – and she had not disclosed that name to Straub, only to Animal Control. And it was no coincidence that it was Straub's lawyer who filed the anonymous affidavit.

433.    Straub continued the harassment. He stalked her. Then he threatened her employment at the restaurant when he told her he was meeting her boss, JG, one of the principal owners, and that it might "effect" her.

434.    Palm Beach Polo owned (or controlled) the lease to the Stallion Restaurant. Straub threatened JG to shutter the restaurant unless JG fired KW.

435.    JG allowed KW to listen to a call with Straub on speaker phone in which JG defended her. JG asked Straub why he had to fire her, as she had lost her husband and the father of her child, and this would put her "out on the street."

436.    Straub replied, "because she is spoiled" and that KW "needs correcting like you snap the back of a dog's leash when your walking down the street so they don't run away" and that she "needs to be disciplined." Straub said he would reconsider his decision to have her fired if she would sign the agreement his lawyers had drafted. Straub also told JG explicitly that the contract for KW meant oral sex and sexual intercourse.

437.    To apply greater pressure on JG, Straub had one of his lawyers draft a false "Notice of Default" dated April 5, 2023, which listed fictitious events to support allegations of default, and a false "Termination of Lease Agreement." Upon information and belief, the attorney was Galle. Straub provided these documents to JG informally to back up his threat that he and Palm Beach Polo would shut down the restaurant if KW were not fired.

438.    Ultimately, the owners fired KW.

439.    Incredibly, Straub texted her immediately and offered: "there is another job out there if you want to interview for it. Call now it will not last long!" This meant signing the Independent Contractor Agreement for sex.

440.    The same day she texted him, begging him to leave her alone:

No, I don't want to compromise with [JG], considering you have demanded or harassed him to fire me! Please, I'm asking you in a polite way to stay away from my house, my job and my family. I ask that you do not park and drive around my house me and my daughter do not feel safe. Please don't call me and don't get involved in my personal life. I've been fine for years. I don't need your help. I work hard to support my daughter and due to your personal interference in my employment, I can no longer trust your intentions. Please leave me alone."

441.    Straub did not stop.

442.     Notably, Ms. Fleming became aware of the KW contract for sex only after a copy of it was passed around during Pageant Week in 2024 (only Straub could be responsible for its release, as it was drafted at his request and he was in attendance at the Pageant), generating great concern and attention between Pageant officials and stakeholders as to the integrity and purpose of the Miss America program, and great embarrassment, reputational harm, and humiliation to KW. When Ms. Fleming discovered the contract, she texted Straub at 6:02 PM on January 20, 2024, stating:

> There is a document that was passed around during pageant week between Glenn Straub and [KW] where he agrees to pay her 5g per week and in it says if she wants he can arrange for her to be director of Puerto Rico or Viginia [sic] Islands using the 5g he will pay her. Do you know who is doing this?

443.     Straub denied any knowledge of "any guy named [KW, misspelled]" on the morning of January 22, 2024, at 9:56 AM:

> I don't know any guy named kern will or anything about some letter being passed around the pageant about Puerto Rico. Give me whatever it was and I will look into

444.     The above indicates that the subject Enterprise (Straub, Galle, and Palm Beach Polo) was engaged in racketeering activity in 2023 as defined by 18 U.S.C. §§ 1961 and 1951(b)(2) and Fla Stat. §§ 895.02 and 836.05 in extorting KW using threats of severe economic loss – the loss of lawful employment and her livelihood – to gain Straub's objective, the unlawful and detestable surrender of her personal freedom to become his sex slave. The subject enterprise also extorted JG, her employer, by threatening to shutter the restaurant if they did not terminate her. The false documents drafted by Galle – the fake Notice of Default and Termination of Lease – were a key tool used by the Enterprise. As such, it constitutes a predicate act for both the federal and state RICO claims.

445.     On August 2, 2024, KW filed suit against Straub, Palm Beach Polo, and Bentley Trader in Palm Beach County Circuit Court for Tortious Interference with an Advantageous Business Relationship and Intentional Infliction of Emotional Distress against all defendants. (Case 50-2024-CA-007358-XXXA-MB). The case is pending.

### *RICO Predicate Case # 4: LF*

446.     In May 2023, Ms. LF, a former "Miss Tampa," was attending the Miss Florida USA Pageant in support of friends when she met Straub.

447.     Straub identified himself as Ms. Fleming's business partner in the Miss America organization. He told LF that he gave Ms. Fleming the money to buy Miss America. He discussed with LF the possibility of her competing in the Miss Florida America Competition in June 2023.

448.     In a series of phone calls Straub offered to get her "in the top three" in the upcoming competition and a potential job. He asked her to come to dinner on his yacht. She turned him down. He persisted. He then offered her money to help purchase a gown for the competition and she told him that she would not take a loan. He offered to donate the money and told her the goal was to have her win Miss Florida.

449.     Shortly thereafter, she received a check in the mail for $5,000 from Palm Beach Polo.

450.     Separately, one of her friends – a "social influencer" – posted information online about the gift from Straub of her own accord. According to records produced by Straub's counsel, on June 11 and 14, 2023, Galle sent a series of emails over the internet to LF with attached letters on what appears to be MAO letterhead wherein Galle falsely states that he is the Corporate Counsel for MAO and asks her for information about who ("name, telephone number and email address") … "published inaccurate information online." LF did not respond.

451.    In the last emailed letter, dated June 14, 2023, Galle threatens that, as "Corporate Counsel" for MAO, she will not be able to participate at the upcoming competition on June 24, 2023, if she does not provide the requested information to him by the next day.

452.    The attached letters, sent by email from Galle using his "Polo" email address (*i.e.*, the Palm Beach Polo email domain) over the internet, are fraudulent. First, they feature "Miss America Organization" letterhead when the organization was dissolved six months earlier. Second, Galle signed the documents as "Corporate Counsel" or "Corporate Lawyer" for MAO. Galle never was counsel for MAO even when MAO was active. Third, it purports to offer, on behalf of Miss America, a $5,000 hardship loan to LF. The Miss America entities do not make loans.

453.    Finally, the last letter from Galle is extortionate, and threatening LF with the loss of her freedom to compete and the loss of the substantial economic benefits that would likely accrue to her as a competitor and, perhaps, as the winner of the upcoming competition.

454.    Ultimately, LF did participate, but did not win.

455.    Straub then charged his $5,000 gift to LF to the Miss America entities.

456.    In July 2023, Ms. Fleming learned of Defendants' fraudulent use of the Miss America letterhead and name for Straub's personal advantage. She sent an email to Fialco to remove the $5,000 payment from the statement of amounts advanced by Palm Beach Polo for Miss America because it was not authorized by Miss America and would constitute a felony with which Fleming was not going to allow Miss America to be connected. She advised Fialco that she had spoken to Straub and that he understands he is not the owner of Miss America and she will not be assuming any responsibility for his behavior in gifting to any young women.

457.    The above indicates that the subject Enterprise (Straub, Galle, and Palm Beach Polo) was again engaged in racketeering activity in 2023 as defined by 18 U.S.C. §§ 1961 and

1343 (wire fraud) and by Fla Stat. §§ 895.02 and 817.034 (Florida Communications Fraud Act) in using the internet to convey fraudulent documents. The false documents – the letters drafted by Galle – were a key tool used by the Enterprise.

458.     Additional predicate acts may be introduced at trial.

### Evidence from Other Prior Cases May Be Admissible Under Rules of Evidence

459.     In addition to the predicate acts described above, the following evidence is admissible under Fed. R. Evid. 404(b) and Fla. Stat. § 90.404 for proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident on the part of Straub and Galle with respect to the fraud claims.

460.     In 2010, the U.S. District Court for the Southern District of Florida found that Straub, through his attorney, Larry Zink (Galle was also representing Straub), engaged in a fraudulent transfer using Zink's trust account to evade creditors. *See Broward Marine, Inc. v. S/V Zeus,* No. 05-23105, 2010 WL 427496, *7 (S.D. Fla. Feb. 1, 2010) ("[h]ere, Straub clearly utilizes his entities interchangeably. Straub transfers money between his entities at will. By doing so, he attempted to defraud creditors and prevent their collection of any monies due." Further, the court found that Straub was the alter ego of his solely owned entity, Burrell Industries, Inc.). This case is particularly relevant to prove motive, opportunity, intent, identity, and absence of mistake on the part of Straub in his fraudulent actions here.

461.     In 2015, Glenn Straub was found liable for fraud under Florida Statute Sec. 726.106(2). *See National Maritime Services, Inc. v. Straub and Burrell Shipping Company, LLC,* 979 F. Supp. 2d 1322, 1329 (S.D. Fla. 2013) and *National Maritime Services, Inc. v. Straub,* 776 F.3d 783 (11th Cir. 2015) (affirming judgment against Straub individually). The district court case involved Straub, acting in concert with two solely owned entities he created, purchasing a maritime

vessel without sufficient funds by exchanging promissory notes between his two entities where neither entity was solvent. One of his entities – the debtor entity – then sold the vessel and transferred the proceeds to Straub individually, without payment to National Maritime. The debtor entity was formed with the assistance of Galle, who served as its Corporate Secretary, and who testified at trial. In finding that the debtor entity made a fraudulent conveyance (committed fraud), Judge Cecilia Altonaga stated:

> Straub's combative and unnecessarily repetitive and ever-shifting testimony, combined with his refusal to answer any questions asked of him by National Maritime's attorney directly, lend further support to the undersigned's rejection of his excuses. Straub directed where the funds were to go, and he chose to prefer himself over National Maritime. This was done under circumstances where he knew National Maritime would be prejudiced… *Id.* at 1329.

