**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 24-81507-CV-MIDDLEBROOKS**

ROBIN FLEMING, MISS AMERICA IP,
INC., MISS AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC,

      Plaintiffs,

v.                                    **JURY TRIAL DEMANDED**

GLENN F. STRAUB, CRAIG T. GALLE,
KATHLEEN A. FIALCO, and PALM BEACH
POLO, INC.,

      Defendants.

_____/

**<u>AMENDED COMPLAINT</u>**

Robin Fleming, Miss America IP, Inc., Miss America's Scholarship Foundation, Inc., and

MAO IP Holding Company, LLC commence suit against Glenn F. Straub, Craig T. Galle,

Kathleen A. Fialco, and Palm Beach Polo, Inc. The Plaintiffs allege the following in support of

their eighteen (18) causes of action against the Defendants, against whom the Plaintiffs seek

$500,000,000.00 in damages:

**PRELIMINARY STATEMENT**

This case involves a fraud monstrous in scope and harm. The perpetrator of the fraud is

Glenn F. Straub ("**Straub**"), a 78-year-old self-proclaimed "billionaire" with a long history of

fraud in business dealings and predation upon women.

At risk is nothing less than Miss America – the organization, its assets, and its future,

along with the scholarships and positive experiences the organization provides to empower

future generations of young women. At its helm is Robin Fleming ("**Ms. Fleming**"), an accomplished business leader with a stellar reputation in the pageant industry who purchased the organization and all its assets in late 2022 and has run it successfully ever since.

Beginning in November 2022, Straub, his attorney Craig Galle ("**Galle**"), his comptroller Kathleen Fialco ("**Fialco**"), and Palm Beach Polo, Inc. ("**Palm Beach Polo**"), acting at Straub's behest, engaged in a series of fraudulent acts as part of a conspiracy to wrest control of Miss America from Ms. Fleming.

Beginning in March 2024, Straub, Galle and Palm Beach Polo, constituting an Enterprise under both the federal and Florida Racketeering Influenced and Corrupt Organizations ("**RICO**") Acts, engaged in racketeering activity under the acts, to include extortion and wire fraud, to wrest control of Miss America from Ms. Fleming. Evidence shows that the Enterprise here engaged in a series of prohibited activities within the statutory period defined in the RICO acts.

Also beginning in March 2024, Straub engaged in a series of defamatory acts – some on a national scale – against Ms. Fleming personally and professionally that continued through November 2024.

Beginning in April 2024, Straub and Galle commenced abusive litigation in state court based on fraudulent documents. On November 22, 2024, with discovery and depositions looming, Straub filed a fraudulent Petition in Bankruptcy in federal bankruptcy court (S.D. Fla.) that stayed discovery in the state court. In filing the Petition, he attached the same fraudulent document he used in state court. Now, facing discovery and depositions in the bankruptcy court, Straub filed a motion to dismiss his Petition on December 11, 2024, less than three weeks after the original filing. In so doing, Straub has again engaged in abusive litigation (and now

bankruptcy fraud), jumping between courts at will, driving up litigation costs for Ms. Fleming and Miss America, and sowing chaos and confusion among participants and their families just weeks before the annual Miss America Competition.

As a result of this and the other conduct described herein, Ms. Fleming, Miss America IP, Inc., Miss America's Scholarship Foundation, Inc., and MAO IP Holding Company, LLC, have suffered economic damages and non-economic damages for defamation, emotional distress, and loss of enjoyment of life.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("**RICO**") Act).

2.      This Court also has original jurisdiction pursuant to 15 U.S.C. § 1121 over claims brought under 15 U.S.C. § 1111-29 for trademark violations and pursuant to 28 U.S.C. § 1334 and/or 18 U.S.C. § 157 over claims for bankruptcy fraud.

3.      In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

4.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Amended Complaint occurred.

## THE PARTIES

5.      Robin Fleming is an individual, *sui juris*, residing and doing business in Palm Beach County, Florida.

6.      Miss America Competition, LLC ("**MAC**") is an active Florida limited liability company, Entity No. L23000003074, which, on December 28, 2022, Ms. Fleming formed solely as Miss America Pageant, LLC ("**Miss America Pageant**"). Exhibit 1.

7.      On January 6, 2023, Ms. Fleming submitted a request to change its name from Miss America Pageant to MAC, but the Florida Secretary of State website indicates the effective date of the name change was January 12, 2023.

8.      Since its formation, Fleming has solely owned and controlled MAC, with its principal place of business at Fleming's residence in Palm Beach County, Florida (the term "**MAC**" will be used herein to refer to both Miss America Pageant and MAC unless otherwise indicated).

9.      MAC does not generate revenues, has no financial accounts, and is the entity that holds only the personal property assets (memorabilia, paintings, photographs, crowns, etc.) of Miss America. As such, MAC is not a taxable entity and does not require an Employer Identification Number ("**EIN**"). Nevertheless, due to the circumstances described herein, Ms. Fleming obtained an EIN for MAC from the Internal Revenue Service ("**IRS**") on May 2, 2024.

10.     Miss America IP, Inc. ("**MAIP**") is an active Florida corporation, Entity No. P24000029927, initially formed by Ms. Fleming on December 28, 2022, as a limited liability company ("**Miss America IP, LLC**"). A taxable entity, Ms. Fleming obtained an EIN for MAIP from the IRS on January 9, 2023. Ex. 2.

11.     Ms. Fleming converted MAIP to an "S" corporation with the IRS on March 15, 2023 (effective January 1, 2024). Since its formation it has been solely owned and controlled by Ms. Fleming with its principal place of business at her residence in Palm Beach County, Florida

(the term "**MAIP**" will be used herein to refer to either or both Miss America IP, LLC or Miss America IP, Inc., unless otherwise indicated).

12.      Ms. Fleming has filed tax returns and paid all taxes for MAIP since its formation. MAIP, in conducting pageants, engages in interstate commerce through the use of over 50 state directors, national advertising, national streaming broadcasts, the use of the internet, email and other forms of interstate communications.

13.      MAO IP Holding Company, LLC ("**IP Holding**" aka "**MAO IP**") is an active Delaware limited liability company, File No. 5594190, that Ms. Fleming formed on August 28, 2014, with its principal place of business at her residence in Palm Beach County, Florida. Ex. 3.

14.      Prior to December 30, 2022, IP Holding was an active, wholly owned subsidiary of the Miss America Organization ("**MAO**"). IP Holding held all of the intellectual property assets of MAO. Upon the acquisition of MAO, Ms. Fleming acquired IP Holding, through MAIP, but the intellectual property assets remained within IP Holding.

15.      Ms. Fleming, through MAIP, owns 100% of the membership interests of IP Holding and its assets, which are the intellectual property of Miss America.

16.      Miss America's Scholarship Foundation, Inc. ("**MASF**") is an active Florida non-profit corporation, Entity No. N23000014313, initially incorporated in Delaware as Miss America's Outstanding Teen on September 15, 2021, and then renamed as MASF in August 2023, and domesticated in Florida on October 30, 2023. MASF's principal place of business is Ms. Fleming's residence in Palm Beach County, Florida. Ms. Fleming serves as MASF's Chairman of the Board, President, Secretary, and Treasurer. Ex. 4.

17.      Glenn F. Straub is an individual, sui juris, residing and doing business in Palm Beach County, Florida.

18. Craig T. Galle is an individual, sui juris, residing and doing business in Palm Beach County, Florida. Galle is a licensed Florida attorney and has been Straub's primary lawyer for 30 years.

19. Kathleen A. Fialco ("**Fialco**"), is an individual, sui juris, residing and doing business in Palm Beach County, Florida. Upon information and belief, Fialco is the Comptroller for Palm Beach Polo, Inc. ("**Palm Beach Polo**").

20. Palm Beach Polo is a Florida corporation, Entity No. P93000063428, which Straub solely owns, with its principal place of business in Palm Beach County, Florida. Ex. 5.

*Other Relevant Entities*

21. The Miss America Organization, Inc. (previously defined as "**MAO**") was a Delaware not-for-profit corporation, File No. 7070962, incorporated on September 28, 2018. MAO has a 103-year history of empowering women and providing significant scholarship opportunities through its various historic entities.

22. In December 2022, MAO negotiated with American Icon Marketing, LLC ("**AIM**") to sell the MAO assets. As of the date of sale, December 30, 2022, Shantel Krebs was President of MAO. MAO was dissolved on January 20, 2023. Ex. 6.

23. Miss America's Outstanding Teen, Inc. ("**MAOT**") was a Florida not-for-profit corporation, Entity No. F05000001804, incorporated on March 22, 2005. It became inactive in Florida in 2021 and was subsequently domesticated in Delaware on September 15, 2021. Ex. 7

24. AIM is an active Florida limited liability company, Entity No. L22000518378, which Ms. Fleming formed on December 9, 2022. Since its formation, Ms. Fleming has solely owned and controlled AIM, with its principal place of business at her residence in Palm Beach

County, Florida. Ms. Fleming used AIM to negotiate with MAO for the purchase of the MAO assets. Ex. 8.

### *Non-entity*

25.     Miss America Competitions, LLC (plural) is not an entity registered in Florida.

## MATERIAL FACTS: PRE-ACQUISITION

### *Ms. Fleming's Background*

26.     Ms. Fleming, a graduate of DePaul University with a B.A. in Integrated Marketing Communications, is a professional businesswoman and, at one point, was a Vice-President of an iconic cereal brand, overseeing a sales force of over 100. She also founded several businesses, including a specialty retail store in 2005 in Wellington, Florida, featuring prom, pageant and wedding party dresses.

27.     Ms. Fleming began her relationship with MAO as a Platinum Brand Partner and Designer in August 2008 and became the holder of all Miss America's intellectual property licenses from 2009 to 2012.

28.     In 2017, Ms. Fleming became the producer and director of the Miss Florida USA and Miss California USA Pageants, successfully producing pageants and other events between March 2017 and May 2023 and earning recognition throughout the industry.

29.     Throughout 2022, Ms. Fleming worked as licensed franchisee and director of Miss Florida USA.

30.     Ms. Fleming moved to the Palm Beach Polo Country Club ("**PBPCC**") in Palm Beach County, Florida, in March 2021. She encountered Straub at the Stallion Restaurant in PBPCC in late 2021.

*The Public Face of Straub*

31.     Straub, a former Atlantic City casino owner and Florida real estate developer, is a self-proclaimed billionaire who purchased PBPCC – a 2,250-acre community – at a government auction in 1993.

32.     Straub remains a major PBPCC shareholder and owns (or controls) the lease for the Stallion Restaurant in the PBPCC.

33.     At all relevant times herein, Straub resided in PBPCC near Ms. Fleming's residence.

34.     Ms. Fleming was unaware of Straub's criminal record and history of fraud – as described herein – until 2024.

*Straub Sees Opportunities with Ms. Fleming*

35.     In late 2021, when encountering Ms. Fleming at the Stallion Restaurant, Straub presented as a wealthy and elderly man in his mid-70s keenly interested in her passion for businesses that empowered women and her passion for the pageant industry. He inquired about her past experiences and connections in the industry. In all such conversations and communications with Ms. Fleming, Straub acted strictly as a grandfather-type figure and potential benefactor and not as a potential romantic interest.

36.     Straub asked Ms. Fleming to meet with him to discuss various business opportunities and women's empowerment issues, generally over lunch or dinner at the Stallion restaurant.

37.     These business meetings between Straub and Ms. Fleming became a regular occurrence, generally once or twice a week.

38.     Ms. Fleming never solicited Straub's financial support for any business ventures. Straub, however, proposed several business opportunities to her, such as being the editor of a magazine he controlled that could be re-focused to women's issues, or to assist her in creating a high-end dress-making shop.

39.     Straub flaunted his wealth. He invited Ms. Fleming, always with friends or her children to various events on his luxurious 185-foot mega-yacht called "4 Roses."

### *Straub Offers to Serve as her "Banker" to Acquire the Miss Universe Organization*

40.     Upon information and belief, in the summer of 2022, the Miss Universe Organization ("**MUO**") was receiving offers for purchase in the range of $20 million. Straub offered to Ms. Fleming to finance its purchase for $20 million with her as owner and him as banker. At or around the same time, Ms. Fleming approached MAO, but MAO told Ms. Fleming that they would contact her at a later date.

41.     Ms. Fleming was agreeable to Straub's proposition to provide financial backing for either deal and, in August 2022, she communicated with contacts at both MUO and MAO.

42.     A text from SH, Straub's girlfriend at the time, to Ms. Fleming corroborates Straub's role as would-be financier, not owner, of any pageant acquisition. Upon information and belief, Straub had recently brought a lawsuit against SH painting her as a prostitute and abuser of him, in an apparent effort to coerce her back into a relationship with him. After bringing the lawsuit, Straub inquired of Ms. Fleming about a future role for SH with either MUO or MAO. Apparently, SH was not pleased with the role that Ms. Fleming suggested might be appropriate for her. SH texted Ms. Fleming:

SH, August 29, 2022, 6:16 PM:

> Robyn, I would've appreciated if you would've asked me what my position in the company would've been instead of telling me. It is my boyfriend **who would be providing the financial backing.** (emphasis added)

43.     The text from SH to Ms. Fleming indicates that Straub's girlfriend believed him to be a potential financial backer to Ms. Fleming, not a future owner.

### *Ms. Fleming Rejects Straub's Request for Sex*

44.     After Ms. Fleming had discussed her qualifications and made an offer to MUO with Straub's backing of $20 million, but before any response had been received from MUO, Straub asked Ms. Fleming, after a dinner on the evening of September 15, 2022, to change the nature of their relationship from casual business discussions to what he specifically referred to as "friends with benefits," which Ms. Fleming understood to be a request that she have sex with him.

45.     Notwithstanding the maximum leverage that Straub enjoyed over Ms. Fleming at this precise moment – with the potential acquisition of *the Miss Universe Organization* hanging in the balance – Ms. Fleming firmly but politely rejected his "friends with benefits" offer by text the next day, September 16, 2022, beginning at 3:48 pm: "I like our relationship exactly as it is, fun business chatter/ambitions with a smattering of humor…I am too conservative for anything else." Ex. 9.

46.     Straub texted "Check" two minutes later and never asked the question again.

### *Straub Says – "I'm a Banker" – in the Effort to Acquire the Miss Universe Organization*

47.     A few weeks later, in early October 2022, the General Counsel for MUO wanted to meet Ms. Fleming's banker.

48.     An exchange of texts between Ms. Fleming and Straub demonstrates that he understood he was to be the proposed banker:

Ms. Fleming, October 3, 2022, 8:22 PM:

So the good news is [t]he General Counsel for Miss [U]niverse just asked me to have a conference call with you!!!!!!!!!

Curiously, Straub suggests only he be on the call:

… Better just me, faster if they want to know anything about who or what we are.

Ms. Fleming says no, she will be on the call:

I don't want it to be only you…This is my livelihood and I am bringing this to the table and I am to be involved – *they know you have [t]he $$ on my word* bc I don't lie but the terms need be good as well…So you know business but I know these people and pageantry and together we can be unbeatable. (emphasis added)

And Straub replies:

…you make the deal. ***I'm a banker***! Ex. 10. (emphasis added)

49.     For reasons unknown at the time, MUO stopped responding to her inquiries and was soon sold to a foreign purchaser.

### *Straub Agrees to Serve as a Banker to Acquire Miss America*

50.     In early October 2022, almost immediately after the MUO deal fell through, MAO reached out to Ms. Fleming, based on her previous inquiries, to re-engage in an acquisition conversation.

51.     Straub orally agreed to Ms. Fleming to finance the acquisition.

52.     The board members of MAO were familiar with Ms. Fleming as she had been a licensee of the Miss America Brand for many years and a Platinum Sponsor.

53.     On October 27, 2022, Ms. Fleming provided the specific financing terms for the

Miss America deal to Straub via text that would limit his risks "*as a bank*" and the need for

"*three years*" to pay back the loan.

> Ms. Fleming, October 27, 2022, 9:47 PM:
>
> > We have a shot at Miss America this coming week… I'm getting all financials today – and can work up details on paper . . . I have really good news about the Miss America deal. I don't have to pay the 3 ½ million dollars debt but I just have to restructure it, and have operating cash for the first year. That limits your exposure *as a bank*, and it should be more fun to do a project with less pressure.
> >
> > And I will ask you to help me restructure the debt to something manageable, obviously I still need a loan but it will be repaid *within three years*. (emphasis added). Ex. 11.

54.     Straub orally agreed to finance the debt for three years.

### *Ms. Fleming Commences Negotiations and Asks for a Guarantee from Straub*

55.     On November 1, 2022, Ms. Fleming made a personal $250.00 good faith payment

to MAO to commence negotiations concerning her possible purchase of the Miss America assets.

56.     On December 4, 2022, beginning at 5:11 pm, Ms. Fleming texted Straub: "I just

realized that I do not have any guarantee of funds from you …"

57.     Straub did not respond to the text.

58.     On several occasions, Ms. Fleming had discussed a potential agreement with

Straub whereby his daughter, Kelly Straub Hull ("**Ms. Hull**"), would be a passive part-owner and

Ms. Fleming would be a part-owner and CEO of Miss America, but Straub never agreed to

specific terms regarding his daughter, to shared ownership, or to a guarantee of funds.

### *Ms. Fleming Forms AIM to Negotiate with Miss America*

59.     On December 9, 2022, Ms. Fleming filed Articles of Organization to form AIM

for the purpose of conducting negotiations with MAO. Ms. Fleming organized and operated AIM

as a member-managed limited liability company ("**LLC**") pursuant to Fla. Stat. § 605.0407.

Ms. Fleming alone is listed as the member, manager and registered agent of AIM.

60.     On December 14, 2022, beginning at 1:46 pm, Ms. Fleming forwarded additional

terms for the acquisition of MAO via text to Straub. The terms include, among other things, a

requirement for AIM to provide proof of financial capacity to operate and manage MAO while

continuing the due diligence necessary for the asset purchase.

61.     MAO then conducted a background check on Ms. Fleming, which she passed.

### *Ms. Fleming Offers to Discuss Splitting Ownership with Straub*

62.     On December 18, 2022, beginning at 5:03 am, Straub texted to Ms. Fleming a

reference to the possibility to have Ms. Hull serve as the "Chairman of the Board and majority

owner of Miss America with her other stock holder ([Ms. Fleming]) as President and Chief

Executive Officer. Along with the Financing from her Billionaire father."

63.     In response the same day, Ms. Fleming texted to Straub: "let's discuss the stock

split and my ability to draw or establish my compensation so I am comfortable, and of course

it'll be a thrill to be the president and CEO!"

64.     Ms. Fleming's text indicates that she was amenable to sharing ownership with

Ms. Hull but needed to discuss the details of her compensation.

65.     Straub did not respond to Ms. Fleming's text. Further, no discussions ever took

place and nothing was put in writing. In short, there was never an agreement between Ms.

