UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-81507-CIV-MIDDLEBROOKS

ROBIN FLEMING, MISS AMERICA IP,
INC., MISS AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC,

    Plaintiffs,

v.

GLENN F. STRAUB, CRAIG T. GALLE,
KATHLEEN A. FIALCO, and PALM BEACH
POLO, INC.,

    Defendants.
_____/

**PLAINTIFFS' MOTION FOR SANCTIONS**

Plaintiffs' counsel brings this motion for sanctions against Defendants Glenn Straub and Craig Galle and their former and present counsel under Federal Rule of Civil Procedure 11, Local Rule 11.1, 28 U.S.C. § 1927, and the Court's inherent power to sanction the submission of falsified evidence.

There are two – and only two – documents in this action that, Defendants have asserted, support Glenn Straub's claim of ownership of the Miss America Companies.[1] They are purported "operating agreements" for the Miss America Companies that were presented to this Court (and to three others) as "genuine, true and correct copies" of originals purportedly created and signed by Straub as of December 28, 2022. After Plaintiffs pressed Defendants in discovery to produce the native files for these two documents, Defendants' new counsel recently admitted that there

---

[1] For the purposes of this motion, the Miss America Companies are two member-managed Florida LLCs: Miss America Pageant, LLC, which name was changed by Ms. Fleming to Miss America Competition, LLC ("MAC"), and Miss America IP, LLC, which was later incorporated and is now Miss America, IP, Inc. ("MAIP"). Since their formation, Ms. Fleming has been, and is, the sole member of MAC and MAIP (and she is now the sole shareholder of MAIP).

are no native files – *and that the two documents at issue are of recent fabrication[2] and backdated*. In other words, the documents are fraudulent. Further, the recently fabricated documents were stripped of metadata by Defendant Galle in April 2024 immediately prior to Straub commencing litigation against Ms. Fleming in Florida state court.

Defendants' former counsel submitted both operating agreements in support of Straub's claims of ownership in his counterclaims set forth in his Answer to the Amended Complaint on May 20, 2025 (ECF 65), then former counsel withdrew from further representation of Defendants on June 25, 2025 (ECF 80). Defendants' new counsel, responding to Plaintiffs' first request for production (seeking native files of the two documents), recently admitted there are no native files for the documents, that the two documents are "re-creations" that were "re-typed," which means they are not "genuine, true and correct copies" of originals signed on December 28, 2022, but recent fabrications signed by Straub and backdated. As such, they are fraudulent. Nevertheless, Defendants' present counsel refuses to withdraw the documents as evidence in support and to drop their claims of ownership to the Miss America Companies.

All attorneys are officers of the court and have duties of complete candor.[3] Attorneys also have a duty "to bring the correct state of affairs to the attention of the court."[4] Here, Plaintiffs are bringing this fraud to the attention of the Court and seeking sanctions to address the fraud.

## FACTUAL BACKGROUND

### The Miss America Organization

In late 2022, Ms. Fleming negotiated with the Miss America Organization ("MAO") to acquire MAO and all of its assets. MAO had more than $4 million in obligations and, while its sale would require only a small amount of cash consideration, the buyer would have to address MAO's obligations. The intent of the parties was to convey MAO and all of its assets to Ms. Fleming. MAO conducted due diligence on Ms. Fleming and she met MAO's requirements for the sale. Ms. Fleming paid the small amount of consideration necessary for the transaction.

---

[2] Metadata for the MAC operating agreement indicates it was created on August 25, 2023, by Galle and other evidence indicates that the MAC (plural) and MAIP operating agreements were derived from it, and were created between April 12 and 16, 2024. All three are backdated to December 28, 2022.

[3] *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1546 (11th Cir. 1993).

[4] *U.S. v. Mesa,* 322 F. App'x. 718, 720 (11th Cir. 2009).

Notably, Straub was not a party or a member or an officer of a party or entity involved in the transaction, had no role in the negotiations or transaction, and paid no consideration. No one on the MAO side spoke to or was even aware of Straub as a potential financier until after the acquisition. *See* Second Amended Complaint ("**Compl.**") (ECF 33) §§ 47-69, 84; Attachment A (Krebs Declaration).

