**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No.: 24-cv-81507-Middlebrooks/Matthewman

ROBIN FLEMING, MISS AMERICA IP,
INC., MISS AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC,

       Plaintiffs,

v.

GLENN F. STRAUB, CRAIG T. GALLE,
KATHLEEN A. FIALCO, and PALM
BEACH POLO, INC.,

       Defendants.

_____/

## <u>DEFENDANT/COUNTER-PLAINTIFF GLENN F. STRAUB AND DEFENDANT CRAIG T. GALLE'S CORRECTED[1] RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS</u>

Defendant/Counter-Plaintiff GLENN F. STRAUB ("**Straub**"), Defendant CRAIG T. GALLE ("**Galle**"), and their undersigned counsel hereby file this Response in Opposition to Plaintiffs' Motion for Sanctions [ECF No. 97] (the **"Rule 11 Motion"**) filed by Plaintiff/Counter-Defendant ROBIN FLEMING ("**Fleming**"), Plaintiffs MISS AMERICA IP, INC., MISS AMERICA'S SCHOLARSHIP FOUNDATION, INC., and MAO IP HOLDING COMPANY, LLC (collectively with Fleming, "**Plaintiffs**"), and Plaintiff's counsel, and state as follows:

### I.    <u>INTRODUCTION</u>

Plaintiffs and their counsel recklessly filed the Rule 11 Motion against Straub, Galle, their former counsel, and the undersigned new counsel, wrongfully accusing all of them of perpetuating a fraud against Plaintiffs and this Court. The parties agree on one thing: this case is predicated on fraud. However, ***it is Plaintiffs and their counsel—not Defendants—that are engaging in fraud***.

---

[1] This Corrected Response fixes errors in formatting and content in the Response and the attached Exhibit A, of which undersigned counsel and Galle first became aware after the Response was filed on September 22, 2025.

Plaintiffs and their counsel have unequivocal knowledge that Fleming is not, and has never been, the owner of Miss America Competition, LLC ("**MAC**") (under any of its various names) or Miss America IP, LLC ("**MAIP**", and collectively with MAC, the "**Miss America Entities**"). Indeed, ***Fleming herself has acknowledged in several writings, which Plaintiffs and their counsel produced in this case, that Straub is the sole owner of the Miss America Entities and that Fleming was never anything other than an employee of Straub's wholly-owned entities***.

The frivolous Rule 11 Motion hinges upon Plaintiffs' and their counsel's erroneous contention that two operating agreements for the Miss America Entities (collectively, the "**Operating Agreements**"), which were previously attached to Straub and Polo's Amended Counterclaim[2], are supposedly fraudulent and are the sole evidence upon which the defenses and counterclaims filed by Straub and his wholly-owned entity, Defendant/Counter-Plaintiff, PALM BEACH POLO, INC. ("**PBP**"), rely. As Plaintiffs and their counsel know however, there are communications between the parties (and with others), financial records, and additional documents—including documents that Plaintiffs and their counsel produced—that evidence Straub's sole ownership of the Miss America Entities. Even so, to avoid unnecessary motion practice, Straub, PBP, and undersigned counsel withdrew the two Operating Agreements and the allegations referencing them from the Amended Counterclaim during the 21 day "safe-harbor" period, thereby mooting the Rule 11 Motion. Nevertheless, Plaintiffs and their counsel filed the spurious Rule 11 Motion on the 22nd day—a Saturday—and have continued with their crusade to prejudice the Court against Straub, Galle, PBP, PBP's employee, KATHLEEN FIALCO ("**Fialco**", and collectively with Straub, Galle and PBP, "**Defendants**"), and Defendants' counsel. The Court should not only deny the improper and meritless Rule 11 Motion, it should impose sanctions against Plaintiffs and their counsel for filing the baseless and legally prohibited Rule 11 Motion.

## II.    RELEVANT FACTUAL BACKGROUND

### *The Miss America Organization*

In 2022, the Miss America Organization ("**MAO**") was insolvent due to its inability to pay its debts and financial obligations, which totaled millions of dollars. *See* Corrected Affidavit of Craig Galle ("**Galle Aff.**"), a true and correct copy of which is attached hereto as **Exhibit A**, at ¶

---

[2] Despite Plaintiffs having filed their Motion for Sanctions against Straub and Galle, Galle is not a party to the Amended Counterclaim and he never filed the Operating Agreements or attached them to his pleadings in this case.

6. Straub had the financial resources to pay those debts, but Fleming did not. *Id.* at ¶ 7. Fleming brought this opportunity to Straub's attention. *Id.* at ¶ 6. Straub was interested in the purchase of MAO to help the organization continue to empower women and to grow. *Id.* at ¶ 7. Fleming was familiar with beauty pageants and their operation, including the Miss America pageant, and represented to Straub that it was unlikely, in her view, that MAO's Board of Directors would sell the company and its assets to an entity in which he was involved. *Id.* at ¶ 8. Fleming therefore represented to Straub and Galle that it would be best for Straub to stay in the background. *Id.*

The initial arrangement that Straub and Fleming contemplated for the purchase of MAO was for Straub's daughter, Kelly Straub Hull ("**Kelly Straub**"), and Fleming to own a company together that would acquire MAO and its assets, with Kelly Straub owning 51% of the acquiring entity and Fleming owning the remaining 49%. *See* Galle's Responses to Plaintiff's Interrogatories ("**Resp. to Pls.' Interrog.**"), a true and correct copy of which is attached hereto as **Exhibit B**, at No. 2. The entity that Kelly Straub and Fleming intended to utilize for this initial concept was the newly formed American Icon Marketing, LLC ("**AIM**"). *Id.;* Galle Aff. at ¶ 10. As Fleming acknowledged in her December 18, 2022 email to Straub and Galle, "the new company formed is American Icon Marketing LLC……***Kelly Straub is Majority Share owner and Chairman of the Board***, Robin Fleming is CEO and President." *See* Dec. 18, 2022 email from Fleming to Straub and Galle, a true and correct copy of which is attached hereto as **Exhibit C** (emphasis added). Straub was initially going to loan the funds to Kelly Straub and Fleming to enable them (through AIM) to acquire MAO and its assets (the "**Loan**"). Galle Aff. at ¶ 10. Consistent with Fleming's advice that Straub stay in the background, only Fleming communicated with MAO regarding the purchase and sale of MAO and its assets. *Id.* at ¶ 9.

