UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: 24-cv-81507-Middlebrooks/Matthewman

ROBIN FLEMING, MISS AMERICA IP,
INC., MISS AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC,

    Plaintiffs,

v.

GLENN F. STRAUB, CRAIG T. GALLE,
KATHLEEN A. FIALCO, and PALM
BEACH POLO, INC.,

    Defendants.
_____/

**DEFENDANTS' MOTION FOR SANCTIONS AGAINST ROBIN FLEMING
AND PLAINTIFFS' COUNSEL PURSUANT TO FED. R. CIV. P. 11 AND
INCORPORATED MEMORANDUM OF LAW**

Defendants/Counter-Plaintiffs, GLENN F. STRAUB ("**Straub**") and PALM BEACH POLO, INC. ("**PBP**"), and Defendants, CRAIG T. GALLE ("**Galle**") and KATHLEEN A. FIALCO ("**Fialco**", and collectively with Straub, PBP, and Galle, "**Defendants**"), through their undersigned counsel and pursuant to Rule 11 of the Federal Rules of Civil Procedure, hereby file this Motion for Sanctions against Plaintiff/Counter-Defendant, ROBIN FLEMING ("**Fleming**"),[1] and Plaintiffs' counsel, Bruce J. Berman, Gene Rossi, Justin Chretien, Benjamin G. Chew, Jessica

---

[1] This Motion is not being filed against Plaintiffs, MISS AMERICA IP, INC., MISS AMERICA'S SCHOLARSHIP FOUNDATION, INC., or MAO IP HOLDING COMPANY (collectively with Fleming, "**Plaintiffs**"), because the rights and interests of these entities are actually owned by Straub, but Fleming converted and misappropriated these entities and their assets, and renamed the entities and altered their corporate status without any authority to do so. Thus, if Defendants were to pursue sanctions against these entities, they would essentially be pursuing sanctions against Straub's own companies, which is not Defendants' desire or intention.

N. Meyers, Camille M. Vazquez, Carlton Fields, P.A., and Sheppard, Mullin, Richter & Hampton, LLP (collectively, "**Plaintiffs' Counsel**"), and Incorporated Memorandum of Law, and state as follows:

## I. INTRODUCTION

Although the majority of Fleming and Plaintiffs' Counsel's filings are unnecessarily verbose and suggest complex issues, the central issue of this case upon which all of Plaintiffs' claims revolve is very straightforward: who owns the Miss America companies and their assets? There is no genuine dispute that Straub, and not Fleming, owns Miss America Competition, LLC ("**MAC**") and Miss America IP, LLC ("**MAIP**") (collectively, "**Straub's Buyer Entities**"). There is also no genuine dispute that Straub's Buyer Entities purchased all of the assets and interests of Miss America Organization, Inc. ("**MAO**"), MAO IP Holding Company, LLC ("**MAO IP**") and Miss America's Outstanding Teen, Inc. ("**MAOT,**" and collectively, with MAO and MAO IP, the "**Seller Entities**") pursuant to an Asset Purchase Agreement ("**APA**"), a Membership Interest Assignment ("**MIA**"), and a Bill of Sale ("**BOS,**" and collectively with the APA and MIA, the "**Transaction Documents**"). True and correct copies of the APA, MIA, and BOS are attached hereto as **Exhibit A**, **Exhibit B**, **and Exhibit C**, respectively. [ECF Nos. 104-14, 104-15, and 33-14]. Furthermore, there is no genuine dispute that Straub, through his wholly owned company, PBP, provided the money for Straub's Buyer Entities to purchase the Seller Entities' assets and interests and pay off the Seller Entities' debt. The evidence, including documents produced by Fleming and Plaintiffs' Counsel, reveals beyond any doubt that Straub is the sole owner of Straub's Buyer Entities and that Fleming was never anything more than a contract employee or independent contractor, and she never had any ownership interest in any of Straub's Buyer Entities or any of the Seller Entities (collectively, the "**Miss America Companies**").

Galle is an attorney who represents Straub and PBP, formed MAC and MAIP for Straub, and drafted the Transaction Documents pursuant to which Straub's Buyer Entities purchased the Seller Entities' assets and interests. Fialco is merely PBP's comptroller, whom Fleming and Plaintiffs' Counsel have sued in two Causes of Action ("**Counts**") of the Second Amended Complaint (Counts 1 and 4), without any legal or evidentiary basis. Plaintiffs' claims and allegations against Defendants are based on Fleming and Plaintiffs' Counsel's false narrative that Fleming is the owner of the Miss America Companies and/or their assets, and such claims and allegations are frivolous and without justification in law or fact.