The 11th Circuit found the transfer to Straub, as an insider, to be a fraudulent transfer under Fla. Stat. § 726.106(2). 776 F.3d at 788. Zink and Galle were again listed as the attorneys for Straub. This case is particularly relevant to prove motive, opportunity, intent, identity, and absence of mistake on the part of Straub and Galle in their fraudulent actions here, and in using a solely owned entity as an alter ego.

462.     Additional prior frauds may be introduced at trial.

### *Abusive Litigation*

463.     Straub filed a lawsuit in Palm Beach Circuit Court on April 25, 2024 (Case No. 2024-CA-3851) asserting ownership of the Miss America entities based on the fraudulent documents created by Galle that were first produced right after Ms. Fleming rejected his request to be his proxy plaintiff and right before Straub filed the complaint.

464.     In the lawsuit, Straub's counsel objected to almost every production request and produced only documents with metadata stripped, an intentional act because, expert testimony at trial will show, both .pdf and Word documents are created with metadata and it must be

intentionally removed. Specifically, only one document of approximately 600 that Straub's attorneys produced contained metadata, and this was obtained from the assistant controller at Palm Beach Polo, not in the initial productions from the attorneys. The stripping of metadata is a badge of fraud and evidence of an improper purpose in bringing the lawsuit. It is especially telling here where the one document with metadata intact showed fraud.

465.    When depositions of Straub and others were noticed in the State court action, Straub filed a Petition in Bankruptcy in the Southern District of Florida, staying the State court action for discovery purpose. In so doing, he was engaging in forum shopping and attempting to avoid his deposition and meaningful production of documents. This also demonstrates an improper purpose in bringing the lawsuit.

466.    Substantively, for all the reasons set forth herein, Straub does not own any of the Miss America entities. As such, his State court action was filed with an improper purpose – to extort, intimidate, and subject Ms. Fleming to the expenses of litigation – in order to force her to turn it over to him. The blatant use of fraudulent documents in the litigation – the only "evidence" of ownership – establishes an improper purpose.

467.    At one point in the litigation – during a court-ordered "Conciliation Conference" – Ms. Fleming was also subject to terrorizing verbal abuse and severe emotional distress as Straub screamed at her that he was Hitler and Hamas and she was Israel.

468.    As a result, Ms. Fleming suffered economic and non-economic damages as a result of the abusive litigation.

***Bankruptcy Fraud***

469.     On November 22, 2024, Straub filed a Petition in Bankruptcy in United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division (Case No. 24-22288 EPK). Plaintiffs have filed an Emergency Motion to Dismiss.

470.     The Petition is fraudulent because the putative Debtor – MAC – is not owned by Straub and he is not a member of MAC. For the reasons set forth herein, only Ms. Fleming has the authority to file a Petition in Bankruptcy for MAC. Thus, Straub lacks the authority to file the Petition. The Petition is therefore in Bad-Faith and fraudulent.

471.     The Petition was submitted in relation to a bankruptcy proceeding.

472.     Further, the Petition is part of a fraudulent scheme to wrest control of – or destroy – Miss America. As such, Straub has violated 18 U.S.C. § 157 (Bankruptcy Fraud).

## FIRST CAUSE OF ACTION
### Against Straub, Galle, Fialco and Palm Beach Polo
### (Declaratory Judgment -- 28 U.S.C. §§ 2201 and 2202)

473.     Plaintiffs incorporate, as though fully set forth herein, each and every preceding allegation above.

474.     There is an actual case in controversy between Plaintiffs and Defendants regarding ownership of the three Miss America entities, Miss America Competition, LLC, Miss America IP, Inc., and Miss America's Scholarship Foundation, Inc., and the Miss America assets held by those entities, which includes tangible, personal property assets and intellectual property assets which, in turn, include the Trademarks.

475.     Defendants have no rights of ownership of any of the Miss America entities or to any of the Miss America assets described above.

476.     Defendants have no right to use any of the Trademarks or any Trademarks relating to Miss America.

477.      Accordingly, Plaintiffs request a judgment pursuant to the Declaratory Judgment Act, §§ 2201 and 2202, declaring that Defendants have no rights of ownership to the Miss America entities or their assets and no right to use of any of the Trademarks.

## SECOND CAUSE OF ACTION
### Fraud #1 Against Straub, Galle, Fialco and Palm Beach Polo
### (Common Law Fraud – The False EIN Request to IRS)

478.     Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 216-224.

479.     On or about January 2, 2023, Galle offered to obtain the Employer Identification Number for Miss America Competition, LLC, on behalf of Ms. Fleming.

480.     Galle submitted the request to the IRS on or about January 3, 2023, knowingly inserting the name of "Glenn F. Straub" as the "MBR" and the address of Palm Beach Polo as the business address.

481.     Upon information and belief, Galle, as Straub's agent, did so at the direction of Straub and was paid by Palm Beach Polo.

482.     Galle had previously submitted the Articles of Organization for Miss America Pageant, LLC, with Ms. Fleming as the sole member, and Ms. Fleming had asked him to change its name to Miss America Competition, LLC. Thus, Galle knew that Straub was not – and could not be – the sole member of Miss America Competition, LLC, and that his address was not the business address of the entity.

483.     Unknown to Ms. Fleming, Galle had not yet made the name change.

484.     Galle's insertion of Straub's name and address in the EIN request to the IRS, as agent for Straub, was a knowing violation of IRS Code 26 U.S.C. § 7206 ("Fraud and False Statement") and constitutes common law fraud.

485.     Fialco, the controller for Palm Beach Polo, was aware of the fraud and participated in the conspiracy by maintaining and concealing the false document in her file at Palm Beach Polo for Miss America. Upon information and belief, she received the document through her email at Palm Beach Polo. She revealed her knowledge of its falsity when confronted by Ms. Fleming in March 2024.

486.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
### Fraud #2 Against Straub, Galle, Fialco and Palm Beach Polo
### (Common Law Fraud – Altering IRS Document)

487.     Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 225-238.

488.     On or about January 3, 2023, Galle provided Ms. Fleming a whited-out version of the IRS letter assigning an EIN to Miss America Competition, LLC. The document was based on false information provided by Galle to the IRS.

489.     Galle, who later admitted to whiting out the document, whited-out Straub's name to conceal their first fraudulent act – submitting the EIN request with Straub's name – and presented it to Ms. Fleming without disclosing that he had whited out Straub's name.

490.     Galle did so as agent for Straub and to protect both of them from discovery of the first fraud.

491.    Fialco, the controller for Palm Beach Polo, was aware of the fraud and participated in the conspiracy by maintaining and concealing the false document in her file at Palm Beach Polo for Miss America. Upon information and belief, she received the document through her email at Palm Beach Polo. She revealed her knowledge of its falsity when confronted by Ms. Fleming in March 2024.

492.    In presenting the whited-out document to Ms. Fleming, when Galle and Straub knew she intended to use the false document to open an account with a U.S. bank for the payment of taxes to the IRS, Galle and Straub did so with the intention to defraud the United States, to defraud a bank, and to make a false statement to a financial institution, constituting violations of 18 U.S.C. §§ 1002, 1344, and 1014.

493.    As such, the above conduct on the part of Straub, Galle and Fialco constitutes common-law fraud.

494.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Fraud #3 Against Straub, Galle and Palm Beach Polo**
**(Common Law Fraud – Fraud in Inducement)**

495.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 239-251.

496.    Straub, through his assurances and discussions with Ms. Fleming over almost a year, coupled with his repeated displays of extreme wealth and the capacity to easily fund the acquisition of Miss America, induced Ms. Fleming to reasonably believe that he would fully fund the reserve as promised.

497.    Straub knew his material representations to Ms. Fleming regarding funding were false when made and he intended Ms. Fleming to rely upon the misrepresentations so that she would acquire Miss America and its assets.

498.    Galle, as Straub's agent, also knew the representations were false but encouraged and assisted Ms. Fleming to acquire Miss America and its assets, ostensibly serving as her attorney when, in fact, he was working as agent for Straub. Galle then drafted the onerous Promissory Note that was designed to result in her default or bankruptcy, featuring both accelerated terms and insufficient funds. Later, Galle drafted more false documents to assist Straub in wresting control of Miss America from its rightful hands.

499.    Ms. Fleming relied upon these misrepresentations and would not have acquired Miss America but for the misrepresentations.

500.    As a result, Ms. Fleming and the Miss America entities have suffered damages proximately caused by Straub's and Galle's fraud in inducing her to acquire Miss America with the intent to renege on the promise of financing the $4.1M reserve.

501.    As such, the above conduct on the part of Straub and Galle constitutes common-law fraud in the inducement.

502.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**Fraud #4 Against Straub, Galle, Fialco and Palm Beach Polo**
**(Common Law Fraud – The First False Operating Agreement for MAC)**

503.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 293-306.

-101-

504. Florida State records indicate that Ms. Fleming was the sole member of Miss America Pageant, LLC, as of December 28, 2022, then of Miss America Competition, LLC, effective January 12, 2023, through the present.

505. Ms. Fleming chose not to create an operating agreement for either entity nor was one required.

506. Ms. Fleming did not authorize or sign an operating agreement for either entity.

507. If she had, any such agreement would require her signature.

508. 15 months later, on April 11, 2024, Galle indicated in a telephone call to Straub *that was overheard by Ms. Fleming* that he had drawn up an operating agreement for MAC. The next day Straub handed her a physical copy of the document.