Fleming and Straub by which Ms. Fleming would share ownership with Ms. Hull or that she

would receive compensation from Straub.

***Ms. Fleming Continues to Negotiate through AIM to Buy Miss America***

66.     On December 22, 2022, Ms. Fleming, through AIM, with the assistance of her attorney, Galle, delivered a confidential Binding Letter of Intent ("**LOI**") to MAO offering to purchase the Miss America assets.

67.     Although MAO received several proposals to purchase the assets of Miss America, MAO's Executive Board chose Ms. Fleming to purchase and steward the Miss America assets, brand, and mission. Upon information and belief, MAO selected Ms. Fleming because of her exceptional reputation of prior success overseeing the Miss America brand, experience in event production, and her commitment to the standards and values of Miss America

68.     On December 22, 2022, MAO issued a resolution directing its Board Chair to accept the LOI from AIM and "begin negotiations of a purchase agreement to be ratified by the board upon completion."

69.     On December 26, 2022, Ms. Fleming, through AIM, and with the assistance of Galle, drafted and executed a Nondisclosure and Confidentiality Agreement as "Buyer" and Shantel Krebs as "Seller" for both MAO and IP Holding.

***Ms. Fleming Forms Miss America Pageant and MAIP***

70.     On December 28, 2022, Ms. Fleming, with the assistance of Galle, filed Articles of Organization for Miss America Pageant and MAIP with the Florida Department of State as member-managed LLCs pursuant to Fla. Stat. § 605.0407.

***Florida State Records Are Dispositive: Ms. Fleming Was Sole Managing Member of Miss America Pageant and is Sole Managing Member of MAC***

71.     Florida Department of State, Division of Corporations, records ("**State record**s") for MAC (Document # L23000003074) (Ex. 1) indicate that only Ms. Fleming is a member of MAC:

a.      Ms. Fleming formed Miss America Pageant by filing Articles of Organization on December 28, 2022, as its registered agent, manager, and only member. The principal place of business is her home address.

b.      Ms. Fleming amended the Articles on January 6, 2023 to change the name from Miss America Pageant to MAC (the document was not entered into State records until January 12, 2023). Galle submitted the Cover Letter.

c.      Ms. Fleming filed the annual report for Miss America Pageant on January 19, 2023 (due to a backlog at the Florida Department of State office, the new name – MAC – was not reflected in State records until March 2023, so the report was filed under the existing name (Miss America Pageant)) and the annual report for MAC on March 8, 2024. She filed an Amended Annual Report for MAC on May 13, 2024. The amended report clarifies that Ms. Fleming is not only Manager, but Sole Member of MAC. The amended report was necessitated by the fraudulent acts of Straub and Galle described below that took place in April 2024.

d.      Ms. Fleming also filed a "Statement of Authority" on May 13, 2024, denying any authority of Straub or Galle to act on behalf of MAC. This submission was also necessitated by the fraudulent acts of Straub and Galle described below that took place in April 2024.

e.      Straub then filed a document with the Division of Corporations regarding Miss America Competition**s**, LLC [plural] on May 20, 2024, captioned as "Articles of Amendment" in an effort to remove Ms. Fleming's name as Manager and replace it with Straub's. Straub's filing misspelled the current name of the entity (*i.e.,* Miss America Competition, Inc. [singular]; falsely claimed that the entity was formed on December 28, 2022 (Miss America *Pageant* was formed on December 28, 2022, not MAC); and lacks the signature of Ms. Fleming, which would be necessary to replace her as Manager. The Division of Corporations voided Straub's filing.

f.      Upon learning of Straub's fraudulent filing, Ms. Fleming filed the "Statement of Fact" on July 1, 2024, which set forth the basis for the Division of Corporations to "VOID" Straub's submission. The statement indicates that Straub has no authority to change the name of MAC, Ms. Fleming has been the only manager of MAC since inception, and she has never authorized anyone to change any records with the Secretary of State.

72.     In sum, State records establish unequivocally that Ms. Fleming has always been the sole managing member of Miss America Pageant (as of December 28, 2022) and MAC (as of January 12, 2023).

***Florida State Records Are Dispositive: Ms. Fleming Is Sole Managing Member of MAIP***

73.     State records for MAIP (Document # L23000003087) (Ex. 2) indicate that:

a.      Ms. Fleming filed the Articles of Organization for MAIP on December 28, 2022. There has been no subsequent name change. MAIP's place of business was her home address.

b.      Ms. Fleming personally filed the Annual Reports on January 19, 2023, and again on January 23, 2024. She filed an Amended Annual Report on May 13, 2024, which indicates that Ms. Fleming is not only Manager, but also Sole Member. The Amended Annual Report was necessitated by the fraudulent acts of Straub and Galle described below that took place in April 2024.

c.      Straub attempted to file a document dated April 16, 2024, with the Division of Corporations regarding MAIP, captioned as "Articles of Amendment," in an effort to remove Ms. Fleming's name as Manager and replace it with Straub's. The filing was rejected by state officials.

d.      There are no documents in the State records indicating anyone other than Ms. Fleming is a member of MAIP.

74.     In sum, State records establish unequivocally that Ms. Fleming has always been the sole managing member of MAIP.

75.     Further, as the sole managing member of MAC and MAIP since their formation, Ms. Fleming alone could exercise the powers of the LLCs as set forth in Fla. Stat. § 605.0109.

76.     Notably, the terms 'owner' and 'member' are often used synonymously in Florida with respect to LLCs.

***There Are No Valid "Operating agreements" for MAC or MAIP***

77.     Ms. Fleming chose ***not*** to adopt an operating agreement for either entity and there is no requirement to have an operating agreement for an LLC in Florida. Management of the entities remains entirely vested in her.

78.     Any purported operating agreement for MAC or MAIP would be void without Ms. Fleming's agreement.

79.     Significantly, when an LLC is formed in Florida without an operating agreement, additional persons can only become members of the LLC with the consent of all the members. Fla. Stat. § 605.0401(3)(c). Thus, there can be no additional members to MAC or MAIP without Ms. Fleming's consent.

80.     Ms. Fleming did not consent to any other persons becoming members of MAC or MAIP. In particular, she did not consent to Straub or Galle becoming members.

81.     Further, operating agreements are contracts that are only binding if agreed to by the members of the LLC. Ms. Fleming did not agree to any operating agreement for either entity.

82.     In sum, Ms. Fleming did not adopt an operating agreement for MAC or MAIP, did not consent to any additional members to MAC or MAIP who might propose an operating agreement, and did not agree to any operating agreement for MAC or MAIP. Any such purported operating agreement(s) are void *ab initio*. Any such purported operating agreement for either entity is also fraudulent.

### *Ms. Fleming Moves Ahead Without any Agreement from Straub to Share Ownership*

83.     On December 29, 2022, beginning at 8:15 am, Ms. Fleming asked Straub via text, "Since it looks like we're moving ahead, can we have a conversation about the details where I fit in?" Straub did not ever follow-up with Ms. Fleming about the "details."

84.     At the time of purchase, Straub had played no role whatsoever in the transaction other than to promise Ms. Fleming that he would finance the reserve. He was not in any way associated with MAC (including its predecessor, Miss America Pageant) or MAIP, and he did not participate in the negotiations.

*The Asset Purchase Agreement for Miss America*

85.     Before the acquisition, Ms. Krebs and Ms. Fleming agreed to change the name from Miss America Pageant to MAC because the term "pageant" was no longer desired.

86.     On December 30, 2022, Ms. Fleming requested Galle execute the name change by email and text. She believed Galle would file the name change electronically that day but, unknown to her at the time, he did not do so until January 6, 2023.

87.     Galle drafted three documents to complete the acquisition: the Asset Purchase Agreement ("**APA**"), the Membership Interest Assignment, and the Bill of Sale and Assignment.

88.     On December 29, 2022, Ms. Fleming, on behalf of her two entities, MAC and MAIP, ("**Buyer**"), signed the APA, and on December 30, 2022, Shantel Krebs, on behalf of MAO, IP Holding, and MAOT ("**Seller**"), signed the APA to sell the Miss America assets. MAO held the physical assets (memorabilia, etc.), while IP Holding held the intellectual property assets. Ex. 12.

89.     The APA states that it sells and transfer all of Seller's assets to Ms. Fleming, through both MAC and MAIP, free and clear of encumbrances except as disclosed therein, in return for cash ($100), which was agreed upon by the Seller and Ms. Fleming at closing to be a credit from the good faith payment, and a "Buyer reserve" of $4,160,736.69, a sum equal to the Seller's total outstanding debt due creditors.

90.     The Buyer, however, has "the absolute and unconditional right to negotiate the amounts, legitimacy, legality and accuracy of the Seller debt" with creditors. The Buyer also has the right to acquire 100% of the membership interests of IP Holding from Seller.

91.     According to the APA, all but a few excluded assets were encumbered by a Small Business Administration ("**SBA**") loan. Thus, title to the encumbered assets would not be free and clear at closing.

92.     The assets generally included the assets listed in Exhibit A to the APA, as well as proprietary information, lists of customers, trademarks, service marks, copyrights, films, recordings, social media accounts, intellectual property, paintings, artwork and other tangible property, as well as all cash, notes and accounts receivable.

93.     Neither Straub nor Galle attended the closing.

***MAIP Acquires IP Holding, Which Holds the Intellectual Property Assets of Miss America***

94.     Due to Galle's delay in changing the name from Miss America Pageant, MAC did not yet exist when the APA was signed. While the APA included both MAC and MAIP as the two entities that constituted the Buyer, MAIP was the only Buyer entity in existence on December 30, 2022. Thus, MAIP acquired IP Holding on that day, with its encumbered intellectual property assets.

95.     Also on December 30, 2022, Ms. Fleming, through MAIP, acquired all of the membership interests of IP Holding by signing the second document drafted by Galle, the Membership Interest Assignment from MAO to MAIP. Ex. 13.

96.     As a result, Ms. Fleming, through MAIP, became the sole member of IP Holding, which held the encumbered intellectual property assets.

97.     On January 20, 2023, Ms. Fleming filed an amended Operating agreement for IP Holding with the Secretary of State of Delaware, in accordance with Delaware law, naming herself, through MAIP, as its sole member and 100% owner.

98.     On February 24, 2023, Ms. Fleming filed a Restatement of Formation for IP Holding with the Secretary of State of Delaware, with her as the Authorized Person.

99.     Ms. Fleming has been the sole owner of 100% of the interests, through MAIP, of IP Holding and all the intellectual property assets of Miss America, since signing the Membership Interest Assignment on December 30, 2022.

### MAC Acquires the Personal Property Assets of Miss America

100.    Also on December 30, 2022, Ms. Fleming, through MAC, acquired all of the personal property assets of MAO (memorabilia, etc.) by signing the third document drafted by Galle, the "Bill of Sale and Assignment" from MAO to MAC. Ex. 14.

101.    Because the name change had not yet taken effect, the personal property assets could not be conveyed until January 12, 2023, the effective date of the name change from Miss America Pageant to MAC.

102.    As of January 12, 2023, when the Note from Palm Beach Polo was signed by Ms. Fleming to pay off the SBA loan, it was on behalf of MAC as the Borrower. Neither MAIP nor IP Holding was a borrower named in the Note. Further, the security interests in the Note were the revenues and monies of the Borrower (MAC), not MAIP or IP Holding.

103.    The SBA loan was paid in full the same day, on January 12, 2023, by Palm Beach Polo. Following payback of the SBA loan, the assets held by MAC and MAIP were no longer encumbered.

104.    As a result, Ms. Fleming has been the sole owner, through MAC, of all personal property assets conveyed by the Bill of Sale and Assignment since December 30, 2022.

105.    Ms. Fleming's experience and reputation made her a qualified and competitive purchaser of Miss America: it was Ms. Fleming who negotiated the deal with MAO; it was

Ms. Fleming who financially qualified for the purchase; it was Ms. Fleming who attended the closing; it was Ms. Fleming who signed her name on all the relevant documents; and it was Ms. Fleming who acquired ownership of the MAO assets, through MAC and MAIP.

106.    Nevertheless, Ms. Fleming relied upon Straub's offer to fully fund the reserve with a three-year loan to purchase the Miss America assets.

107.    Upon information and belief, Straub never intended to enter into any written agreement with Ms. Fleming whereby he would pay her for an equity share of the Miss America assets for Ms. Hull and then, in addition, pay Ms. Fleming a salary as CEO. Instead, he intended to take control of 100% of the Miss America assets through fraud.

### Galle's Role Prior to Acquisition: Emails Show an Attorney-Client Relationship

108.    In the fall of 2022, Straub recommended to Ms. Fleming that she use Galle as her attorney for the acquisition of the Miss America assets. Ms. Fleming agreed and began copying Galle on emails to Straub.

109.    Thereafter Ms. Fleming sought legal advice from Galle regarding the acquisition of the Miss America assets and Galle provided legal advice regarding the acquisition.

110.    Ms. Fleming understood that the Miss America entities would be charged for Galle's legal services through Palm Beach Polo.

111.    There were approximately 162 emails between Ms. Fleming and Galle up through the date of the acquisition. The emails show Ms. Fleming repeatedly seeking legal advice from Galle and Galle repeatedly providing legal advice to her in respect of her acquisition of Miss America.

112.    For example, from mid-November 2022 through the date of acquisition (December 30, 2022), numerous emails show Galle provided legal advice and assistance in

drafting and editing the Letter of Intent to MAO; the Independent Contractor Agreement for winners of the Miss America title; the formation documents for Miss America Pageant and MAIP; the non-disclosure agreement with MAO; the Asset Purchase Agreement with MAO; the Membership Interest Assignment with IP Holding; and the Bill of Sale and Assignment with MAO.

113.    Other emails in December 2022 demonstrate that Ms. Fleming requested and received legal advice from Galle regarding the LOI, the APA, the Membership Interest Assignment, and the Bill of Salle, and that Galle did not object when referred to as "our attorney" by Ms. Fleming.

114.    Notably, Straub was absent on all emails with the Seller.

115.    In sum, in November and December 2022, Ms. Fleming requested legal advice and Galle provided legal advice to facilitate the acquisition of Miss America. Galle also drafted and/or edited every document involved in the acquisition and the formation documents for Miss America Pageant and MAIP. Galle did not, however, disclose the material conflict of interest he had in representing Straub's interests – wresting control of Miss America from Ms. Fleming – at the same time he was serving as her attorney.

## MATERIAL FACTS: POST-ACQUISITION

### *Ms. Fleming is the Undisputed Owner of Miss America*

116.    On December 30, 2022, Ms. Fleming assumed her role as CEO and Owner of Miss America and began directing its business and operations.

117.    Ms. Fleming worked closely with Shantel Krebs, Chair of MAO's Board of Directors, to complete the transition.

118.    At the January 18, 2023, "Special Meeting" of the MAO Board of Directors, Ms. Krebs introduced Ms. Fleming as "The New Owner" of MAO. The Board welcomed

Ms. Fleming as "The New Owner" and acknowledged the payback of the SBA loan.

Ms. Fleming then spoke regarding the transition and her vision of where the new Miss America

is headed, the future role of board members, staffing, upcoming competitions, and other issues.

The Board then resolved to dissolve the Board and close the organization (MAO). Ex. 15.

119.    On January 19, 2023, Ms. Fleming conducted a Zoom meeting with more than

1,200 stakeholders, announcing her new ownership and leadership and outlining a number of

changes to be made for the organization and its competitions.

120.    On January 23, 2023, Ms. Fleming sent an email to all State Executive Directors

referencing her new "ownership and leadership" and outlining a number of changes to be made

for the organization and its competitions.

121.    In early 2023, Ms. Fleming was introduced by Ms. Krebs and Liz Brown (legacy

MAO Manager) as the new owner of MAO to third parties (sponsors, vendors, and others). In

dealing with third parties, Ms. Fleming has represented herself as CEO and, where relevant, as

the Owner.

122.    As for Straub's role, Galle was copied on a March 8, 2023, email Ms. Fleming

sent to the law firm of Cooper Levensen, where Ms. Fleming characterized Straub as her

"BANKER or BACKER." Galle did not object to this characterization.

### *Ms. Fleming Successfully Operates Miss America for the Next Fifteen Months*

123.    After the acquisition, Ms. Fleming worked tirelessly on behalf of the Miss

America brand, including holding meetings regularly with local and state leaders and

stakeholders; negotiating contracts with third parties; and planning and organizing various

events, including the Miss America 2024 Competition.

124.     Since acquiring Miss America, Ms. Fleming has filed all income, franchise, and annual report taxes; authored, distributed, and assigned over 600 licenses throughout the United States, District of Columbia, and Puerto Rico; envisioned, planned and executed more than 10 days and nights of events for over 2,600 people for the Miss America contest in 2024; paid for all aspects of the Miss America 2024 and Miss America Homecoming 2024 contests; initiated other partnerships and alliances; and hired the necessary staff and worked tirelessly preparing for the upcoming Miss America 2025 contest.

125.     In sum, Ms. Fleming operated Miss America successfully as CEO and Owner, through MAC and MAIP, for more than 15 months. There is no evidence – no documents, emails or texts from Straub or Galle (or anyone for that matter) – that challenges her ownership until March 2024.

### *Straub Admits He is "A Banker" and Ms. Fleming has a Handle on Her "Flagship"*

126.     More than 12 months after her acquisition, even Straub acknowledged he was solely Ms. Fleming's banker. On January 10, 2024, in a series of texts, Straub asks Ms. Fleming how he should introduce himself to others at the upcoming Miss America pageant. Straub himself suggests he use the term "banker."

127.     Then, on January 23, 2024, Straub texted Ms. Fleming at 4:50 a.m. and asked her for financial information for the next year and her estimates on "money in and expenses out now that you seem to have a handle on your flagship."

128.     Significantly, *during the 15 months after the acquisition*, neither Straub nor Galle ever raised an objection to Ms. Fleming's ownership of Miss America until March 2024.

*Galle's Role After Acquisition: Emails Show the Attorney-Client Relationship Continued*

129.    Galle continued to serve as Ms. Fleming's attorney after the acquisition. There are more than 360 emails between Ms. Fleming and Galle post-acquisition (*i.e.,* after December 30, 2022).

130.    In these emails she requests and receives legal advice from Galle about a variety of issues, including the accelerated terms of the Note, the Interrogatories served by the Bryan Cave law firm about a prior debt, a demand letter by a vendor (Didit), and subpoenas issued by Bryan Cave, where Galle states, in an email sent on March 18, 2023, "I represent Robin Fleming, Miss America Pageant, LLC and Miss America, LLC."

131.    On April 24, 2023, Galle apparently did not wish to represent Ms. Fleming and Miss America any longer and Galle suggested he transfer all the corporate files to attorney Anthony Barbuto. Ms. Fleming agreed to the transfer of the corporate files to attorney Barbuto, and Galle then did so via email, copying Ms. Fleming. The entirety of the files transferred appears to be only the APA agreement, the Membership Interest Assignment, and the Bill of Sale.