### Ms. Fleming's Two LLCs

On December 28, 2022, Ms. Fleming directed Galle to form two Florida LLCs with Florida's Department of State Division of Corporations – Miss America Pageant, LLC, and Miss America IP, LLC ("**MAIP**") – with her alone listed as the sole member or shareholder of each. Ms. Fleming did not direct Galle to draft operating agreements for either and none were filed. Compl. §§ 70-77. Two days later, on December 30, 2022, she decided to change the name of Miss America Pageant, LLC to Miss America Competition, LLC ("**MAC**"). She requested Galle change the name, but the amendment was not filed with the State until January 6, 2023, with an effective date of January 12, 2023. Compl. §§ 71(b), 85-86. The name remains MAC today. It has never been the plural form, "Miss America Competitions, LLC" ("**MAC (plural)**"). Notably, Straub's name does not appear in the formation documents for the two LLCs. Atch. B (Formation Docs.).

### The Transaction Documents

On December 30, 2022, Ms. Fleming acquired MAO and all of its assets/obligations through three transaction documents: the Asset Purchase Agreement ("**APA**"), the Membership Interest Assignment ("**MIA**"), and the Bill of Sale ("**BoS**"). The transaction documents list the "Buyer" or "Assignee" entities as MAC and/or MAIP,[5] which are Ms. Fleming's two LLCs. It is undisputed that the transaction documents were created by Galle on or before December 30, 2022, because MAO and Ms. Fleming received copies of those documents on that date. Atch. C (Transaction Docs.). The parties intended the documents be their final and complete agreement. Notably, the APA includes a provision (para. 15.5) stating it constitutes the "Entire Agreement" between the parties. Compl. §§ 67, 87-99; Atchs. A, B, C. Notably, Straub's name does not appear in any transaction document.

---

[5] Although the name change to Miss America Competition, LLC had not yet taken effect the day the transaction documents were signed, the parties thereto do not dispute that a valid contract was created on December 30, 2022, between both Buyer entities (MAC and MAIP) and MAO.

**Sunbiz Misspelled Miss America Competition, LLC**

The name change from Miss America Pageant, LLC to MAC was effective January 12, 2023, but Florida's "Sunbiz.org" website did not reflect the change until mid-March 2023. Further, the website made a typographical error: when the new name was listed, it was incorrectly spelled as the plural, "Miss America Competition<u>s</u>, LLC." The misspelled name remained on the website for more than a year, until May 2024, when Ms. Fleming learned of the error and contacted Sunbiz to correct it. Compl. §§ 84-85; Atch. D (Fleming Declaration). The import of the typographical error is simple: if one visited the website between mid-March 2023 and May 2024, the name would have appeared (incorrectly) as MAC (plural) instead of MAC.

**The MAC Operating Agreement**

In March 2024, Straub apparently became enraged at Ms. Fleming and began a campaign of threats, intimidation, extortion and defamation against her. Compl. §§ 229-256.

On April 12, 2024, more than 15 months after Ms. Fleming formed the two companies, Straub handed Ms. Fleming a printed copy of a purported operating agreement for MAC with the name of Straub typed (not signed) in the signature block that was dated *December 28, 2022*. Atch. E (MAC operating agreement). But on December 28, 2022, the correct name of the entity was *Miss America Pageant, LLC*. Thus, Straub's operating agreement was for an entity (MAC) that did not exist as of December 28, 2022. Upon being handed the document, Ms. Fleming rebuked Straub for the obviously fraudulent document, telling him, among other things, that it had *the wrong name* for the entity, *the wrong business purpose* (related to real estate), and was not even signed by him. *See* Compl. ¶¶ 71-72, 165-180; Atch. E.

Jumping ahead to July 2024, a Word version of the MAC operating agreement (*i.e.,* with metadata) was obtained by Plaintiffs following the testimony of Rina Osle, the Assistant Controller for Palm Beach Polo, Inc., who testified that, on April 11, 2024, Galle had sent her the Word version of the MAC operating agreement by email to print out for Straub. Compl. §§ 190-94; Atch. F (Osle Transcr. Excerpts).

Also in July 2024, Galle testified, apparently unaware of Osle's testimony a few days earlier, that he did not have native files for the operating agreements because his laptop was allegedly stolen in Ecuador in January 2023. Atch. G (Galle Transcr. Excerpts). Yet on April 11, 2024, Galle had sent to Ms. Osle the native file (the Word version) of the MAC operating agreement with its metadata intact. Compl. §§ 213, 218.

4

Expert analysis of the metadata for the MAC operating agreement obtained following Ms. Osle's testimony shows the document dated December 28, 2022, was created by Galle on August 25, 2023, not late December 2022 as he had testified in the State Action. Atch. H (Expert Prelim. Opinion). *Thus, the MAC operating agreement is fraudulent and Galle provided false testimony regarding both the date of its creation and his claim that he lacked native files* for any documents created prior to January 2023.