Galle has been Straub and PBP's general counsel for approximately 28 years. *Id.* at ¶ 4. Galle created an Asset Purchase Agreement ("**APA**") and other transaction documents for the acquisition of MAO and its assets on his desktop computer. *Id.* at ¶ 11. In accordance with Straub and Fleming's initial intention, the first draft of the APA identified AIM as the proposed Buyer. *Id.*; *see also* Draft APA, emailed from Galle to Fleming on December 24, 2022, a true and correct copy of which is attached hereto as **Exhibit D**.

Straub is a sophisticated, very wealthy businessman with several decades' worth of successful business deals and ventures. *See* Galle Aff. at ¶ 5. Straub therefore caused Galle to also draft a Pledge Agreement for Fleming to sign, and a Promissory Note with Balloon Payment for

both Fleming and Kelly Straub to sign (the "**Note**", and collectively with the Pledge Agreement, the "**Loan Documents**"), to ensure that Fleming and Kelly Straub would repay the Loan to Straub's entity, PBP. *See* Pledge Agreement, a true and correct copy of which is attached hereto as **Exhibit E**; and Note, a true and correct copy of which is attached hereto as **Exhibit F**.

Shortly after Galle drafted the Loan Documents and presented them to her, Fleming stated that she was not willing to sign either of the Loan Documents because she was concerned that Straub would sue her and foreclose on her assets if the Loan was not repaid. *See* Galle's Resp. to Pls.' Interrog. No. 2; Galle Aff. at ¶ 12. Kelly Straub was no longer interested in acquiring MAO at that time, so she decided not to participate in the acquisition either. Galle Aff. at ¶ 13. Without executed Loan Documents to secure Fleming's repayment of the Loan, the parties abandoned any notion of Straub being merely a lender. *Id*. at ¶14; *see also* Galle's Resp. to Pls.' Interrog. No. 2. Instead, Fleming agreed that Straub would acquire MAO and its assets himself, and that she would work for Straub and his entities as the public face of Miss America. *See* Galle's Resp. to Pls.' Interrog. No. 2; Galle Aff. at ¶ 14*; see also* email from Galle to Fleming dated December 28, 2022, a true and correct copy of which is attached hereto as **Exhibit G**, attaching the revised (and final) APA and noting "the names of the Buyer have changed. I formed both of these LLCs today. You are the Manager."

### *The Formation of MAC and MAIP*

Galle explained to Fleming that Straub caused Galle to form MAC and MAIP to be the Buyer of MAO and its assets. Indeed, on December 28, 2022, Galle formed Miss America Pageant, LLC and MAIP with the Secretary of State of Florida, Division of Corporations, online at www.sunbiz.org ("**Sunbiz**"). *See* **Ex. G**; *see also* Miss America Pageant, LLC Articles of Incorporation, a true and correct copy of which is attached hereto as **Exhibit H**; Miss America IP, LLC Articles of Incorporation, a true and correct copy of which is attached hereto as **Exhibit I;** Galle Aff. at ¶ 15. Fleming was listed as the registered *agent*, authorized *representative,* and a *manager* of each entity, and *__not as a Member of either__*. *See* Exhs. I and J.

The next day, December 29, 2022, Fleming wrote to Straub, "[s]ince it looks like we're moving ahead, *can we have a conversation about the details where I fit in?*" *See* Dec. 29, 2022 text message from Fleming to Straub, a true and correct copy of which is attached hereto as **Exhibit J**. Of course, the owner of a company or companies would not have to ask where they "fit in" with regard to their own company, *because Fleming was never an owner*.

4

On December 30, 2022, Straub decided, at Fleming's suggestion (as she was a representative and manager of his new companies) to change the name of Miss America *Pageant* to Miss America *Competition*. Galle Aff. at ¶¶ 16-17.  Galle therefore ensured that the APA, the Membership Interest Assignment ("**MIA**"), and the Bill of Sale, *all of which Galle drafted on his desktop computer*, reflected this name change (the APA, MIA and Bill of Sale are referred to collectively herein as the "**Transaction Documents**"). *See* Dec. 30, 2022 email from Galle to Fleming, a true and correct copy of which is attached hereto as **Exhibit K**; Dec. 30, 2022, text from Fleming to Galle, a true and correct copy of which is attached hereto as **Exhibit L**; Galle Aff. at ¶18. Galle used the updated name, Miss America Competition, LLC, in the Transaction Documents because he intended to file the name change on Sunbiz imminently. Galle Aff. at ¶18.

At or around the same time, Galle also drafted the Operating Agreements for the Miss America Entities **on his laptop computer** (the "**Laptop**"), reflecting an Effective Date of December 28, 2022 in each of the Operating Agreements—the date on which the Miss America Entities were formed. *See* Galle's Resp. to Pls.' Interrog. No. 4. Galle worked alternately between his desktop computer (when he was in the office) and the Laptop (when he was not in the office), as these events took place between the Christmas and New Years holidays in 2022. *See* Galle Aff. at ¶ 21.

Fleming signed the Transaction Documents (which reflected MAC's name as Miss American *Competition*, LLC) as "President" or "Manager," *and **not** as "Owner" or "Member"*.[3] *See* signed APA, a true and correct copy of which is attached hereto as **Exhibit N**; signed MIA, a

---

[3] The court in the parties' parallel State Court Action noted in its Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction in that case that:

> Page 13 of the APA, reflects that Defendant Fleming signed the APA as President, and not the Member or Owner of the Buyer entities. Defendant Fleming signed the Membership Interest Assignment as Manager, and not Member or Owner, or Miss America IP, LLC, a Florida limited liability company. ***Nowhere in the APA is Defendant Fleming stated to be the "Owner" or a "Member" of the Buyer entities. No admissible evidence was presented by Defendant Fleming that the APA was ever amended in writing stating Defendant Fleming was either the Owner of or a Member in the Buyer entities.***

*See Miss America Competitions, LLC, et al v. Robin Fleming, et al.*, Palm Beach County Circuit Court Case No. 50-2024-CA-0003851-XXXA-MB, [D.E. 215] (the "**State Court Action**"), a true and correct copy of which is attached hereto as **Exhibit M**, at ¶ 6 (emphasis added).

true and correct copy of which is attached hereto as **Exhibit O**.  Fleming signed in that capacity while Shantel Krebs, the Chair and Managing *Member* of MAO signed the same documents as both Chair *and* Managing *Member* of MAO *immediately above Fleming's signature* on the MIA and *immediately below Fleming's signature* on the APA. *See* Exhs. N and O.