Fleming and Plaintiffs' Counsel have had many opportunities to review the evidence, including communications between the parties and other documentation produced in discovery. Moreover, Fleming and Plaintiffs' Counsel had more than 21 days since this Motion was first served upon them (but not filed with the Court during that time) within which to withdraw Fleming's spurious allegations and claims based thereon that Fleming, and not Straub, owns Straub's Buyer Entities. The allegations that Fleming and Plaintiffs' Counsel were required, but failed, to withdraw include paragraphs 6, 8, 10, 11, 13–15, 70, 71(a, c, d, e, and f), 72, 73 (a and b), 74, 75, 77–82, 84, 88, 89, 95–97, 99, 100, 104–07, 116, 125, 126, 128, 136–39, 141, 142, 152, 160–64, 166, 170, 172–75, 177, 180, 182, 186, 189, 193, 196, 198, 199, 201, 208, 209, 211, 219, 222, 243, 255–58, 261, 267, 268, 270, 272, 273, 291, 297, 300, 302, 303, 305–09, 312, 313, 316, 345, 367, 376, 385, 388, 390, 394–96, 500–03, 595, and 599 of the Second Amended Complaint, as well as Counts 1–6, 9, and 14 of the Second Amended Complaint (and the allegations contained in said Counts). These allegations and claims are without any basis in law or fact and/or have been presented for an improper purpose.  Nevertheless, Fleming and Plaintiffs' Counsel have refused to

withdraw the subject allegations and claims. Accordingly, this Court should impose sanctions against Fleming and Plaintiffs' Counsel pursuant to Fed. R. Civ. P. 11.

## II.   FACTUAL BACKGROUND

### *The Seller Entities*

The Seller Entities had separate, but sometimes overlapping, roles in operating the Miss America competitions and owning and performing other key aspects of the business related to, *inter alia*, branding, intellectual property, trademarks, marketing, asset management, financing, and outreach. By late 2022, the Seller Entities had incurred, and were responsible for paying, a litany of debts. The Seller Entities had become insolvent, or were on the cusp of insolvency, because their debts and financial obligations exceeded their cash and revenues.

### *Fleming's Representations to Straub, Straub's Reliance Thereupon, and Straub's Buyer Entities' Purchase of the Seller Entities*

In 2022, Fleming informed Straub that she heard that the Seller Entities were entertaining offers to purchase their assets and interests and to pay their debts. Straub had the financial resources to purchase the Seller Entities' assets and interests and pay their debts. Fleming did not. Straub wanted to see the Miss America platform and its positive message of women's empowerment continue and even rise to greater heights. Fleming and Straub discussed various potential structures for the purchase of the Seller Entities' assets and interests, the payment of the Seller Entities' debts, and the roles that Straub and Fleming would have in, and following, a purchase and sale transaction.

Straub and Fleming initially contemplated an arrangement for a company in which Fleming would have been a *part*-owner purchasing the Seller Entities' assets and interests and paying their debts. This initial arrangement included having Straub's daughter, Kelly Straub Hull ("**Kelly Straub**"), and Fleming form and own a company together that would acquire the Seller Entities'

assets and pay their debts. Under this concept, Kelly Straub was to be the majority Member, owning 51% of the acquiring entity, and Fleming was to be a minority Member, owning the remaining 49%. The entity that Kelly Straub and Fleming were going to utilize for this initial concept was named American Icon Marketing, LLC ("**AIM**"). To that end, on December 18, 2022, Fleming wrote to Straub that "the new company formed is American Icon Marketing LLC…Kelly Straub is Majority Share owner and Chairman of the Board, Robin Fleming is CEO and President." December 18, 2022, email, a true and correct copy of which is attached hereto as **Exhibit D**. Galle drafted an early version of the APA that included AIM as the Buyer of the Seller Entities' assets. *See* draft APA with AIM as proposed Buyer, a true and correct copy of which is attached hereto as **Exhibit E**.