509. The purported operating agreement was also dated more than 15 months earlier, to December 28, 2022.

510. The purported operating agreement bears the name Miss America Competition, LLC, but that entity did not exist until January 12, 2023.

511. The purported operating agreement for MAC does not bear Ms. Fleming's signature and thus is invalid.

512. The purported operating agreement does not even bear Straub's signature, only his stamped name, consistent with Galle applying Straub's signature stamp, as Galle had stated, "Glenn, it has your name on it…"

513. The timing of the release of the document – during Straub's campaign of threats, intimidation, and extortion against Ms. Fleming – is consistent with a fraudulent purpose.

514. Upon information and belief, it was drafted by Galle and emailed to Fialco at Palm Beach Polo where she printed it out and handed it to Straub before the meeting.

515.    Under these circumstances, Straub and Galle both knew the purported operating agreement for MAC drafted by Galle was a forgery.

516.    Straub and Galle acted with the specific intent to defraud the Palm Beach County Circuit Court, Ms. Fleming and the Miss America entities.

517.    As such, the above conduct on the part of Straub and Galle constitutes a criminal violation of Florida Stat. § 831.01 (Uttering forged instruments) and common-law fraud by Straub and Galle.

518.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### SIXTH CAUSE OF ACTION
### Fraud #5, 6 Against Straub, Galle and Palm Beach Polo
### (Common Law Fraud – Second and Third Versions of the
### False Operating Agreement)

519.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 307-319.

520.    As set forth above, Florida State records indicate that Ms. Fleming was the sole member of Miss America Pageant, LLC, as of December 28, 2022, then of Miss America Competition, LLC, effective January 12, 2023, through the present.

521.    Ms. Fleming chose not to create an operating agreement for either entity nor was one required.

522.    Ms. Fleming did not authorize or sign an operating agreement for either entity.

523.    If she had, any such agreement would require her signature.

524.     On April 16, 2024, Galle submitted by email to previous counsel for Ms. Fleming a second version of the operating agreement for MAC, as if altering the first forged document would improve its pedigree.

525.     Galle did so at the behest of Straub, who compensated him for his services through Palm Beach Polo.

526.     The metadata on the .pdf document that contained the second version of the operating agreement had been removed.

527.      The second version was also dated December 28, 2022.

528.     Further, the second version bears the name Miss America Competition**s**, LLC. The name was changed from the singular "Miss America Competition, LLC" in the first version to the plural "Miss America Competitions, LLC" in the second. But *it is still the wrong name*.

529.     The timing of the release of the document – during Straub's campaign of threats, intimidation, and extortion against Ms. Fleming – is consistent with a fraudulent purpose.

530.     Under these circumstances, Straub and Galle knew the second version of the purported operating agreement for MAC was also a forgery.

531.     Straub and Galle acted with the specific intent to defraud the Court, Ms. Fleming and the Miss America entities.

532.      As such, the above conduct on the part of Straub and Galle constitutes a criminal violation of Florida Stat. § 831.01 (Uttering forged instruments) and common-law fraud by Straub and Galle.

533.     Later testimony from Palm Beach Polo assistant controller, Ms. Rina Osle, indicated she had received a Word version of the subject operating agreement from Galle on April 11, 2024, for her to print out for Straub in preparation for his April 12 meeting with Ms. Fleming.

534.    It was subsequently produced in discovery without the email to which it was attached.

535.    The Word version of the operating agreement is similar to the first version with the same defects as set forth above (*i.e.,* it bears the date of December 28, 2022, when MAC was not in existence at the time, it has the wrong purpose, etc.) but it bears  a different "signature" from the first version – a typed "Glenn F. Straub" in a blue font, not his stamped name as appears in the first version handed to Ms. Fleming.

536.    Most significantly, the metadata shows the Word version was created on August 25, 2023, at 6:36 p.m. by Galle, not December 28, 2022, as Galle testified. Thus, it is also a fraudulent document.

537.    When requested during discovery in the Straub lawsuit, Galle did not produce the native files for the operating documents. Plaintiffs here obtained a copy only through Ms. Osle.

538.    As such, the above conduct on the part of Straub and Galle constitutes a criminal violation of Florida Stat. § 831.01 (Uttering forged instruments) by Galle, and common-law fraud by Straub and Galle.

539.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**
**Fraud #7 Against Straub, Galle and Palm Beach Polo**
**(Common Law Fraud – The False Operating Agreement for MAIP)**

540.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 320-327.

541.     As set forth above, Florida State records indicate that Ms. Fleming was the sole member of Miss America IP, LLC, as of December 28, 2022, and later became the sole shareholder of Miss America IP, Inc., effective April 19, 2024.

542.     Ms. Fleming chose not to create an operating agreement for MAIP nor was one required.

543.     Ms. Fleming did not authorize or sign an operating agreement for MAIP.

544.     If she had, any such agreement would require her signature.

545.     On April 16, 2024, Galle submitted, along with the second version of the operating agreement for MAC, a purported operating agreement for MAIP.

546.     The purported operating agreement for MAIP was produced along with the second version of the purported operating agreement for MAC, where the metadata for the Word version indicates the MAC document was actually created on August 25, 2024. Since the MAIP document is identical – except in name and purpose – to the MAC document, it suggests that Galle fabricated the MAIP document shortly after the MAC document.

547.     Further, the timing of the release of the MAIP document – during Straub's campaign of threats, intimidation, and extortion against Ms. Fleming – is consistent with a fraudulent purpose.

548.     Under these circumstances, Straub and Galle knew the purported operating agreement for MAIP was also a forgery.

549.     Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo.

550.     Straub and Galle acted with the specific intent to defraud the Court, Ms. Fleming and the Miss America entities.

551.     As such, the above conduct on the part of Straub and Galle constitutes a criminal violation of Florida Stat. § 831.01 (Uttering forged instruments) and common-law fraud by Straub and Galle.

552.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**Fraud #8 Against Straub, Galle and Palm Beach Polo**
**(Common Law Fraud – the False Meeting Minutes for Miss America Pageant, LLC and MAIP)**

553.     Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 349-359.

554.     As set forth above, Florida State records indicate that Ms. Fleming was the sole member of Miss America Pageant, LLC, as of December 28, 2022, and MAIP, as of December 28, 2022, and all relevant times thereafter.

555.     Ms. Fleming chose not to conduct any meetings in any of her solely owned entities on December 30, 2022, or at any time thereafter. Specifically, she did not conduct a meeting for either Miss America Pageant, LLC or MAIP on December 30, 2022.

556.     As the sole member of both LLCs, only Ms. Fleming has the authority to conduct meetings of the entities.

557.     Ms. Fleming did not authorize a meeting of either entity on December 30, 2022.

558.     As set forth above, Straub is not a member of either entity. Straub was not authorized to conduct a meeting for either entity. Any purported meetings of these entities conducted by Straub are without legal effect.

559.    Further, the Minutes of a meeting do not establish ownership of an LLC, even if not fraudulent.

560.    For the first time, on July 17, 2024, on the very morning of a hearing in Straub's lawsuit, Counsel for Straub (Mr. Zink) sent two documents by email to Ms. Fleming's counsel. Mr. Zink indicated the documents were just received from Galle that morning and that Mr. Zink intended to use them at the hearing that day, notwithstanding the lack of notice to Ms. Fleming and her counsel.

561.    The first document is a .pdf without any metadata, purportedly "Minutes of Initial Meeting of the Member and Director of Miss America Pageant, LLC," that purportedly took place on December 30, 2022, at 3:00 pm between Straub and non-member Galle, and similar Minutes for MAIP, LLC that purportedly took place immediately thereafter from 3:35 pm until 3:55 pm. (The "Minutes"). Removing such metadata during litigation constitutes spoliation of evidence.

562.    The Minutes are fraudulent.

563.    The Minutes are not signed by Ms. Fleming. Indeed, the Minutes indicate Ms. Fleming did not attend the meetings. Further, Ms. Fleming attests she did not receive notice of such meetings.

564.    The .pdf document containing the Minutes was stripped of metadata, just as the two purported operating agreements were stripped of metadata, yet metadata from an electronic version of one operating agreement for MAC revealed it was fraudulent; *i.e.,* it was created *nine months after the indicated date.*

565.    The timing of the disclosure of the Minutes, after Straub had been engaged for almost five months in a concerted effort to wrest control of Miss America from Ms. Fleming, is consistent with a fraudulent purpose, especially after a 15-month period where there was no

challenge to her ownership and no allegations or evidence about meetings of the entities or Minutes of those meetings.

566.    The Minutes also do not reference the purported operating agreements that would have been approved that day if the latter documents were authentic. The lack of a reference to the operating agreements is inconsistent with the authenticity of either the Minutes or the operating agreements.

567.    Under these circumstances, Straub and Galle knew the purported Minutes were forgeries.

568.    Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo.

569.    In so doing, Straub and Galle acted with the specific intent to defraud the Court, Ms. Fleming, and the Miss America entities.

570.     As such, the above conduct on the part of Straub and Galle constitutes a criminal violation of Florida Stat. § 831.01 (Uttering forged instruments) and common-law fraud by Straub and Galle.

571.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
### Fraud #9 Against Straub, Galle and Palm Beach Polo
### (Common Law Fraud – the False "Pledge Agreement")

572.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 360-368.

573.    The second document in the no-notice production the morning of July 17, 2024, is a Word document that purports to be a "Pledge Agreement" dated December 30, 2022, between Palm Beach Polo and Ms. Fleming individually.