132.    Significantly, the files transferred by Galle to Barbuto did not include any documents that, as described in detail below, Straub and Galle later contended were created in December 2022; *i.e., before* Galle transferred his files. If Galle had created the documents in December 2022, he had an ethical obligation – a duty of care – to produce them to Mr. Barbuto when he transferred the files. He did not.

## MATERIAL FACTS: FRAUD

### *Fraud in the Request for an Employer Identification Number from the IRS*
### *(Straub, Galle, Fialco and Palm Beach Polo)*

133.    On January 2, 2023, Ms. Fleming sent an email to Galle advising that she needed an Employer Identification Number ("**EIN**") from the IRS for MAC in order to open a checking account. She offered to request the EIN.

134.    Galle offered to make the EIN request for her.

135.    Ms. Fleming believed Galle had already made the name change from Miss America Pageant to MAC. Galle did not advise her that he had not yet submitted the request for the name change. As such, Galle's EIN request to the IRS for MAC was for a non-existent company and was void.

136.    As a result, Galle's application for an EIN of January 3, 2023, was fraudulent. He knew there was no company by that name. Further, with Fialco's assistance, he inserted Straub's name as "MBR" and Straub's address for the business. He knew Straub was not a member of Miss America Pageant and would not be a member of MAC after the name change.

137.    Ms. Fleming was the sole member of Miss America Pageant on January 3, 2023, and she had not consented to adding Straub as a member or to use his address.

138.    Straub, Galle, and Fialco were aware that they had no authority to insert Straub's name as a member of any Miss America entity nor use his address. Upon information and belief, Galle signed the application to the IRS "under penalties of perjury" affirming that it was "true, correct, and complete" at the behest of Straub.

139.    Upon information and belief, Fialco assisted Galle in the EIN request and was aware that the information was false.

140.     The IRS issued the EIN the same day, January 3, 2023, reflecting, as Galle had requested, Straub's name as "MBR" and Straub's address. Ex. 16.

141.     As such, the false application constitutes a willful fraudulent act by Straub and Galle, which Fialco, as comptroller for Palm Beach Polo, assisted, against Ms. Fleming and the Miss America entities.

### Fraud in Whiting-Out Straub's Name from the IRS Response Letter
### (Straub, Galle, Fialco and Palm Beach Polo)

142.     On January 3, 2022, Galle provided Ms. Fleming a whited-out version of the fraudulent EIN received from the IRS that had Straub's name whited out, concealing the original fraud. Ex. 17.

143.     Ms. Fleming needed the EIN to open a checking account at Bank of America for MAC.

144.     Ms. Fleming was unable to open a checking out for MAC on January 3, 2023, because the name of the entity – MAC – did not match the name of the entity in State records.

145.     Ms. Fleming was unaware of the whited-out portion because the whited-out document appeared to have been scanned and printed without trace of white-out.

146.     Galle recently admitted under oath to "white-ing" out the document. Altering the document under these circumstances was a second willful fraudulent act on his part, especially when he knew it was to be presented to a bank.

147.     Upon information and belief, Fialco, comptroller for Palm Beach Polo, was aware that Galle had whited-out the documents. She maintained a physical file on Ms. Fleming that had just two documents: the APA agreement and the EIN letter from the IRS with Straub's name dated January 3, 2023.

148.    In March 2024, Fialco shared the physical file with Ms. Fleming. Upon inquiry by Ms. Fleming as to why Straub's name was on the EIN letter, Fialco jumped up with apparent remorse and demonstrated her knowledge of the fraud by stating "you need to fix this!  MAC has *your* name and address [in the State records]. There's not a single piece of paper that says he [Straub] owns it!".

149.    But on January 3, 2023, Ms. Fleming, unsure of what had taken place with MAC, waited for the Florida Secretary of State to process the name change. After a week with no update, she submitted a request to the IRS for an EIN for MAIP, instead of MAC, and received it on January 9, 2023. She then opened a checking account for MAIP and not MAC.

150.    As a result, MAIP, instead of MAC, became the entity through which Ms. Fleming conducted Miss America business. For instance, the financial accounts for Miss America operations are MAIP accounts, while MAC has no accounts.

151.    More than one year later, Ms. Fleming secured an EIN for MAC, too. On May 2, 2024, the IRS confirmed that the correct MAC entity was Miss America Competition, LLC [singular] and that Ms. Fleming was the sole member.

152.    The above conduct of Straub, Galle, Fialco, and Palm Beach Polo constitutes fraud.

### *Fraud in the Inducement*
### *(Straub, Galle)*

153.    After acquiring Miss America on December 30, 2022, Ms. Fleming asked Straub to fully fund the reserve, but Straub reneged on his promise.

154.    Straub stated, instead, that he would serve as her lender on a debt-by-debt basis. The most pressing debt of MAO was owed to the SBA, which was the basis for the encumbrance on the assets.

155.     Galle, at Straub's direction, then drafted the Note between Palm Beach Polo and MAC dated January 12, 2023, in the amount of $525,000 to be paid to the SBA. The Note, however, was t*o be paid back in less than a year* (*i.e.,* by the end of 2023, later extended until early 2024 due to the scheduled revenue-generating pageant to be held in January 2024). Straub had previously agreed to three-year financing of the entire reserve of approximately $4.1 million. Ex. 18.

156.     Significantly, the Note granted Palm Beach Polo a security interest in the collateral pledged by the Borrower – MAC – should a default occur. The agreement describes the collateral as all revenues and monies in bank accounts of Borrower through the date the loan is paid.

157.     Upon information and belief, the Note was designed to result in a default by the Miss America entities and Straub's seizure of its assets through Palm Beach Polo. Straub and Galle apparently did not realize, however, that MAC did not have any revenues, financial accounts, or intellectual property.

158.     Straub, through his assurances and discussions with Ms. Fleming over almost a year, coupled with his displays of extreme wealth and the capacity to easily fund the acquisition of Miss America (he had just offered $20 million to purchase Miss Universe), induced Ms. Fleming to reasonably believe that he would fully fund the reserve as promised.

159.     Straub knew his material representations to Ms. Fleming regarding funding were false when made and he intended Ms. Fleming to rely upon his misrepresentations.

160.     In reliance thereupon, Ms. Fleming acquired Miss America.

161.     Ms. Fleming paid the Note in full in February 2024 in accordance with its revised terms.

162.    Even after paying the Note, Ms. Fleming and Miss America have been exposed to litigation and financial difficulties arising from the remaining legacy debts of MAO that Straub refused to finance. As a result, she and the Miss America entities have suffered damages proximately caused by Straub and Galle's fraud in inducing her to acquire Miss America with the intent to renege on the promise of financing the $4.1M reserve.

163.    For his part, Galle encouraged and assisted Ms. Fleming in acquiring Miss America, drafted the Note designed to force her default, and knew, or should have known, that Straub had no intention to fund Ms. Fleming but, instead, to wrest control from her.

164.    The above conduct constitutes fraudulent inducement on the part of Straub and Galle.

### Fraudulent Documents – the False MAC Operating Agreement
### (Straub, Galle and Palm Beach Polo)

165.    Ms. Fleming began keeping a detailed journal of her regularly conducted activity with her banker – *i.e.,* conversations with Straub – in March 2024 following threats he made to her. The entries were made contemporaneously or immediately after the conversations.

166.    At the same time, Straub and Galle began drafting fraudulent documents to take ownership directly.

167.    On Thursday, April 11, 2024, during a meeting with Straub starting at 9:30 a.m. and ending at about 2:00 p.m., Straub put a call from Galle on speakerphone without advising Galle that Ms. Fleming was present. Galle advised Straub that he had drafted an operating agreement with Straub's name on it. Straub advised Ms. Fleming that she would get the document the next day at their meeting.

168.    The next day, on Friday, April 12, 2024, the first fraudulent operating agreement ("**MAC/OA#1**") (Ex. 19) created by Galle, dated December 28, 2022, was physically handed to

Ms. Fleming by Straub. She had never seen it before. Ms. Fleming recalls three obvious

infirmities: it had the wrong name of the LLC (MAC) for the indicated date (December 28,

2022); the "Purpose" of the document appeared to be for an entity involved in real estate, not an

entity involved in the pageant industry; and it lacked her signature (and had just a stamped name

for Straub's signature).

169.    At the meeting Straub also threatened Ms. Fleming that he would send a letter to

all the Directors advising them that she has been removed as CEO and Manager, he would

involve her children "in the humiliation," and that even if he is "just the banker he has a right" to

hold an audit.

170.    Upon information and belief, MAC/OA#1 was created by Galle, paid for by Palm

Beach Polo, emailed to Ms. Rina Osle, Straub's Assistant Comptroller at Palm Beach Polo, and

then printed out by Osle and given to Straub before the meeting. It is fraudulent.

171.    First, an "operating agreement" is a secondary document that, even if authentic,

does not prove ownership.

172.    Second, as set forth above, State records establish that, as a matter of law,

Ms. Fleming became the sole member of Miss America Pageant upon its formation on December

28, 2022, and then became the sole member of MAC, effective January 12, 2023, upon its name

change. Nothing has changed those facts. She remains the sole member of MAC today.

173.    Third, Ms. Fleming chose not to create an operating agreement for Miss America

Pageant or MAC. As its sole member, only she has the power to approve an operating agreement

for Miss America Pageant or MAC. She did not approve an operating agreement for Miss

America Pageant or MAC. She did not sign an operating agreement for Miss America Pageant or

MAC. She did not sign MAC/OA#1.

174.     Fourth, the circumstances of the disclosure of MAC/OA#1 indicate it was of recent fabrication. According to Ms. Fleming's journal entry, Galle stated to Straub on the speakerphone call on April 11, 2024, that Galle drew up MAC/OA#1 and put Straub's name on it (to which Straub did not object). This suggests that Galle fabricated MAC/OA#1 as part of a conspiracy with Straub on or before April 11, 2024. This was also the exact same time Straub was attempting to extort Ms. Fleming to sign over Miss America.

175.     Further, the circumstances of the disclosure – more than 15 months after Ms. Fleming formed MAC, a period during which neither Galle nor Straub challenged her ownership of Miss America until she rejected Straub – are also consistent with recent fabrication.

176.     Fifth, MAC/OA#1 is titled as a "Limited Liability Company Agreement of Miss America Competition, LLC," with an effective date of December 28, 2022. *There was no entity in existence by that name on that date*. That name did not take effect until January 12, 2023.

177.     Sixth, MAC/OA#1 appears to be a "cut-and-paste" job from a real estate development company document, not a business involved in the pageant industry. Indeed, the "Purpose" of the Company set forth in Section 4 is "to own and develop real property located in St. Lucie County, Florida." It also states that there are 1,000 "Units" that have been issued and are outstanding and has other provisions inappropriate for the pageant industry. These features are inconsistent with the purpose and capital structure of MAC. They are consistent, however, with a quick cut-and-paste by Galle for Straub to use against Ms. Fleming to further the fraud. The inconsistency in the "Purpose" provision is further evidence of fraud.

178.     Seventh, MAC/OA#1 features a stamp signature for "GLENN F. STRAUB," which is consistent with Galle's April 11, 2024, statement that Galle put Straub's name "on it."

In other words, it was not even signed by Straub (let alone Ms. Fleming). The Division of Corporations requires a signature by the Registered Agent.

179.    Notably, Ms. Fleming immediately objected to MAC/OA#1 when the copy was handed to her and she pointed out its obviously fraudulent nature – the incorrect entity name, an improper stated purpose, and the lack of signature.

180.    In sum, MAC/OA#1 is patently fraudulent.

### *Fraudulent Documents – the Second Version of the False MAC Operating agreement (Straub, Galle and Palm Beach Polo)*

181.    On April 16, 2024, in apparent response to Ms. Fleming's comments about the fraudulent nature of MAC/OA#1, Galle sent by email to then-counsel for Ms. Fleming (attorneys Stuart Moskovitz and Anthony Barbuto) a single .pdf document attaching a second version of the operating agreement for MAC ("**MAC/OA#2**") (Ex. 20) and an operating agreement for MAIP ("**MAIP/OA**") (Ex. 21).

182.    Incredibly, MAC/OA#2 appears to be Galle's effort to correct the three defects Ms. Fleming identified in MAC/OA#1; that is, Galle was attempting to replace his first clumsily drafted fraudulent document with a better fraudulent one.

183.    For example, MAC/OA#2 features a different entity name than MAC/OA#1 in an apparent effort to correct the name based on Ms. Fleming's comments on April 12. It was changed, however, from the singular "Miss America Competition, LLC" in version #1 to the plural "Miss America Competitions, LLC" in version #2. But *it is still the wrong name*. The true owner would know the correct name.

184.    On December 28, 2022, the correct entity in State records was Miss America Pageant. It was not changed to MAC until January 12, 2023. Thus, there was no such entity, *i.e.,* Miss America Competition, LLC, in existence on that date, either in the singular or plural form.

185.     Further, it is likely that Straub and Galle, in their effort to correct the wrong name, referred to Sunbiz.org for the correct spelling. It is likely because **Sunbiz.org featured the plural spelling** beginning with the name change to MAC on January 12, 2023. Upon information and belief, it was a typographical error that Sunbiz.org later corrected. Given the unlikelihood of two identical typographical errors, this is further evidence that MAC/OA#2 was created after January 12, 2023 (not on December 28, 2022) and is, therefore, fraudulent.

186.      Given that MAC/OA#1 was fraudulent for the reasons set forth above, its pedigree does not improve with further alteration.

187.     Significantly, the metadata of the single .pdf containing MAC/OA#2 and MAIP/OA sent by Galle had been removed. Upon information and belief, metadata is present in .pdf files unless intentionally removed.

188.     Upon information and belief, MAC/OA#2 was drafted at the direction of Straub and at the expense of Palm Beach Polo.

189.     In sum, MAC/OA#2 is also patently fraudulent.

### Fraudulent Documents – the Third Version of the False MAC Operating agreement (Straub, Galle and Palm Beach Polo)

190.     On August 20, 2024, Ms. Rina Osle, Straub's Assistant Comptroller at Palm Beach Polo, testified that she received a Word version of MAC/OA#1 by email from Galle on April 11, 2024, to print out for Straub in preparation for his April 12 meeting with Ms. Fleming.

191.     Counsel for Ms. Fleming requested Counsel for Straub to produce the Word version of the operating agreement for MAC ("**MAC/OA#3**"). It was produced but without the email referenced in the preceding paragraph. Ex. 22.

192.     "MAC/OA#3" is similar to MAC/OA#1 with the same defects as set forth above (*i.e.,* it bears the date of December 28, 2022, when MAC was not in existence at the time, it has

the wrong purpose, etc.) but it bears a different "signature" from the first version – a typed "Glenn F. Straub" in a blue font, not his stamped name as in the first version.

193.   **Most significantly, the metadata in MAC/OA#3 was not stripped and shows that it was created on August 25, 2023, at 6:36 p.m. by Galle, not December 28, 2022, as it appears in the document** (see Ex. 22). Thus, MAC/OA#3 is a fraudulent document. It also establishes that MAC/OA#1 – the hard-copy of the Word version that Straub gave to Ms. Fleming on April 12, 2024 – is also fraudulent, as well as MAC/OA#2, which followed MAC/OA#1.

194.   It also puts to the lie any claim that no metadata exists for any of Galle's documents due to the alleged theft of his laptop in January 2023. MAC/OA#3 was created in August 2023, and MAC/OA#1 and #2 in mid-April 2024. The alleged theft of his laptop is not the reason for the lack of metadata.

195.   Finally, the fact that Straub's counsel, Galle and Zink, have put forth three versions of what they claim is an original document is further evidence of fraud.

196.   In sum, all three versions of the MAC operating agreement – MAC/OA#1, #2, and #3 – are fraudulent.

### Fraudulent Documents – the False MAIP Operating agreement
### (Straub, Galle and Palm Beach Polo)

197.   The MAIP/OA document was included in the same .pdf containing MAC/OA#2 that Ms. Fleming received from Galle on April 16, 2023. Ex. 21. It is also fraudulent.

198.   First, as set forth above, State records establish that, as a matter of law, Ms. Fleming became the sole member of MAIP upon its formation on December 28, 2022, and she remains the sole member of MAIP today. As such, she owns or controls 100% of its assets.

199.     Second, Ms. Fleming chose not to create an operating agreement for MAIP. As the sole member, only she has the power to approve an operating agreement. She did not approve an operating agreement for MAIP. She did not sign an operating agreement for MAIP. She did not sign the MAIP/OA. Thus, the MAIP/OA is void.

200.     Third, the circumstances of the disclosure of MAIP/OA indicate it was of recent fabrication. It was produced on April 16, 2024, along with MAC/OA#2 in the same stripped .pdf. Since MAC/OA#2 was likely created in mid-April 2024 for the reasons discussed above, it is likely that MAIP/OA was also created at the same time.

201.     Fourth, Galle provided the document while Straub was attempting to extort Ms. Fleming to sign over Miss America following her refusal to serve as his proxy. This was more than 15 months after she formed MAC and MAIP, a period during which neither Galle nor Straub challenged her ownership of Miss America. The timing of the document's release is evidence of fraudulent intent.

202.     Significantly, MAIP/OA is also part of the .pdf document that had its metadata stripped, which is also evidence of fraudulent intent.

203.     Upon information and belief, MAIP/OA was drafted by Galle at the direction of Straub and the expense of Palm Beach Polo.

204.     In sum, MAIP/OA is also patently fraudulent.

### Fraudulent Documents – the False "Meeting Minutes"
### (Straub, Galle and Palm Beach Polo)

205.     On the morning of July 17, 2024, immediately before a scheduled hearing regarding Straub's motion for a preliminary injunction in the state court action, counsel for Straub provided two documents by email to Ms. Fleming's counsel. Counsel for Straub indicated that he had received these documents from Galle that morning and Straub's counsel intended to

use them at the hearing that day, notwithstanding the lack of notice to Ms. Fleming and her counsel.

206.    The first document is a .pdf without any metadata. It purports to be "Minutes of Initial Meeting of the Member and Director of Miss America Pageant, LLC" that allegedly took place on December 30, 2022, at 3:00 pm between Straub and non-member Galle, and similar Minutes for MAIP that purportedly took place immediately thereafter from 3:35 pm until 3:55 pm. Both "Meeting Minutes" are fraudulent. Ex. 23.

207.    First, authentic Meeting Minutes of an LLC would be a secondary document and not a document establishing ownership of an LLC.

208.    Second, the Meeting Minutes are not authentic. State records establish that Ms. Fleming became the sole member of Miss America Pageant (later MAC) and of MAIP upon their formation on December 28, 2022.

209.    Third, Ms. Fleming alone had the authority to conduct a meeting. She did not conduct a meeting of either LLC on December 28, 2022. She did not choose to have a meeting with herself and record minutes of the meeting of herself speaking to herself. Nor did she authorize anyone to conduct a meeting on her behalf for either entity she just formed that day.