### The MAC (plural) Operating Agreement

On April 16, 2024, Straub sent an email to Ms. Fleming's counsel with a second version of a purported operating agreement with a new name for the entity, a new business purpose, and a signature for Straub, as if modifying an "original" document would improve its pedigree. The name of the entity for the second operating agreement was now "Miss America Competition**s**, LLC" (MAC (plural)), its business purpose was changed to pertain to beauty pageants, and it now included Straub's hand-written signature. The operating agreement was in a .pdf document *stripped of metadata*. Atch. I (MAC (plural) operating agreement).

Given the short time period between the two versions and the three very specific changes from the first version that followed Ms. Fleming's rebuke to Straub, it is more likely than not that the MAC (plural) version was created *after* the MAC version (*i.e.,* between April 12 and 16, 2024) in response to Ms. Fleming's rebuke. And given the unlikelihood that Galle would independently make the same typographical error as Sunbiz.org, it is more likely than not that, between April 12 and 16, Galle checked the Sunbiz website and used the incorrect name (MAC (plural)) listed there to modify the native file of the operating agreement from MAC to MAC (plural). Further, given that Galle emailed a native file (*i.e.,* with metadata) for MAC to Ms. Osle on April 11, 2024, then modified it between April 12 and April 16 to create the MAC (plural) operating agreement, it is more likely than not that *Galle had the native files and metadata for both operating agreements between April 12 and 16, 2024.*

Thus, Galle's asserted lack of metadata for the MAC (plural) operating agreement means that he either withheld it or deleted it after scanning the printed MAC (plural) operating agreement into the .pdf file before sending it to Ms. Fleming's counsel on April 16, 2024. This was just days before Straub filed his complaint in the State Action[6] against Ms. Fleming using

---

[6] *See Miss America Competitions, LLC, Miss America IP, LLC, and MAO IP Holding Company, LLC v. Robin Fleming and Miss America Scholarship Foundation, Inc.,* Case No. 50-2024-CA-

5

the operating agreement as evidence of ownership. *Thus, the MAC (plural) operating agreement is also fraudulent and Galle withheld or deleted its metadata in anticipation of litigation, spoliating evidence.*

### The MAIP Operating Agreement

The .pdf that Straub provided on April 16, 2024 (without metadata) also included a purported operating agreement for MAIP that is identical to the MAC (plural) operating agreement except for its name and purpose. Given that the MAC (plural) operating agreement was created between April 12 and 16, 2024, and the MAIP operating agreement is substantially identical to it and was provided in the same .pdf, it is more likely than not that the MAIP document operating agreement was also created between April 12 and 16, 2024. Atch. J (**MAIP** Operating Agreement). *Thus, the MAIP operating agreement is also fraudulent.*

**Straub and Galle Stated the Operating Agreements were Genuine, True and Correct**

*The State Action*

On April 25, 2024, Straub attached both the MAC (plural) and MAIP operating agreements to his Verified Complaint in the State Action (DIN 3) and stated:

> 12.    Attached hereto as Exhibit 2, is a *genuine, true and correct copy* of the December 28, 2022 Limited Liability Company Agreement of Miss America Competitions, LLC ("MAC"),[7] which sets forth that Glenn F. Straub is the sole Member and sole Director.
>
> 13. … Attached hereto as Exhibit 3, is a *genuine, true and correct copy* of the December 28, 2022 Limited Liability Company Agreement of Miss America IP, LLC ("MAIP"), which sets forth that MAIP was organized and formed and is 100% owned by Glenn F. Straub. (emphasis added)

---

003851-XXXA-MB (Palm Beach County Circuit Court, filed April 24, 2024) (The "State Action").

[7] In the State Action, Straub does not explain how the operating agreement for MAC (plural), which is not a Florida LLC, constitutes evidence of ownership of MAC, a Florida LLC. Plaintiffs reserve the right to seek sanctions against Straub's counsel in the State Action, Larry Zink of Zink Zink & Zink Co., in that court following this litigation.

In addition, on the last page of the Verified Complaint Straub verifies that the allegations are "true, correct and complete."

### *The New Jersey Action*

On June 12, 2024, Galle attached both the MAC (plural) and MAIP operating agreements to a Certificate submitted to the New Jersey court,[8] where Straub had joined the lawsuit against the legacy Miss America Organization, MAIP, and other entities, claiming to be the owner of MAC and MAIP. In support, Galle signed a certificate dated June 8, 2024, and submitted it to the court, attaching copies of the MAC (plural) and MAIP operating agreements as evidence of Straub's ownership of the two LLCs. In so doing, Galle attested that each was a "*true and correct copy of the Limited Liability Company Agreement for*" MAC[9] and MAIP. Atch. K (Galle Cert. and Exhibits) (emphasis added).