MAC and MAIP closed on the purchase of MAO and its assets on or about December 30, 2022. *See* Galle Aff. at ¶ 24.  Straub then caused PBP to transfer funds to MAC and MAIP for use in their acquisition of MAO and its assets. *See* PBP GL Account Transaction Details Report, true and correct copies of which are attached hereto as **Exhibit P**.  There are no Loan Documents or any similar documents signed by Fleming because Fleming declined to sign them and agreed that she would not have any ownership interest in MAC, MAIP, MAO, or any of the subject assets. Galle Aff. at ¶ 20.

There is no doubt that Fleming has always known that she has never been the owner of either of the Miss America Entities, and she was simply an employee with the title of CEO/President. *Indeed, one week after Straub purchased MAO and its assets through his wholly owned Miss America Entities, Fleming asked Galle to communicate to Straub certain terms that Fleming wanted Straub to include in an employment contract for her*. *See* Galle Aff. at ¶ 25. Galle told Fleming to put her requests in writing.  *Id*.

Consequently, on January 7, 2023, Fleming sent an email to Galle, proposing the following terms for her *employment contract*:

> *Contract employee* with *ability to participate in any group health insurance plan currently in place at PBPC* or other *Glenn entities. Miss America Competition LLC[,] Miss America IP LLC DBA The Miss America Organization*.
>
> *Finders fee* for due diligence and delivery *of [the Miss America] deal* - $250k.
>
> *If [Straub] is unhappy* with my work product or execution *he is free to terminate me*….Because I love Miss America program, *I will agree to stay on and make a successful transition no matter the ill will or issues if asked to do so*.
>
> *Base pay $150k* paid monthly at start of month…*6 months severance* paid in lump sum *upon termination by owner*…annual 5% increase or cost of living increase tied to COLA – whichever is higher.

*See* Jan. 7, 2023 email from Fleming to Galle, **which Plaintiffs and their counsel produced in discovery in this case**, a true and correct copy of which is attached hereto as **Exhibit Q[4]** (emphasis added). Fleming sent a follow-up email to Galle, also requesting Straub to provide her with "Stock options should Miss America go public and significant profit participation ***should Glenn [Straub] decide to sell one or both entities*** *[Miss America Competition, LLC and Miss America IP, LLC]*." *Id.* (emphasis added).

Fleming further demonstrated her knowledge that she was nothing more than an employee of Straub's entities on several other occasions. For example, on January 14, 2023, Fleming sent an email to Galle, stating "Glenn [Straub] just denied me a [C]hristmas bonus. LOLOLOL. So remove from [employment] contract." *See* Jan. 14, 2023 email from Fleming to Galle, a true and correct copy of which is attached hereto as **Exhibit R**. Additionally, on January 29, 2023, Fleming sent an email to Fialco stating, "***Glenn [Straub] agreed to allow me to participate in any health insurance plan*** currently offered." *See* Jan. 29, 2023 email from Fleming to Fialco, a true and correct copy of which is attached hereto as **Exhibit S** (emphasis added).

### *The Operating Agreements, the Laptop, and Metadata*

In the Rule 11 Motion, Plaintiffs and their counsel harp on alleged inconsistencies in the MAC Operating Agreement and insist that this document, as well as MAIP's Operating Agreement (to which they can point to no inconsistencies) and the unavailability of meta-data showing their original creation date supposedly prove that Straub and Galle defrauded Fleming. Their logic is flawed and wrong.

---

[4] Plaintiffs have unilaterally attempted to designate certain documents (including Exhibit Q) from their document production as supposedly "confidential". However, to date the parties have not entered into a Confidentiality Agreement, nor has a Confidentiality Order been entered by the Court. Furthermore, Plaintiffs' counsel represented paradoxically in an email to undersigned counsel on September 6, 2025 that Plaintiffs would *remove* their misplaced confidentiality designations *after* the parties agree upon a Confidentiality Agreement and/or Confidentiality Order. That does not make any sense. Regardless, the subject documents are not confidential because they do not contain privileged, confidential, or highly sensitive information. In the very limited instances where any sensitive information may appear on an exhibit attached to this Response, Defendants have redacted that information. Plaintiffs' unilateral and misplaced stamping of documents as "confidential" is meaningless and Plaintiffs cannot shield compelling evidence from disclosure to the Court, especially after accusing undersigned counsel and Defendants of violating Rule 11, which the subject exhibits demonstrate is incorrect.

Galle is an experienced transactional attorney who has formed scores of companies and drafted just as many operating agreements. Galle Aff. at ¶ 2. Galle has been using the same form operating agreement for years, and he simply changes identifying information for each company that he creates. *Id.* at ¶ 3. The Operating Agreements that Galle drafted for MAC and MAIP were created on the Laptop using his form in December 2022, during the holiday season at a time when he was not in his office. *Id.* at ¶ 22; *see also* Galle's Resp. to Pls.' Interrog. No. 4. Both Operating Agreements reflect an "Effective Date" of December 28, 2022, the date the Miss America Entities were formed.  *See* Operating Agreements at p.1.