Straub, through his wholly owned entity, PBP, was initially going to loan funds to Kelly Straub and Fleming (the "**Proposed PBP Loan**") to enable them (through AIM) to acquire the Seller Entities' assets and pay the Seller Entities' debts. Straub therefore caused Galle to draft a Pledge Agreement for Fleming to sign personally, and a Promissory Note with Balloon Payment for both Fleming and Kelly Straub to sign personally (the "**Note,**" and collectively with the Pledge Agreement, the "**Loan Documents**"). [ECF Nos. 104-5 and 104-6]. The purpose of the Loan Documents was to ensure that Fleming and Kelly Straub would repay the Proposed PBP Loan. Fleming said, however, that she was not willing to sign the Loan Documents because she was concerned that Straub, through PBP, would sue her and foreclose on her assets if the Proposed PBP Loan was not repaid. *See* December 4, 2022, email from Fleming to Straub and Galle, a true and correct copy of which is attached hereto as **Exhibit F**; *see also* Corrected Galle Affidavit ("**Galle Aff.**") [ECF No. 104-1] at ¶12 a true and correct copy which is attached hereto as **Exhibit G**.

5

Without executed Loan Documents to secure Fleming's repayment of the Proposed PBP Loan, Straub and Fleming abandoned any notion of Fleming or AIM acquiring any of the Seller Entities' assets or interests. Instead, after December 18, 2022, but before the Transaction Documents were executed on December 30, 2022, Straub and Fleming agreed that *Straub* (and *not Fleming or AIM*) would acquire the Seller Entities' assets and interests through entities that Straub would have formed, and that Fleming would work for Straub's to-be formed entities as the public face of Miss America. Fleming told Straub and Kelly Straub that Straub should remain in the background and not interact with the Seller Entities, because Fleming represented to Straub that the Seller Entities would not want to deal with Straub. *See* Galle Aff. at ¶¶ 8, 9.

On December 28, 2022, with Fleming's knowledge and consent, Straub caused Galle to form MAC (which was initially named Miss America Pageant, LLC, before Straub caused Galle to change its name on www.sunbiz.org ("**Sunbiz**") approximately 1 week later) and MAIP as Florida Limited Liability Companies. *See* December 28, 2022, Electronic Articles of Organization for Florida Limited Liability Company for MAP and MAIP and Sunbiz filing for MAIP on the same day, true and correct copies of which are attached hereto as **Composite Exhibit H**. At Straub's direction and with Fleming's knowledge, Galle designated Fleming as the registered agent, authorized representative, and a manager of each entity, and *not* as a Member of either entity. *Id*. Galle then revised the APA to reflect that Straub's Buyer Entities would be the Buyer of the Seller Entities' assets and interests. *See* December 28, 2022 email from Galle to Fleming (at her email address *ceo@girlbossing.com*), a true and correct copy of which is attached hereto as **Exhibit I** ("Attached is the revised Asset Purchase Agreement. [you will note that the names of the Buyer have changed. I formed both of these LLCs today. You are the Manager.]").

Fleming agreed to serve as the President and Manager for Straub's Buyer Entities and to be responsible for handling the day-to-day operations of the Miss America Companies, interfacing with state and local organizations, acting as a liaison for any boards or individuals, and having related responsibilities. Galle provided the revised APA to the Seller Entities' representatives, Shantel Krebs ("**Krebs**"), Rollyn Samp ("**R. Samp**") and Michael Samp ("**M. Samp**"), and copied Fleming on his emails.  *See* December 29, 2022, email exchange between and among Fleming, Galle, M. Samp, R. Samp, and Krebs, a true and correct copy of which is attached hereto as **Exhibit J**; *see also* Ex. A (APA) signed by Fleming as President of Straub's Buyer Entities, MAC and MAIP, and by Krebs as Managing Member and Chair of the Seller Entities.

On December 29, 2022, the day before the APA was executed, Fleming wrote to Straub, stating, "[s]ince it looks like we're moving ahead, can we have a conversation about the details *where I fit in*?" December 29, 2022, text message, a true and correct copy of which is attached hereto as **Exhibit K.**  Fleming obviously knew that her role would be shaped by Straub, who was and remains the sole Member of Straub's Buyer Entities, MAC and MAIP.

As the sole Member of Straub's Buyer Entities, Straub was responsible for facilitating the payments necessary to keep the Miss America Companies viable, which he did through PBP. Specifically, Straub caused PBP to transfer funds to Straub's Buyer Entities, MAC and MAIP, for use in their acquisition of the Seller Entities' assets and interests. *See* PBP GL Account Transaction Details Report, a true and correct copy of which is attached hereto as **Exhibit L**.