574.    The agreement is not signed by anyone. It therefore has no legal effect.

575.    The document is also fraudulent – it is not what Straub's counsel purports it to be.

576.    First, the document had never been seen by Ms. Fleming prior to July 17, 2024, and she did not sign it.

577.    Second, it is an electronic Word document with no metadata. Upon information and belief, all Word documents have metadata unless intentionally removed.

578.    Third, if Galle's laptop was stolen in Ecuador in January 2023 as he testified in Straub's lawsuit and he could not produce the original "operating agreements" with metadata as described in the claims above, he cannot now claim to have an electronic Word document – "the Pledge Agreement" – that dates back to December 2022. This is evidence of (1) recent fabrication; and (2) the stripping of metadata during litigation; *e.g., spoliation of evidence* by Galle and Straub.

579.    Fourth, the Pledge Agreement bears errors that are consistent with Galle's other cut-and-paste jobs from prior work for Straub and language that is inconsistent with its use as an agreement for a loan here. It also includes broad provisions for default, which is consistent with a scheme to wrest control of Miss America from Ms. Fleming.

580.    In sum, the Pledge Agreement is not authentic: it was not created in December 2022, it was stripped of metadata, and it is fraudulent. Further, it bears no signatures. It thus has no legal effect on the issue of ownership but is, instead, further evidence of fraud on the part of Galle and Straub.

581.    Under these circumstances, Straub and Galle knew the purported Pledge Agreement was a forgery.

582.    Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo.

583.    In so doing, Straub and Galle acted with the specific intent to defraud the Court, Ms. Fleming and the Miss America entities.

584.    As such, the above conduct on the part of Straub and Galle constitutes a criminal violation of Florida Stat. § 831.01 (Uttering forged instruments), and common-law fraud by Straub and Galle.

585.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TENTH CAUSE OF ACTION**
**Fraud #10 Against Straub, Fialco and Palm Beach Polo**
**(Common Law Fraud – the Fraudulent Payments Spreadsheet)**

586.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 369-374.

587.    At all relevant times herein, Fialco was the controller for Palm Beach Polo. She handled the accounting and finances for Straub and Palm Beach Polo, his solely owned entity.

588.    In response to a subpoena for testimony, she brought with her a spreadsheet purporting to include all payments made on behalf of MAC by Palm Beach Polo between December 1, 2022, and December 31, 2023.

589.     The spreadsheet has at least two material fraudulent entries. The spreadsheet indicates that two separate American Express account bills of legacy MAO were paid by Palm Beach Polo on December 28, 2022.

590.     This date is before the acquisition of the MAO assets. The payments were actually made on January 26, 2023, as reflected in the American Express account statements, and were paid at the direction of Ms. Fleming.

591.     Upon information and belief, these two false entries were intended to support Straub's and Fialco's contention that Palm Beach Polo had made payments before the acquisition and thereby played a role in the acquisition.

592.     There is no documentation to support payments on December 28, 2022, to American Express.

593.     Given the absence of supporting documentation; the clear, material misrepresentations on the spreadsheet; the import of such misrepresentations to the issue of ownership; and the specific dates of the misrepresentations – purported payments on the precise day that MAIP came into existence yet two days before the acquisition of Miss America. These circumstances indicate the specific intent to defraud the Court, Ms. Fleming, and the Miss America entities.

594.     As such, the above conduct on the part of Straub, Fialco and Palm Beach Polo constitute common-law fraud by Straub, Fialco and Palm Beach Polo.

595.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
### Fraud #11 Against Straub, Galle, Fialco and Palm Beach Polo
### (Civil Conspiracy)

596.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 216-268, 293-327, and 349-374.

597.    Straub, Galle and Fialco conspired together to commit unlawful acts against Ms. Fleming and the Ms. America entities. Each agreed to participate in the conspiracy and each agreed to the overall objective of the conspiracy – to steal Miss America from Ms. Fleming.

598.    Straub and Galle were most active, engaging in the majority of the unlawful acts, including numerous unlawful acts of fraud and extortion as described herein.

599.     Fialco was aware of the scheme and assisted as the Palm Beach controller with respect to payments made in furtherance of the scheme and by creating and/or maintaining false records of payments and false tax records, when she was aware that Straub and Galle were intending to use such documents and records to steal Miss America from Ms. Fleming.

600.    As a direct and proximate result of these acts committed in furtherance of the conspiracy, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

601.    As such, the above conduct on the part of Straub, Galle and Fialco constitutes civil conspiracy.

602.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWELFTH CAUSE OF ACTION
### Against Straub, Galle and Palm Beach Polo
### (Filing False Documents (Fla. Stat. § 817.535))

603.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 216-268, 293-327, and 349-374.

604.    Under Fla. Stat. § 817.535(2), "[a] person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree… A person who violates [this] a second or subsequent time commits a felony of the second degree…"

605.    Under Fla. Stat. § 817.535(8)(a), "[a]ny person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action…without regard to whether criminal charges are pursued…"

606.    Straub, with the assistance of Galle and Palm Beach Polo, attempted to file and did file unauthorized corporate documents in the official records of the State of Florida attempting to change the ownership and control of the Miss America entities without justification or authority.

607.    Straub also attempted to file and did file a trademark registration amendment to change control of the Miss America trademarks without justification or authority.

608.    Straub's unauthorized filings concerning the Miss America entities and IP Holding constitute a violation of Fla. Stat. § 817.535 and have caused Plaintiffs to suffer actual damages.

609.    Upon finding a materially false, fictitious, or fraudulent statement or representation in the instrument does not establish a legitimate property interest in favor of Straub, "[t]he court shall determine whether the entire instrument or certain parts… are null and void ab initio, and

may order the instrument sealed… and removed from any electronic database[, and] enjoin the defendant who filed the instrument or who directed the filer… from filing or directing a person to file an instrument in the official records without prior… approval… by [the] judge…." Fla. Stat. § 817.535(8)(b)(1).

610.    "Upon a finding of intent to defraud or harass, the court or jury shall award actual damages and punitive damages, subject to the criteria in § 768.72, to the person adversely affected by the instrument." Fla. Stat. § 817.535(8)(b)(2).

611.    "The court may grant such other relief or remedy [it] determines is just and proper within its sound judicial discretion." Fla. Stat. § 817.535(8)(b)(3).

612.    "The prevailing party in such a suit is entitled to recover costs and reasonable attorney fees." Fla. Stat. § 817.535(8)(c).

613.    Straub's and Galle's filings, through Palm Beach Polo, were knowingly and materially false, fictitious, or fraudulent statements, filed with the intent to defraud and harass Plaintiffs.

614.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
### Against Galle
### (Breach of Fiduciary Duty)

615.    Plaintiffs incorporate, as though fully set forth herein, each and every preceding allegation above.

616.    Upon information and belief, Galle is an attorney licensed in Florida.

617.     By his actions described herein, Ms. Fleming reasonably understood that an attorney-client relationship existed between her and Galle prior to and after her acquisition of Miss America. Under Florida law, an attorney-client relationship existed when she requested his legal assistance and he provided legal assistance between no later than December 2022 and March 2023, when Galle turned over his files to Anthony Barbuto. For example, during the period preceding her acquisition of Miss America, he exchanged 162 emails with her (more than 500 total), constantly responding to her requests for, and providing, legal advice by drafting and revising and submitting legal documents and answering her questions. In early 2023, he even wrote letters to creditors identifying himself as counsel for Miss America. He even did so with another target of Straub's, LF, in June 2023, when he told LF he was Corporate Counsel for MAO and engaged in an effort to extort information from her.

618.     Attorneys have a fiduciary duty to their clients that includes a duty of loyalty.

619.     While Galle was representing Ms. Fleming and the Miss America entities, he was also secretly working with Straub in a civil conspiracy to defraud her of the very assets only she could acquire so that he and Straub could spring their trap after acquisition through machinations designed to lead to her default or the bankruptcy of Miss America.

620.     In 2023 and 2024, Galle, at Straub's direction, crafted multiple false and fraudulent documents with seemingly reckless abandon to further their scheme.

621.     Galle, of course, never disclosed his conflict of interest in working for Straub against her best interests.

622.     This staggering violation of Galle's duty of loyalty constitutes a breach of fiduciary duty on a scale rarely seen. It also constitutes violations of the Florida Rules of Professional Conduct, Ch. 4, Rule 4-1.2 (assisting a client (Straub) engage in criminal or fraudulent conduct),

4-1.4 (withholding information from client (Ms. Fleming)), Rule 4-1.7 (conflict of interest/violation of duty of loyalty), 4-1.8 (entering into a business transaction with client and then acquiring an interest adverse to the client), and 4-1.10 (conflict of interest in now assisting Straub).

623.    As a direct and proximate result of this breach, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

624.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION
### Against Straub, Galle and Palm Beach Polo
### (Federal Trademark Infringement – 15 U.S.C. § 1114(1)(a))

625.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 375-392.

626.    As set forth above, Ms. Fleming owns 100% of the member interests of MAIP, the sole member of IP Holding. As such, Ms. Fleming, through MAIP, owns the Miss America Trademarks held by IP Holding and has the only valid claim to use the mark.

627.    The Miss America Trademarks include the mark, "Miss America," a mark owned by IP Holding since 1956. Since that time, it has become an iconic, nationally famous trademark used in commerce.

628.    On May 2, 2024, Straub sent an invitation via email for a "Miss America Live Zoom" conference to be held on May 3, 2024, to Miss America's contractual partners and licensees across the country.

629.    Upon information and belief, the document was drafted by Galle at the expense of Palm Beach Polo.

630.    The emailed invitation features the logo "Miss America" in large font as the header and falsely references therein Straub's "ownership" of the Miss America entities.