210.    Fourth, the self-serving .pdf document was stripped of metadata, just as the "operating agreements" described previously, which are, for the reasons set forth above, fraudulent. There is no justification for stripping metadata before producing documents in litigation. These circumstances make it more likely this document was made by Galle on or about July 17, 2024.

211.    Fifth, the timing of the disclosure of the Meeting Minutes in July 2024, after Straub had been engaged for almost five months in a concerted effort to wrest control of Miss

America from Ms. Fleming, is suspicious, especially following a 15-month period where there was no challenge to her ownership.

212.    Sixth, it is suspicious that during the first alleged "meeting" for each entity for which the Meeting Minutes relate, there was no mention in the minutes of the purported operating agreements that were purportedly signed that day.

213.    Seventh, the reason for a lack of metadata was alluded to at the hearing in July 2024, where Galle testified that his laptop was stolen in Ecuador in January 2023, conveniently just after the acquisition of Miss America by Ms. Fleming. Presumably, all his electronically-stored documents regarding the acquisition were lost at that time and explains why no documents with metadata exist, just scanned copies of paper documents in .pdf format. But if that were true, then Ms. Osle would not have been in possession of a Word document (MAC/OA#3) sent by Galle in April 2024 that was purportedly created in December 2022.

214.    Upon information and belief, the document was drafted by Galle at the direction of Straub and at the expense of Palm Beach Polo.

215.    In sum, the Meeting Minutes presented on July 17, 2024, are fraudulent.

### *Fraudulent Documents – the False "Pledge Agreement"*
### *(Straub, Galle and Palm Beach Polo)*

216.    The second document in the production of July 17, 2024, is a **Word document** that purports to be a "**Pledge Agreement**" dated December 30, 2022. Ex. 24. It purports to be an unsigned draft agreement between Palm Beach Polo and Ms. Fleming individually. Indeed, Galle testified that Ms. Fleming did not sign it. As an unsigned agreement, it has no legal effect.

217.    First, it is an electronic Word document with no metadata. Upon information and belief, all Word documents have metadata unless intentionally removed.

218.     Second, if Galle's laptop had been stolen in Ecuador in January 2023 as he testified and he could not produce the original "operating agreements" with metadata as described above, he cannot now claim to have an electronic Word document – "the Pledge Agreement" – that dates back to December 2022. This is evidence of recent fabrication and associated stripping of metadata.

219.     Third, if the Pledge Agreement were authentic, it indicates that the "Pledgor" – Ms. Fleming – *owns membership interests* in Miss America Pageant, LLC, and MAIP, which Straub argues she does not have. Further, if it were authentic, it indicates that the "Beneficiary" – Palm Beach Polo – *only has a security interest* in those membership interests. In short, the "Pledge Agreement" is actually consistent with Ms. Fleming's ownership of Miss America, not Straub's.

220.     Fourth, the Pledge Agreement bears errors that are consistent with Galle's other cut-and-paste jobs from prior work for Straub. For example, the amount of the "Pledge" is written as: "FOUR MILLION ONE HUNDRED SIXTY THOUSAND SEVEN HUNDRED THIRTY-SIX AND 79/100 ($3,375,000.00) U.S. Dollars," where *the two amounts do not agree.* Further, it references quarterly payments, "membership interests," and a "membership certificate," none of which is consistent with the provisions in the Note.

221.     Upon information and belief, the document was drafted by Galle at the direction of Straub and at the expense of Palm Beach Polo.

222.     In sum, the Pledge Agreement is not authentic: it was not created in December 2022, it was stripped of metadata, and it is fraudulent. Further, it bears no signatures. It has no legal effect on the issue of ownership but is, instead, further evidence of fraud on the part of Galle and Straub.

### *Fraudulent Documents – the Falsified "Payments Spreadsheet"*
### *(Straub, Fialco, and Palm Beach Polo)*

223.     On July 12, 2024, Fialco, the comptroller for Palm Beach Polo, was deposed. She stated she has worked for Straub for 17 or 18 years. She keeps all of Straub's "corporate books" for the companies that he owns and controls in her office. She testified that she does not have any corporate books relating to Miss America in her office; Palm Beach Polo does not handle the taxes for the Miss America entities; she has never seen an employment contract for Ms. Fleming; she is not aware of any compensation paid to Ms. Fleming; she is not aware of any audit ever being performed on the Miss America entities; and Palm Beach Polo does not have access to Miss America's American Express accounts.

224.     In response to the subpoena for her deposition *duces tecum* in July 2024, Fialco brought with her a spreadsheet purporting to include all payments made on behalf of MAC by Palm Beach Polo between December 1, 2022, and December 31, 2023. Ex. 25.

225.     There are two problems with the spreadsheet. The first is that it is fraudulent, indicating that two American Express bills of legacy MAO were paid by Palm Beach Polo on December 28, 2022. This date is before the acquisition of the MAO assets. The payments were actually made by Fialco at Palm Beach Polo at the direction of Ms. Fleming on January 26, 2023, as reflected in the American Express account statements in Ex. 26.

226.     Upon information and belief, these two false entries were intended to support Straub's contention that he had made payments before the acquisition and thereby played a role in the acquisition.

227.     The second problem with the spreadsheet is certain disputed entries, which will be resolved at a later date.

228.    In sum, the spreadsheet is demonstrably fraudulent by comparing the purported dates of payment with the actual payment dates on the American Express account statements.

**MATERIAL FACTS: THREATS, INTIMIDATION, EXTORTION AND DEFAMATION**

*Straub, through Galle, Requests Ms. Fleming Act as his Proxy in Litigation*

229.    On or about March 12, 2024, Straub, through Galle, sent Ms. Fleming an email attaching a draft complaint alleging a claim against the individual board members of the POA with a fill-in-the-blank for plaintiff.

230.    Straub told Ms. Fleming he would pay the expenses of the proposed lawsuit against the individual POA Board members, which he intended as a tool to unwind Straub's prior sale and lease of land to the POA. Straub pressured Ms. Fleming to serve as the plaintiff.

231.    Upon information and belief, Straub wanted to attack the individual Board members in the litigation in the hope of forcing their resignations and installing a new board willing to vacate the land sale and lease transaction. Straub already had litigation pending against the POA using Palm Beach Polo as Plaintiff. (Case No. 50-2023-CA-016225-XXXA-MB).

232.    Straub called Ms. Fleming 13 times between March 12 and March 14, 2024, to pressure her to serve as his proxy in the lawsuit.

*Ms. Fleming Says No*

233.    On a call at 4:37 pm on March 14, 2024, Ms. Fleming advised Straub that she was declining to participate in his proxy suit.

234.    Upon information and belief, Straub was enraged by Ms. Fleming's rejection of his request to have sex in September 2022, her success in paying off the Note to Palm Beach Polo in February 2023, and her rejection of his unethical request to serve as his proxy in litigation on March 14, 2023. He had no leverage over her.

*Straub Explodes - The Threats, Intimidation, Extortion and Defamation Begin*

235.    Straub did not accept no for an answer. On a call at 10:37 am on March 15, 2024, that lasted 23 minutes, Straub threatened he was "shutting down Miss America" because "it is a waste of time" and she "cannot be controlled."

236.    Ms. Fleming will testify that Straub demanded she come to his office to discuss the lawsuit whereupon he stated to her that she was "nothing" and "a failure" and "over the hill" and that he doesn't "have time for [her] shit."

237.    Ms. Fleming advised him that she was sorry he was upset, that she understood he didn't want to be the banker anymore, and that she would start wrapping things up so he doesn't have to worry about any more money requests.

238.    Straub texted her at 9:14 pm that night, again threatening her with shutting down Miss America and stating that he had a press release ready. Ms. Fleming called Straub at 9:33 pm on a call that lasted 33 minutes where Straub again threatened to ruin her reputation, bring her children into the "public humiliation," and that he will send letters to all state directors falsely claiming she is mentally ill and has been fired unless she turns over the company to him, agrees to do whatever he says, and is completely subservient to him.

239.    Straub stated further that she has "no more chances left" unless she chooses to cooperate, and that he already has a press release drawn up to the tell the world who she is and that Ms. Fleming will be finding out the hard way how this is going to go.

240.    The next day, on March 16, 2024, Straub sent a letter to Ms. Fleming on fraudulent "Miss America Competitions, LLC" [sic] "Miss America IP, LLC" letterhead, notifying of her "Temporary Suspension and Investigation" by the two companies. The plain letterhead, which had never been seen before, misspells MAC (*i.e.,* it uses the plural), an unlikely

error if one were truly the owner of MAC. It also misspells Ms. Fleming's name in the address block ("Flemming"), again an unlikely error if one were truly the owner of a company "managed" by Ms. Fleming.

241.    The letter also states she is "commanded to produce all of the financial records of the Companies," also an unlikely request if one were truly the owner of Miss America dealing simply with a rogue manager.

242.    Later that day, Ms. Fleming met Straub, at his request, at Stallion Restaurant, at 1:30 pm. Straub demanded she turn over Miss America to him and stated he will spend whatever it takes even if it ruins Miss America even if it takes three years. He again demands total control of Miss America and her subservience.

243.    Numerous subsequent conversations with Straub featured long monologues about himself and about "Robin's Company" (in itself, an admission of Ms. Fleming's ownership) and what he wants to do with it, but allowing for Ms. Fleming to participate in some fashion.

244.    On April 9, 2024, Straub demanded that she sign a piece of paper stating that he is the owner of Miss America. She told him no and that he was the banker, not the owner. He repeated the demand on April 10 in a 67-minute call and she repeated her answer, stating it would be a fraud on MAO and all its licensees.

245.    Also on April 9, 2024, Straub gave Ms. Fleming a second "Notice of Temporary Suspension and Investigation" letter dated April 5, 2024, using the same misspelled and fraudulent letterhead, this time offering to lift her suspension upon her "acknowledging [she has] no (zero) ownership interest in the [Miss America entities]."

### *Straub Threatens to Sue Her Personally and Take Her House*

246.    On April 10, 2024, Straub threatened to sue Ms. Fleming personally and stated that she would lose her house if she continued to keep signing as CEO "for any legal situations." He threatened to seek punitive damages against her.

247.    Paradoxically, on April 11,  2024, Straub left a rambling voicemail to Ms. Fleming admitting that he had no concern if Miss America failed because he is "not associated with Miss America…."

### *Straub Threatens to Defame Her*

248.     On April 12, 2024, Ms. Fleming called Straub. On the call Straub threatens to "email all the State Directors and tell them I am stealing money from Miss America and tells me he will do everything to embarrass me that he can."

249.    On April 15, 2024, Straub gave Ms. Fleming a third letter on the same fraudulent letterhead, purportedly a "Termination Notice," directing her to return all records to Fialco within 24 hours. He did so by directing one of his employees, Doug Moshiano, to post the letter on Ms. Fleming's garage door and front door. Ex. 30.

250.    On April 16, 2024, Ms. Fleming responded in writing to Straub, rejecting his Termination Notice and his claimed interest in the Miss America entities and the Miss America assets. She reminded him he is solely the banker.

### *Straub Defames Her and Threatens Her Employee*

251.    On April 24, 2024, Straub, falsely claiming to be the Director of the Miss America entities, sent a letter to Ryan Brown, National Field Director for Miss America residing in Hawaii who has worked with Miss America for over 20 years. Straub falsely advised Mr. Brown that Ms. Fleming was "suspended for cause" and then "terminated for cause" and that Straub was

the "sole Member, sole Director, and Manager" of the Miss America entities, and "the only person to whom [Ryan Brown] should report and take direction from…."

252.    Straub also claimed that Ms. Fleming was "acting in concert" with others to "interrupt, interfere with, and cause substantial damage to the Companies' businesses." Straub then advised Mr. Brown that, if he responds to Straub, he can keep his job. If he does not, he will be a party to the lawsuit being filed against Ms. Fleming.

253.    Upon information and belief, Galle drafted the letter to Mr. Brown at Straub's direction and is compensated by Palm Beach Polo for such services.

### Straub Sues Her Personally

254.    On April 25, 2024, just nine days after she rejected the "Termination Notice," Straub initiated an action by filing a Verified Complaint in Palm Beach County Circuit Court, Case No. 2024-CA-3851 AI, wrongfully and without authority, purportedly in the names of the Miss America Competitions, LLC (again misspelling MAC as the plural form), MAIP, and IP Holding against Ms. Fleming and MASF (the "Straub Lawsuit"). The Straub lawsuit was filed by long-time Straub attorney, Larry Zink.

255.    Straub filed his lawsuit with an illegal purpose – to take possession of Miss America, property that belongs to Ms. Fleming.

256.    The lawsuit is based on the fraudulent documents of ownership drafted by Galle that are addressed herein. Because the documents are patently fraudulent as established herein, the only purpose of the Straub lawsuit was to perpetuate and complete the fraud.

### Straub Defames Her Publicly in Letters Sent to a National Audience

257.    On April 29, 2024, Straub sent a personal letter to the Miss America directors and licensees, members, and contractual partners across the country, claiming to be the owner of

Miss America. Addressees included all 51 State Directors and others with no affiliation to Miss America. Straub also caused the letter to be posted on the internet,[1] where it remains today.

258.     In this letter, Straub made various false claims including that he was the owner and operator of the "Miss America Pageant" including the "intellectual property through Miss America Competitions LLC" [sic] and MAIP, "of which I am 100% owner/member."

259.     Straub also stated, among other things, that:

> Robin Fleming was terminated from her role … after we received damaging information and conducted an extensive audit of her conduct while working with organization … Internal audits unearthed multiple abnormalities … An extensive audit revealed misuse of funds, unauthorized payments to herself which were disguised as payments to staff, and multiple further breaches of fiduciary duties.

260.     Upon information and belief, the letter was drafted by Galle at Straub's direction, and Galle's services were paid by Palm Beach Polo.

261.     None of the above was true; Ms. Fleming was not terminated; there were no concerns; there were no abnormalities; there was no audit; and there was no investigation. The claims are also cruel, because they created mistrust and confusion that harmed, not only Ms. Fleming, but the Miss America brand and mission.

262.     Straub, a vindictive con artist who has attempted to seize and exploit an organization by and for women for his own personal aggrandizement, is accusing Ms. Fleming, a woman who has embodied and championed the values of Miss America, of defrauding Miss America stakeholders and jeopardizing its noble mission. His conduct is, tellingly, antithetical to the values of the very organization he claims to own and respect.

263.     Straub also caused the April 29, 2024, letter to be published in Casino.org. Upon information and belief, as a former casino owner, Straub understood that accusations of

---

[1] https://accessglobal.media.clients.ellingtoncms.com/uploads/froala_editor/files/straub%20email.pdf

embezzlement and financial improprieties would make it difficult for Ms. Fleming to return future Miss America events to casinos, where such events were held for decades due to their large-capacity arenas, ability to provide financial underwriting, and prominent national stage for the pageant.

264.    On May 1, 2024, in response to Straub's letters, the former Chair and other Board members of MAO emailed a letter to all State Directors and Licensees stating that the entire Board voted unanimously to transfer the assets to Ms. Fleming, that Ms. Fleming was known and trusted by MAO, and that the Board had trust and confidence in Ms. Fleming's continued demonstration of leadership.

### Straub Defames Her Publicly in Zoom Calls Held Across the Nation

265.    On May 2, 2024, at 2:00 PM, Straub sent an email via press@ missamericapress.com inviting all of Miss America's contractual partners and licensees across the country to a "Zoom Q&A" concerning changes to Miss America leadership.

266.    In response to the Zoom invitation, on May 2, 2024, Attorney Stuart J. Moskovitz, as counsel for Ms. Fleming and the Miss America entities, issued a cease-and-desist letter to Straub's attorneys Zink and Galle, demanding that the "Zoom Q&A" not occur, and placing them on notice that proceeding would support a claim of tortious interference with a contract and tortious interference with a business relationship and seeking $100,000,000 in punitive damages.

267.    Further, on May 2, 2024, Attorney Collin O'Brien of Latimer Levay Fyock, LLC, intellectual property and litigation counsel for MAIP and its wholly owned subsidiary, IP Holding, sent a letter to Straub demanding that he cease and desist the use of the Trademarks that comprise a portion of the Miss America Assets purchased, owned, and controlled by Fleming

through the Miss America entities, and that the failure to comply will be viewed as willful infringement.

268.    On May 3, 2024, notwithstanding the two demand letters from attorneys threatening legal action and punitive damages of $100,000,000, Straub hosted the unauthorized "Miss America" Zoom meeting, with invitations sent across the nation to members of the press, all State Directors, licensees, and contractors and posted on the internet in public chat forums, during which he misrepresented himself to the public as the owner of the Miss America entities and the Miss America assets, willfully infringing the Miss America Trademarks, and falsely claiming and introducing Stacy Annone and Lauren Malis as the new managers of the Miss America entities and Miss America. At one point there were over 1,000 participants on the call.

269.    Upon information and belief, the Zoom calls were conducted from Straub's office at Palm Beach Polo.

270.    On the Zoom call, Straub continued to defame Ms. Fleming and create confusion and doubt regarding the Miss America entities by falsely claiming that: Ms. Fleming is not the owner of the Miss America entities; Ms. Fleming was terminated as CEO of the Miss America entities; an alleged audit revealed that Ms. Fleming had mishandled the money of the Miss America entities; Ms. Fleming changed all the passwords to the various financial accounts of the Miss America entities to block Straub from accessing them; Straub is the day-to-day operator of Miss America (not Ms. Fleming); and that Ms. Fleming was evading service of the lawsuit he initiated against her.

271.    On May 9, 2024, Straub sent a similar email invitation to Miss America's State Directors, licensees, and contractual partners, and posted on public chat forums, concerning a second unsanctioned "Miss America" Zoom meeting he intended to host. Counsel for

Ms. Fleming sent an email to Straub's counsel again demanding that Straub cease and desist from such improper actions.

272.    On May 10, 2024, notwithstanding the above demands that he cease and desist from such actions, Straub hosted a second unsanctioned "Miss America" Zoom at which he repeated defamatory remarks and reiterated harmful misrepresentations concerning Miss America and Ms. Fleming. There were approximately 45 people on the second call.

273.    The fact that Straub and his lawyer were warned twice by cease-and-desist letters from counsel threatening punitive damages yet decided to proceed twice constitutes overwhelming evidence of the malice and willfulness behind their campaign.

274.    In sum, Straub's threats and efforts to intimidate, extort, and defame Ms. Fleming following her rejections of him include a blitzkrieg of personal attacks against her directly, threats against her employee, threats against her children, defamatory public attacks intentionally made nationally and repeatedly in front of all stakeholders in MAO, and a financially ruinous lawsuit against her personally that is designed to destroy her and force Miss America into his hands or into bankruptcy.