### *The Bankruptcy Action*

On November 22, 2024, Straub filed a Petition in Bankruptcy in United States Bankruptcy Court,[10] for Miss America Competition, LLC that was dismissed on December 17, 2024. On November 26, 2024, Straub attached the MAC (plural) operating agreement to his Response to Ms. Fleming's Emergency Motion to Dismiss the Petition (Doc. 16) to support his claim of ownership of MAC.[11] Atch. L (Bankr. Response and Exhibits).

Plaintiffs request the Court take judicial notice of Defendants Straub's and Galle's filings and statements regarding same in the above actions.

---

[8] *Miss America Foundation, Inc. v. The Miss America Organization, et al.,* Docket No. ATL-L-000202-24 (Superior Court of New Jersey, Atlantic County filed March 3, 2023) (case stayed as of June 13, 2025).

[9] In the New Jersey Action, Galle does not explain how the operating agreement for MAC (plural), which is not a Florida LLC, constitutes evidence of ownership of MAC, a Florida LLC. Plaintiffs reserve the right to seek sanctions against Straub's counsel in the New Jersey Action, Brian Molloy of Wilentz Attorneys at Law, in that court following this litigation.

[10] *In re Miss America Competition, LLC*, Case No. 24-22288 EPK (Bankr. S.D. Fla. Nov. 22, 2024) (dismissed Dec. 17, 2024).

[11] In the Bankruptcy Action, Straub does not explain how the operating agreement for MAC (plural), which is not a Florida LLC, constitutes evidence of ownership of MAC, a Florida LLC.

7

*This Action*

On May 20, 2025, Straub attached to his Amended Answer (ECF 65) copies of the MAC (plural) and MAIP operating agreements dated December 28, 2022, and stated the following on p. 45:

> 9. To that end, on or around December 28, 2022, Straub, through his attorney, Craig T. Galle, created two limited liability companies: one that operates as Miss America Competition, LLC ("MAC") and one that operates as Miss America IP, LLC ("MAIP")
>
> 10. Effective December 28, 2022, Straub became MAC's sole Member. Attached as *Exhibit 2 is a genuine, true, and correct copy of MAC's Limited Liability Company Agreement.*
>
> 11. Effective December 28, 2022, Straub became MAIP's sole Member and sole Director. Attached hereto as *Exhibit 3, is a genuine, true and correct copy of MAIP's Limited Liability Company Agreement.* (emphasis added)

In sum, Straub, through his former counsel, presented the MAC (plural) and/or MAIP operating agreements to this Court and to Plaintiffs as "genuine, true and correct" copies of operating agreements dated December 28, 2022 (and to two other Florida courts and a New Jersey court) without disclosing to the courts or the parties that:

- The MAC (plural) and MAIP operating agreements were (purportedly) "*re-creations*" and admittedly not copies of originals;
- MAC (plural) is not a Florida LLC;
- MAC (plural) is not the name of the subject entity here;
- the MAC (plural) operating agreement was created by Galle in April 2024, not December 28, 2022, under the wrong name of the entity, a signature was inserted for Straub, and *the document was backdated to December 28, 2022*, rendering it null and void;
- the MAC (plural) operating agreement is of no legal effect;
- the MAC (plural) operating agreement is fraudulent;
- the MAIP operating agreement was also created in April 2024, not December 28, 2022, a signature was inserted for Straub, and *the document was backdated to December 28, 2022*, rendering it null and void;

8

- the MAIP operating agreement is of no legal effect;
- the MAIP operating agreement is fraudulent;
- no operating agreements were created by Ms. Fleming on December 28, 2022;
- Straub did not have the authority to draft operating agreements for either entity because he was not a member of either entity;
- Ms. Fleming had not conveyed any member interest or shareholder interest in either entity to Straub; and
- Straub's filings with Florida's Division of Corporations in April and May 2024, had been rejected by the Division.

### New Defense Counsel Admits They Are Re-Creations that Were Backdated

After Plaintiffs pressed Defendants' new counsel for production of the native files of the operating agreements, Defendants' new counsel admitted in a meet-and-confer conference with the undersigned (attorneys Rossi and Chretien) on July 22, 2025, that there are no native files of the two documents and that the two documents presented in this Court are "re-creations" that were "re-typed."

Further, Defendant Galle admitted on July 28, 2025, in response to the First Set of Interrogatories Request No. 4, that "I recreated the [MAC] operating agreement" in August 2023. Yet he dated the document December 28, 2022, and included a typed signature for Straub.

In sum, Defendants admit the operating agreements are not "genuine, true and correct copies" of original documents but far more recent "re-creations."