Galle is a sole practitioner and the Laptop, to the best of his knowledge, was not connected to a network or backed up to the cloud, or otherwise. *See* Galle Aff. at ¶ 27. In January of 2023, Galle travelled to Ecuador. *Id.* at ¶ 26; *see also* Galle's passport, a true and correct copy of the relevant pages of which are attached to Galle's affidavit as **Exhibit 1**. The Laptop computer was stolen during that trip, resulting in the loss of the metadata for the original Operating Agreements. *See* Galle's Resp. to Pls.' Interrog. No. 4. Galle later purchased another laptop to replace the one that was stolen. *See* Galle Aff. at ¶ 28; Receipt for Macbook Air, a true and correct copy of which is attached to Galle's affidavit as **Exhibit 2.**

By the summer of 2023, Straub was considering adding his daughter, Kelly Straub, to the organization structure of MAC. *See* Galle Aff. at ¶ 29. Consequently, Galle retyped the Operating Agreement ***on his desktop computer***, using his form template so that he would have the document on his computer to work from if and when he needed to amend it. *Id.* at ¶ 30.  This process did not take long because Galle only had to make minor inserts to his form operating agreement, just as he did when he originally drafted the Operating Agreements ***on the Laptop*** in December 2022.  *Id.* at ¶ 30.  As the metadata shows, and as Plaintiffs concede, Galle retyped the MAC Operating Agreement in August 2023. *Id.*; *see also* Rule 11 Motion at p. 2, n. 2 and p. 5; Exhibit H to Rule 11 Motion. To the best of his recollection, Galle did not retype the MAIP Operating Agreement because neither he nor Straub contemplated amending that document. *See* Galle Aff. at ¶ 32. Plaintiffs' argument that the Operating Agreements were created fraudulently ***in August 2023*** in contemplation of a future meeting with Fleming in ***April 2024*** is demonstrably wrong and illogical.

In or around March of 2024, Straub and Galle received information from third parties that Fleming had engaged in activity that injured, diverted business away from, and infringed upon the intellectual property of the Miss America Entities. *See* Galle Aff. at ¶ 33. Consequently, Straub

8

temporarily suspended Fleming from her role as a manager of the Miss America Entities on March 16, 2024. *See* Notice of Temporary Suspension and Investigation Letter, a true and correct copy of which is attached hereto as **Exhibit U**.  Straub then met with Fleming in April of 2024. *See* Straub and Polo's Resp. to Pls' Interrog. No. 3.  At that time, Fleming took the untenable position that *she* owned the Miss America Entities. *Id.; see also* Galle Aff. at ¶ 34. Straub was dumbfounded and asked Galle to send him "something evidencing Straub's ownership" of MAC. Galle Aff. at ¶ 35. As a result, Galle forwarded Straub's assistant, Rina Osle ("**Osle**")[5] a retyped version of the MAC Operating Agreement, because that version was in digital format on his computer. *Id.* at ¶ 36.  That version contained a "stamp" of Straub's name, not his actual signature, because it was not the final executed version of the MAC Operating Agreement.

When Galle retyped the MAC Operating Agreement in August of 2023 due to the theft of the Laptop**,** he initially forgot to change the "purpose" of the company in his form from a real estate company, which is the purpose of the majority of the companies that Galle forms. *Id.* at ¶¶ 31, 38. Galle became aware of this error and fixed it soon after he retyped the first draft in August of 2023. *Id.* As he was doing so, Galle checked Sunbiz and noticed that Sunbiz had misspelled the name of the entity as Miss America Competition<u>s</u> (plural). *Id.* at ¶ 39; *see also* Rule 11 Motion at p. 4 ("if one visited the [Sunbiz] website between mid-March 2023 and May, 2024, the name would have appeared (incorrectly) as MAC (plural) instead of MAC.")  Accordingly, Galle also updated MAC's then existing name on his retyped version of the Operating Agreement in April of 2024 by adding the "s" to "Competition" to match the name that Sunbiz had erroneously assigned to the company as of that date. *See* Galle Aff. at ¶ 39.  Galle then sent the corrected retyped Operating Agreement to Straub, which Straub thereafter provided to Fleming. *Id.* at ¶ 40.

On May 13, 2024, Fleming, without authority and with the apparent assistance of Plaintiff's counsel, filed a purported Statement of Authority on behalf of Miss America Competitions, LLC, representing therein that Straub has no authority to act or bind MAC. *See* Galle Aff. at ¶ 41. On or about July 1, 2024, Fleming, without authority, filed a purported "Statement of Fact", also representing that Straub was unauthorized to make amendments to filings for MAC on Sunbiz, and contending that MAC (and other entities) are owned by her and not Straub. *See id.* at ¶ 42; *see also* Statement of Authority and Statement of Fact, true and correct copies of which are attached hereto

---

[5] Straub generally does not use a computer and he therefore relies on his attorneys and his staff to print documents for him. *Id.* at ¶ 37.

as **Composite Exhibit V.** Both of these filings by Fleming were false and fraudulent for the reasons discussed herein.

Contrary to Plaintiffs' arguments in the Rule 11 Motion, neither Galle nor undersigned counsel ever "admitted" that either of the Operating Agreements are fraudulent or that they were "backdated.". As discussed above and in Galle's Affidavit, the reason that there is *no* metadata for the Operating Agreements that were created (and which only existed in digital format) on the Laptop in December of 2022 is *because the Laptop was stolen in January of 2023*. The reason there *is* metadata for the Transaction Documents is because they were created on *Galle's desktop computer, which was not stolen*.  The reason there is metadata showing that the MAC Operating Agreement was purportedly "created" in August 2023, is because *that is when Galle retyped the MAC Operating Agreement on his desktop computer after the original digital version was lost (with the stolen Laptop) so he would have the document available in digital format if and when Straub wanted Galle to amend the Operating Agreements* to include a role for Kelly Straub.  The reason there may be metadata showing that *Galle edited the MAC Operating Agreement in April of 2024 is because that is when Galle emailed Straub's assistant the draft of a retyped version thereof*.  There is nothing fraudulent or nefarious about any of the foregoing facts. To the best of Galle's recollection, the Operating Agreements that were previously attached as Exhibits 2 and 3 to Straub and PBP's Amended Counterclaim are true and correct copies of the documents that Straub executed on or about December 28, 2022, with the clarification that long before any lawsuits were filed between the parties, Galle replaced the first page of the MAC Operating Agreement with the updated, corrected page that includes the letter "s" at the end of "Competition" to match the way the company's name appeared on Sunbiz at the time.  *See* Galle Aff. at ¶ 40. Moreover, the Effective Date of both Operating Agreements remained December 28, 2022, which is unquestionably when Galle formed the Miss America Entities. *See* Exhs. I and J.