On or about December 30, 2022, and at Straub's direction, Fleming signed the APA on behalf of Straub's Buyer Entities, as each entity's President, ***not as a Member***, because she has never been a Member of any of the Miss America Companies. *See* executed APA, Ex. A. Fleming also signed the MIA as President and Manager of Straub's Buyer Entities ***not as a Member***,

7

because again, she has never been a Member of any of the Miss America Companies. In contrast, Krebs, the Chair and Managing *Member* of MAO signed the same documents as both Chair **_and_** Managing *Member* of MAO ***immediately above Fleming's signature*** on the MIA and ***immediately below Fleming's signature*** on the APA. *See* Ex. A at p. 13, Ex. B at p. 2.

### *Terms of the APA, Consideration to Purchase Miss America, and PBP's Role*

Straub's Buyer Entities purchased the Seller Entities' assets and rights pursuant to the Transaction Documents. These assets and rights include all proprietary and customer information regarding and related to the Miss America National Competition and MAOT, as well as paintings, statues, artwork, apparel, cash, accounts receivables, corporate books, historical files, digital assets, storage units, historical artifacts, domain lists, memorabilia, and other assets as more fully set forth in the APA. *See* Ex. A at § 2, and attachment identified in § 2.1(i). Also pursuant to the APA, Straub's Buyer Entities purchased, and therefore became owners of, *inter alia*, all of Miss America's trademarks, copyrights, service marks, marks, and intellectual property. *See* Ex. A at § 2.1(i), (iii); Ex. B. After Straub's Buyer Entities' acquired the Seller Entities' assets and rights pursuant to the Transaction Documents, MAC was to function as the corporate entity that, *inter alia*, manages, runs, and operates Miss America's day-to-day operations; stages the annual Miss America National Competition, state and local competitions, as well as MAOT competitions and events; and manages and runs other business, outreach, and marketing activities. MAIP was to hold and own all the Marks.

The consideration that Straub's Buyer Entities paid to the Seller Entities to purchase the Miss America assets was $100.00 at closing and the creation of a Buyers' Reserve to pay for the Seller Entities' debts, which totaled approximately $4,160,736.79. *See* Ex. A at §§ 1.2, 1.3. The payment of these debts, including a Small Business Association Loan (the "**SBA Loan**") in the

amount of at least $517,264.26, was a critical requirement and condition under the APA. *See* Ex. A at p. 17.

At no time has Fleming ever been a Member, "buyer," or "owner" of either of Straub's Buyer Entities, or of any of the Miss America Companies. Straub paid all the consideration—including the payment of the Seller Entities' debts and many other key operating expenses—through his wholly owned entity, PBP. Fleming did not have access to the funds necessary to pay the APA's consideration requirements in December of 2022, as she admitted in a deposition on July 16, 2024. *See* Transcript of the July 16, 2024, Deposition of Robin Fleming ("**Fleming State Depo**."),[2] a true and correct excerpt of which is attached hereto as <u>**Exhibit M**</u> at pp. 31–32. ***Despite never having any ownership interest in any of the Miss America Companies, Fleming converted and misappropriated these entities and their assets, and has divested Straub of his dominion, control, and ownership rights over Straub's Buyer Entities and of the Miss America Companies' assets and rights***.

### *Fleming's Acknowledgements That She is Only an Employee or Independent Contractor of Straub's Miss America Companies*

Fleming sent correspondence to, and communicated verbally with, Straub and others on numerous occasions, demonstrating her clear understanding that she was merely Straub's and Straub's Buyer Entities' employee or independent contractor, that she has never had any ownership

---

[2] On April 25, 2024—long before Fleming and Plaintiffs' Counsel commenced this action—Straub, through MAC and MAIP, along with MAO IP Holding Company, LLC (which Straub's Buyer Entities, MAC and MAIP, purchased from the Seller Entities), filed suit against Fleming, Miss America Scholarship Foundation, Inc. and Miss America Outstanding Teen, Inc., in Palm Beach County Circuit Court in an action styled *Miss America Competitions, LLC, et al. v. Robin Fleming, et al.,* in the Circuit Court of the Fifteen Judicial Circuit in and for Palm Beach County, Florida, Case No. 50-2024-CA-003851-XXXA-MB (the "**State Court Action**"). Despite the pendency of the State Court Action, Plaintiffs and Plaintiffs' Counsel commenced this federal case to forum and judge shop to avoid the rulings against them in the State Court Action.