631.    On May 3, 2024, notwithstanding demands from counsel for the Miss America entities and IP counsel for MAIP to Straub's attorneys (Zink and Galle), Straub conducted the Zoom call from his office at Palm Beah Polo with participants from across the country as if he were the owner of the Miss America entities with the rights to the trademark. There were approximately 1,000 participants on the call at one point.

632.    On May 9, 2024, Straub sent a second email invitation using the "Miss America" logo to Miss America's licensees and contractual partners across the country concerning a second unsanctioned "Miss America" Zoom meeting he intended to host.

633.    Again, counsel for the Miss America entities demanded of Straub's counsel (Zink) that Straub cease and desist from such improper actions.

634.    On May 10, 2024, Straub conducted a second Zoom call with participants from across the country as if he were the owner of the Miss America entities with the rights to the trademark. There were approximately 40 participants on the call.

635.    In so doing, Straub demonstrated specific intent, knowledge, and willfulness in using a counterfeit of the Miss America logo that he knew he was not authorized to use and which was intended to cause confusion or mistake, or to deceive.

636.    In so doing, Straub caused loss of profits, damages, and costs to Plaintiffs, as well as attorney fees.

637. The above conduct on the part of Straub, Galle and Palm Beach Polo constitutes trademark infringement under 15 U.S.C. § 1114(1)(a).

638. Accordingly, by virtue of the foregoing, Plaintiffs are entitled to injunctive relief, recovery of profits, treble damages, costs, and attorney fees available under 15 U.S.C. § 1117.

## 15TH CAUSE OF ACTION
### Against Straub, Galle and Palm Beach Polo
### (Florida Common-Law Trademark Infringement)

639. Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 375-392.

640. The analysis of liability for Florida common law trademark infringement is the same as under the *Lanham Act,* 15 U.S.C. §§ 11114(a). *Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1289 (S.D. Fla. 2016), *citing PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004).

641. As set forth above, Ms. Fleming, through MAIP, owns the Miss America Trademarks held by IP Holding and, as such, the prior rights to the trademark, "Miss America."

642. As set forth above, Straub wrongly used the trademark in sending invitations by email and conducting two Zoom calls from his Palm Beach Polo office with more than a thousand total participants – key stakeholders – whereupon he then made fraudulent claims to cause further confusion, mistake, and deception.

643. Straub did so willfully and with the specific intent to cause confusion, mistake, and deception.

644. Upon information and belief, the invitation was drafted by Galle at the expense of Palm Beach Polo.

645.    In so doing, Straub caused loss of profits, damages, and costs to Plaintiffs, as well as attorney fees.

646.    The above conduct on the part of Straub, Galle and Palm Beach Polo constitutes trademark infringement under Florida law.

647.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to injunctive relief, recovery of profits, treble damages and costs, and attorney fees available under Florida law.

**SIXTEENTH CAUSE OF ACTION**
**Against Straub, Galle and Palm Beach Polo**
**(Federal Unfair Competition – 15 U.S.C. § 1125(a))**

648.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 375-392.

649.    As set forth above, Ms. Fleming, through MAIP, owns the Miss America Trademarks held by IP Holding. As such, she, through MAIP, has the prior rights to the trademark, "Miss America."

650.    Straub used the Miss America mark in his two email Zoom invitations conducted in his Palm Beach Polo office that he specifically intended to, and were likely to, cause confusion, or mistake, or deceive licensees and contractual partners as to whether Ms. Fleming owned the Miss America assets or Straub did.

651.    The above was done in connection with interstate commerce; namely, it negatively impacted the services provided by the Miss America entities.

652.    In so doing, Straub caused loss of profits, damages, and costs to Plaintiffs, as well as attorney fees.

653.    Upon information and belief, the invitation was drafted by Galle at the expense of Palm Beach Polo.

654. The above conduct on the part of Straub, Galle and Palm Beach Polo constitutes federal unfair competition under 15 U.S.C. § 1125(a).

655. Accordingly, by virtue of the foregoing, Plaintiffs are entitled to injunctive relief, recovery of profits, damages and costs, and attorney fees available under 15 U.S.C. § 1117.

**SEVENTEENTH CAUSE OF ACTION**
**Against Straub, Galle and Palm Beach Polo**
**(Federal Trademark Dilution – 15 U.S.C. § 1125(c))**

656. Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 375-392.

657. As set forth above, Ms. Fleming, through MAIP, owns the Miss America Trademarks held by IP Holding. As such, she, through MAIP, has the prior rights to the trademark, "Miss America."

658. The Miss America trademark has been registered since 1956 and is recognized across the nation as an iconic American brand.

659. Straub adopted the mark after the Miss America brand was famous.

660. Straub's specifically intended to dilute the mark owned by Ms. Fleming through MAIP and IP Holding, causing confusion, mistake and deception.

661. The above was done in connection with interstate commerce; namely, it negatively impacted the services provided by the Miss America entities.

662. In so doing, Straub caused loss of profits, damages, and costs to Plaintiffs, as well as attorney fees.

663. The above conduct on the part of Straub, Galle and Palm Beach Polo constitutes federal trademark dilution under 15 U.S.C. § 1125(c).

664.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to injunctive relief, recovery of profits, treble damages, costs, and attorney fees available under 15 U.S.C. § 1117.

## EIGHTEENTH CAUSE OF ACTION
### Against Straub
### (Federal Cyberpiracy – 15 U.S.C. § 1125(d))

665.     Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 375-392.

666.     As set forth above, Ms. Fleming, through MAIP, owns the Miss America Trademarks held by IP Holding. As such, she, through MAIP, has the prior rights to the trademark, "Miss America."

667.     Straub used a domain name (<press@missamericapress.com>) that he created with an outside vendor that is identical or confusingly similar to the Miss America mark (<xxx@missamerica.org>) and was created with the bad faith intent to profit from its use.

668.     Ms. Fleming never approved, either personally or on behalf of the Miss America entities, the use of this domain.

669.     Straub had no legitimate purpose to the use of such domain other than to confuse or deceive Miss America licensees and contractors.

670.     In so doing, Straub caused loss of profits, damages, and costs to Plaintiffs, as well as attorney fees.

671.     The above conduct on the part of Straub constitutes federal cyberpiracy under 15 U.S.C. § 1125(d).

672.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to injunctive relief, recovery of profits, damages and costs, and attorney fees available under 15 U.S.C. § 1117.

## NINETEENTH CAUSE OF ACTION
### Against Straub
### (Federal Fraudulent Representation to Patent and Trademark Office -- 15 U.S.C. § 1120)

673.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 375-392.

674.    Ms. Fleming owns 100% of the member interests of MAIP, the sole member of IP Holding. As such, Ms. Fleming, through MAIP, owns the Miss America Trademarks held by IP Holding and has the only valid claim to use the mark.

675.    On or about May 7, 2024, Straub made unauthorized efforts to change the registration of the Miss America Trademarks with the Federal Trademark System, without Ms. Fleming's knowledge or consent, by submitting the request through attorney Dermot Horgan, an attorney previously fired by Ms. Fleming and retained by Straub.

676.    Horgan attempted to revoke the power of attorney currently of record and replace the attorney with himself, naming Straub as "Member" and "Owner/Holder."

677.    The representation filed by Horgan on behalf of Straub was fraudulent.

678.    In directing Horgan to submit the fraudulent representation, Straub acted willfully and knowingly in an effort to further his fraudulent scheme.

679.    As such, the above conduct on the part of Straub constitutes a violation of 15 U.S.C. § 1120 and a common-law fraud by Straub.

680.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTIETH CAUSE OF ACTION
### Against Straub, Galle and Palm Beach Polo
### (Violation of Federal RICO, 18 U.S.C. §§ 1961-68)

### *Extortion*

681.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 252-292, and 328-340.

682.    Straub, Galle and Palm Beach Polo are an ongoing "Enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

683.    Straub and Galle have conducted and/or participated, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity consisting of repeated violations of § 1951 ("Interference with commerce, robbery, or extortion") and specifically, extortion, by using threats of physical harm or substantial economic losses against numerous women he has targeted to compel their surrender of their bodies or their property, including not only Ms. Fleming, but JN, KW, and LF, from 2017 to the present, as set forth above.

684.    In the instant case, these acts of extortion are described fully in the two sections herein sub-captioned as "Threats, Intimidation, and Extortion."

685.    These acts of extortion were and are illegal as set forth in § 1951.

686.    These acts were done with the specific intent and knowledge of Straub and Galle to extort the target to either submit to sexual slavery or turn over her property to him.

687.    These acts were done maliciously and willfully.

688.    As a direct and proximate result of these acts, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

689.    The above conduct constitutes a violation of the federal RICO statute, 18 U.S.C. §§ 1961-68.

690.    By reason of its injury and the manner in which it was caused, Plaintiffs are entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

691.    In this case, punitive damages are appropriate because Defendants acted with gross fraud, wantonness, maliciousness, and willful disregard for the rights of others. 18 U.S.C.S. § 1962.

**TWENTY-FIRST CAUSE OF ACTION**
**Against Straub, Galle, and Palm Beach Polo**
**(Violation of Federal RICO, 18 U.S.C. §§ 1961-68)**

***Wire Fraud***

692.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 252-292, and 328-340.