### *Straub Threatens Ms. Fleming at the "Conciliation Conference"*

275.    On July 18, 2024, the court in Straub's Lawsuit ordered a "conciliation conference" in an effort to resolve Straub's claims without further litigation. The court set no guidelines and the conference – with no judge, mediator or arbitrator present – took place in person on July 29, 2024, without restrictions. Both Straub and Ms. Fleming attended with counsel. Notably, the parties made no agreement as to confidentiality or to any privilege regarding the conference.

276.     Straub used the opportunity to further threaten, intimidate and extort Ms. Fleming. These actions on his part constitute further criminal activity and, as such, would not be protected by any confidential agreement or assertion of privilege.

277.     During the conference Straub stated that he had one of his agents – Joseph Annone – a Wells Fargo employee – access Ms. Fleming's bank accounts, both for MASF and her personal account, without authority. Upon information and belief, Mr. Annone was recently terminated by Wells Fargo and is the husband of the woman – Stacy Annone – whom Straub has indicated would be his choice as CEO for Miss America. Straub disclosed the precise amounts of money that Ms. Fleming had in two personal accounts at Wells Fargo. The information was accurate and confirms that Straub did, in fact, employ an agent to illegally obtain private financial information of Ms. Fleming in violation of federal law.

278.     Next, Straub stated he intended to file for bankruptcy on behalf of her Miss America entities using the fraudulent operating agreements described herein and the banking information he obtained from Mr. Annone.

279.     Next, Straub admitted to hiring Chase Scott to defame Ms. Fleming and that he would direct Mr. Scott to defame Ms. Fleming in every way possible, including associating Ms. Fleming with the "Chrisley family", the husband and wife who were involved in Miss USA at the State level and were convicted and jailed for bank fraud committed several years *before* Ms. Fleming met them.

280.     Next, Straub stated he had hired private investigators to "dig up all the dirt" on Ms. Fleming and that he would send this information to all local and State Directors.

281.     Next, Straub affirmed he would shut down Miss America by defaming her and bankrupting the organization.

282.    Next, Straub stated that even if she gave him her ownership interests, he didn't care and would pursue her for $2 million in unfounded damages.

283.    In further efforts to intimidate, Straub declared himself to be Hamas and Ms. Fleming was Israel.

284.    Straub then declared himself to be Hitler.

285.    Finally, Straub also said he will be ready in two weeks to start "grooming girls" in his office with a modeling school and runway, much as he had "groomed" (or attempted to groom) Ms. Fleming.

### Straub Defames Her in Letters Sent Across the Nation

286.    On September 1, 2024, Straub sent a letter on Palm Beach Polo letterhead by email to over 65 State Executive Directors for Miss America across the nation, stating Ms. Fleming had been fired for cause, was "concealing" all passwords, and suggesting that she was shifting money "from account to account."

287.    Upon information and belief, the letter was drafted by Galle, whose services were paid for by Galle through Palm Beach Polo.

288.    On September 26, 2024, Straub sent another letter to the State Executive Directors via email, again on Palm Beach Polo letterhead, in which he claims she is unfit, careless, removed for mismanagement and misuse of funds, crafting "a wild tale of ownership," and trying to take "my Intellectual Property."

289.    Upon information and belief, this letter was also drafted by Galle, whose services were paid through Palm Beach Polo.

290.    Just weeks ago, on November 25, 2024, Straub made a post in a public forum and in an e-mail to the Executive Directors, which stated: "The defendant recently admitted in open

court that they were funding their legal defenses through Miss America including money earmarked for scholarships. This reckless practice is putting Miss America in financial and legal jeopardy and I will not allow this to destroy all that you have worked so hard to accomplish."

291.    Defendants' defamatory conduct includes frequent published articles in various publications where the defamatory statements are repeated. All told, the defamation has caused devastating harm to the Miss America brand and, by extension, Ms. Fleming as the owner and steward of that brand.

292.    The Miss America brand is monetized through licensing arrangements, which generate income to fund the Miss America scholarships, events, and other operations. Each State Director is a licensee of the Miss America brand and pays a licensing fee back to the Miss America entities. In addition, there are hundreds of local licensees under the supervision of the State Directors that, likewise, pay a licensing fee back to the Miss America entities. These licensees use the Miss America brand to raise funds for local pageants and other events promoting the Miss America brand and mission. Thus, creating confusion and mistrust among licensees, sponsors, and the general public vis-à-vis the Miss America entities results in cascading and compounding damage.

293.    For example, following Straub's defamatory statements, multiple State Directors and the entire Miss America board in one state parted ways with the Miss America entities. Setting aside the expense associated with replacing these grassroots agents, the result of their departure is that robust fundraising activities for local pageants and to fund the licensing fee to the Miss America entities are not occurring. Because Ms. Fleming will not allow women in these regions to suffer the consequences of this loss, the Miss America entities must now accept

nominal licensing fees and fund the pageants and other events that otherwise would usually have been funded by local licensees.

294.     Multiple paid sponsors that not only provide revenue directly, but also support the Miss America entities and their licensees in their revenue-generating activities, have also withdrawn their paid sponsorships. Other business opportunities, such as a potential arrangement with a prominent LA production company to return the Miss America competition back to television, have also vanished.

295.     In a particularly devastating blow, organizers of the iconic Macy's Thanksgiving parade withdrew their invitation to have Miss America participate in the parade this year (2024), which has been a yearly tradition since the 1940s. While the Miss America entities do not receive payment for Miss America's participation in the Thanksgiving parade, the lost opportunity to showcase Miss America to millions of television viewers is an incalculable loss.

296.     As a result of Defendants' defamatory conduct, those who once invested their time, money, and passions into the Miss America program, or partnered with the Miss America brand to achieve symbiotic returns, have either lost faith in Ms. Fleming to safeguard their investment or withdrawn their investment to avoid enriching Straub, the antithesis of what Miss America stands for. Whatever the reasoning, the result is the same: Miss America and Ms. Fleming have, and are currently, suffering extraordinary injury due to the defamatory conduct of Straub.

## MATERIAL FACTS: TRADEMARK VIOLATIONS

297.     At all relevant times, IP Holding (aka MAO IP Holding Company, LLC) has owned and held the Trademarks of Miss America. MAIP now holds all of the membership

interests in IP Holding, pursuant to the Membership Interest Assignment of December 30, 2022. As such, Ms. Fleming, through MAIP, owns the Miss America Trademarks.

298.     The Miss America Trademarks include multiple live registrations of "Miss America" trademarks. They include Serial No. 71693423, first registered in 1956 for the Mark "Miss America," for the "PROMOTION OF EDUCATION THROUGH THE GRANTING OF SCHOLARSHIPS, THE RECIPIENTS BEING SELECTED IN LOCAL, STATE, AND NATIONAL CONTESTS, BASED ON SUCH FACTORS AS BEAUTY, PERSONALITY AND TALENT." Ex. 27

299.     On May 2, 2024, Straub sent an invitation via email using the domain name <press@missamericapress.com for a "Miss America Live Zoom" conference to be held on May 3, 2024, to Miss America's contractual partners and licensees across the country. Ex. 28.

300.     Straub created the domain name with an outside vendor, Jeremy Ables of JC Productions, which is identical or confusingly similar to the Miss America mark (<xxx@missamerica.org>), with the bad faith intent to profit from its use.

301.     A series of text messages on April 29, 2024, and May 2, 2024, between Straub and Ables show that Straub used Ables to create the domain name to be used for the Zoom invitations and that Straub forwarded the invitation to Ables.

302.     Upon information and belief, creation of the domain was part of Straub's fraudulent scheme to wrest control of Miss America from Ms. Fleming by making it appear that his email was from the true owner of Miss America. Ms. Fleming never approved, either personally or on behalf of the Miss America entities, the use of this domain.

303.    The invitation also features the logo "Miss America" in large font as the header and falsely references Straub's "ownership of the Miss America Competitions, LLC, [sic] Miss America IP, LLC & MAO IP Holding Company, LLC."

304.    The invitation also states that Straub will be answering questions pertaining to the future of the Miss America program under his leadership.

305.    As set forth above, attorney Collin O'Brien, sent a letter to Straub on May 2, 2024, via email demanding that he cease and desist the use of the Trademarks that comprise a portion of the Miss America assets purchased, owned, and controlled by Ms. Fleming through the Ms. America entities.

306.    Notwithstanding the objections raised by attorneys, on May 3, 2024, Straub hosted the "Miss America" Zoom meeting during which he misrepresented himself to stakeholders across the country as the owner of the Miss America entities and the Miss America assets, and misusing the Trademarks of Miss America.

307.    On May 7, 2024, Straub, through his counsel, then made unauthorized efforts to change the registration of the Trademarks with the Federal Trademark System, without Ms. Fleming's knowledge or consent, evidenced, in part, by the documents attached as Exhibit 27.

308.    On May 9, 2024, Straub sent a similar email invitation to Miss America's licensees and contractual partners across the country concerning a second unsanctioned "Miss America" Zoom meeting he intended to host. Counsel to Ms. Fleming issued an email demand to Straub's counsel again demanding that Straub cease and desist from such improper actions.

309.    On May 10, 2024, despite the various written demands that Straub cease and desist from such actions, he hosted the second unsanctioned "Miss America" Zoom at which he

reiterated harmful misrepresentations concerning Miss America and Ms. Fleming, again misusing the Trademarks in so doing.

310.    Straub used email and the internet to host the Zoom calls with participants across the country.

311.    Upon information and belief, Straub used his office at Palm Beach Polo to conduct the Zoom calls.

312.    Straub's misuse of the Miss America registered mark – a nationally famous, iconic trademark used in interstate commerce since 1956 – was likely to cause confusion or mistake and was made with the specific intent to deceive and wrongfully profit from the commercial use of the trademark.

313.    The above misconduct by Straub constitutes trademark infringement, unfair competition, trademark dilution, and cyberpiracy.

**MATERIAL FACTS: THE RICO CLAIMS**

***The Enterprise***

314.    An enterprise, for purposes of the federal RICO Act, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Florida's RICO statute, (Fla. Stat. §§ 895.01 *et seq.*) uses a similar definition. (§ 895.02(5)).

315.    Upon information and belief, Galle worked for Straub for 27 years or more as his attorney and, at all relevant times herein, as his agent. Here, Straub and Galle worked together to defraud and extort Ms. Fleming and the Miss America entities.

316.    For example, all on behalf of Straub, Galle obtained the false EIN, whited-out the IRS response, drafted the Promissory Note with accelerated terms and greatly reduced loan

amount, sent the proxy complaint to Ms. Fleming, participated in Straub's malicious lawsuit brought against her (even testifying for Straub), and drafted multiple fraudulent documents seemingly on demand, including fraudulent operating agreements, meeting minutes, a pledge agreement, and multiple letters on fraudulent letterhead. Shockingly, during much of this time he was also acting as attorney for Ms. Fleming.

317.    Given that Straub, according to his own testimony, doesn't use computers, Galle's role is integral to the fraudulent scheme here. Straub could not have done it without Galle.

318.    Palm Beach Polo is used throughout the scheme. It is Straub's solely owned entity that serves as the financial conduit between Straub and Galle; *e.g.,* Straub pays Galle through Palm Beach Polo to perform the above "services," and it was also the conduit to fund the Promissory Note for the Miss America entities and for certain other expenses of the entities. Straub also uses Palm Beach Polo as his alter ego in the lawsuit he is pursuing against board members of the POA as well as in lawsuits against numerous women he has dated who say no to him (he has also used other solely owned entities for the same purpose). Palm Beach Polo is intertwined with Straub and Galle. It is also Straub's alter ego and means by which he conceals his identity.

319.    Thus, Straub, Galle, and Palm Beach Polo constitute an "Enterprise" for purposes of federal and state RICO violations.

### *Federal Racketeering Activity*

320.    Racketeering activity, for purposes of the federal RICO Act, means any of a number of prohibited acts, including wire fraud (18 U.S.C. § 1343), tampering with or retaliating against a witness or victim (§§ 1512-13), or interference with commerce, robbery, or extortion (§ 1951).

321.    Wire fraud under section 1343 requires "(1) the intentional participation in a scheme to defraud and (2) the use of the interstate wires in furtherance of the scheme." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). The second element of wire fraud contains two sub-elements: (1) communications need to use interstate wires and (2) communications need to further the fraudulent scheme. The Eleventh Circuit Court of Appeals has held that wire fraud applies to communications made over the telecommunications network, even if the communications were local. *United States v. Jasen*, 693 F. App'x 801, 803 (11th Cir. 2017).

322.    Extortion under section 1951 "contains two elements:  (1) extortion, and (2) interference with interstate commerce." *United States v. Bornscheuer*, 563 F.3d 1228, 1236 (11th Cir. 2009).

323.    Extortion includes "fear of economic loss as well as fear of physical violence." *Bornscheuer*, 563 F.3d at 1236 (11th Cir. 2009) (quoting *United States v. Grassi*, 783 F.2d 1572, 1577 (11th Cir.1986)).

324.    A pattern of racketeering activity, for purposes of federal RICO, "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5).

### *State Racketeering Activity*

325.    Racketeering activity, for purposes of the Florida RICO Act (Fla. Stat. §§ 895.01 *et seq.*), means "to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit" any of a number of prohibited acts that are chargeable as crimes under certain Florida statutes, including fraud generally (Ch. 817), communications fraud

(Ch. 817.034), forgery (Ch. 831), tampering with or harassing or retaliating against a victim (Ch. 914.22 and 914.23), extortion (Ch. 836.05), and any conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1).

326.    State extortion claims are determined by the federal definition of extortion under the Hobbs Act (18 U.S.C. § 1951), *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 n.2 (11th Cir. 2004), but state extortion claims do not require interference with interstate commerce.

327.    A pattern of racketeering activity under Florida law requires at least two incidents of racketeering conduct within five years. Fla. Stat. § 895.02(7).

328.    Reviewing the predicate acts cited below show that Straub and Galle, using Palm Beach Polo or another solely owned entity of Straub, have engaged in a pattern of racketeering activity under both federal and state RICO laws.

### *RICO Predicate Case #1: "JN"[2]*

329.    In March 2017, Straub, through Palm Beach Polo, sued his ex-girlfriend, JN, to foreclose fraudulent liens on her property in Palm Beach County Circuit Court (Case 50-2017-CA-003219-XXXX-MB). Galle represented Palm Beach Polo in this action, which ultimately gave rise to a criminal case against Straub for fabricating the liens he sought to foreclose, in Palm Beach County Circuit Court (Case 50-2020-CF-000527-AXXX-MB). Galle drafted the fraudulent liens for the civil action.

330.    Evidence from the criminal case includes police transcripts of controlled phone calls between Straub and JN, after he had filed false liens on her house, putting her house in foreclosure, wherein Straub does not deny that he put his hands around her neck and threatened

---

[2] Each of the individual women who were targeted by Straub have been anonymized for purposes of the Amended Complaint.

to kill her and then admitted the liens were simply part of his plan to keep her from selling her house and leaving him. Ex. 29, pp. 31-38.

331.     In short, Straub was extorting her with threats of physical violence and severe economic harm to force her to stay with him, using Galle to file the false liens on her property.

332.     Upon information and belief, law enforcement testimony will establish that, during a controlled telephone call between JN and Straub, with a Palm Beach Sheriff's Office detective on the line, beginning at 9:33 am on April 14, 2017, Straub admitted that he "devised a plan" to use false liens created by Galle to keep JN from moving away from him; in filing the liens he let his "boys take care of things like they have for 27 years down here"; he bankrupted [SS], a former girlfriend ("I bankrupted her, honey"); that "this is not gonna to end unless one of us dies;" and that he would attempt to ruin her business to keep her with him.

333.     Following Straub's threat to ruin her business, JN told Straub it was "fucking twisted" to which Straub replied "Sorry…I know…It's sick… That's what I am. I know but I am that – I need to win."

334.     Thus, the subject Enterprise (Straub, Galle, and Palm Beach Polo) was engaged in racketeering activity in 2017 as defined by 18 U.S.C. §§ 1961 and 1951(b)(2) and Fla. Stat. §§ 895.02 and 836.05 in extorting JN using threats of physical harm and severe economic loss – the illegitimate foreclosure on her home and the destruction of her business – to gain Straub's objective, either (or both) the illegitimate acquisition of her property or the unlawful and detestable surrender of her freedom to live where, how, and with whom she wished. The false documents – the fake liens drafted by Galle – were a key tool used by the Enterprise.

335.    Notwithstanding all of the above, JN chose to fight, and the criminal matter against Straub for filing false liens and grand theft is still pending in State court. Straub, in fact, is out on bond.

336.    Straub then sued JN and her friend, CC, in January 2019 for invasion of privacy and conspiracy in Palm Beach County Circuit Court regarding the recording of a similar Straub phone call made prior to the Sheriff's office controlled call above. (Case 50-2019-CA-001140XXXX-MB). Mr. Zink represented Straub in the lawsuit, which the court dismissed by summary judgment. Upon appeal, summary judgment was affirmed.

### *RICO Predicate Case # 2: OL*

337.    In 2019, OL, a 31-year-old resident of Connecticut, met Straub, who encouraged her to come to Florida to interview for a well-paying position at Palm Beach Polo. *See* Case No. 9:21-cv-80842-RAR (S.D. Fla. May 10, 2021).

338.    When OL came to Florida in January 2020 to interview for the position, Straub explained to her that "sexual relations would constitute part of any arrangement for [OL] to work for Palm Beach Polo." (Compl. ¶ 13). He later attempted to have sex with her in the apartment he had offered for her use during her stay. She refused. (*Id*. ¶¶ 19-24).

339.    She refused the offer and asked to be reimbursed for her travel expenses. Straub sent her a check for $1,000 purportedly as partial reimbursement of her travel expenses, but the back of the check stated that "negotiation of this check shall act as a full release of all claims and liabilities."

340.    OL chose not to sign it. Instead, in May 2021, she brought suit in federal court alleging federal and state sexual discrimination and retaliation claims against Palm Beach Polo. Palm Beach Polo was represented by Zink.

341.     In addition to violating federal and state sexual discrimination and retaliation laws, OL alleges that Straub and Palm Beach Polo violated Fla Stat. 838.15 (commercial bribe receiving) by soliciting a benefit (sex) in violation of the duties of an employer and officer of the company (Palm Beach Polo), which is a third-degree felony in Florida, punishable by imprisonment for more than one year. As such, it constitutes a prohibited act under 28 U.S.C. §1961(1) and a predicate for federal RICO purposes. It also constitutes a violation of Florida's RICO statute, Fla. Stat. § 895.02, as a prohibited act under Fla. Stat. §796.07 (soliciting prostitution) and, hence, a predicate for state RICO purposes.

### *RICO Predicate Case # 3: KW*

342.     The following evidence will be presented at trial.

343.     In November 2022, KW was a 38-year-old bartender at the Stallion Restaurant.

344.     Straub told her he was in the process of purchasing the Miss America Pageant and that she would be "perfect to compete." Straub offered her his phone number and she threw it in the trash.