### The Operating Agreements Are Not "Re-creations" of Actual Documents

Moreover, *the documents are not "re-creations"* of documents that existed on December 28, 2022. They are simply fabrications for use by Straub in his lawsuit against Ms. Fleming. The only evidence that such documents would have actually existed on December 28, 2022, would be Galle's testimony, which is not credible – most glaringly illustrated by his false testimony that he had no native files or electronic versions of the operating agreements because his laptop was stolen in January 2023, yet he was able to send a native file/electronic version of the MAC operating agreement dated December 28, 2022 to Ms. Osle on April 11, 2024. In other words, the native file of the MAC operating agreement that was provided by State Action counsel following Ms. Osle's testimony shows that Galle's testimony was false.

9

Further, new counsel for Defendants, in their recent discovery production for Galle, produced native files of the transaction documents – the APA, MIA, and BoS – that were undisputedly created on or before December 30, 2022, *before* the alleged theft of Galle's laptop. These were not produced in the State Action by Straub's prior counsel, who then withdrew from representation. Now that they have been produced by new counsel, they show that Galle *did have native files of documents created in December 2022*. In fact, the only important documents from December 2022 for which Galle claims to lack native files are precisely the two operating agreements upon which Straub relies for his claim of ownership and which native files would either support his claim of ownership or demonstrate the fraud.

Moreover, given that Defendants' new counsel now admits, as does Galle, that the documents are of recent fabrication (*i.e.,* post the alleged theft of Galle's laptop in January 2023), the ongoing lack of metadata for the MAC (plural) and MAIP operating agreements is not explicable by the theft of the laptop, because Galle just produced the native files of the transaction documents that he created *before* the alleged theft of his laptop. Rather, the ongoing lack of metadata for the two documents is best explained as the result of withholding or deleting evidence.

In addition, the MAC operating agreement cannot be a re-created document because *the name of the entity was Miss America Pageant, LLC*, on December 28, 2022. Similarly, *the MAC (plural)* operating agreement cannot be a re-created document because *Miss America Competitions, LLC has never existed as an entity on Florida*. Finally, given that the other two operating agreements are not re-created documents from December 28, 2022, it is unlikely the MAIP operating agreement is a re-created document because it was included in the same .pdf as the MAC (plural) document and is substantially identical to it, suggesting a common origin.

In sum, Straub and Galle, through their former counsel, submitted two operating agreements to this Court as "genuine, true and correct copies" of originals created by Galle on December 28, 2022, when, in fact, Galle fabricated the first version on August 25, 2023 (for MAC) and between April 12 and 16, 2024 for MAC (plural) and MAIP, and back-dated each to December 28, 2022. Further, Galle created the MAC (plural) and MAIP documents just days before Straub brought the State Action for the purpose of wresting control of the Miss America Companies from Ms. Fleming. Because these were the primary documents upon which Straub relied for his claim of ownership of the Miss America Companies, the misrepresentations in each

10

instance were material. In so doing, Straub and Galle committed fraud against Ms. Fleming and upon this Court (as well as against the state court, the bankruptcy court, and the New Jersey court), unreasonably and vexatiously multiplying the proceedings. The circumstances indicate that their conduct was intentional and in bad faith.

Further, a reasonable inquiry by former counsel would have revealed that, with respect to the two operating agreements upon which Straub's claims relied, there was a suspicious lack of metadata and numerous other indicia of fraud as described above. For one, the MAC (plural) operating agreement that was submitted to this Court was for an entity that does not exist, and the earlier version, for MAC, was created in August 2023, not December 2022. Not to mention the fact there were *two* versions of a purported single document. Any reasonable inquiry by prior counsel would have prompted counsel to refrain from submitting such documents as "genuine, true and correct copies" to this Court.

## MEMORANDUM OF LAW

As set forth above, the MAC (plural) and MAIP operating agreements are false documents that were fabricated in April 2024 in anticipation of litigation to wrest control of Miss America from Ms. Fleming and were based on an earlier operating agreement (for MAC) fabricated by Galle in August 2023. The MAC (plural) and MAIP operating agreements were presented to Ms. Fleming and to four separate courts as if they were "genuine, true and correct copies" of originals signed in December 2022. The materiality of the deception – and conspiracy – cannot be overstated: the two documents are the basis for all of Straub's claims in the State Action, the Bankruptcy Action, the New Jersey Action, and his counterclaims and defenses in this action. They are the predicate for the other frauds and defamatory acts levied against Ms. Fleming, and the primary instrument by which he threatened, intimidated, and extorted her. Without these two documents, Straub's house of cards collapses. They also constitute a fraud on this Court.