#### *This Action*

Despite the ***overwhelming evidence that Plaintiffs and their counsel produced wherein Fleming admits that Straub is the owner of the Miss America Entities and Fleming was never anything more than an employee of the Miss America Entities***, and the lack of any evidence that she or AIM (which indisputably did *not* acquire the Miss America Entities from MAO) agreed to repay, or actually repaid, their supposed "banker," Straub, for allegedly loaning the funds to Fleming to enable her acquire the Miss America Entities, Plaintiffs filed a prolix Complaint

commencing this action.  Plaintiffs alleged false, highly inflammatory, prejudicial, and irrelevant accusations against Defendants. Moreover, Plaintiffs commenced this action in an apparent attempt to forum shop and judge shop after the judge in the State Court Action made findings, and entered orders, against Fleming. *See generally* Exh. N.

After this Court struck their original Complaint as a shotgun pleading, Plaintiffs filed an Amended Complaint, and thereafter, a Second Amended Complaint, which still includes nearly 600 paragraphs and 100 pages of false, inflammatory, prejudicial, scandalous, and impertinent allegations. The undersigned's predecessor counsel, Clayton Trial Lawyers, PLLC ("**Former Counsel**"), filed a comparatively brief Counterclaim, and then an Amended Counterclaim, which focus on the facts of this case and Straub's sole ownership of the Miss America Entities. Although Straub and PBP did not sue Fleming for breach of the Operating Agreements or include any causes of action that require the attachment of the Operating Agreements to the pleading, Former Counsel attached the Operating Agreements as Exhibits 2 and 3 to the Amended Counterclaim. [ECF No. 65].  Former Counsel withdrew from this case on June 25, 2025. [ECF No. 80]. Undersigned counsel entered their appearance in this case on Monday, July 7, 2025.[6] [ECF Nos. 84, 85].

### *The Rule 11 Motion*

On August 15, 2025, Plaintiffs' counsel emailed the Rule 11 Motion to undersigned counsel and stated that they would file it with the Court unless Defendants withdrew the Operating Agreements and all defenses and claims relating to Straub's position that he owns the Miss America Entities within 21 days. Undersigned counsel had several lengthy meetings with Defendants (telephonically, via Zoom, and in person), reviewed the pleadings and documents produced in discovery, and found nothing supporting Fleming's claim of ownership. To the contrary, the overwhelming evidence supports Straub's claim of his sole ownership of the Miss America Entities, and that Fleming is simply a previous employee whom Straub terminated.

---

[6] The same day undersigned counsel appeared in this case, and before they had a chance to even read the extremely lengthy pleadings or discovery in this case, they learned that Defendants' responses to five (5) different discovery requests were due that same day and responses to another eleven (11) discovery requests were due less than 2 weeks thereafter. Consequently, undersigned counsel asked Plaintiffs' counsel to provide them with a brief extension to ramp up and serve Defendants' responses to the discovery requests. Plaintiffs' counsel refused to extend this professional courtesy and forced the Court to address a discovery dispute that could have been avoided. [ECF No. 91].

Nevertheless, on September 5, 2025, in an effort to avoid unnecessary motion practice, undersigned counsel filed Counter-Plaintiff's Notice of Withdrawal of Exhibits 2 and 3 to Amended Counterclaim and indicated that Straub and PBP also "withdraw the last sentence of paragraph 10 and the last sentence of paragraph 11 of their Amended Counterclaim, where said exhibits are referenced."  [ECF No. 96]. Defendants/Counter-Plaintiffs also noted their intention to seek leave of court to file further amended Answers, Affirmative Defenses and Counterclaims. *Id*. Plaintiffs agreed to this request during the parties' conferral meeting prior to the expiration of the twenty-one (21) day "safe harbor" period. Plaintiffs' counsel confirmed their prior agreement during the Court's September 8, 2025 Scheduling Conference with Magistrate Judge Matthewman. Consequently, in his Scheduling Order, Magistrate Judge Matthewman provided Defendants with up to and including October 2, 2025 to amend their pleadings. [ECF No. 100]. Plaintiffs have not yet responded to Straub and PBP's Amended Counterclaim, knowing that second amended pleadings are forthcoming.

Despite Defendants' withdrawal of the Operating Agreements and the allegations that referenced them from the Amended Counterclaim within the "safe harbor" period, Plaintiffs and their counsel nevertheless filed the Rule 11 Motion on Saturday September 6, 2025, ***falsely asserting that the undersigned "refuse[d] to withdraw" the Operating Agreements from their pleading***. Rule 11 Motion at p. 2. Moreover, it is unreasonable for Plaintiffs and their counsel to expect Straub, the true owner of the Miss America Entities, to withdraw his claims and defenses of ownership, especially because this is the ultimate issue in this case and is well supported by the evidence. In contrast, the frivolous Rule 11 Motion is not warranted by the law or the evidence. Accordingly, in addition to denying the Rule 11 Motion, the Court should impose sanctions against Plaintiffs and their counsel.

### III.     ARGUMENT

#### A.     The Standard for Imposing Sanctions Pursuant to Rule 11, Fed. R. Civ. P.

Rule 11 of the Federal Rules of Civil Procedures states that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the factual contentions are supported by evidence, the claims are not frivolous and are warranted by existing law, and the information is not being presented for improper purpose. Fed. R. Civ. P. 11(b). If the court

determines that Rule 11(b) has been violated, it may impose an appropriate sanction. Fed. R. Civ. P. 11(c). However, "Rule 11 is an ***extraordinary remedy***, one to be exercised with ***extreme caution***." *Lopez v. Yvette Pereyra Ans, M.D., P.A.*, No. 09-60734-CIV, 2010 WL 555918, at *1 (S.D. Fla. Feb. 11, 2010) (internal quotes omitted) (emphasis added). Thus, "Rule 11 sanctions are appropriate (1) when a party files a pleading ***that has no reasonable factual basis***; (2) when the party files a pleading that is based on a legal theory ***that has no reasonable chance of success*** and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Uniq Branch Off. Mexico, S.A. de C.V. v. Steel Media Grp., LLC*, No. 22-23876-Civ, 2024 WL 1514632, at *1 (S.D. Fla. Apr. 5, 2024) (emphasis added; internal quotations omitted).