9

interest in any of the Miss America Companies, and that she was required to comply with Straub's instructions. For example, on January 7, 2023—just over a week after Straub purchased the Seller Entities' assets and interests through Straub's Buyer Entities—***Fleming sent an email to Galle, wherein she confirmed she was nothing more than an executive, officer, and employee or independent contractor of MAC and MAIP, with no ownership interest in Straub's Buyer Entities or any of the other Miss America Companies***. *See* January 7, 2023, email, a true and correct copy of which is attached hereto as **Exhibit N**. In that email, Fleming requested that Straub provide her with an employment contract or independent contractor agreement, pursuant to which Fleming would be paid a salary and other benefits, "with the ability to participate in any group health insurance plan currently in place at PBP or other . . . ***entities [that Straub owns], Miss America Competition LLC[,] Miss America IP LLC DBA The Miss America Organization***." *Id.* (emphasis added). Fleming further requested that Straub pay her a "Finder[']s fee for due diligence and delivery of [the Miss America] deal - $250k." *Id*. Moreover, Fleming noted that if Straub "is unhappy with my work product or execution ***he is free to terminate me***….Because I love [the] Miss America program, I will agree to stay on and make a successful transition no matter the ill will or issues if asked to do so." *Id*. (emphasis added). Fleming also asked that Straub provide her with "Base pay $150k paid monthly . . . at start of month…6 months severance paid in lump sum ***upon termination by owner***…annual 5% increase or cost of living increase tied to COLA – whichever is higher." *Id*. (emphasis added). In addition, Fleming requested that Straub pay her an "Annual bonus of 8% of base pay, to be drawn or paid to me on Dec 1 of each year starting 2023." *Id*. Fleming then asked that Straub pay her:

> 20% of all gross revenue of any licensed or sponsorship deals
> that benefit either MAC LLC or MAIP LLC where [Fleming]
> may provide any or all of the following:

> Negotiation Strategy or consult on any aspect of strategy[;]
>
> Contribute Any Deal elements or deal structure[;]
> Creative direction of any kind[;]
>
> Design of any aspect of program or product[;]
>
> Consult in any fashion[;]
>
> Spend any time reviewing other peoples work or ideas.

*Id*.

In addition, Fleming requested that Straub pay her "50% of all gross revenue of any license deals, or gross revenues of any manufacturing scenarios that [Fleming] secure[s] based on [her] apparel and accessories design expertise or knowledge of apparel & design industry." *Id.* Fleming asked Straub to pay her the foregoing because she purportedly had "a significant gown revenue deal that [she had] been working for 18 months that [she] will bring to Miss America IP LLC." *Id*. Fleming followed up with another email to Galle, where she wrote "Forgot - …Please add all travel expenses paid hotel/air/food/rental or uber when I have to start going to pageants or other out of state situations like fly to New York .…" *Id*. Moreover, Fleming requested that Straub provide her with "Stock options should Miss America go public and significant profit participation ***should Glenn [Straub] decide to sell one or both entities [Miss America Competition, LLC and Miss America IP, LLC]***." *Id.* (emphasis added).

Fleming signed her emails as "Robin Fleming…***American Icon Marketing LLC***." *Id*. (emphasis added). Fleming *did not* sign her emails on behalf of MAC, MAIP, or any of the other Miss America Companies, nor did she indicate that she actually, or believed that she, owned Straub's Buyer Entities or any of the other Miss America Companies, in whole or in part.

11

Furthermore, and as discussed above, AIM did not purchase any of the Seller Entities or any of their assets or interests.

Of course, Fleming would not have asked Straub to provide her with a salary and employment benefits if she truly owned either of Straub's Buyer Entities or any of the Miss America Companies, as she and Plaintiff's Counsel contend speciously in this case. To drive this point home, on January 14, 2023, Fleming sent another email to Galle stating, "Glenn just denied me a [C]hristmas bonus. LOLOLOL. So remove from [Fleming's requested employment or independent contractor] contract." *See* January 14, 2023, email, a true and correct copy of which is attached hereto as **Exhibit O**. Then, on January 29, 2023, Fleming emailed Fialco stating, "Glenn [Straub] agreed to allow me to participate in any health insurance plan currently offered." *See* January 29, 2023, email, a true and correct copy of which is attached hereto as **Exhibit P**.