693.    Straub, Galle and Palm Beach Polo are an ongoing "Enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

694.    Straub and Galle have conducted and/or participated, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity consisting of repeated violations of § 1343 ("Wire Fraud") by intentionally participating in a scheme to defraud and using interstate wires to further the scheme. This was done in the instant case when Straub used the internet, emails, and Zoom calls across the nation to further his scheme and when Galle and others sent emails with fraudulent documents attached. And Galle used email in 2023 to further the fraud with respect to LF by sending fraudulent documents over email to her falsely identifying himself as counsel for MAO.

695.    All of these acts of wire fraud were and are illegal as set forth in § 1343.

696.   All of these acts of wire fraud were done with the specific intent and knowledge of Straub and Galle to further the fraud to take possession of Ms. Fleming's business.

697.   All of these acts were done maliciously and willfully.

698.   As a direct and proximate result of these acts, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

699.   The above conduct constitutes a violation of the federal RICO statute, 18 U.S.C. §§ 1961-68.

700.   By reason of its injury and the manner in which it was caused, Plaintiffs are entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

701.   In this case, punitive damages are appropriate because Defendants acted with gross fraud, wantonness, maliciousness, and willful disregard for the rights of others. 18 U.S.C.S. § 1962.

### TWENTY-SECOND CAUSE OF ACTION
### Against Straub, Galle, and Palm Beach Polo
### (Violation of Florida RICO, Fla. Stat. §§ 895.01 *et seq.*)

#### *Extortion*

702.   Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 252-292, and 328-340.

703.   Straub, Galle, and Palm Beach Polo are an ongoing "Enterprise" as that term is defined in Fla. Stat. § 895.02(5).

704.   Straub and Galle have conducted and/or participated, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity consisting of repeated violations of Ch. 836.05 ("Extortion") and racketeering activity defined under the federal statute,

18 U.S.C. § 1961(1), as set forth above. As under the federal statute, it includes the activity here, using threats of physical harm or substantial economic losses against numerous women that Straub targeted to compel the surrender of their bodies or their property, including not only Ms. Fleming, but JN, KW, and LF, from 2017 to the present, as set forth above.

705.    In the instant case, these acts of extortion are described fully in the sections herein sub-captioned as "Threats, Intimidation, and Extortion."

706.    All of these acts of extortion were and are illegal as set forth in Ch. 836.05.

707.    All of these acts were done with the specific intent and knowledge of Straub and Galle to extort the target to either submit to sexual slavery or turn over their property to him.

708.    All of these acts were done maliciously and willfully.

709.    As a direct and proximate result of these acts, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

710.    The above conduct constitutes a violation of the Florida RICO statute, Fla. Stat. §§ 895.01 *et seq.*

711.    By reason of its injury and the manner in which it was caused, Plaintiffs are entitled to treble damages, costs and reasonable attorneys' fees pursuant to Fla. Stat. §§ 895.01 *et seq.* and § 772.104.

712.     In this case, punitive damages are appropriate because Defendants acted with gross fraud, wantonness, maliciousness, and willful disregard for the rights of others. *See* Fla. Stat. § 768.72.

### TWENTY-THIRD CAUSE OF ACTION
### Against Straub, Galle, and Palm Beach Polo
### (Violation of Florida RICO, Fla. Stat. §§ 895.01 *et seq.*)

### *Wire Fraud*

713.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 252-292, and 328-340.

714.    Straub, Galle, and Palm Beach Polo are an ongoing "Enterprise" as that term is defined in § 895.02(5).

715.    Straub and Galle have conducted and/or participated, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity consisting of repeated violations of Fla. Stat. § 817.034 ("Florida Communications Fraud Act") by intentionally participating in a scheme to defraud and using the internet or email to further the scheme. This was done in the instant case when Straub used the internet, emails, and Zoom calls to further his scheme and when Galle and others sent emails with fraudulent documents attached. And Galle used email in 2023 to further the fraud with respect to LF by sending fraudulent documents over email to her falsely identifying himself as counsel for MAO.

716.    All of these acts of wire fraud were and are illegal as set forth in § 817.034.

717.    All of these acts of wire fraud were done with the specific intent and knowledge of Straub and Galle to further the fraud to take possession of Ms. Fleming's business.

718.    All of these acts were done maliciously and willfully.

719.    As a direct and proximate result of these acts, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

720.     The above conduct constitutes a violation of the Florida RICO statute, Fla. Stat. §§ 895.01 *et seq.*

721.     By reason of its injury and the manner in which it was caused, Plaintiffs are entitled to treble damages, costs and reasonable attorneys' fees pursuant to Fla. Stat. §§ 895.01 *et seq.* and § 772.104.

722.      In this case, punitive damages are appropriate because Defendants acted with gross fraud, wantonness, maliciousness, and willful disregard for the rights of others. *See* Fla. Stat. § 768.72.

## TWENTY-FOURTH CAUSE OF ACTION
### Defamation and Defamation *Per Se* Against Straub

723.     Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 269-292 and 341-348.

724.     Ms. Fleming repeats and hereby incorporates by reference the preceding paragraphs as though set forth in full.

725.     On or around April 24, 2024, Straub wrote and sent a letter via email and U.S. mail to Ryan Brown, in which he made the following statements:

- "As the sole Member, sole Director, and Manager of the Companies, I am the only person to whom you may report and take direction from on any matters pertaining to Miss America Competitions, LLC and Miss America IP, LLC (collectively, the 'Companies'), and the business of the Companies."

-  "On March 16, 2024, Robin Fleming was suspended for 'cause' as the Manager of the Companies."

- "On April 15, 2024, Robin Fleming was terminated by the Companies for 'cause' from all her positions."

- Ms. Fleming was "acting in concert" with others to "interrupt, interfere with, and cause substantial damage to the Companies' businesses."

726.     Upon information and belief, Galle drafted the letter at Straub's direction.

727.     These statements carry the unmistakable defamatory meaning, both explicit and implicit, that Ms. Fleming engaged in serious professional misconduct that resulted in her termination, and that she was "acting in concert" with others to "interrupt, interfere with, and cause substantial damage to the Companies' businesses."

728.     These statements constitute defamation *per se* because, among other things, these statements tend to subject Ms. Fleming to hatred, distrust, ridicule, contempt, or disgrace, and injure her in her profession and business.

729.     These statements are of and concerning Ms. Fleming, who is identified by name.

730.     These statements are false. Straub is not the "sole Member, sole Director, and Manager of the Companies" and had no authority to and did not terminate Ms. Fleming for "cause." Further, Ms. Fleming has run the Miss America entities with competency, diligence, and integrity, and has never engaged in any misconduct that would warrant a "for cause" dismissal.

731.     Straub knew these statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

732.     These statements are unprivileged.

733.     As a result of these statements, Ms. Fleming has suffered damages, including without limitation, damage to her reputation, damage to her personal brand and goodwill in the community as businesspeople, emotional suffering and distress, loss of potential income and goodwill associated with lost opportunities as a result of the negative publicity associated with these statements, and associated long-term loss of goodwill and marketability.

734.     In taking the actions alleged in this Complaint, Straub acted willfully and wrongfully, with malice, oppression, and fraud, and in conscious disregard of Ms. Fleming's rights, for which conduct Ms. Fleming is entitled to an award of punitive or exemplary damages.

## TWENTY-FIFTH CAUSE OF ACTION
### Defamation and Defamation *Per Se* Against Straub

735.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 269-292 and 341-348.

736.    Ms. Fleming repeats and hereby incorporates by reference the preceding paragraphs as though set forth in full.

737.    On April 29, 2024, Straub sent a letter via email to all of Miss America's licensees and published this letter to the public in general by posting it to the Internet.[5]  In this letter, Straub made, among others, the following statements:

- "In late December 2022 I purchased all the assets of the former Miss America Organization, the then owner and operator of the Miss America Pageant. I purchased the Miss America Pageant as well as the Miss America Outstanding Teen Competition including all of their assets and intellectual property through Miss America Competitions LLC, and Miss America IP LLC of which I am 100% owner/member, the sole Director and a manager."

- "Recently you may have seen correspondence from the former CEO of Miss America, Robin Fleming, who I hired to run the Miss America Pageant and who now claims to own the Pageant."

- "Robin Fleming was terminated from her role as CEO, President and Manager of Miss America Competitions, LLC and Miss America IP, LLC after we received damaging information and conducted an extensive audit of her conduct while working with organization."

- "I had hoped to handle the termination in a private manner to protect the integrity of our organization but she has chosen to publicize this action in an attempt to drag out her relationship with the organization and to promote side businesses' [sic] that she created which were used to enrich her personal persona and to benefit her financially."

- "Internal audits unearthed multiple abnormalities which led to her suspension on March 16, 2024."

---

[5] https://accessglobal.media.clients.ellingtoncms.com/uploads/froala_editor/files/straub%20email.pdf

- "An extensive audit revealed misuse of funds, unauthorized payments to herself which were disguised as payments to staff, and multiple further breaches of fiduciary duties."

- "On April 15, 2024 Robin Fleming was terminated as from her position."

- "Additionally, the investigation revealed that Robin Fleming halted organizational review of vital computer records by changing all computer access passwords as we attempted to conduct the audit and still, to this day, she refuses to provide access to banks and credit cards."

- "Further, she instructed a Miss America state director to no longer do business with our largest tenured qualified vendor in an attempt to divert attention away from the audit, she formed a company with virtually the same name through the Florida Secretary of State ending the relationship with the Miss America Foundation which handled scholarships and donation responsibilities and hid the formation of the separate entity from us for her and her immediate family's personal gain leaving the Miss America organization in a very vulnerable position."

- "Now, faced with the audit results and a $20 million dollar lawsuit, Robin Fleming is making the fictitious claim that she 'owns' the Miss America companies."