345.     On or about January 31, 2023, KW was having dinner at the restaurant when she was approached by Straub, who told her (falsely) he had "just become the owner of Miss America." He told her he was starting a "women's empowerment movement" and that she could be the leader, voice, and face of the movement. He then suggested she could work with the Miss America organization as a Vice-President.

346.     Straub, under the ruse that KW could meet Ms. Fleming at lunch to discuss employment with Miss America, instead had his driver take her to his yacht where he began to offer opportunities to her "for you and your family's future…Just see what GOD Laid out for you." Ms. Fleming was not invited to the lunch.

347.    Straub began harassing KW with texts and voicemails and stalking her at her house to induce her to enter into a personal relationship with him, at one point offering her $250,000 to quit her job and work for Miss America.

348.    She refused his requests and did not return his voicemails or texts, some of which indicated he was aware of when she was at work and when a car was in her driveway at her home.

349.    On February 15, 2023, Straub sent her, by email, an "Independent Contractor Agreement" that featured her name as the "Contractor" and Bentley Trader – another Straub solely owned entity created by Galle – as the "Company" that sets forth a contract for Straub's "personal assistance and emotion [sic] support companion services for the Company's Principal" in return for $5,000 per month "provided that the Scope of Services has been adequately performed …as determined by the Principal of the Company in his sole and absolute discretion." Pay would increase to $5,000 per week if she ceased working her other jobs. Strobe specifically told her that "companion services" meant sexual intercourse. She said no, calling it an agreement to be a prostitute.

350.    Straub refused to take no for an answer and continued to harass and barrage her with text messages. He would speak to her at the restaurant while she worked because she would not take his calls or respond to his texts.

351.    To avoid Straub's advances, she repeatedly used her dog as an excuse to avoid being in his presence. He complained to her that the dog interfered with "their time together." She overheard Straub tell his assistant, Michael Presicowski, that they needed to "get rid of the dog."

352.     Next, Straub and his lawyer engaged in a scheme to have the dog euthanized by surreptitiously releasing the dog from her yard into the community followed by an anonymous report submitted by Straub's attorney to Animal Control that the dog was dangerous, resulting in the dog being held for ten days.

353.     Straub continued the harassment. He stalked her. Then he threatened her employment at the Stallion Restaurant when he told her he was meeting her boss, JG, one of the principal owners, and that it might affect her.

354.     Palm Beach Polo owned (or controlled) the lease to the Stallion Restaurant. Straub threatened JG to shutter the restaurant unless JG fired KW.

355.     JG allowed KW to listen to a call with Straub on speaker phone in which JG defended her. JG asked Straub why he had to fire her, as she had lost her husband and the father of her child, and this would put her "out on the street."

356.     Straub replied, "because she is spoiled" and that KW "needs correcting like you snap the back of a dog's leash when your walking down the street so they don't run away" and that she "needs to be disciplined." Straub said he would reconsider his decision to have her fired if she would sign the agreement his lawyers had drafted. Straub also told JG explicitly that the contract for KW meant oral sex and sexual intercourse.

357.     To apply greater pressure on JG, Straub had one of his lawyers draft a false "Notice of Default" dated April 5, 2023, which listed fictitious events to support allegations of default, and a false "Termination of Lease Agreement." Upon information and belief, the attorney was Galle. Straub provided these documents to JG informally to back up his threat that he and Palm Beach Polo would shut down the restaurant if KW were not fired.

358.     Ultimately, the restaurant owners fired KW.

359.    Straub texted KW immediately and offered: "there is another job out there if you want to interview for it. Call now it will not last long!" This meant signing the Independent Contractor Agreement for sex.

360.    The same day she texted him, begging him to leave her alone; that she – a single mother and her daughter – "do not feel safe."

361.    Straub did not stop.

362.    Notably, Ms. Fleming became aware of the KW contract for sex only after a copy of it was passed around during Pageant Week in 2024, generating great concern and attention between Pageant officials and stakeholders as to the integrity and purpose of the Miss America program, and great embarrassment, reputational harm, and humiliation to KW.

363.    When Ms. Fleming discovered the contract, she confronted Straub, but he denied knowing anyone by that name.

364.    The above allegations by KW indicate that the subject Enterprise (Straub, Galle, and Palm Beach Polo) was engaged in racketeering activity in 2023 as defined by 18 U.S.C. §§ 1961 and 1951(b)(2) and Fla Stat. §§ 895.02 and 836.05 in extorting KW using threats of severe economic loss – the loss of lawful employment and her livelihood – to gain Straub's objective, the unlawful surrender of her personal freedom to become his sex object. The subject enterprise also extorted JG, her employer, by threatening to shutter the restaurant if they did not terminate her. And the subject Enterprise did, in fact, cause KW's termination of employment. The false documents drafted by Galle – the fake Notice of Default and Termination of Lease – were a key tool used by the Enterprise. As such, it constitutes a predicate act for both the federal and state RICO claims.

365.     On August 2, 2024, KW filed suit against Straub, Palm Beach Polo, and Bentley

Trader in Palm Beach County Circuit Court for Tortious Interference with an Advantageous

Business Relationship and Intentional Infliction of Emotional Distress against all defendants.

(Case 50-2024-CA-007358-XXXA-MB). The case is pending.

### *RICO Predicate Case # 4: LF*

366.     In May 2023, Ms. LF, a local pageant winner, was attending the Miss Florida

USA Pageant in support of friends when she met Straub.

367.     Straub identified himself as Ms. Fleming's business partner in the Miss America

organization. He told LF that he gave Ms. Fleming the money to buy Miss America. He

discussed with LF the possibility of her competing in the Miss Florida America Competition in

June 2023.

368.     In a series of phone calls Straub offered to get her "in the top three" in the

upcoming competition and a potential job. He asked her to come to dinner on his yacht. She

turned him down. He persisted. He then offered her money to help purchase a gown for the

competition and she told him that she would not take a loan. He offered to donate the money and

told her the goal was to have her win Miss Florida.

369.     Shortly thereafter, she received a check in the mail for $5,000 from Palm Beach

Polo.

370.     Separately, one of LF's friends – a "social influencer" – posted information online

about the gift from Straub of her own accord. According to records produced by Straub's

counsel, on June 11 and 14, 2023, Galle then sent a series of emails over the internet to LF with

attached letters on fraudulent MAO letterhead wherein Galle falsely states that he is the

Corporate Counsel for MAO and asks her for information about the identity of the social

influencer ("name, telephone number and email address") … "published inaccurate information online." LF did not respond or otherwise identify her friend.

371.    In the last emailed letter, dated June 14, 2023, Galle threatens that, as "Corporate Counsel" for MAO, she will not be able to participate at the upcoming competition on June 24, 2023, if she does not provide the requested information to him by the next day.

372.    The attached letters, sent by email from Galle using his "Polo" email address (*i.e.,* the Palm Beach Polo email domain) over the internet, are fraudulent. First, they feature "Miss America Organization" letterhead when the organization was dissolved six months earlier. Second, Galle signed the documents as "Corporate Counsel" or "Corporate Lawyer" for MAO. Galle never was counsel for MAO even when MAO was active. Third, it purports to offer, on behalf of Miss America, a $5,000 hardship loan to LF. The Miss America entities do not make loans. Ex. 31.

373.    Finally, the last letter from Galle is extortionate, threatening LF with the loss of her freedom to compete and the loss of the substantial economic benefits that would likely accrue to her as a competitor and, perhaps, as the winner of the upcoming competition.

374.    Ultimately, LF did participate, but did not win.

375.    Straub then charged his $5,000 gift to LF to the Miss America entities.

376.    In July 2023, Ms. Fleming learned of Defendants' fraudulent use of the Miss America letterhead and name for Straub's personal advantage. She sent an email to Fialco to remove the $5,000 payment from the statement of amounts advanced by Palm Beach Polo for Miss America because it was not authorized by Miss America and was possibly illegal. She advised Fialco that she had spoken to Straub, he understood he is not the owner of Miss America, and she will not be assuming any responsibility for his behavior in gifting to any young women.

377.     The above indicates that the subject Enterprise (Straub, Galle, and Palm Beach Polo) was again engaged in racketeering activity in 2023 as defined by 18 U.S.C. §§ 1961 and 1343 (wire fraud) and by Fla Stat. §§ 895.02 and 817.034 (Florida Communications Fraud Act) in using the internet to convey fraudulent documents. The false documents – the letters drafted by Galle – were a key tool used by the Enterprise.

378.     Additional predicate acts may be introduced at trial.

### *Evidence from Other Prior Cases May Be Admissible Under the Rules of Evidence*

379.     In addition to the predicate acts described above, the following evidence is admissible under Fed. R. Evid. 404(b) and Fla. Stat. § 90.404 for proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident on the part of Straub and Galle with respect to the fraud claims.

380.     In 2010, the U.S. District Court for the Southern District of Florida found that Straub, through his attorney, Larry Zink (Galle was also representing Straub), engaged in a fraudulent transfer using Zink's trust account to evade creditors. *See Broward Marine, Inc. v. S/V Zeus,* No. 05-23105, 2010 WL 427496, *7 (S.D. Fla. Feb. 1, 2010) ("[h]ere, Straub clearly utilizes his entities interchangeably. Straub transfers money between his entities at will. By doing so, he attempted to defraud creditors and prevent their collection of any monies due." Further, the court found that Straub was the alter ego of his solely owned entity, Burrell Industries, Inc.). This case is particularly relevant to prove motive, opportunity, intent, identity, and absence of mistake on the part of Straub in his fraudulent actions here.

381.     In 2015, Straub was found liable for fraud under Florida Statute Sec. 726.106(2). *See National Maritime Services, Inc. v. Straub and Burrell Shipping Company, LLC,* 979 F. Supp. 2d 1322, 1329 (S.D. Fla. 2013) and *National Maritime Services, Inc. v. Straub,* 776 F.3d

783 (11ᵗʰ Cir. 2015) (affirming judgment against Straub individually). The federal district court

case involved Straub, acting in concert with two solely owned entities he created, purchasing a

maritime vessel without sufficient funds by exchanging promissory notes between his two

entities where neither entity was solvent. One of his entities – the debtor entity – then sold the

vessel and transferred the proceeds to Straub individually, without payment to National

Maritime.

382.    The debtor entity was formed with the assistance of Galle, who served as its

Corporate Secretary, and who testified at trial. In finding that the debtor entity made a fraudulent

conveyance (committed fraud), Judge Cecilia Altonaga stated:

> Straub's combative and unnecessarily repetitive and ever-shifting testimony,
> combined with his refusal to answer any questions asked of him by
> National Maritime's attorney directly, lend further support to the undersigned's
> rejection of his excuses. Straub directed where the funds were to go, and he chose
> to prefer himself over National Maritime. This was done under circumstances
> where he knew National Maritime would be prejudiced… *Id.* at 1329.

The 11ᵗʰ Circuit found the transfer to Straub, as an insider, to be a fraudulent transfer

under Fla. Stat. § 726.106(2). 776 F.3d at 788. Zink and Galle were again listed as the attorneys

for Straub.

383.    This case is particularly relevant to prove motive, opportunity, intent, identity, and

absence of mistake on the part of Straub and Galle in their fraudulent actions here, and in using a

solely owned entity as an alter ego.

384.    Additional prior frauds may be introduced at trial.

**MATERIAL FACTS: ABUSIVE LITIGATION**

385.    Straub's Lawsuit was filed in Palm Beach Circuit Court on April 25, 2024 (Case

No. 2024-CA-3851). Straub falsely asserted ownership of the Miss America entities based on the

fraudulent documents created by Galle that were only produced after Ms. Fleming rejected his request to be his proxy plaintiff, more than 15 months after her acquisition of Miss America.

386.    Further, Straub's counsel, Mr. Zink, objected to almost every production request and produced only documents with metadata stripped, an intentional act because, expert testimony will show, both .pdf and Word documents are automatically created with metadata, and it must be intentionally removed.

387.    Specifically, only one (1) document of approximately 600 that Straub's attorneys produced contained metadata, and this was obtained from the assistant comptroller at Palm Beach Polo, not the initial production from the attorneys. The stripping of metadata is a badge of fraud and evidence of an improper purpose in bringing the lawsuit. It is especially telling here where the one document not produced by his attorneys in the initial production had metadata intact and showed fraud (see MAC/OA#3).

388.    When depositions of Straub and others were noticed in the Straub Lawsuit, Straub filed, on November 22, 2024, a fraudulent Petition in Bankruptcy in United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division, abruptly staying the state court action. Straub did not have corporate authority to file the Petition for the putative Debtor – MAC – and MAC was not in financial distress. Straub relied on a fraudulent document – MAC/OA#2 – in support of his Petition. Straub was repeating his fraudulent claim of ownership but switching to the bankruptcy court to delay his deposition and the meaningful production of documents in the state court action.

389.    Filing the Petition in Bankruptcy for MAC created great chaos and confusion to participants and their families just one month before the 2025 annual Miss America Competition

to be held in Orlando, Florida at the Disney Theater. Upon information and belief, this was intentional.

390.    Regardless of the venue, for all the reasons set forth herein, Straub does not own MAC or MAIP or IP Holding. As such, the Straub Lawsuit was filed with an improper purpose – to extort, intimidate, and subject Ms. Fleming to the expenses of litigation – in order to force her to turn over Miss America to him. He has said as much. Similarly, his Petition in Bankruptcy was also filed with an improper purpose, as he has no corporate authority to file on behalf of MAC as "Debtor" and MAC is not in financial distress. In fact, on December 11, 2024, Straub filed a motion to dismiss his Petition. The blatant use of fraudulent documents in both the state and bankruptcy courts confirms his improper purpose.

391.    Finally, at one point in the Straub Lawsuit – during a court-ordered "Conciliation Conference" – Ms. Fleming was also subject to terrorizing verbal abuse and severe emotional distress as Straub screamed at her that, among other things, he was Hamas and she was Israel, and that he was Hitler.

392.    Ms. Fleming suffered economic and non-economic damages as a result of the abusive litigation.

### MATERIAL FACTS: BANKRUPTCY FRAUD

393.    On November 22, 2024, Straub filed a Petition in Bankruptcy in United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division (Case No. 24-22288 EPK). Plaintiffs here filed an Emergency Motion to Dismiss and an evidentiary hearing is scheduled for late January 2025, after the 2025 annual Miss America Competition.

394.    Upon information and belief, Straub's Petition falsely suggests that Straub owns the putative Debtor – Miss America Competition, LLC (singular) – and that MAC has financial

accounts, income and expenses, was managing the 2025 annual competition, but was in financial distress. The true owner would know that MAC had no financial accounts, no income or expenses, no role in the upcoming competition, and was not in financial distress.

395.    MAC is not owned by Straub and he is not a member of the MAC LLC. For the reasons set forth herein, only Ms. Fleming has the authority to file a Petition in Bankruptcy for MAC. Thus, Straub lacked the corporate authority to file the Petition. Indeed, Straub supported his claim to ownership of MAC in the bankruptcy petition with a single document – MAC/OA#2 – the purported operating agreement for Miss America Competitions, LLC (plural) dated December 28, 2022, that, for the reasons set forth herein, is patently fraudulent. Thus, the Petition was filed in Bad-Faith and is fraudulent. The true owner would know that MAC (singular!) was not even in existence until January 12, 2023.

396.    Further, MAC has no accounts, income or expenses, and is not in financial distress. MAIP is the entity that has the accounts, income and expenses, runs the competitions, and pays the debts (significantly, MAIP's assets now exceed its liabilities due to Ms. Fleming's stewardship over the last two years). The lack of financial distress on the part of MAC is a second basis for finding that the Petition was filed in Bad-Faith and is fraudulent. The true owner would know MAC was not in financial distress.

397.    The above arguments were made at the initial hearing in the Bankruptcy Court.

398.    On December 11, 2024, Straub filed a Motion to Dismiss his fraudulent Petition as depositions and a hearing loomed. Thus, within a span of less than three weeks he thwarted the state court depositions and proceedings by filing the bankruptcy petition (which stayed the state court proceedings) and now, in moving to dismiss the bankruptcy Petition, he thwarts the

depositions and proceedings therein. Plaintiffs herein incurred attorneys' fees in defending against the fraud in the bankruptcy court and will seek to recover all such fees in this action.

399.     For the above reasons, the fraudulent Petition is part of the larger fraudulent scheme for Straub to wrest control of Miss America or destroy it in the process. As such, Straub has violated 18 U.S.C. § 157 (Bankruptcy Fraud).

### FIRST CAUSE OF ACTION
### (Common Law Fraud – EIN Fraud)
### Against Straub, Galle, Fialco and Palm Beach Polo

400.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-4, 5-9, 17-20, 70-76, 80-84, 100-104, 116-117, 133-152 above.

401.     On or about January 2, 2023, Galle offered to obtain the EIN for MAC on behalf of Ms. Fleming.

402.     Galle submitted the request to the IRS on or about January 3, 2023, knowingly inserting the name of "Glenn F. Straub" as the "MBR" and the address of Palm Beach Polo as the business address.

403.     The information supplied to the IRS was false; Ms. Fleming was the sole member of Miss America Pageant (and MAC as of January 12, 2023) and her address was the business address for the entity.

404.     Upon information and belief, Galle, as Straub's agent, inserted the false information at the direction of Straub and was paid by Palm Beach Polo.

405.     Galle knew at the time that Straub was not the sole member of Miss America Pageant or MAC and that the address of Palm Beach Polo was not the business address of Miss America Pageant or MAC.

406.     Galle's knowing and willful insertion of Straub's name and address in the EIN request to the IRS, as agent for Straub, was a violation of IRS Code 26 U.S.C. § 7206 ("Fraud and False Statement") and constitutes common law fraud.

407.     On or about January 3, 2023, Galle provided Ms. Fleming a whited-out version of the IRS response letter assigning an EIN to MAC.

408.     Galle later testified and admitted to whiting out Straub's name.

409.     Galle whited-out the document as an agent for Straub.

410.     Galle presented the whited-out IRS letter to Ms. Fleming without disclosing that he had whited out Straub's name.

411.     Fialco, the comptroller for Palm Beach Polo, was aware of the fraud and participated in it by maintaining and concealing the false document in her files at Palm Beach Polo. Upon information and belief, she received the document through her email at Palm Beach Polo. She revealed her knowledge of its falsity when confronted by Ms. Fleming in March 2024.

412.     In knowingly and willfully presenting the whited-out document to Ms. Fleming, when Galle and Straub knew she intended to use it open an account with a U.S. bank for the payment of taxes to the IRS, Galle and Straub did so with the intention to defraud the IRS, defraud the bank, and defraud Ms. Fleming. Doing so constitutes making a false statement to a financial institution in violation of 18 U.S.C. §§ 1002, 1344, and 1014.

413.     The above conduct on the part of Straub, Galle and Fialco to materially alter the IRS document without disclosing the alteration to either Ms. Fleming or the bank to which she submitted the document also constitutes common-law fraud.