Now, Defendants' present counsel admits the documents were "re-created" after the fact and backdated, while other evidence indicates that they were not "re-created" at all but *simply created out of whole cloth* in April 2024 and backdated just days before Straub commenced the State Action. Straub and Galle then intentionally misled four courts to believe that Straub owned MAC and MAIP and, therefore, Miss America. Despite awareness of this history, present counsel

refuses to withdraw the documents from evidence and refuses to drop Straub's claims of ownership.

### *Rule 11*

Rule 11 is intended to deter claims with no factual or legal basis. *Pierce v. Commercial Warehouse,* 142 F.R.D. 687, 694 (S.D. Fla. 1992) (Rule 11 is violated by signing and filing pleadings with no factual or legal basis). Further, "Rule 11 sanctions are proper if a party files a pleading: (1) without a reasonable factual basis, (2) that relies on a frivolous legal theory without a chance of success, or (3) in bad faith or for an improper purpose." *Arnold v. Emory Healthcare, Inc.,* No. 1:21-CV-01746-SCJ, 2022 WL 22865201, *10 (N.D. Ga. July 25, 2022).

Rule 11 also "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.' An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.' Such a sanction may, but need not, include payment of the other parties' expenses." *Cooter & Gell v. Hartmax Corp.,* 496 U.S. 384, 393 (1990); *see UTEX94, LLC v. Danta,* No. 18-cv-80718-Middlebrooks, 2019 WL 13255529, * (S.D. Fla. Jan. 4, 2019) ("The central purpose of Rule 11 is to 'deter baseless filings in district court' . . . The objective standard for assessing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted").

Submission of false documents by a party in litigation warrants sanctions under Rule 11. "Fraudulent behavior is certainly not reasonable. A party to the litigation who is responsible for such fraudulent behavior is sanctionable under Rule 11." *Bout v. Bolden*, 22 F. Supp. 2d 653, 654-55 (E.D. Mich. 1998), citing *Union Planters Bank v. L & J Development Co., Inc.*, 115 F.3d 378 (6th Cir. 1997); *Pope v. Fed. Express Corp.*, 49 F.3d 1327 (8th Cir. 1995) (dismissing action and awarding monetary sanctions against plaintiff and her attorney who relied on the demonstrably false document "with intent to mislead the court" in violation of Rule 11); *see also White v. General Motors Corp.*, 908 F.2d 675 (10th Cir. 1990). !!

A number of other federal appeals courts have upheld Rule 11 sanctions against represented parties who submitted manufactured evidence to the court. *See Coastal Environmental Group, Inc. v. United States,* 118 Fed. Cl. 15, 36-37 (2014) (sanctions appropriate when intentionally backdating a document knowing it will be presented to a court),

12

*citing Jimenez v. Madison Area Tech. Coll.,* 321 F.3d 652, 655–57 (7th Cir. 2003) (finding no abuse of discretion in the trial court's imposition of Rule 11 sanctions against a represented party who presented fraudulent documents to support the allegations in her complaint); *Combs v. Rockwell Int'l Corp.,* 927 F.2d 486, 488 (9th Cir.1991) (noting that both Rule 11 and the court's inherent powers can be the basis for sanctions for a represented party's falsification of a deposition, and that "collusion with counsel" was not a prerequisite for such sanctions); *see also Fraige v. Am.–Nat'l Watermattress Corp.,* 996 F.2d 295, 296 & n. 1 (Fed. Cir. 1993) (remarking that the trial court had imposed Rule 11 sanctions against the defendant for its president's submission of false and forged documents to the court to bolster the defendant's opposition to a motion for a preliminary injunction); and *Elliott v. M/V Lois B.,* 980 F.2d 1001, 1007 (5th Cir. 1993) (Rule 11 sanctions appropriate against plaintiff who claimed to be owner of boat when she knew the attempted transfer was fraudulent and based on back-dated documents, nor could she avoid responsibility for the false claims in the complaint drafted by her attorney when she knew the claim of ownership was false).

### *28 U.S.C. § 1927*

While Rule 11 "is aimed primarily at pleadings" and addresses the conduct of both parties and attorneys, Section 1927 addresses "dilatory tactics throughout the entire litigation" and is focused solely on attorney conduct. *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1276 (11th Cir. 2007). Pursuant to Section 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *New Falls Corp. v. Soni Holdings, LLC,* No. 2:19-cv-0449o (SJF), 2021 WL 919110, *4 (E.D.N.Y. Mar., 2021)*, citing 28 U.S.C. § 1927; *Galin v. Hamada*, 753 F. App'x 3, 9 (2d Cir. 2018) (summary order). A more heightened showing applies to sanctions under Section 1927, requiring that courts make a finding of "'conduct constituting or akin to bad faith.'" *Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170, 178 (quoting *In re 60 E, 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (citation and internal quotation marks omitted)).