"Sanctions cannot be imposed where the evidence supporting a plaintiff's claim is reasonable, but simply weak or self-serving." *Id*. (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010)) (internal quotations omitted). Consequently, "Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits." *Bigford v. BESM, Inc.*, No. 12-61215-CIV, 2012 WL 12886184, at *2 (S.D. Fla. Oct. 12, 2012).

Significantly, "[t]he procedural requirements of Rule 11 ***must be strictly construed***." *Seaboard Marine Ltd., Inc. v. Trinpak Packaging Co. Ltd.*, No. 18-CV-22797, 2020 WL 9549553, at *3 (S.D. Fla. June 12, 2020) (emphasis added). A motion for sanctions "***must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service*** or within another time the court sets." Fed. R. Civ. P. 11(c)(2) (emphasis added). "This 'safe harbor' allows the opposing party an opportunity to withdraw or correct the allegedly sanctionable claim or argument ***without penalty*** because ***Rule 11(c)(2) bars a motion for sanctions based on a claim or argument withdrawn or corrected during the twenty-one days***." *Alonso v. Alonso*, No. 18-23668-Civ, 2020 WL 13538527, at *3 (S.D. Fla. Nov. 30, 2020) (emphasis added). To sanction a party that complied with the rule "would undermine the well understood operation of the Rule." *Id*. "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2).

### B. Defendants Withdrew the Subject Exhibits and Allegations Within 21 Days.

As a threshold matter, the Court should deny the Rule 11 Motion because Straub and PBP withdrew the Operating Agreements and the allegations referring to them from their pleading within the safe harbor period.  Indeed, Plaintiffs served the unfiled Rule 11 Motion on undersigned counsel on August 15, 2025. On September 5, 2025—the last day of the safe harbor period pursuant to Fed R. Civ. P. 11(c)(2)—Defendants filed their "Notice of Withdrawal of Exhibits 2 and 3 to Amended Counterclaim." [ECF No. 96]. They did so in an abundance of caution, as no claims were brought in reliance on those documents in the Amended Counterclaim and Defendants desired to avoid unnecessary motion practice.

Despite Straub, PBP, and undersigned counsel's timely withdrawal of the Operating Agreements and the allegations referencing them from the Amended Counterclaim (which were all filed by Former Counsel), and despite the fact that Galle never filed the Operating Agreements in this case at all, Plaintiffs inexplicably filed the Rule 11 Motion on the 22nd day, a Saturday. [ECF No. 97]. However, Plaintiffs were prohibited from filing or presenting the Rule 11 Motion to the Court. *See* Fed. R. Civ. P. 11(c)(2); *see also*, *APR Energy, LLC v. Am. Power Holdings, LLC*, No. 9:24-cv-80173, 2025 WL 1579586, at *4 (S.D. Fla. June 4, 2025); *Feise v. N. Broward Hosp. Dist.*, No. 14-cv-61556, 2017 WL 10410470, at *3 (S.D. Fla. Aug. 7, 2017); *Dude v. Cong. Plaza, LLC*, No. 17-80522-CIV, 2018 WL 4854592, at *3; *Powell v. Home Depot, U.S.A., Inc.*, No. 07-80435-Civ, 2009 WL 10664817, at *4 (S.D. Fla. July 15, 2009), *report and recommendation adopted*, 2009 WL 10664818 (S.D. Fla. Aug. 12, 2009).

Moreover, with the exception of the Certificate of Conferral, the Rule 11 Motion omits any discussion of Straub and PBP's withdrawal of the subject exhibits and allegations during the safe harbor period. This glaring omission further demonstrates Plaintiffs' lack of candor with the Court and the frivolous nature of the Rule 11 Motion.  For any or all of the foregoing reasons, the Court should deny the Rule 11 Motion and impose sanctions against Plaintiffs and their counsel.

### C. The Court Should Deny the Rule 11 Motion Because it Seeks Sanctions Against Defendants' *Current* Counsel Based on the Alleged Conduct of *Former* Counsel.

As a second threshold matter, the Court should deny the Rule 11 Motion because Plaintiffs ask this Court to impose sanctions against Defendants' undersigned *current* counsel based on Defendants' *Former Counsel's* filings. *See* ECF No. 97 at p. 2 ("Defendants' **former counsel** submitted both operating agreements in support of Straub's claims of ownership in his

14

counterclaims set forth in his Answer to the Amended Complaint on May 20, 2025 (ECF 65), ***then former counsel withdrew from further representation of Defendants on June 25, 2025*** (ECF 80).") (emphasis added); at p. 10 ("Straub and Galle***, through their former counsel***, submitted two operating agreements to this Court as 'genuine, true and correct copies' of originals created by Galle on December 28, 2022 . . .") (emphasis added); at p. 11 ("Any reasonable inquiry ***by prior counsel*** would have prompted counsel to refrain from submitting such documents as 'genuine, true and correct copies' to this Court." ) (emphasis added).  Moreover, the Rule 11 Motion argues, with the same incorrect and flawed logic, that Former Counsel or attorneys in other cases—***not undersigned counsel***—also took positions in the State Court Action and other cases in New Jersey and Bankruptcy Court, that the Operating Agreements are legitimate and that Straub is the sole owner of the Miss America Entities.  *See* Rule 11 Motion at p. 7.