### *The State Court Rules in Favor of Straub's Buyer Entities*

Fleming and Plaintiffs' Counsel conducted discovery in the State Court Action long before Defendants served Fleming and Plaintiffs' Counsel with this Rule 11 Motion. After an evidentiary hearing that spanned four (4) days (July 17, 2024; July 18, 2024; August 20, 2024; and September 26, 2024), the State Court granted Straub's Buyer Entities temporary injunctive relief against Fleming and her purported companies. The State Court heard testimony from Fleming and others, and found that Straub's Buyer Entities have, *inter alia*, a substantial likelihood of succeeding on the merits of their claims that Straub owns the Miss America Companies and their assets, and that Fleming failed to establish any ownership interest in any of the Miss America Companies or their assets. *See* October 22, 2024, Order on Plaintiffs' Motion for Preliminary Injunction in the State Court Action, a true and correct copy of which is attached hereto as **Exhibit Q**, at pp. 11–12. The State Court added that "[n]o admissible evidence was presented by . . . Fleming that the APA was

ever amended in writing stating …Fleming was either the Owner of or a Member of the Buyer entities." *Id*. at p. 5. The State Court also found that Straub's company, PBP, "had paid several hundred thousand dollars of the 'Debts' listed on [the Exhibit to the APA listing the Miss America entity debts] and over $100,000.00 of expenses of the APA 'Buyer[.]'" *Id*. at 5–6. The State Court stated that Fleming confirmed those payments in her testimony, and that Fleming did not testify that she personally paid any of the referenced debts. *Id*. at 6. The State Court ordered Fleming to, *inter alia*, provide Straub's plaintiffs in the State Court Action with ongoing access to the Miss America Companies' books, financial records, and IP to enable Straub and Straub's Miss America Companies to receive and review finances and operational support. *Id*. at p. 17. The State Court also enjoined Fleming from altering any of the Miss America Companies' business records, including Sunbiz filings, and from making any material decisions without disclosure to, and review and consensus from Straub's Buyer Entities and Straub's other Miss America Company, MAO IP. *Id*. Rather than continue to litigate in the State Court Action, however, Plaintiffs and Plaintiffs' Counsel improperly commenced this federal case in an obvious improper effort to forum shop and judge shop.

The evidence is clear that neither Fleming nor AIM ever purchased any of the Seller Entities' assets or interests; that Straub has always been the sole Member of Straub's Buyer Entities; and that Straub's company, PBP, paid all the consideration pursuant to the Transaction Documents. The evidence is also clear that Fleming refused to sign the Loan Documents, which Straub required as a condition to loan her or AIM any money. Fleming has not provided any basis whatsoever to conclude that she has ever had any ownership interest in either of Straub's Buyer

Entities or any of the Miss America Companies.[3]  All of Fleming's and Plaintiffs' Counsel's allegations and claims based on her purported ownership interest are frivolous, do not and will not have any evidentiary or legal support, and/or have been presented for an improper purpose.

### III.  ARGUMENT

Federal Rule of Civil Procedure 11(b) provides, in relevant part:

> **(b) Representations to the Court.**  By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

---

[3] In another disingenuous effort to overcome the mountain of evidence against her, Fleming pointed to a Promissory Note **between PBP and MAC** (the "**PBP/MAC Note**") in her testimony in the State Court Action as supposed evidence that Straub and/or PBP was/were **her lender**. *See* Ex. M (Fleming State Depo.) at 19:15–18. But, as Fleming and Plaintiffs' Counsel know, once Straub formed Straub's Buyer Entities and closed on the transaction with the Seller Entities, Straub caused Galle to draft the PBP/MAC Note to memorialize the $525,000 *that PBP loaned to Straub's entity, MAC,* to pay off the SBA Loan.  This was the proper accounting practice when PBP loaned funds to its affiliated company, MAC.  *See generally, In re Hillsborough Holdings Corp.*, 176 B.R. 223 (M.D. Fla. 1994) (Courts consistently uphold affiliated promissory notes with proper documentation).  Fleming testified that the funds used to satisfy the PBP/MAC Note "came from the Miss America Scholarship Foundation account which had secured the pageant, so those were the proceeds.  That was what the note was – the security of the note was all the proceeds from the pageant and that's what was used to pay [the PBP/MAC Note]." Ex. M (Fleming State Depo.) at pp. 107–08.  In reality, nothing about the PBP/MAC Note supports Fleming's frivolous claim of ownership. To the contrary, the revenues generated by Straub's company, MAC, repaid the PBP/MAC Note to Straub's other company, PBP, which was the purpose and intent of the PBP/MAC Note.