- "She signed the Asset Purchase Agreement as 'Manager,' a position I hired her for. . . . All legal paperwork as well as wire transfers and cancelled checks clearly and obviously indicate that I am the sole owner of Miss America."

- "Robin Fleming has continued the ruse of ownership in order to unilaterally control and block access to bank accounts, credit cards, official Miss America social media outlets, and to hide a substantial amount of assets included in the purchase agreement and paid for in full by my company."

738.   Upon information and belief, Galle drafted the letter at Straub's direction, who pays Galle for such services through Palm Beach Polo.

739.   These statements carry the unmistakable defamatory meaning, both explicit and implicit, that Ms. Fleming: is fraudulently claiming to be the owner of the Miss America entities; engaged in serious misconduct that resulted in her termination; embezzled company funds and breached her fiduciary duties to the Miss America entities; and hid information by changing

passwords, failing to disclose the formation of a new entity, and hiding "a substantial amount of assets."

740.    These statements constitute defamation *per se* because, among other things, these statements tend to subject Ms. Fleming to hatred, distrust, ridicule, contempt, or disgrace, and injure her in her profession and business.

741.    These statements are of and concerning Ms. Fleming, who is identified by name.

742.    These statements are all false. Straub is not "the sole owner of Miss America." Ms. Fleming is the owner of the Miss America entities holding the Miss America assets and is the Manager and CEO of all the Miss America entities, so her claim of ownership is not false or fraudulent in any way. Ms. Fleming also was not terminated for cause from her positions at the Miss America entities and has not engaged in any conduct that would warrant a for-cause termination. There was never an audit conducted and Ms. Fleming has never embezzled company funds. In fact, in the Straub Action, two of Straub's employees testified under oath that there was no audit conducted of the Miss America entities. Nor could there have been an audit conducted by Straub or his companies because they have no authority to do so, including no ability to access the financial and proprietary information of the Miss America entities. Relatedly, Ms. Fleming did not deliberately hide information, change passwords, or evade oversight from anyone who had the authority to be privy to such information (which does not include Straub).

743.    Straub knew these statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

744.    These statements are unprivileged.

745.    As a result of these statements, Ms. Fleming has suffered damages, including without limitation, damage to her reputation, damage to her personal brand and goodwill in the

community as businesspeople, emotional suffering and distress, loss of potential income and goodwill associated with lost opportunities as a result of the negative publicity associated with these statements, and associated long-term loss of goodwill and marketability.

746.     In taking the actions alleged in this Complaint, Straub acted willfully and wrongfully, with malice, oppression, and fraud, and in conscious disregard of Ms. Fleming's rights, for which conduct Ms. Fleming is entitled to an award of punitive or exemplary damages.

### TWENTY-SIXTH CAUSE OF ACTION
### Defamation and Defamation *Per Se* Against Straub

747.     Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 269-292 and 341-348.

748.     Ms. Fleming repeats and hereby incorporates by reference the preceding paragraphs as though set forth in full.

749.     On May 3, 2024, and May 10, 2024, Straub hosted two Zoom events, which were each attended by, at least, dozens of individuals (at one point, over 1,000 participants were on the call), including members of the press and multiple Miss America State Directors. On these calls, Straub continued to defame Ms. Fleming and create confusion and doubt regarding the Miss America entities by falsely claiming that: Ms. Fleming is not the owner of the Miss America entities; Ms. Fleming was terminated as CEO of the Miss America entities; an alleged audit revealed that Ms. Fleming had mishandled the money of the Miss America entities; Ms. Fleming changed all the passwords to the various financial accounts of the Miss America entities to block Straub from accessing them; Straub is the day-to-day operator of Miss America (not Ms. Fleming); and that Ms. Fleming was evading service of the lawsuit he initiated against her.

750.     Upon information and belief, the Zoom calls were conducted from Straub's office at Palm Beach Polo.

751.    Galle and Zink received the cease and desist letter from Plaintiffs' counsel before the first Zoom call and thus knew, or should have known, about the Zoom calls.

752.    These statements carry the unmistakable defamatory meaning, both explicit and implicit, that: Ms. Fleming engaged in some sort of misconduct that resulted in her termination; Ms. Fleming embezzled company funds and breached her fiduciary duties to the Miss America entities; and Ms. Fleming hid information by changing passwords and even evaded service of the lawsuit that Straub, through entities he does not own or control, brought against Ms. Fleming.

753.    These statements constitute defamation *per se* because, among other things, these statements tend to subject Ms. Fleming to hatred, distrust, ridicule, contempt, or disgrace, and injure her in her profession and business.

754.    These statements are undoubtedly about Ms. Fleming, as they explicitly reference her.

755.    These statements are all false. Straub is not "day-to-day operator of Miss America." Ms. Fleming also was not terminated for cause from her positions at the Miss America entities. There was never an audit conducted and Ms. Fleming has never misused company funds. She also did not deliberately hide information, change passwords, or evade oversight from anyone who had the authority to be privy to such information (which does not include Straub). She also did not evade service in the lawsuit Straub brought against. In fact, her lawyers accepted service on her behalf and had already filed their appearances in court prior to these Zoom meetings.

756.    Straub knew these statements were false, or acted in reckless disregard of the truth, because, among other things, he falsified operating agreements to deceive people into believing he was owner of the Miss America entities and, prior to these Zoom meetings, counsel for Ms. Fleming sent a cease-and-desist letter to counsel for Straub.

757.     These statements are unprivileged.

758.     As a result of these statements, Ms. Fleming has suffered damages, including without limitation, damage to her reputation, damage to her personal brand and goodwill in the community as businesspeople, emotional suffering and distress, loss of potential income and goodwill associated with lost opportunities as a result of the negative publicity associated with these statements, and associated long-term loss of goodwill and marketability.

759.     In taking the actions alleged in this Complaint, Straub acted willfully and wrongfully, with malice, oppression, and fraud, and in conscious disregard of Ms. Fleming's rights, for which conduct Ms. Fleming is entitled to an award of punitive or exemplary damages.

## TWENTY-SEVENTH CAUSE OF ACTION
### Defamation and Defamation *Per Se* Against Straub and Palm Beach Polo

760.     Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 269-292 and 341-348.

761.     Ms. Fleming repeats and hereby incorporates by reference the preceding paragraphs as though set forth in full.

762.     On September 1, 2024, Straub sent a letter to the State Executive Directors of Miss America. In this letter, Defendants made the following statement:

> "For 13 months until Ms. Flemings [sic] dismissal with cause (including for changing and concealing all passwords) Straub ran the organization behind the scenes. . . . We all know money can be shifted from account to account and creative bookkeeping can produce almost any result. But we believe you are all intelligent enough to know that it was his personal commitment all along that has been financing everything from the organization's debt to salaries to the national pageant."

763.     Upon information and belief, Galle drafted the letter at Straub's direction.

764.     These statements carry the unmistakable defamatory meaning, both explicit and implicit, that Ms. Fleming: was falsely holding herself out as the owner of the Miss America

entities when Straub was the one running the Miss America entities, engaged in serious misconduct that resulted in her termination, and engaged in "creative bookkeeping" to conceal her fraudulent conduct with respect to the Miss America entities.

765.    These statements constitute defamation *per se* because, among other things, these statements tend to subject Ms. Fleming to hatred, distrust, ridicule, contempt, or disgrace, and injure her in her profession and business.

766.    These statements are undoubtedly about Ms. Fleming, who is identified by name.

767.    These statements are false. Straub is not the owner of Miss America and did not run the organization from behind the scenes. Ms. Fleming is the owner of the Miss America entities holding the Miss America assets and is the Manager and CEO of all the Miss America entities, so her claim of ownership is not false or fraudulent in any way.  Ms. Fleming also was not terminated for cause from her positions at the Miss America entities and has not engaged in any conduct that would warrant a for-cause termination. Nor has Ms. Fleming engaged in any "creative bookkeeping" or other misconduct designed to conceal fraudulent conduct with respect to the Miss America entities.

768.    Straub knew these statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

769.    These statements are unprivileged.

770.    As a result of these statements, Ms. Fleming has suffered damages, including without limitation, damage to her reputation, damage to her personal brand and goodwill in the community as businesspeople, emotional suffering and distress, loss of potential income and goodwill associated with lost opportunities as a result of the negative publicity associated with these statements, and associated long-term loss of goodwill and marketability.

771.     In taking the actions alleged in this Complaint, Straub and Palm Beach Polo acted willfully and wrongfully, with malice, oppression, and fraud, and in conscious disregard of Ms. Fleming's rights, for which conduct Ms. Fleming is entitled to an award of punitive or exemplary damages.

## TWENTY-EIGHTH CAUSE OF ACTION
### Defamation and Defamation *Per Se* Against Straub and Palm Beach Polo

772.     Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 269-292 and 341-348.

773.     Plaintiffs repeat and hereby incorporate by reference the preceding paragraphs as though set forth in full.

774.     On September 26, 2024, Straub sent another letter to the State Executive Directors. In this letter, Defendants made the following statements:

- "Robin admitted that she is using funds earmarked for Scholarships to pay her personal legal defense bills."

- "We also learned how Robin is unfit to be the steward of the organization. . . . I had to step in with only 2 days left to secure registration ownership of the Miss America brand.  Robin's carelessness meant that if we had waited just 48 hours more anyone could register and own your brand."

- "She was removed from her position with cause for mismanagement and misuse of funds and this is just another attempted excuse for her defense."