414.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**(Common Law Fraud – Fraud in Inducement)**
**Against Straub, Galle and Palm Beach Polo**

415.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-24, 26-133, 152-164 above.

416.     Straub, through his assurances and discussions with Ms. Fleming over almost a year, coupled with his repeated displays of extreme wealth and the capacity to easily fund the acquisition of Miss America, induced Ms. Fleming to reasonably believe that he would fully fund the reserve as promised.

417.     Straub knew his material representations to Ms. Fleming regarding funding were false when made and he intended Ms. Fleming to rely upon the misrepresentations so that she would acquire Miss America and its assets.

418.     Galle, as Straub's agent, also knew the representations were false but encouraged and assisted Ms. Fleming to acquire Miss America and its assets, ostensibly serving as her attorney when, in fact, he was working as agent for Straub. Galle then drafted the Note that was designed to result in her default or bankruptcy, featuring both accelerated terms and insufficient funds.

419.     Ms. Fleming relied upon these misrepresentations and would not have acquired Miss America but for the misrepresentations.

420.     As a result, Ms. Fleming and the Miss America entities have suffered damages proximately caused by Straub's and Galle's fraud in inducing her to acquire Miss America with the intent to renege on the promise of financing the $4.1M reserve over a three-year period.

421.     As such, the above conduct on the part of Straub and Galle constitutes common-law fraud in the inducement.

422.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief this Court deems just and proper.

### THIRD CAUSE OF ACTION
### (Common Law Fraud – The False MAC and MAIP Documents)
### Against Straub, Galle and Palm Beach Polo

423.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-25, 165-222 above.

424.     Florida State records indicate that Ms. Fleming was the sole member of Miss America Pageant as of December 28, 2022, then of MAC, effective January 12, 2023, through the present.

425.     Florida State records indicate that Ms. Fleming was the sole member of MAIP as of December 28, 2022, through the present.

426.     Ms. Fleming chose not to create an operating agreement for either entity nor was one required.

427.     Ms. Fleming did not authorize the drafting of an operating agreement for either entity. If she had, any such agreement would require her signature. Ms. Fleming did not sign an operating agreement for either entity.

*False MAC Operating Agreement #1*

428.    On or before April 11, 2024, Galle drafted MAC/OA#1 at the behest of Straub, who compensated him for his services through Palm Beach Polo.

429.    MAC/OA#1 was dated more than 15 months earlier, to December 28, 2022.

430.    It is fraudulent for a number of reasons, including that it was not signed by Ms. Fleming, the entity MAC did not exist until January 12, 2023, and metadata of the Word version from which it was printed (MAC/OA#3) indicates that the original was created in August 2023.

431.    Given the above, MAC/OA#1 is a printed copy of a forged document. Further, Straub and Galle acted with the specific intent to defraud the Palm Beach County Circuit Court, Ms. Fleming, and the Miss America entities by using MAC/OA#1 in the Straub Lawsuit.

*False MAC Operating Agreement #2*

432.    On April 16, 2024, Galle submitted by email to previous counsel for Ms. Fleming a second .pdf version of the operating agreement for MAC (MAC/OA#2), as if altering the first forged document would improve its pedigree.

433.    Galle did so at the behest of Straub, who compensated him for his services through Palm Beach Polo.

434.    It is fraudulent for a number of reasons, including that it was not signed by Ms. Fleming, it also bears the wrong name for the entity, and the metadata of the Word version from which it was derived (MAC/OA#3) indicates that the original was created in August 2023.

435.    Given the above, MAC/OA#2 is also a forgery. Further, Straub and Galle acted with the specific intent to defraud the Palm Beach County Circuit Court, Ms. Fleming, and the Miss America entities by using MAC/OA#2 in the Straub Lawsuit.

*False MAC Operating Agreement #3*

436.     Ms. Rina Osle testified she received a Word version of the subject operating agreement from Galle on April 11, 2024, for her to print out for Straub in preparation for his April 12 meeting with Ms. Fleming.

437.     It is fraudulent for a number of reasons, including that it was not signed by Ms. Fleming, it also bears the wrong name for the entity, and its metadata indicates that it was created in August 2023, not December 28, 2022.

438.     Galle did so at the behest of Straub, who compensated him for his services through Palm Beach Polo.

439.     Given the above, MAC/OA#3 is also a forgery, as is MAC/OA#1, which was printed from MAC/OA#3, as well as MAC/OA#2, which was a revised version of MAC/OA#1.

*False MAIP Operating Agreement*

440.     On April 16, 2024, Galle also provided a purported operating agreement for MAIP (MAIP/OA) on the same .pdf that contained MAC/OA#2. Like MAC/OA#2, MAIP/OA was stripped of metadata.

441.     Upon information and belief, the document was drafted by Galle at the behest of Straub and the expense of Palm Beach Polo.

442.     It is fraudulent for a number of reasons, including that it was not signed by Ms. Fleming, and that it is substantively identical to the fraudulent MAC operating agreements, which original was created in August 2023.

443.     Given the above, MAIP/OA is also a forgery.

444.    Further, Straub and Galle acted with the specific intent to defraud the Palm Beach County Circuit Court, Ms. Fleming, and the Miss America entities by presenting MAIP/OA as if it were created on December 28, 2022.

445.    As such, the above conduct on the part of Straub and Galle constitutes criminal violations of Florida Stat. § 831.01 (Uttering forged instruments) and common-law fraud by Straub and Galle.

### *False Meeting Minutes*

446.    On July 17, 2024, Mr. Zink sent two documents received from Galle by email to Ms. Fleming's counsel.

447.    The first document consists of purported "Minutes of Initial Meeting of the Member and Director of Miss America Pageant, LLC," that purportedly took place on December 30, 2022, between Straub and non-member Galle, and similar Minutes for a MAIP meeting that purportedly took place immediately thereafter.

448.    Ms. Fleming did not authorize or conduct any meetings for Miss America Pageant or MAIP on December 30, 2022.

449.    The Minutes are fraudulent for several reasons, including that they are not signed by Ms. Fleming, were produced 18 months after the purported dates of such meetings on the day of the hearing, and are stripped of metadata.

450.    Upon information and belief, the documents were drafted by Galle at the behest of Straub and at the expense of Palm Beach Polo.

451.    Given the above, the Minutes are also forgeries.

452.     Further, Straub and Galle acted with the specific intent to defraud the Palm Beach County Circuit Court, Ms. Fleming, and the Miss America entities by presenting the Minutes as if they were authentic minutes of meetings that took place on December 30, 2022.

453.     As such, the above conduct on the part of Straub and Galle constitutes criminal violations of Florida Stat. § 831.01 (Uttering forged instruments) and common-law fraud by Straub and Galle.

### *False Pledge Agreement*

454.     The second document in the production of July 17, 2024, is a Word document that purports to be a "Pledge Agreement" dated December 30, 2022, between Palm Beach Polo and Ms. Fleming individually.

455.     The agreement is not signed and has no legal effect.

456.     The Pledge Agreement is fraudulent for many reasons, including that it had never been seen by Ms. Fleming prior to July 17, 2024; she did not sign it; and, although in electronic form (a Word document), it has been stripped of metadata.

457.     Given the above, the Pledge Agreement is also a forgery.

458.     Upon information and belief, the document was drafted by Galle at the behest of Straub and at the expense of Palm Beach Polo.

459.     In so doing, Straub and Galle acted with the specific intent to defraud the Court, Ms. Fleming and the Miss America entities.

460.      As such, the above conduct on the part of Straub and Galle constitutes a criminal violation of Florida Stat. § 831.01 (Uttering forged instruments), and common-law fraud by Straub and Galle.

461.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (Common Law Fraud – the False Payments Spreadsheet)
### Against Straub, Galle, Fialco and Palm Beach Polo

462.    Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-25, 223-228 above.

463.    At all relevant times herein, Fialco was the comptroller for Palm Beach Polo. She handled the accounting and finances for Straub and Palm Beach Polo.

464.    Fialco testified at a hearing in the Straub Lawsuit. She brought with her a spreadsheet purporting to include all payments made on behalf of Miss America by Palm Beach Polo between December 1, 2022, and December 31, 2023.

465.    The spreadsheet has at least two material fraudulent entries. The spreadsheet indicates that two separate American Express account bills of legacy MAO were paid by Palm Beach Polo on December 28, 2022.

466.    This date is before the acquisition of the MAO assets. The payments were actually made on January 26, 2023, as reflected in the American Express account statements, and were paid at the direction of Ms. Fleming.

467.    Upon information and belief, these two false entries were intended to support Straub's and Fialco's contention that Palm Beach Polo had made payments before the acquisition and thereby played a role in the acquisition.

468.    The material misrepresentations on the spreadsheet, including the import of such misrepresentations to the issue of ownership, and the specific dates of the misrepresentations –

purported payments on the precise day that MAIP came into existence yet two days before the acquisition of Miss America – indicate the specific intent to defraud the court, Ms. Fleming, and the Miss America entities.

469.     As such, the above conduct on the part of Straub, Fialco, and Palm Beach Polo constitute common-law fraud by Straub, Fialco and Palm Beach Polo.

470.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief this Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**(Civil Conspiracy)**
**Against Straub, Galle and Fialco**

471.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-25, 133-228 (paragraphs 133-152 for Straub and Galle, and 223-228 for Fialco) above.

472.     Straub, Galle and Fialco conspired together to commit unlawful acts against Ms. Fleming and the Ms. America entities. Each agreed to participate in the conspiracy, and each agreed to the overall objective of the conspiracy – to steal Miss America from Ms. Fleming.

473.     Straub and Galle were most active, engaging in the majority of the unlawful acts, including numerous unlawful acts of fraud and extortion as described herein.

474.      Fialco was aware of the scheme and assisted as the Palm Beach comptroller with respect to the EIN fraud and the falsified payments spreadsheet.

475.     As a direct and proximate result of these acts committed in furtherance of the conspiracy, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

476.     As such, the above conduct on the part of Straub, Galle and Fialco constitutes civil conspiracy.

477.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief this Court deems just and proper.

### SIXTH CAUSE OF ACTION
### (Federal Trademark Violations – 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1120)
### Against Straub, Galle and Palm Beach Polo

478.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 2, 4-25, 70, 73-80, 87-90, 94-99, 265-274, and 297-313 above.

479.     As set forth above, Ms. Fleming owns 100% of the member interests of MAIP, the sole member of IP Holding. As such, Ms. Fleming, through MAIP, owns the Miss America Trademarks held by IP Holding.

480.     The Miss America Trademarks include the mark, "Miss America," owned by IP Holding since 1956.

481.     On May 2, 2024, Straub sent an invitation via email for a "Miss America Live Zoom" conference to be held on May 3, 2024, to Miss America's contractual partners and licensees across the country.

482.     Upon information and belief, the document was drafted by Galle at the behest of Straub and at the expense of Palm Beach Polo.

483.     The emailed invitation features the logo "Miss America" in large font as the header and falsely references therein Straub's "ownership" of the Miss America entities.

484.     On May 3, 2024, notwithstanding demands from counsel for the Miss America entities and IP counsel for MAIP to Straub's attorneys (Zink and Galle), Straub conducted the

Zoom call from his office at Palm Beach Polo with participants from across the country as if he were the owner of the Miss America entities with the rights to the trademark. There were approximately 1,000 participants on the call at one point.

485.    On May 7, 2024, Straub made unauthorized efforts to change the registration of the Trademarks with the Federal Trademark System, without Ms. Fleming's knowledge or consent, by directing attorney his attorney to submit the request to the U.S. Patent and Trademark Office on behalf of Straub. Straub's attorney attempted to revoke the power of attorney currently of record and replace the attorney with himself, naming Straub as "Member" and "Owner/Holder."

486.    The representation filed by Straub's attorney on behalf of Straub was fraudulent.

487.    In directing the attorney to submit the fraudulent representation, Straub acted willfully and knowingly in an effort to further his fraudulent scheme.

488.    On May 9, 2024, Straub sent a second email invitation using the "Miss America" logo to Miss America's licensees and contractual partners across the country concerning a second unsanctioned "Miss America" Zoom meeting he intended to host.

489.    Again, counsel for the Miss America entities demanded of Straub's counsel (Zink) that Straub cease and desist from such improper actions.

490.    On May 10, 2024, Straub conducted a second Zoom call with participants from across the country as if he were the owner of the Miss America entities with the rights to the trademark. There were approximately 40 participants on the call.

491.    In so doing, Straub demonstrated specific intent, knowledge, and willfulness in using a counterfeit of the Miss America logo that he knew he was not authorized to use and which was intended to cause confusion or mistake, or to deceive.

492.    In so doing, Straub caused loss of profits, damages, and costs to Plaintiffs, as well as attorneys' fees.

493.    The above conduct on the part of Straub, Galle and Palm Beach Polo constitutes trademark infringement, unfair competition, and trademark dilution under 15 U.S.C. § 1114 *et seq.* and fraudulent registration under 15 U.S.C. § 1120.

494.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to injunctive relief, recovery of profits, treble damages, costs, and attorneys' fees available under 15 U.S.C. § 1117.

**SEVENTH CAUSE OF ACTION**
**(Filing False Documents (Fla. Stat. § 817.535))**
**Against Straub, Galle and Palm Beach Polo**

495.    Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-25, 70-82, 94-107, 165-204 above.

496.    Under Fla. Stat. § 817.535(2), "[a] person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree… A person who violates [this] a second or subsequent time commits a felony of the second degree…"

497.    Under Fla. Stat. § 817.535(8)(a), "[a]ny person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action…without regard to whether criminal charges are pursued…"

498.    On April 16, 2024, and May 20, 2024, Straub, with the assistance of Galle and Palm Beach Polo, attempted to file and did file unauthorized corporate documents in the official records of the Florida Department of State, Division of Corporations, attempting to change the

ownership and control of the Miss America entities without justification or authority; namely, Straub directed Galle to file false Articles of Amendment for MAIP on April 16, 2024, and false Articles of Amendment for MAC on May 20, 2024.

499.     These articles of amendment were false because they were not authorized by Ms. Fleming and falsely asserted Straub was the manager of the entities.

500.     Straub's unauthorized filings concerning the Miss America entities and IP Holding constitute a violation of Fla. Stat. § 817.535 and have caused Plaintiffs to suffer actual damages.

501.     Upon finding a materially false, fictitious, or fraudulent statement or representation in the instrument does not establish a legitimate property interest in favor of Straub, "[t]he court shall determine whether the entire instrument or certain parts… are null and void ab initio, and may order the instrument sealed… and removed from any electronic database[, and] enjoin the defendant who filed the instrument or who directed the filer… from filing or directing a person to file an instrument in the official records without prior… approval… by [the] judge…." Fla. Stat. § 817.535(8)(b)(1).

502.     "Upon a finding of intent to defraud or harass, the court or jury shall award actual damages and punitive damages, subject to the criteria in § 768.72, to the person adversely affected by the instrument." Fla. Stat. § 817.535(8)(b)(2).

503.     "The court may grant such other relief or remedy [it] determines is just and proper within its sound judicial discretion." Fla. Stat. § 817.535(8)(b)(3).

504.     "The prevailing party in such a suit is entitled to recover costs and reasonable attorney fees." Fla. Stat. § 817.535(8)(c).

505.     Straub's and Galle's filings, through Palm Beach Polo, were knowingly and

materially false, fictitious, or fraudulent statements, filed with the intent to defraud and harass Plaintiffs.

506.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief this Court deems just and proper.

### EIGHTH CAUSE OF ACTION
### (Declaratory Judgment -- 28 U.S.C. §§ 2201 and 2202)
### Against Straub, Galle, and Palm Beach Polo

507.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 2-132, and 165-228 above.

508.     There is an actual case in controversy between Plaintiffs and Defendants regarding ownership of MAC and MAIP and the Miss America assets held by those entities, which include tangible, personal property assets and intellectual property assets which, in turn, include the Miss America Trademarks.

509.     State records indicate that Ms. Fleming is the sole member of both MAC and MAIP and that those entities own all of the assets of Miss America as of December 30, 2022. As such, Ms. Fleming, through those entities, owns Miss America, its assets, and the Trademarks.

510.     Defendants have no rights of ownership of any of the Miss America entities or to any of the Miss America assets described above.

511.     Defendants have no right to use any of the Trademarks or any Trademarks relating to Miss America.

512.      Accordingly, Plaintiffs request a judgment pursuant to the Declaratory Judgment Act, §§ 2201 and 2202, declaring that Defendants have no rights of ownership to the Miss America entities or their assets and no right to use of any of the Trademarks.

## NINTH CAUSE OF ACTION
### Against Galle
### (Breach of Fiduciary Duty)

513.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-132, 133-228, 229-232, 240, 245, 249, 251-256, 265-66, 287-289, and 314-377 above.

514.     Upon information and belief, Galle is an attorney licensed in Florida.

515.     By his actions described herein, Ms. Fleming reasonably understood that an attorney-client relationship existed between her and Galle prior to and after her acquisition of Miss America. Under Florida law, an attorney-client relationship existed when she requested his legal assistance and he provided legal assistance between no later than December 2022 and March 2023, when Galle turned over his files to attorney Anthony Barbuto.

516.     Galle exchanged more than 500 emails with Ms. Fleming during this period providing legal advice and drafting, revising, and submitting legal documents on her behalf. In letters to creditors and to LF he identified himself as counsel for Miss America.

517.     Attorneys have a fiduciary duty to their clients that includes a duty of loyalty.

518.     While Galle was representing Ms. Fleming and the Miss America entities, he was secretly working with Straub in a civil conspiracy to defraud her of the very assets she herself was acquiring with Galle's legal assistance.

519.     Following her acquisition, Galle, at Straub's direction, submitted a false EIN request to the IRS and whited-out Straub's name when delivering it to Ms. Fleming. He then crafted multiple false and fraudulent documents to further their scheme.

520.     Galle never disclosed his conflict of interest in working for Straub and against her best interests.

521.    This violation of Galle's duty of loyalty constitutes a breach of fiduciary duty and violations of the Florida Rules of Professional Conduct, Ch. 4, Rule 4-1.2 (assisting a client (Straub) engage in criminal or fraudulent conduct), 4-1.4 (withholding information from client (Ms. Fleming)), Rule 4-1.7 (conflict of interest/violation of duty of loyalty), 4-1.8 (entering into a business transaction with a client and then acquiring an interest adverse to the client), and 4-1.10 (conflict of interest in now assisting Straub).

522.    As a direct and proximate result of this breach, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this campaign.

523.    Accordingly, by virtue of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, together with interest and costs, and any other relief this Court deems just and proper.

**TENTH CAUSE OF ACTION**
**(Federal Cyberpiracy – 15 U.S.C. § 1125(d))**
**Against Straub**

524.    Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 2, 4-25, 99, 104, 116-132, 297-313 above.

525.    Straub used a domain name (<press@missamericapress.com>) that he created with an outside vendor that is identical or confusingly similar to the Miss America mark (<xxx@missamerica.org>) and was created with a bad faith intent to profit from its use.