*The Court's Inherent Powers*

Federal appeals courts have also held that "the submission of falsified evidence—both documentary and testimonial—to the court is sanctionable under the court's inherent powers." *Coastal Environmental,* 118 Fed. Cl. at 37, *citing Oliver v. Gramley,* 200 F.3d 465, 466 (7th Cir. 1999) (affirming the district court's dismissal of a petition for habeas corpus as a sanction for the petitioner's submission to the court of a perjurious affidavit and a forged certificate of service, an action that the appeals court characterized as "criminal in character," "egregious, inexcusable, and destructive"); *Gonzalez v. Trinity Marine Grp., Inc.,* 117 F.3d 894, 898–99 (5th Cir. 1997) (affirming the district court's conclusion that the alteration and fabrication of evidence—an audio recording—was conduct that could be sanctioned under the court's inherent powers); *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 915–17 (9th Cir.1987) (per curiam) (affirming the trial court's imposition of sanctions for the defendant's perjured deposition testimony, which "qualifie[d] as a willful deceit of the court"); and *Eppes v. Snowden,* 656 F. Supp. 1267, 1276-79 (E.D. Ky. 1986) (dismissing insured's counterclaim pursuant to court's inherent powers where insured backdated documents to establish the value of the insured's property).

*Sanctions Are Appropriate Here*

Defendants Straub and Galle have intentionally and in bad faith fabricated and presented false documents to Ms. Fleming and to three courts in Florida and one court in New Jersey in an effort to defraud her and steal her company, the iconic Miss America organization and brand. This conduct is sanctionable under either Rule 11 or this Court's inherent powers. Further, Straub's former and present counsel are sanctionable under § 1927 for their bad-faith conduct in submitting false documents to this Court – or not withdrawing them from evidence – when reasonable diligence would show that the documents were not copies of originals but recent fabrications that were backdated.

Thus, the claim of Straub's ownership has no reasonable factual basis, is based on a legal theory that has no reasonable chance of success and was filed in bad faith and for an improper purpose. In so doing, Defendants Straub and Galle, through their former and present counsel, have engaged in unreasonable and vexatious conduct that not only resulted in baseless legal proceedings, but multiplied those proceedings times four. Sanctions are appropriate under Rule 11, this Court's inherent powers, and Section 1927.

*Available Sanctions*

"Courts have a wide variety of possible sanctions to impose for violations of Rule 11, including 'striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other education programs; ordering a fine payable to the court; [or] referring the matter to disciplinary authorities.'" *Footman v. Cheung,* 341 F. Supp. 2d 1218, 1225 (M.D. Fla. 2004), citing Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendments. Sanctions may include injunctive relief where the conduct is particularly odious. "Rule 11 gives the court wide discretion in selecting an appropriate remedy … Indeed, "[w]here the history of vexatious litigation is particularly odious, the traditional standards for injunctive relief do not apply and the court may impose injunctive sanctions without a request by the offended party." *Tidik v. Ritsema,* 938 F. Supp. 416, 427 (E.D. Mich. 1996) (granting injunctive relief premised on Rule 11 to enjoin plaintiff from filing any new actions or pleadings without certification by the court); *see Jackson v. Rohn & Haas Co.,* 366 Fed. App'x. 342, 347-48 (3d Cir. 2010) (district court did not abuse its discretion in dismissing claims as a Rule 11 sanction).

Further, "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions. [citations omitted] In the exercise of this responsibility, a district court possesses 'considerable discretion' to issue appropriately tailored injunctive orders curtailing the activities of recalcitrant litigants when necessary." *Jean-Baptiste v. United States Dep't of Justice,* No. 1:23-cv-22761-Moore, 2023 WL 9285126, *7 (S.D. Fla. Nov. 27, 2023); *see also Amarkarian v. City of Glendale,* No. CV 08-980-PSG, 2008 WL 2627824, *4 (C.D. Cal. July 3, 2008) (it is well settled" that a court has inherent power to dismiss an action or otherwise sanction a party where "a party has engaged deliberately in deceptive practices that undermine the integrity of the proceedings", citing *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 69 F.3d 337, 348 (9th Cir. 1995)); *Greenburg v. Roberts Properties, Ltd.,* 246 Fed. App'x 500 (9th Cir. Aug. 30, 2007) (affirming dismissal of *pro se* litigant's complaint and award of $136,115 in attorney's fees, where plaintiff attached forged documents as exhibit to complaint); *Connecticut General Life Insurance Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1094-97 (9th Cir. 2007) (affirming default judgment as sanction for, *inter alia,* representing falsely to the court that a bankruptcy stay existed until July and photocopying bankruptcy court's docket in such a way as to make it appear that bankruptcy court's March order granting relief from stay was issued in