Former Counsel filed the Amended Counterclaim on May 20, 2025. [ECF No. 65]. Former Counsel withdrew from this case on June 25, 2025.[7] [ECF No. 80]. Undersigned counsel did not appear in this case until July 7, 2025, 48 days after the Operating Agreement were filed by Former Counsel as part of the Amended Counterclaim. *See* ECF Nos. 84, 85. Undersigned counsel do not represent any of the Defendants in any other cases and have not filed anything advocating the Amended Counterclaim, its allegations, or its exhibits, other than providing the explanation above, which is consistent with the documents that Plaintiffs and their counsel produced, the findings and rulings in the State Court Action, and the credible explanations provided by Defendants. Regardless, Straub, PBP and undersigned counsel withdrew the subject exhibits and the allegations from the Amended Counterclaim that referenced them in a timely manner. Nevertheless, Plaintiffs also seek misplaced sanctions against Defendants' *current* undersigned counsel. *See* ECF No. 97

---

[7] Putting aside for the moment that Defendants and their current counsel withdrew the Operating Agreements and the allegations that referenced them from the Amended Counterclaim within the 21 day safe harbor period, ECF No. 96, the Court should also deny the Motion as it relates to Former Counsel. "When the attorney who violated Rule 11 withdraws from the case prior to opposing counsel obtaining clear evidence of the violation, ***a party cannot move for sanctions under Rule 11*** because ***the offending attorney*** no longer has the authority to correct or withdraw the challenged pleading." *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010) (emphasis added); *Selwyn v. Bruck Law Offs, S.C.*, 2020 WL 13598626, at \*5 (M.D. Fla. July 1, 2020) (denying Rule 11 motion where offending attorney withdrew from case); *Maale v. Kirchgessner*, No. 08-80131-CIV, 2011 WL 743040, at \*5 (S.D. Fla. Feb. 24, 2011) (denying in part Rule 11 motion where offending law firm "had already withdrawn from the case prior to opposing counsel moving for sanctions").

at pp.11-12 ("Despite awareness of this history, present counsel refuses to withdraw the documents from evidence and refuses to drop Straub's claims of ownership.").  The Court should therefore deny the Rule 11 Motion for this additional reason.

**D.  <u>Plaintiffs Have Not Established That the Operating Agreements are Fraudulent.</u>**

In addition to being procedurally improper for the reasons discussed above, the Court should deny the Rule 11 Motion because Plaintiffs have not met their heavy burden for the Court to impose the extraordinary remedy of Rule 11 sanctions against Straub, Galle, and/or their counsel. *See Lopez.*, No. 09-60734-CIV, 2010 WL 555918, at *1.  The premise upon which Plaintiffs rely to accuse Straub, Galle, and their Former Counsel of filing fraudulent documents with the Court is far too attenuated to justify the imposition of sanctions against them. Specifically, Plaintiffs repeatedly make the following flawed arguments:

i)      the Operating Agreements do not contain metadata;

ii)     the Operating Agreements were re-created documents, "backdated" to December 28, 2022; and

iii)    the version of the MAC Operating Agreement that was provided to Fleming contained the wrong or misspelled name and purpose.

None of these incorrect arguments demonstrate that the Operating Agreements are fraudulent.

First, the lack of metadata for the Operating Agreements that were attached to the Amended Counterclaim is explained by the fact that Galle's Laptop—where the original digital versions thereof existed—was ***stolen***. Second, the Transaction Documents were drafted on Galle's desktop computer, which was ***not*** stolen.  Third, Galle explained the legitimate reason that he retyped the MAC Operating Agreement after the Laptop was stolen, and that the retyped version is a faithful depiction of the original executed version (with the letter "s" added to conform to the way MAC's name appeared on Sunbiz at the time). Also, when re-typing the MAC Operating Agreement, Galle corrected the "purpose" of the entity to match what was in the original, and he updated it to use the misspelled name that existed on SunBiz at that time.  This was appropriate for the reasons discussed above, and because Straub, as the sole owner of MAC, could certainly correct any documents that were  prepared for his own company. Fourth, Fleming and Plaintiffs' counsel knew, as evidenced by, *inter alia*, their arguments in the Rule 11 Motion, that Straub and Galle used the name Miss America Competition instead of Miss America Pageant after the Miss America Entities were first formed, but before Galle got the chance to update MAC's name on Sunbiz.  *See* Rule 11

Motion at p. 3., n. 5;  And, even if, *arguendo*, Straub did not sign the Operating Agreements on December 28, 2022, it is common practice to designate an Effective Date that precedes the date a contract is drafted and/or executed, especially where, as here, there is no doubt that the Miss America Entities were formed on December 28, 2022. ***None*** of Plaintiffs or their counsel's arguments demonstrate that either of the Operating Agreements are ***fraudulent***.

For the same reasons, the cases that Plaintiffs and their counsel cite in the Rule 11 Motion regarding imposing sanctions for submitting false documents are inapposite. *See, e.g.*, *Bout v. Bolden*, 22 F. Supp. 2d 653, 655 (E.D. Mich. 1998) (imposing sanctions for party's submission of fraudulent documents with forged signatures where the testimony of the court's forensic examiner showed "clearly and beyond any doubt that the signatures on these documents [were] not genuine" and "such evidence [was] uncontroverted"); *Pope v. Fed. Exp. Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995) (affirming sanctions against plaintiff "where [plaintiff] knowingly offered a falsified document into evidence");[8] *White v. Gen. Motors Corp., Inc.*, 908 F.2d 675, 682 (10th Cir. 1990) (affirming imposition of sanctions, in part, where plaintiffs brought claims that were extinguished by general releases, demonstrating a lack of reasonable investigation); *Coastal Envtl. Grp., Inc. v. United States*, 118 Fed. Cl. 15, 36 (2014) (imposing sanctions for submission of fraudulent document where party "was intentionally trying to deceive counsel and the court regarding the authenticity of the document"); *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (affirming sanctions where party "sought to bolster [allegations of discrimination] with a bevy of falsified documents"); *Combs v. Rockwell Intern. Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (affirming imposition of sanctions where party "authorized counsel to alter his deposition in material respects" and "swore, under penalty of perjury, that he had reviewed the transcript and had himself made the changes"); *Fraige v. Am.-Nat'l Watermattress Corp.*, 996 F.2d 295, 296 (Fed. Cir. 1993) (noting in *dicta* that trial court imposed sanctions where president of company (i) knowingly altered company advertisement, (ii) attested to authenticity of advertisement, and (iii) falsely stated that advertisement was distributed to consumers).

---

[8] Ironically, Plaintiffs quote language supposedly from this case that does not appear in the case. *See* ECF No. 97 at p. 12.

This case is unlike any of the cases that Plaintiffs cite. There is no evidence that the Operating Agreements are fraudulent. On the other hand, there is compelling evidence that Plaintiffs have engaged in fraud.