> support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).

The imposition of sanctions pursuant to Rule 11 is proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Uniq Branch Off. Mexico, S.A. de C.V. v. Steel Media Grp., LLC*, No. 22-23876-Civ, 2024 WL 1514632, at *1 (S.D. Fla. Apr. 5, 2024) (emphasis added; internal quotations omitted); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (citations omitted). "Rule 11 of the Federal Rules of Civil Procedure requires district courts to sanction … parties …. when they prosecute baseless claims." *Pelletier v. Zweifel*, 921 F.2d 1465, 1469 (11th Cir. 1991). "The central purpose of Rule 11 is to 'deter baseless filings in district court' . . . The objective standard for assessing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." *UTEX94, LLC v. Danta*, No. 18-cv-80718-Middlebrooks, 2019 WL 13255529, *1 (S.D. Fla. Jan. 4, 2019).

"[A] court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous – in view of the facts or law – and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates*, 87 F.3d at 1254; *see also Gulisano v. Burlington, Inc.*, 34 F. 4th 935, 942 (11th Cir. 2022) ("When deciding whether to impose sanctions under Rule 11, a district court must conduct a two-step inquiry, determining '(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous.' . . A factual

15

claim is frivolous when it has no reasonable factual basis. . . A legal claim is frivolous when it has no reasonable chance of succeeding."). The Court may award Rule 11 sanctions as to the entire case, or specific counts. "Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988).

Rule 11 also "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.' An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.' Such a sanction may, but need not, include payment of the other parties' expenses." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990); *see also Gulisano*, 34 F. 4th at 941 ("Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into both the facts and the law before filing a pleading or motion."). If the attorney failed to make a reasonable inquiry, then "the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Gulisano,* 34 F.4th at 942 (quoting *Worldwide* Primates, 87 F.3d at 1254). "In addition, an attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court." *Id.* (citing *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) (citing Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment)). "That the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [the attorney] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable." *Id.* at 942–43.

The subject allegations and claims are objectively and subjectively frivolous. They lack merit and have no reasonable factual or legal basis. Fleming and Plaintiffs' Counsel have unequivocal knowledge that Fleming is not, and has never been, the owner of Straub's Buyer Entities, MAC and MAIP, or any of the Miss America Companies. ***Fleming herself has acknowledged in several writings that Plaintiffs and Plaintiffs' Counsel produced in this case that Straub is the owner of the Miss America Companies and that Fleming was never anything more than an employee or independent contractor of Straub's wholly owned entities***. As Fleming and Plaintiffs' Counsel are fully aware, written communications, financial records, and other documents evidence Straub's sole ownership of Straub's Buyer Entities and of the Miss America Companies' assets and rights. On the other hand, ***there is absolutely no evidence that Fleming has ever had any legitimate ownership interest in any of the Miss America Companies***. Yet, Plaintiffs and Plaintiffs' Counsel have failed and refused to withdraw Fleming's frivolous allegations and claims.[4]

Fleming and Plaintiffs' Counsel could not have a substantiated belief that the allegations and claims they filed with this Court are well grounded in fact, are legally tenable, or are not

---

[4] Fleming's misrepresentations to others to cause them to believe that she is the owner of Straub's Buyer Entities, as she urged Straub to remain in the background while she was the "face" of the companies, does not alter the inescapable fact and conclusion that Straub, and not Fleming, has always been the owner and sole Member of Straub's Buyer Entities and, therefore, all of the Miss America Companies' assets and rights. Similarly, Plaintiffs' and Plaintiffs' Counsel's allegations that there was a borrower-lender relationship between Fleming and Straub are not supported by any evidence, let alone any loan agreement, because Fleming refused to sign the Loan Documents, resulting in Fleming abandoning any attempt for her to buy the Seller Entities' assets through AIM. In fact, Fleming has admitted that there are no documents or terms involving Fleming or any entity owned by Fleming in a lender/borrower relationship with Straub or any of his companies before or at the time of the subject transaction, yet she alleges that Straub promised to finance the acquisition for three years. *See* Plaintiffs' Second Amended Complaint [ECF No. 33] at ¶¶ 51, 54. Plaintiffs' position is precluded by Florida's Statute of Frauds § 725.01 and the Banking Statute of Frauds, § 687.0304. Further, Plaintiffs admit that Fleming did not have a "guarantee of funds" from Straub. *Id.* at ¶ 55.