- "Following her dismissal, she crafted this wild tale of ownership, changed the bank account passwords to protect the money she is making from you and the organization, tried to take possession of my Intellectual Property and almost all the museum items."

- "In closing and in keeping with my transparency, the 100 page lawsuit she filed claiming  over $100 million in damages and which she directed you to online, then wasted your time by advising you to read all the lies, has been withdrawn."

775.     Upon information and belief, Galle drafted the letter at Straub's direction.

776.     These statements carry the unmistakable defamatory meaning, both explicit and implicit, that Ms. Fleming: is fraudulently holding herself out as the owner of the Miss America entities; engaged in serious misconduct resulting in her termination; embezzled and misused the assets of the Miss America entities; was neglectful in her professional obligations to the Miss America entities; and made false statements in a lawsuit against Straub that she then withdrew.

777.     These statements constitute defamation *per se* because, among other things, these statements tend to subject Ms. Fleming to hatred, distrust, ridicule, contempt, or disgrace, and injure her in her profession and business.

778.     These statements are undoubtedly about Ms. Fleming, who is identified by name.

779.     These statements are all false. Straub is not "the sole owner of Miss America." Ms. Fleming also was not terminated for cause from her positions at the Miss America entities. Ms. Fleming has never embezzled company funds nor otherwise misused or mismanaged company funds. She also did not withdraw her lawsuit against Straub.  Ms. Fleming also has not used funds earmarked for scholarships for her legal fees, or any other purpose other than the scholarships for which they were intended.  And, Ms. Fleming has not been "careless" in her stewardship of the Miss America brand. Quite to the contrary, Ms. Fleming has filed multiple new trademarks to protect the brand and diligently monitored and opposed competing trademarks.  Any loss of registered trademarks as the result of Straub and his counsel's malicious interference with existing trademarks, not Ms. Fleming's oversight.

780.     Straub knew these statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

781.     These statements are unprivileged.

782.     As a result of these statements, Ms. Fleming has suffered damages, including without limitation, damage to her reputation, damage to her personal brand and goodwill in the community as businesspeople, emotional suffering and distress, loss of potential income and goodwill associated with lost opportunities as a result of the negative publicity associated with these statements, and associated long-term loss of goodwill and marketability.

783.     In taking the actions alleged in this Complaint, Straub and Palm Beach Polo acted willfully and wrongfully, with malice, oppression, and fraud, and in conscious disregard of Ms. Fleming's rights, for which conduct Ms. Fleming is entitled to an award of punitive or exemplary damages.

## TWENTY-NINTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress Against Straub and Galle

784.     Plaintiffs repeat and hereby incorporate by reference all of the preceding paragraphs as though set forth in full.

785.     Straub and Galle, in committing the above-described acts of fraud, racketeering, defamation, and other described violations of law against Ms. Fleming, acted intentionally, willfully, knowingly, and/or with extreme recklessness.

786.     Straub's and Galle's conduct was outrageous, extreme, malicious, and beyond the bounds of acceptable behavior. Indeed, this case involves conduct that is truly monstrous in scope and harm, committed by two men who, for years, have conducted an almost incomprehensible campaign of depravity and disregard for the rights and dignity of women.

787.     Straub's and Galle's conduct caused severe emotional distress upon Ms. Fleming.

788.     Ms. Fleming is entitled to damages for pain and suffering and punitive or exemplary damages.

## THIRTIETH CAUSE OF ACTION
### Abusive Litigation Against Straub and Galle

789.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 464-469.

790.    Straub filed a lawsuit in Palm Beach Circuit Court on April 25, 2024, against Ms. Fleming and two of her entities (MASF and MAOT).

791.    In the lawsuit Straub asserted ownership of the other Miss America entities (MAC,[6] MAIP and IP Holding) owned by Ms. Fleming based on fraudulent documents created by Galle at his direction.

792.    All but one document produced by Straub's attorneys in initial discovery were intentionally stripped of metadata.

793.    The one document – the purported operating agreement for MAC – that was not stripped of metadata revealed that it was created in August 2023, not December 2022. Thus, it was fraudulent.

794.    Once depositions were noticed, Straub then filed a fraudulent Petition in Bankruptcy claiming that he was the sole member of the putative Debtor – MAC – when Straub was not a member or owner of MAC and has no authority to file a Petition in Bankruptcy on behalf of MAC. In so doing, he was not only committing Bankruptcy fraud but engaging in forum shopping in an effort to avoid his upcoming deposition and meaningful production of documents through the automatic bankruptcy stay. This also demonstrates an improper purpose in bringing the lawsuit.

---

[6] Straub misspelled Miss America Competition, LLC as the plural. A true owner would know how to spell the entity.

795.    Substantively, Straub knows he does not own any of the Miss America entities. As such, his state court action was filed with an improper purpose – to extort, intimidate, and subject Ms. Fleming to the expenses of litigation – in order to force her to turn it over to him. The blatant use of fraudulent documents in the litigation – the only "evidence" of ownership – also establishes an improper purpose.

796.    As a result, Ms. Fleming suffered economic and non-economic damages as a result of the abusive litigation.

797.    In commencing and conducting the above litigation in the manner described, Straub and Galle intentionally engaged in abusive litigation, for which conduct Ms. Fleming is entitled to an award of economic, non-economic, and punitive or exemplary damages.

### THIRTY-FIRST CAUSE OF ACTION
### Bankruptcy Fraud Against Straub

798.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation above and, in particular, paragraphs 470-73.

799.    On November 22, 2024, Straub filed a Petition in Bankruptcy in United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division.

800.    The Petition is fraudulent because the putative Debtor – MAC – is not owned by Straub and he is not a member of MAC. For the reasons set forth herein, only Ms. Fleming has the authority to file a Petition in Bankruptcy for MAC. Thus, Straub lacks the authority to file the Petition. The Petition is therefore fraudulent.

801.    The Petition was submitted in relation to a bankruptcy proceeding.

802.    Further, the Petition is part of a fraudulent scheme to wrest control of – or destroy – Miss America.

803.    As such, Straub has violated 18 U.S.C. § 157 (Bankruptcy Fraud).

804.     In committing bankruptcy fraud, Straub intentionally defrauded the court as well as Ms. Fleming and the Miss America entities, for which conduct Ms. Fleming and the Miss America entities are entitled to an award of economic, non-economic, and punitive or exemplary damages.

### THIRTY-SECOND CAUSE OF ACTION
### Defamation and Defamation Per Se against Straub

805.     Plaintiffs repeat and hereby incorporate by reference the preceding paragraphs as though set forth in full.

806.     On November 25, 2024, Straub made a post in a public forum, which made the following statements: "The defendant recently admitted in open court that they were funding their legal defenses through Miss America including money earmarked for scholarships. This reckless practice is putting Miss America in financial and legal jeopardy and I will not allow this to destroy all that you have worked so hard to accomplish."  Also on November 25, 2024, Straub made the same statement in an e-mail to the Executive Directors.

807.     These statements carry the unmistakable defamatory meaning, both explicit and implicit, that Ms. Fleming has improperly used Miss America scholarship funds to pay for her personal legal expenses and, as a result, damaged Miss America.

808.     These statements constitute defamation *per se* because, among other things, these statements tend to subject Ms. Fleming to hatred, distrust, ridicule, contempt, or disgrace, and injure her in her profession and business.

809.     These statements are about Ms. Fleming, as she is the publicly-known "defendant" in Straub's lawsuit.

810.     These statements are all false. Ms. Fleming has not used any Miss America funds to pay her legal expenses and has not caused any harm to Miss America.  If anyone has harmed Miss America, it is Straub.

811.     Straub knew these statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

812.     These statements are unprivileged.

813.     As a result of these statements, Ms. Fleming has suffered damages, including without limitation, damage to her reputation, damage to her personal brand and goodwill in the community as businesspeople, emotional suffering and distress, loss of potential income and goodwill associated with lost opportunities as a result of the negative publicity associated with these statements, and associated long-term loss of goodwill and marketability.

814.     In taking the actions alleged in this Complaint, Straub acted willfully and wrongfully, with malice, oppression, and fraud, and in conscious disregard of Ms. Fleming's rights, for which conduct Ms. Fleming is entitled to an award of punitive or exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court enter an award and judgment in their favor, and against Defendants, including economic damages, non-economic damages for defamation, emotional distress, and loss of enjoyment of life, and punitive and exemplary damages where appropriate, and treble damages where appropriate, costs and fees, in the amount of $500,000,000 (five hundred million dollars), and any equitable relief the Court deems just.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues.

Dated:  November 28, 2024

Respectfully submitted,

/s/  *Bruce J. Berman*
Bruce J. Berman, Florida Bar No. 159280
CARLTON FIELDS, P.A.
2 MiamiCentral. Suite 1200
700 NW 1st Avenue
Miami, Florida 33136-4118
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055
bberman@carltonfields.com

Gene Rossi (*pro hac vice* forthcoming)
Justin L. Chretien (*pro hac vice* forthcoming)
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007-5208
Telephone:  (202) 965-8100
Facsimile:  (202) 965-8104
grossi@carltonfields.com
jchretien@carltonfields.com

Benjamin G. Chew (*pro hac vice* forthcoming)
Jessica N. Meyers (*pro hac vice* forthcoming)
Camille M. Vasquez (*pro hac vice* forthcoming)
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
Suite 100
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6801
Telephone:  (202) 747-1900
Facsimile:  (202) 747-1901
bchew@sheppardmullin.com
jmeyers@sheppardmullin.com
cvasquez@sheppardmullin.com

*Attorneys for Plaintiffs*

138061673