526.    Ms. Fleming never approved, either personally or on behalf of the Miss America entities, the use of this domain.

527.    Straub had no legitimate purpose to the use of such domain other than to confuse or deceive Miss America licensees and contractors.

528.     In so doing, Straub caused loss of profits, damages, and costs to Plaintiffs, as well as attorneys' fees.

529.     The above conduct on the part of Straub constitutes federal cyberpiracy under 15 U.S.C. § 1125(d).

530.     Accordingly, by virtue of the foregoing, Plaintiffs are entitled to injunctive relief, recovery of profits, damages and costs, and attorneys' fees available under 15 U.S.C. § 1117.

## ELEVENTH CAUSE OF ACTION
### (Violation of Federal RICO, 18 U.S.C. §§ 1961-68)
### Against Straub, Galle and Palm Beach Polo

### *Extortion*

531.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 1, 4-132, 229-296, 314-320, 322-324, 329-377 above.

532.     Straub, Galle and Palm Beach Polo are an ongoing "Enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

533.     Straub and Galle have conducted and/or participated, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity consisting of repeated violations of § 1951 ("Interference with commerce, robbery, or extortion") and specifically, extortion, by using threats of physical harm or substantial economic losses against numerous women he has targeted to compel the surrender of their bodies or their property, including not only Ms. Fleming, but JN, KW, and LF, from 2017 to the present, as set forth above.

534.     These acts of extortion were and are illegal as set forth in § 1951.

535.     These acts were done with the specific intent and knowledge of Straub and Galle to extort the target to either submit to his sexual advances or turn over her property to him.

536.     These acts were done maliciously and willfully.

537.     As a direct and proximate result of these acts, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

538.     The above conduct constitutes a violation of the federal RICO statute, 18 U.S.C. §§ 1961-68.

539.     By reason of its injury and the manner in which it was caused, Plaintiffs are entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

540.     In this case, punitive damages are appropriate because Defendants acted with gross fraud, wantonness, maliciousness, and willful disregard for the rights of others. 18 U.S.C.S. § 1962.

## TWELFTH CAUSE OF ACTION
### (Violation of Federal RICO, 18 U.S.C. §§ 1961-68)
### Against Straub, Galle, and Palm Beach Polo

### *Wire Fraud*

541.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 1, 4-132, 229-296, 299-311, 314-321, 324, 337-341, and 366-377 above.

542.     Straub, Galle, and Palm Beach Polo are an ongoing "Enterprise" as that term is defined in 18 U.S.C. § 1961(4), which engages in activities that affect interstate commerce.

543.     Straub and Galle have conducted and/or participated, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity consisting of repeated violations of § 1343 ("Wire Fraud") by intentionally participating in a scheme to defraud and using interstate wires to further the scheme.

544.     Straub used the internet, emails, and Zoom calls across the nation to further his scheme and when Galle and others, at the direction of Straub, sent emails with fraudulent documents attached.

545.     For example, in 2019, Straub and Palm Beach Polo used interstate phone calls and email to lure OL to Florida.

546.     Galle also used email in 2023 to further the fraud with respect to LF by sending fraudulent documents over email to LF falsely identifying himself as counsel for MAO and threatening her disqualification from competition to force LF to disclose the identity of the social influencer who purportedly published information about Straub's "donation" to LF.

547.     All of these acts of wire fraud were and are illegal as set forth in § 1343.

548.     All of these acts of wire fraud were done with the specific intent and knowledge of Straub and Galle to further the fraud to take possession of Ms. Fleming's business.

549.     All of these acts were done maliciously and willfully.

550.     As a direct and proximate result of these acts, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this monstrous campaign.

551.     The above conduct constitutes a violation of the federal RICO statute, 18 U.S.C. §§ 1961-68.

552.     By reason of their injury and the manner in which it was caused, Plaintiffs are entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

553.     In this case, punitive damages are appropriate because Defendants acted with gross fraud, wantonness, maliciousness, and willful disregard for the rights of others. 18 U.S.C.S. § 1962.

## THIRTEENTH CAUSE OF ACTION
### (Violation of Florida RICO, Fla. Stat. §§ 895.01 *et seq.*)
### Against Straub, Galle, and Palm Beach Polo

### *Extortion*

554.    Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-132, 229-296, 314-319, 325-377 above.

555.    Straub, Galle, and Palm Beach Polo are an ongoing "Enterprise" as that term is defined in Fla. Stat. § 895.02(5).

556.    Straub and Galle have conducted and/or participated, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity consisting of repeated violations of Ch. 836.05 ("Extortion") as set forth above. As under the federal statute, it includes the activity here, using threats of physical harm or substantial economic losses against numerous women that Straub targeted to compel the surrender of their bodies or their property, including not only Ms. Fleming, but JN, KW, and LF, from 2017 to the present, as set forth above.

557.    All of these acts of extortion were and are illegal as set forth in Ch. 836.05.

558.    All of these acts were done with the specific intent and knowledge of Straub and Galle to extort the target to either submit to sexual advances or turn over their property to him.

559.    All of these acts were done maliciously and willfully.

560.    As a direct and proximate result of these acts, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this campaign.

561.    The above conduct constitutes a violation of the Florida RICO statute, Fla. Stat. §§ 895.01 *et seq.*

562.     By reason of its injury and the manner in which it was caused, Plaintiffs are entitled to treble damages, costs and reasonable attorneys' fees pursuant to Fla. Stat. §§ 895.01 *et seq.* and § 772.104.

563.      In this case, punitive damages are appropriate because Defendants acted with gross fraud, wantonness, maliciousness, and willful disregard for the rights of others. *See* Fla. Stat. § 768.72.

### FOURTEENTH CAUSE OF ACTION
### (Violation of Florida RICO, Fla. Stat. §§ 895.01 *et seq.*)
### Against Straub, Galle, and Palm Beach Polo

### *Wire Fraud*

564.     Plaintiffs incorporate, as though fully set forth herein, the allegations set forth in paragraphs 3-132, 229-296, 299-311, 314-319, 325-328, 337-341, and 366-377 above.

565.     Straub, Galle, and Palm Beach Polo are an ongoing "Enterprise" as that term is defined in § 895.02(5).

566.     Straub and Galle have conducted and/or participated, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity consisting of repeated violations of Fla. Stat. § 817.034 ("Florida Communications Fraud Act") by intentionally participating in a scheme to defraud and using the internet or email to further the scheme. This was done in the instant action when Straub used the internet, emails, and Zoom calls to further his scheme and when Galle and others, at the direction of Straub, sent emails with fraudulent documents attached.

567.     Galle also used email in 2023 to further the fraud with respect to LF by sending fraudulent documents over email to LF falsely identifying himself as counsel for MAO and

threatening her disqualification from competition to force LF to disclose the identity of the social influencer who purportedly published information about Straub's "donation" to LF.

568.    All of these acts of wire fraud were and are illegal as set forth in § 817.034.

569.    All of these acts of wire fraud were done with the specific intent and knowledge of Straub and Galle to further the fraud to take possession of Ms. Fleming's business.

570.    All of these acts were done maliciously and willfully.

571.    As a direct and proximate result of these acts, Plaintiffs have suffered actual injury in their business and their property and have incurred attorneys' fees necessary to fight this campaign.

572.    The above conduct constitutes a violation of the Florida RICO statute, Fla. Stat. §§ 895.01 *et seq.*

573.    By reason of their injury and the manner in which it was caused, Plaintiffs are entitled to treble damages, costs and reasonable attorneys' fees pursuant to Fla. Stat. §§ 895.01 *et seq.* and § 772.104.

574.     In this case, punitive damages are appropriate because Defendants acted with gross fraud, wantonness, maliciousness, and willful disregard for the rights of others. *See* Fla. Stat. § 768.72.

## FIFTEENTH CAUSE OF ACTION
### Defamation and Defamation *Per Se* Against Straub and,
### as to the September 2024 Letters, Palm Beach Polo

575.    Ms. Fleming incorporates, as though fully set forth herein, the allegations set forth in paragraphs 3-132, 248-296 above.

***Straub's Letters of April 2024***

576.     On or around April 24, 2024, Straub sent a letter via email and U.S. mail to Ryan Brown, the Miss America National Field Director, who resides in Hawaii, in which he made a number of defamatory statements regarding Ms. Fleming's "termination" and her actions to "cause substantial damage" to Miss America.

577.     None of the above was true.

578.     Straub knew these statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

579.     On April 29, 2024, Straub sent a letter via email to all of Miss America's licensees across the nation and published this letter to the public in general by posting it to the Internet.[3] In this letter, Straub made a number of defamatory statements regarding Ms. Fleming's "termination," that he owned Miss America, and that Ms. Fleming engaged in fraudulent activities and breached her fiduciary duties.

580.     None of the above was true.

581.     Straub knew these statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

582.     Straub also caused the April 29, 2024, letter to be published in Casino.org.

***Straub's Zoom Calls of May 2024***

583.     On May 3, 2024, and May 10, 2024, Straub hosted two Zoom events, which were each attended by, at least, scores of individuals across the nation (over 1,000 participants were on the first call), including members of the press and multiple Miss America State Directors.

---

[3] https://accessglobal.media.clients.ellingtoncms.com/uploads/froala_editor/files/straub%20email.pdf

584.    On these calls, Straub continued to defame Ms. Fleming and create confusion and doubt regarding the Miss America entities by making false assertions that he owned Miss America, and that Ms. Fleming was terminated for cause and had engaged in a number of fraudulent activities.

585.    None of the above was true.

586.    Straub knew the defamatory statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

587.    Galle and Zink received the cease and desist letters from Plaintiffs' counsel before the Zoom calls and thus were on notice that Plaintiffs here would seek punitive damages in the amount of $100,000,000.00.

### *Straub's Letters of September 2024*

588.    On September 1, 2024, Straub sent a letter to the State Executive Directors of Miss America on Palm Beach Polo letterhead, repeating the defamatory remarks against Ms. Fleming and suggesting criminal fraud on her part.

589.     None of the above was true.

590.    Straub knew the defamatory statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

591.    On September 26, 2024, Straub sent another letter to the State Executive Directors on Palm Beach Polo letterhead. In this letter, Straub and Palm Beach Polo repeated defamatory remarks suggesting Ms. Fleming was engaging in criminal fraud and had crafted a "wild tale of ownership."

592.    None of the above was true.

593.    Straub and Palm Beach Polo knew the defamatory statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

### Straub's Public Post and Email of November 25, 2024

594.    On November 25, 2024, Straub made a post in a public forum and in another email to the Executive Directors, which included a number of defamatory remarks regarding Ms. Fleming and misuse of funds related to payment of legal expenses required to defend against Straub.

595.    None of it was true.

596.    Straub knew the defamatory statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

597.    The foregoing statements by Straub and Palm Beach Polo, individually and collectively, carry unmistakable defamatory meaning, both explicit and implicit, that Ms. Fleming is fraudulently claiming to be the owner of the Miss America entities and engaged in serious misconduct that resulted in her termination.

598.    The foregoing statements by Straub and Palm Beach Polo, individually and collectively, constitute defamation *per se* because, among other things, the statements tend to subject Ms. Fleming to hatred, distrust, ridicule, contempt, or disgrace, and injure her in her profession and business.

599.    In truth, Ms. Fleming has run the Miss America entities with competency, diligence, and integrity in the face of a blitzkrieg assault by Straub that has caused immense economic and non-economic damage.

600.    These statements are of and concern Ms. Fleming, who is identified by name.

601.     As a result of these statements, Ms. Fleming has suffered damages, including without limitation, damage to her reputation, personal brand, and goodwill in the business community, emotional suffering and distress, loss of potential income and goodwill associated with lost opportunities as a result of the negative publicity associated with these statements, and associated long-term loss of goodwill and marketability.

602.     In taking the actions alleged in this Amended Complaint, Straub and Palm Beach Polo have acted willfully and wrongfully, with malice, oppression, and fraud, and in conscious disregard of Ms. Fleming's rights, for which conduct Ms. Fleming is entitled to an award of punitive or exemplary damages.

## SIXTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### Against Straub and Galle

603.     Ms. Fleming incorporates, as though fully set forth herein, the allegations set forth in paragraphs 3-132, 235-296, 299, 302, 304, 306-310 above.

604.     Straub and Galle, in committing the above-described acts of fraud, racketeering, defamation, and other described violations of law against Ms. Fleming, acted intentionally, willfully, knowingly, and/or with extreme recklessness.

605.     Straub's and Galle's conduct was outrageous, extreme, malicious, and beyond the bounds of acceptable behavior. This case involves conduct that is monstrous in scope and harm, committed by two men who, for years, have conducted a campaign of depravity and disregard for the rights and dignity of women.

606.     Straub's and Galle's conduct caused severe emotional distress to Ms. Fleming.

607.     Ms. Fleming is entitled to damages for pain and suffering and punitive or exemplary damages.

## SEVENTEENTH CAUSE OF ACTION
### Abusive Litigation
### Against Straub and Galle

608.     Ms. Fleming incorporates, as though fully set forth herein, the allegations set forth

in paragraphs 3-132, 133-228, and 385-392 above.

609.     Straub filed a lawsuit in Palm Beach Circuit Court on April 25, 2024, against

Ms. Fleming and two of her entities (MASF and MAOT) (the Straub Lawsuit).

610.     In the Straub Lawsuit, Straub asserted ownership of the other Miss America

entities (MAC [with improper spelling], MAIP and IP Holding) owned by Ms. Fleming based on

fraudulent documents (MAC/OA#1, MAC/OA#2, MAC/OA#3 and MAIP/OA) created by Galle

at his direction.

611.     All but one document produced by Straub's attorneys in discovery was

intentionally stripped of metadata by either Straub, Galle, or both.

612.     The one document (MAC/OA#3) – the Word version of the purported operating

agreement for MAC – that was not stripped of metadata, was revealed to have been created in

August 2023, not December 2022. Thus, it was fraudulent, as were the documents derived from

it, which were the sole basis for Straub's claims of ownership.

613.     Once depositions were noticed in the Straub Lawsuit, Straub then filed a

fraudulent Petition in Bankruptcy claiming that he was the sole member of the putative Debtor –

MAC – when Straub was not a member or owner of MAC and has no authority to file a Petition

in Bankruptcy on behalf of MAC. In so doing, he was not only committing bankruptcy fraud but

also was shifting venues to avoid his upcoming deposition and meaningful production of

documents by the imposition of the automatic bankruptcy stay. This also demonstrates an

improper purpose in bringing the lawsuit.

614.     Straub knows he does not own any of the Miss America entities. As such, the Straub Lawsuit was filed with an improper purpose – to extort, intimidate, and subject Ms. Fleming to the expenses of litigation – in order to force her to turn over Miss America to him. The blatant use of fraudulent documents in the litigation – the only "evidence" of ownership – also establishes an improper purpose.

615.     Ms. Fleming suffered economic and non-economic damages as a result of the abusive litigation.

616.     In commencing and conducting the Straub Lawsuit in the manner described, Straub and Galle intentionally engaged in abusive litigation, for which conduct Ms. Fleming is entitled to an award of economic, non-economic, and punitive or exemplary damages.

**EIGHTEENTH CAUSE OF ACTION**
**Bankruptcy Fraud**
**Against Straub**

617.     Ms. Fleming incorporates, as though fully set forth herein, the allegations set forth in paragraphs 2, 4-132, 133-228, 278, 281, 332, and 388-399 above.

618.     On November 22, 2024, Straub filed a Petition in Bankruptcy in United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division. Plaintiffs here filed an Emergency Motion to Dismiss, and a hearing is scheduled for late January 2025.

619.     The Petition is fraudulent because the putative Debtor – MAC – is not owned by Straub and he is not a member of MAC. For the reasons set forth herein, only Ms. Fleming, the owner, has the authority to file a Petition in Bankruptcy for MAC. Thus, Straub lacks the corporate authority to file the Petition. As such, the Petition was filed in bad-faith and is fraudulent.

620.     Further, the putative Debtor – MAC – is not in financial distress. It has no financial accounts, only personal property as assets, and no real debts.  The lack of financial distress on the part of MAC is a second basis for finding that the Petition was filed in bad-faith and is fraudulent.

621.     Moreover, the Petition is part of a fraudulent scheme to avoid looming depositions in the Straub Lawsuit and to wrest control of – or destroy – Miss America.

622.     As such, Straub has violated 18 U.S.C. § 157 (Bankruptcy Fraud).

623.     In committing bankruptcy fraud, Straub intentionally defrauded the court as well as Ms. Fleming and the Miss America entities, for which conduct Ms. Fleming and the Miss America entities are entitled to an award of economic, non-economic, and punitive or exemplary damages. Further, Plaintiffs are specifically seeking to recover attorneys' fees incurred as a result of the bankruptcy fraud.

624.     In taking the actions alleged in this Amended Complaint, Straub acted willfully and wrongfully, with malice, oppression, and fraud, and in conscious disregard of Ms. Fleming's rights, for which conduct Ms. Fleming is entitled to an award of punitive or exemplary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter an award and judgment in their favor, and against Defendants, including economic damages, non-economic damages for defamation, emotional distress, and loss of enjoyment of life, and punitive and exemplary damages where appropriate, and treble damages where appropriate, costs and attorneys' fees incurred in this action and in defending against the abusive litigation in state court and in the federal bankruptcy court, in the total amount of $500,000,000 (Five Hundred Million Dollars and 00/100), and any equitable relief this Court deems just.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues.

Dated: December 13, 2024

Respectfully submitted,

/s/ *Bruce J. Berman*
Bruce J. Berman, Florida Bar No. 159280
CARLTON FIELDS, P.A.
2 MiamiCentral. Suite 1200
700 NW 1st Avenue
Miami, Florida 33136-4118
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055
bberman@carltonfields.com

Gene Rossi (*pro hac vice* pending)
Justin L. Chretien (*pro hac vice* pending)
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007-5208
Telephone:  (202) 965-8100
Facsimile:  (202) 965-8104
grossi@carltonfields.com
jchretien@carltonfields.com

Benjamin G. Chew (*pro hac vice* forthcoming)
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
Suite 100
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6801
Telephone:  (202) 747-1900
Facsimile:  (202) 747-1901
bchew@sheppardmullin.com

Jessica N. Meyers (*pro hac vice* pending)
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701
jmeyers@sheppardmullin.com

Camille M. Vasquez (*pro hac vice* forthcoming)
SHEPPARD, MULLIN, RICHTER
 & HAMPTON LLP
650 Town Center Drive, Tenth Floor
Costa Mesa, California  92626
Telephone:  (714) 513-5100
Facsimile:  (714) 513-5130
cvasquez@sheppardmullin.com

*Attorneys for Plaintiffs Robin Fleming,*
*Miss America IP, Inc., Miss America's*
*Scholarship Foundation, Inc., and*
*MAO IP Holding Company, LLC*