July); *Elliott,* 980 F.2d at 1007 (affirming award of $35,000 in attorney's fees as sanctions under Rule 11, where plaintiff falsely pleaded she acquired title to boat that was accomplished with backdated documents); *Combs v. Rockwell Int. Corp.* 927 F.2d 486, 488-89 (9th Cir. 1991), *cert. denied,* 502 U.S. 859 (1991) (affirming dismissal where plaintiff authorized his counsel to make material alterations to plaintiff's deposition testimony and falsely stated under oath that plaintiff had reviewed the transcript and made the changes himself); and *Snowden,* 656 F. Supp. at 1276-79 (dismissing insured's counterclaim where insured backdated documents regarding insured property).

      Finally, Plaintiffs note that LR 11.1(c) requires members of the Bar of this Court to adhere to the Rules Regulating the Florida Bar. One such rule is Rule 4-3.3, which prohibits a lawyer from, among other things, knowingly making a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

      Here, Straub and Galle have engaged in a conspiracy to defraud Ms. Fleming and this Court in bad faith and have been aided by their former counsel, who submitted the false documents to this Court, and by their new counsel, who refuse to withdraw the false documents when reasonable diligence would have revealed they were not what Straub and Galle purported them to be. Plaintiffs seek dismissal of all Defendants' claims, counterclaims, and defenses based on the MAC (plural) and MAIP operating agreements, an award of attorneys' fees and costs against Defendants Straub and Galle and their former and present counsel at the conclusion of this litigation, and any injunctive relief the Court deems appropriate to expedite resolution of this case.

      WHEREFORE, Plaintiffs request this Court enter an Order dismissing all Defendants' claims, counterclaims, and defenses based on the MAC (plural) and MAIP operating agreements and, at the end of the litigation, an award of attorneys' fees and costs against Defendants Straub and Galle and their former and present counsel.

<h3 align="center"><u>September 6, 2025: Update</u></h3>
<h3 align="center">Request for Hearing</h3>

      Plaintiffs request oral argument on the motion given its importance and the complexity of the issues presented. Plaintiffs submit that 30 minutes per side would be more than enough to address the issues presented.

**Certificate of Conferral**

On August 15, 2025, Plaintiffs provided a copy of this motion (Attachment M) to former and present counsel for Defendants to start the 21-day Safe Harbor for purposes of Rule 11. Moreover, Plaintiffs asked for and conducted a September 4, 2025, meet-and-confer, which was not required, regarding the requested Rule 11 relief with present counsel, *i.e.,* that Defendants withdraw the operating agreements from evidence and any testimony regarding them and withdraw any claims, counterclaims, or defenses based on assertions of ownership over the Miss America Companies, and pay attorneys' fees incurred in this litigation. During the meet-and-confer, Defendants' counsel stated that they were withdrawing controversial Exhibits 2-3 (ECF 65-2 and 65-3) from their proposed amended answers, defenses, or counterclaims; on September 5, 2025, Defendants Straub and Palm Beach Polo filed a notice (ECF 96) of their intent to withdraw these exhibits. During the meet-and-confer and as of September 6, 2025, Defendants have declined to withdraw their claims asserting ownership of the Miss America Companies. Former counsel, The Clayton Trial Lawyers, are copied on this Motion. For the convenience of the Court, the Plaintiffs file Attachment N, which is a redline comparison of Attachment M and this pending Motion.

Dated: September 6, 2025

Respectfully submitted,

/s/ *Bruce J. Berman*
Bruce J. Berman, Florida Bar No. 159280
CARLTON FIELDS, P.A.
2 MiamiCentral. Suite 1200
700 NW 1st Avenue
Miami, Florida 33136-4118
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
bberman@carltonfields.com


Gene Rossi (*pro hac vice*)
Justin L. Chretien (*pro hac vice*)
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007-5208
Telephone: (202) 965-8113
Facsimile: (202) 965-8104
grossi@carltonfields.com
jchretien@carltonfields.com

Benjamin G. Chew (*pro hac vice*)
Jessica N. Meyers (*pro hac vice*)
Camille M. Vasquez (*pro hac vice*)
SHEPPARD, MULLIN, RICHTER
 & HAMPTON LLP
Suite 100
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
bchew@sheppardmullin.com
jmeyers@sheppardmullin.com
cvasquez@sheppardmullin.com

*Attorneys for Plaintiffs*