**E.  Straub's Claim of Ownership of the Miss America Companies is an Ultimate Issue in This Case and Does Not Serve as a Basis for Granting the Rule 11 Motion.**

Knowing that Straub and his counsel would (and did) withdraw the Operating Agreements and the allegations referring to them from the Amended Counterclaim within the 21-day period,[9] Plaintiffs argue in the alternative that Defendants and their current counsel should be sanctioned for not withdrawing Defendants' defenses and claim of *ownership* over the Miss America Entities. *See* ECF No. 97 at pp. 2, 14, and 17. Plaintiffs and their counsel are incorrect.

Putting aside for the moment that ***Plaintiffs' own documents reveal Fleming's admissions that Straub is the sole owner of the Miss America Entities and she was nothing more than an employee*** (Exhs. Q, R, & P), Straub's claim of ownership is an (if not *the*) ultimate issue in this case. Plaintiffs' spurious disagreement with Straub's position is not a basis for sanctions. Indeed, "Rule 11 should not be used to raise issues ***as to the legal sufficiency of a claim or defense*** that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits." *Bigford*, No. 12-61215-CIV, 2012 WL 12886184, at *2 (emphasis added). Yet that is exactly what Plaintiffs are attempting to do.  Furthermore, Plaintiffs' argument that the Operating Agreements are Defendants' *only* evidence of Straub's ownership of the Miss America Entities is demonstrably wrong, as discussed above. *Compare* ECF No. 97 at p. 1 ("There are two – ***and only two*** – documents in this action that, Defendants have asserted, support Glenn Straub's claim of ownership of the Miss America Companies") (emphasis added); at p. 10 (the Operating Agreements "were ***the primary documents*** upon which Straub relied for his claim of ownership of the Miss America Companies . . .") (emphasis added), with Exhs. G, J, M, Q, R, and S. Indeed, the documents that Plaintiffs themselves produced in this case eviscerate the Rule 11 Motion.  These are additional reasons the Court should deny the Rule 11 Motion. *See, e.g., Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,

---

[9] *See* ECF No. 97 at p. 17 ("During the meet-and-confer, Defendants' counsel stated that they were withdrawing controversial Exhibits 2-3 [ECF Nos. 65-2 and 65-3] from their proposed amended answers, defenses, or counterclaims; on September 5, 2025, Defendants Straub and Palm Beach Polo filed a notice [ECF No. 96] of their intent to withdraw these exhibits.").

396 (1990) ("the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."); *FCOA, LLC v. Foremost Title & Escrow Services, LLC*, No. 17-Civ-23971, 2018 WL 624497, at *2 (S.D. Fla. Jan. 30, 2018) (denying Rule 11 motion where "the motion represent[ed] an improper attempt to convert a disagreement over the factual allegations and legal arguments in Plaintiff's complaint into a sanctions dispute"); *Kaye v. Pers. Injury Funding III, LP.*, No. 09-82391-Civ, 2010 WL 2244085, at *3 (S.D. Fla. May 12, 2010), *report and recommendation adopted sub nom. Kaye v. Pers. Injury Funding III, LP*, 2010 WL 2244087 (S.D. Fla. June 3, 2010) (denying Rule 11 motion where "Plaintiff merely filed the . . . motion as an attempt to test the legal sufficiency of Defendant's allegations contained in its Answer and Affirmative Defenses" and "focused solely upon the *merits* of Defendant's allegations") (emphasis in original).

 **F.**  <u>**This Court Should Impose Sanctions Against Plaintiffs and Their Counsel.**</u>

  Plaintiffs have not demonstrated that Straub, Galle, their Former Counsel, and/or their new undersigned counsel should be sanctioned under Rule 11. Nor have Plaintiffs shown that Straub, Galle, their Former Counsel, and/or their undersigned counsel should be sanctioned under the Court's inherent power or 28 U.S.C. § 1927. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224 (11th Cir. 2017) ("A court has the inherent power to award attorney's fees to a party whose litigation efforts directly benefit others, to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007) (italics in original) ("[A]n attorney's conduct must be particularly egregious to warrant the imposition of sanctions [under § 1927]—the attorney must knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim).

  However, ***the Court should impose sanctions against Plaintiffs and their counsel for violating Rule 11 and as a result of their unreasonable and vexatious litigation conduct***. For example, and without limitation, Plaintiffs and their counsel:

  (i)   filed the Rule 11 Motion after Straub, PBP, and their undersigned counsel withdrew the Operating Agreements as exhibits to the Amended Counterclaim (which Galle never filed in this case), and the allegations referring to them therein, within the twenty-one (21) day period;

(ii)     wasted this Court's and Defendants' resources by filing the baseless and frivolous Rule 11 Motion;

(iii)    have committed fraud on the Court by repeatedly contending in their pleadings and filings that Fleming owns the Miss America Entities, even though the documents that Plaintiffs and their counsel produced in discovery unequivocally establish Straub's ownership over the Miss America Entities and that Fleming was simply Straub's entities' employee, whom Straub terminated; and

(iv)    have embarked on a crusade to prejudice the Court against Defendants by utilizing decades-old, prejudicial, inflammatory, and non-probative accusations regarding unrelated matters.

**WHEREFORE**, Defendants, GLENN F. STRAUB, CRAIG T. GALLE, and their counsel respectfully request that the Court deny Plaintiffs' Motion for Sanctions; impose sanctions against Plaintiffs and their counsel as a result of their violations of Rule 11 and the false positions they took in the Rule 11 Motion and due to their bad faith and vexatious litigation tactics, including but not limited to striking Plaintiffs' pleadings, awarding Defendants their attorneys' fees and costs incurred in connection with the Rule 11 Motion, this Response, and the related proceedings; and enter such other and further relief in favor of Defendants as the Court deems just and proper.

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.**
*Counsel for Defendants/Counter-Plaintiffs*
201 South Biscayne Boulevard
Twenty-Seventh Floor
Miami, Florida 33131
Telephone: (305) 379-9000

By: /s/ *Terri Ellen Tuchman Meyers*
    **Todd A. Levine, Esq.**
    Fla. Bar No. 899119
    *tlevine@klugerkaplan.com*
    **Terri Ellen Tuchman Meyers**
    Fla. Bar No. 881279
    *tmeyers@klugerkaplan.com*