interposed for any improper purpose. Instead, Fleming's allegations and claims that she owns Straub's Buyer Entities and/or any of the Miss America Companies or their assets or rights are objectively and subjectively frivolous and/or have been presented for an improper purpose. Plaintiffs' Counsel are aware of the foregoing, and they were required to conduct a reasonable investigation, which would immediately reveal the speciousness of Fleming's allegations and claims. Nevertheless, Fleming and Plaintiffs' Counsel have refused to withdraw paragraphs 6, 8, 10, 11, 13–15, 70, 71(a, c, d, e, and f), 72, 73 (a and b), 74, 75, 77–82, 84, 88, 89, 95–97, 99, 100, 104–07, 116, 125, 126, 128, 136–39, 141, 142, 152, 160–64, 166, 170, 172–75, 177, 180, 182, 186, 189, 193, 196, 198, 199, 201, 208, 209, 211, 219, 222, 243, 255–58, 261, 267, 268, 270, 272, 273, 291, 297, 300, 302, 303, 305–09, 312, 313, 316, 345, 367, 376, 385, 388, 390, 394–96, 500–03, 595, and 599 of the Second Amended Complaint, as well as Counts 1–6, 9, and 14 of the Second Amended Complaint (and all allegations contained in said Counts). Fleming and Plaintiffs' Counsel's refusal to withdraw these frivolous allegations and claims mandates the imposition of sanctions against Fleming and Plaintiffs' Counsel pursuant to Federal Rule of Civil Procedure 11.

**WHEREFORE**, Defendants/Counter-Plaintiffs, GLENN F. STRAUB and PALM BEACH POLO, INC., and Defendants, CRAIG T. GALLE and KATHLEEN A. FIALCO, request that this Court impose sanctions against Plaintiff/Counter-Defendant, ROBIN FLEMING, and Plaintiffs' Counsel, Bruce J. Berman, Gene Rossi, Justin Chretien, Benjamin G. Chew, Jessica N. Meyers, Camille M. Vazquez, Carlton Fields, P.A., and Sheppard, Mullin, Richter & Hampton LLP, pursuant to Rule 11 of the Federal Rules of Civil Procedure, and enter such other and further relief in favor of Defendants as this Court deems just and proper.

## CERTIFICATE OF COMPLIANCE WITH FED. R. CIV. P. 11(c)(2)

**I HEREBY CERTIFY** that on October 23, 2025, undersigned counsel for Defendants served the foregoing Defendants' Motion for Sanctions Against Robin Fleming and Plaintiffs' Counsel Pursuant to Fed. R. Civ. P. 11 on Fleming and Plaintiffs' Counsel (but Defendants did not file the Motion with this Court at that time). Nevertheless, Fleming and Plaintiffs' Counsel failed to withdraw the subject allegations and claims within 21 days of service of the Motion upon them.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(2)(A), I HEREBY CERTIFY that undersigned counsel for Defendants conferred via Zoom with Plaintiffs' counsel, Gene Rossi, Justin Chretien, and Benjamin G. Chew on November 7, 2025, in a good faith effort to discuss the relief requested, and to resolve the issues raised in the foregoing Motion, but have been unable to resolve the issues.

Respectfully Submitted,

**KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.**
*Counsel for Defendants/Counter-Plaintiffs*
201 South Biscayne Boulevard
Twenty-Seventh Floor
Miami, Florida 33131
Telephone: (305) 379-9000

By: /s/ *Terri Ellen Tuchman Meyers*
    **Todd A. Levine, Esq.**
    Fla. Bar No. 899119
    tlevine@klugerkaplan.com
    **Terri Ellen Tuchman Meyers**
    Fla. Bar No. 881279
    tmeyers@klugerkaplan.com
    **Briana A. Harris, Esq.**
    Fla. Bar No. 1058239
    bharris@klugerkaplan.com