**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

CASE NO. 24-81507-CV-MIDDLEBROOKS/MATTHEWMAN

ROBIN FLEMING, MISS AMERICA IP,
INC., MISS AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC,
      Plaintiffs,

v.

GLENN F. STRAUB, CRAIG T. GALLE,
KATHLEEN A. FIALCO, and PALM
BEACH POLO, INC.,
      Defendants.
_____/
GLENN F. STRAUB and PALM BEACH
POLO, INC.,
      Counter-Plaintiffs,

v.

ROBIN FLEMING,
      Counter-Defendant.
_____/

**<u>PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT</u>**

Plaintiffs Robin Fleming, Miss America IP, Inc., Miss America's Scholarship Foundation, Inc., and MAO IP Holding Company, LLC ("Plaintiffs"), by and through undersigned counsel and pursuant to the Court's March 9, 2026, Order granting Plaintiffs' Motion for Sanctions (ECF No. 97), hereby files this Petition for Attorneys' Fees and Incorporated Memorandum of Law in Support ("Plaintiffs' Petition").

In support of this Petition, Plaintiffs rely on the Memorandum of Law incorporated herein; the March 31, 2026 Declaration of Benjamin G. Chew (the "Chew Decl."); and the March 31,

2026 Declaration of Robin Fleming (the "Fleming Decl."), which provides the basis for the award requested and attests to the truthfulness of the information in this Motion.

## BACKGROUND

On March 9, 2026, after a two-day evidentiary proceeding, this Court granted Plaintiffs' motion for sanctions, finding that Defendant Glenn F. Straub and former defendant Craig Galle, fabricated corporate documents and filed them with multiple different courts, including this Court, in an effort to "gain an advantage in a dispute over ownership" of the Miss America organization. ECF No. 210 at 1 (the "Sanctions Order"). Those "fabricated corporate documents" were: purported operating agreements for Miss America Competition, LLC ("MAC") and Miss America IP, LLC ("MAIP" and, with MAC, the "Miss America Entities"), two entities Ms. Fleming formed to acquire and manage the Miss America organization, that Defendants publicized and filed in numerous courts in an effort to smear Ms. Fleming and to undermine her legitimate ownership of Miss America; and three sets of supposed meeting minutes for the Miss America Entities, which were proffered in at least one court to further bolster the operating agreements and support Straub's claim of ownership. In granting Plaintiffs' motion, the Court not only granted Plaintiffs' request for attorney's fees and costs, but also dismissed Defendants' amended counterclaim with prejudice. Sanctions Order at 37.

Defendants' conduct in this case, and in the bankruptcy court and state courts in Florida and New Jersey, was egregious, forcing Ms. Fleming and her companies to litigate in multiple different forums simply to survive.  At the core of each proceeding and Defendants' claims were the fraudulent documents which Defendants knowingly and falsely claimed were "genuine, true and correct copies," all in an effort to "fraudulently bolster Mr. Straub's claim of ownership of the entities at issue." Sanctions Order at 7.  As a result, ***all*** *of Plaintiffs' litigation expenses* – in this

Court and the bankruptcy proceedings – are attributable to Straub's and Galle's fraudulent conduct that is the subject of the Sanctions Order. Without the "fabricated corporate documents," Straub had no basis whatsoever to claim ownership of the Miss America Entities, and Ms. Fleming and her entities would never have needed to litigate this false claim or commence this action to remedy extensive harm caused by this false claim.

Faced with the relentless, unscrupulous efforts by Straub and Galle to wrest control of Miss America from her and her companies, Ms. Fleming had no choice but to file the instant action on November 28, 2024.  (ECF No. 1). This was only after she and the Miss America entities had endured several prior lawsuits initiated by Mr. Straub and his attorneys, all of which utilized the fraudulent operating agreements as a basis for Straub's claim of ownership.[1] Despite the "detailed and specific" allegations of Plaintiffs' Second Amended Complaint filed on March 17, 2025, laying bare Plaintiffs' contentions on why the operating agreements were not genuine, Defendants persisted in their fraud, "den[ying] all allegations concerning fabrication" and filing a counterclaim seeking a declaration that Mr. Straub "is the sole member and sole owner of MAC and MAIP and as a result the Miss America Companies[.]" Sanctions Order, 2-3; *see also* Answer and Counterclaim, DE 65 at ¶73. In fact, Defendants submitted the fraudulent Operating Agreements as "genuine, true and correct" copies as Exhibits 2 and 3 to their Counterclaim.  Sanctions Order, 24.

---

[1] As detailed in Plaintiffs Second Amended Complaint and the Court's Sanctions Order, Defendants filed the documents in numerous lawsuits including in: i) the Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida, Case No. 2024-CA-003851 (initiated April 25, 2024); ii) Superior Court of New Jersey, Case No. ATL-L-202-24 (documents filed June 8, 2024); iii) U.S. Bankruptcy Court for the Southern District of Florida, Case No. 24-22288 EPK (Bankr. S.D. Fla. Nov 22, 2024). *See* Sanctions Order, 22-24.

Though Plaintiffs have been defending their ownership claims from this fraud since the very day Ms. Fleming was first presented with copies of their drafts (April 12, 2024), Defendants' persistent reliance on the fraudulent documents, dating from April 12, 2024, forced Plaintiffs to contest them and to file their Motion for Sanctions (DE 97) which ultimately led to the Sanctions Order. Straub's deceit required substantial efforts by Plaintiffs' counsel to prove the falsity of Straub's words, deed, and fraudulent documents.

Ms. Fleming and the Plaintiffs chose experienced commercial litigation firms, including Sheppard Mullin, who are experienced in high-stakes commercial, defamation, and reputational matters as the entirety of the companies' existence were  at stake, and her adversary (Mr. Straub) is a billionaire with effectively unlimited resources.  For more than 14 months after Ms. Fleming was announced as the new owner of Miss America in front of more than 1,200 stakeholders, Fleming and her team were hard at work running Miss America with no question as to who the owner and head of the organization was – Ms. Fleming.  But that all changed in March 2024 when Defendant Straub, angry over Ms. Fleming's refusal to be a pawn in a complaint he concocted, sought out to destroy Ms. Fleming and Miss America.  The attack was swift and unscrupulous, with Defendants executing a complex fraud through the employment of the fabricated operating agreements to convince the courts, the public, and Miss America stakeholders that it was Straub who owned Miss America. Sanctions Order, ¶¶ 43-55.  Indeed, Straub's actions threatened the very viability of the organization having used the fraudulent operating agreements to file for bankruptcy in the Southern District of Florida. *Id.* at ¶46.

Accordingly, Plaintiffs respectfully petition this Honorable Court to award sanctions in the total amount of the fees and expenses they incurred litigating Straub's claim to own the Miss America Entities.  Plaintiffs have undertaken to specifically identify the fees and expenses they

incurred which are clearly identifiable as falling within the four categories of recoverable fees identified in the Court's Sanctions Order.  However, Plaintiffs also seek reimbursement for the other legal fees and expenses incurred in such litigation, which are, for the reasons set forth herein, inextricably intertwined with and attributable to the Defendants' sanctionable conduct.

In accordance with the Court's Sanctions Order, Plaintiffs now submit this petition for attorneys' fees and costs. The following table provides a brief summary of fees and costs, which are further detailed in the Chew Decl.[2]

| Sheppard | Carlton Fields | Moore and Lee | Jayaram | Total |
|---|---|---|---|---|
| $2,300,123.42 | $2,390,644.86 | $55,915.00 | $26,955.16 | **$4,773,638.44** |

These fees and costs are associated with the following categories of recovery as specified by the Court in its Sanctions Order:

| Firm | Sanctions Motion and Associated Proceedings | Defense of Counterclaims | Bankruptcy Proceedings | Legitimacy of the Operating Agreements | Fees incurred as a result of the Operating Agreements |
|---|---|---|---|---|---|
| Sheppard | $500,195.85 | $193,429.08 | | $215,317.55 | $1,391,180.94 |
| Carlton Fields | $345,428.50 | $267,422.50 | $167,969.00 | $191,778.00 | $1,418,046.86 |
| Jayaram | $22,280.16 | | | | $4,675 |
| Moore & Lee | | | | | $55,915 |

---

[2] Plaintiffs also seek the fees incurred in preparing this petition: $129,084.50, as discussed further herein.

## LEGAL STANDARD

"When a court uses its inherent authority to award a sanction in the form of attorney's fees, legal fees awarded 'must be compensatory rather than punitive'—at least in civil litigation." *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1347 (11th Cir. 2024) (citing to *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017)). The award should be limited to the "fees that party would not have incurred but for the bad faith." *Goodyear Tire*, 581 U.S. at 104. The Court must "establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* at 108. "A district court has broad discretion to calculate fee awards under that standard[,]" (*id.* at 104), and the Court's objective is "'to do rough justice, not to achieve auditing perfection.'" *Id.* at 110 (internal citation omitted) . "Accordingly, a district court 'may take into account [its] overall sense of a suit and may use estimates in calculating and allocating an attorney's time.' The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct. And such judgments, in light of the trial court's 'superior understanding of the litigation,' are entitled to substantial deference on appeal." *Id.* at 110 (internal citation omitted).

## ARGUMENT

In its Sanctions Order, the Court identified four categories of expenses that were incurred as a result of the Defendants' bad-faith conduct:

1. "Plaintiffs' fees associated with service and filing of the Plaintiffs' Motion for Sanctions, the December 11, 2025 Zoom hearing, the January 30, 2026 evidentiary hearings, and related filings."

2. "Plaintiffs' fees associated with defense of Defendants' Counterclaim."

3. "Plaintiffs' fees associated with the bankruptcy proceedings."

4. "Plaintiffs' fees associated with matters in Plaintiffs' Complaint, to the extent that such expenses can be identified and segregated which involved litigating the legitimacy of the Operating Agreements and minutes."

*See* Sanctions Order at 37.

Plaintiffs address each category in turn below.

**I. Category 1 – Plaintiffs' fees associated with service and filing of the Plaintiffs' Motion for Sanctions, the December 11, 2025 Zoom hearing, the January 30, 2026 evidentiary hearings, and related filings.**

Plaintiffs submit for the Court's consideration **$867,904.51** in fees and costs concerning their extensive efforts to prove Defendants' fraudulent conduct through their motion for sanctions and the ensuing proceedings related thereto. This amount includes fees and costs of $500,195.85 attributable to the law firm Sheppard Mullin (497 total hours), $345,428.50 attributable to the law firm of Carlton Fields (321.5 total hours), and $22,280.16 attributable to local counsel (26 hours). *See* Chew Decl., ¶¶ 18–22 and Exhibits 3, 4, and 5 thereto.

Simply briefing the Plaintiffs' Motion for Sanctions (the "Sanctions Motion") required significant effort and pre-motion investigation and work.  Plaintiffs served Defendants and their former counsel with a copy of the Sanctions Motion, August 15, 2025, and subsequently met and conferred with former counsel regarding the motion on September 4, 2025. Plaintiffs then filed the Sanctions Motion on September 6, 2025, (ECF No. 97); Defendants filed their opposition papers on September 22 and 23, 2026 (ECF Nos. 103, 104); and Plaintiffs filed their reply in further support of the Sanctions Motion on September 29, 2025.  (ECF No. 105).

As the Court is aware, in addition to the Sanctions Motion itself, the Court held several hearings concerning the motion, including a zoom hearing on December 11, 2025, and an evidentiary hearing held on January 30, 2026 and February 2, 2026.  Sanctions Order at 6-7.  All

of the foregoing required the parties' and their counsel's attention and preparation. Then, subsequent to the evidentiary hearing, the Court also requested and received post-hearing briefing concerning Plaintiffs' Sanctions Motion, which the parties submitted on February 13, 2026. (ECF Nos. 194, 195). Plaintiffs' case for sanctions required extensive preparation, research, and persistence, particularly given the breadth of the litigation, testimony and documentary evidence relating to the fraudulent documents before multiple courts.

The total number of hours reasonably expended, by timekeeper, for which Plaintiffs seek to recover their attorneys' fees in this motion as it pertains to Sheppard's work on the Sanctions Motion and related hearings, is set forth below. For each timekeeper, a description of the tasks completed during those hours are discussed in the Declaration of Benjamin Chew filed simultaneously herewith, which tasks are further contained in the billing records attached as Exhibit 3 to the Chew Declaration.[3]

| Timekeeper[4] | Firm | Hours | Fees[5] |
|---|---|---|---|
| Ben Chew | Sheppard | 65.4 | $92,538.00 |
| Camille Vasquez | Sheppard | 0.4 | $564.00 |
| Andrew Crawford | Sheppard | 72 | $91,538.00 |

---

[3] For ease of reference, Plaintiffs have color-coded each category of relief granted by the Court and highlighted those time entries associated with each specified category of relief. As relevant here, the time entries associated with the Sanctions Motion and related proceedings are highlighted in yellow.

[4] The timekeepers identified herein are Partners Chew, Vasquez, Crawford, and Meyers; Associates Doyle and Franco; Paralegals Williams and Figueras; Trial Technician Turner; and Research Assistants Palmer and Willett.

[5] These fee totals are not inclusive of a 10% discount that was applied to Sheppard's rates as set forth in the Chew Declaration. The total fees for Sheppard with respect to this category, $500,195.85, is reflective of the applicable discounts and inclusive of Sheppard's costs ($62,083.70).

| Jessica Meyers | Sheppard | 74.3 | $94,105.00 |
| John G. Doyle | Sheppard | 72.1 | $79,121.00 |
| Nina Franco | Sheppard | 77.2 | $65,827.00 |
| Pena Emilia-Williams | Sheppard | 28.1 | $13,624.00 |
| Michelle Figueras | Sheppard | 53 | $20,394.50 |
| Sean Turner | Sheppard | 49.5 | $24,750.00 |
| Richard Palmer | Sheppard | 3.1 | $1,597.00 |
| Brian Willett | Sheppard | 1.4 | $203.00 |

**II.     Category 2 – Plaintiffs' fees associated with defense of Defendants' Counterclaim.**

Plaintiffs submit for the Court's consideration **$460,851.58** in fees and costs concerning their efforts to defend against Defendants' Counterclaims, which are based almost entirely on Straub's false claim that he owns the Miss America Entities.  This amount includes $193,429.08 attributable to the law firm Sheppard (307 hours) and $267,422.50 (345 hours) attributable to Carlton Fields. *See* Chew Decl. at ¶¶ 18, 23-24; *see also* Chew Decl. Exhibits 3 and 5.

The total number of hours reasonably expended, by Sheppard's timekeepers, for which Plaintiffs seek to recover their attorneys' fees as it pertains to the Defense of the Counterclaims is set forth in the following chart:

| **Timekeeper** | **Firm** | **Hours** | **Fees** |
| --- | --- | --- | --- |
| Ben Chew | Sheppard | 35 | $31,555.50 |
| Andrew Crawford | Sheppard | 76.7 | $53,033.50 |
| Jessica Meyers | Sheppard | 61.7 | $67,897.50 |
| John G. Doyle | Sheppard | 29.8 | $17,529.00 |

| Nina Franco | Sheppard | 66.1 | $28,601.25 |
|---|---|---|---|
| Pena Emilia-Williams | Sheppard | 29.2 | $7,081.00 |
| Michelle Figueras | Sheppard | 7.1 | $2,143.75 |
| Chloe Manos | Sheppard | 0.9 | $148.50 |

**III.    Category 3 – Plaintiffs' fees associated with the bankruptcy proceedings.**

Plaintiffs submit for the Court's consideration **$167,969.00** in fees concerning their defense of the Bankruptcy Proceeding fraudulently filed by Defendant Straub.

In order to defend against the November 22, 2024 Bankruptcy petition filed by Mr. Straub in the Southern District of Florida (BK, DE 1), Plaintiffs had no choice but to evaluate and assess Defendants' claims, respond to discovery requests and subpoenas, draft and file a motion to dismiss, and prepare for and argue the cause at a hearing held by the Bankruptcy Court on November 27, 2024.  Sanctions Order at 23–24; *see also* BK DE 16, 44.

Carlton Fields was bankruptcy counsel. Chew Decl. ¶ 30.  The fees associated with this request are contained in two separate sets of invoices issued by Carlton Fields.  *See* Fleming Decl. ¶¶ 6–7. Carlton Fields issued a segregated invoice for the bankruptcy action for $116,115.00, a copy of which is attached as Exhibit 6 to the Chew Declaration. Plaintiffs are only requesting $67,495.00 in fees in connection with this invoice.  Fleming Decl. ¶ 7.  In addition, Carlton Fields' invoices for this litigation included significant time entries relating to the Bankruptcy proceeding. *See* Exhibit 5. A review of those invoices revealed the total amount billed by Carlton Fields for work performed in connection with the bankruptcy matter is $100,474.00.  *See* Chew Decl. ¶ 30–31 and Exhibit 5 (November 2024 and December 2024 Carlton Fields Invoices where relevant entries are highlighted in green).

**IV.    Category 4 – Plaintiffs' fees associated with the legitimacy of the Operating Agreements and minutes.**

Plaintiffs submit for the Court's consideration recovery of **$54,126.87** in Sheppard's attorneys' fees incurred in directly litigating the legitimacy of the operating agreements and board meeting minutes. This recovery is based on **64.7** total hours, which are detailed in the invoices attached as Exhibit 3 to the Chew Declaration.[6] Plaintiffs also seek recovery of expert costs incurred in connection with the legitimacy of the operating agreements. Specifically, Plaintiffs retained experts to analyze (a) the metadata of the operating agreements, (b) other documentary inconsistencies of the operating agreements, and (c) analysis of the substance of the operating agreements in the context of other corporate records involving the LLCs at issue and Florida LLC law. None of these three experts (each of whom performed a different scope of work related to the operating agreements) would have been retained absent Defendants' misconduct. Those experts' work totaled **$161,190.68**. *See* Chew Decl. at ¶ 25. Accordingly, Plaintiffs seek reimbursement for fees and costs totaling **$215,317.55.**

As part of this request, Plaintiffs seek recovery of the expert costs related to retention of FTI Consulting. Plaintiffs engaged FTI to perform a metadata analysis of the various fraudulent operating agreements. FTI's analysis is documented in an affidavit that was submitted to the Court in support of Plaintiffs' sanctions motion. *See* ECF No. 97-8. **Plaintiffs would not have engaged FTI but for the fraudulent operating agreements submitted by Defendants**, which necessitated an examination of the metadata of those agreements. Mr. Theodore J. Theisen submitted the affidavit on FTI's behalf. Mr. Theisen's credentials are laid out in his affidavit and include his current role as a managing director of FTI Consulting Group, as well as 20 years of

---

[6] The entries related to legitimacy of the operating agreements are highlighted in **blue** in the invoices. *See* Chew Decl. Exhibit 3.

experience in various senior-level cyber-related positions, including as a Special Agent with the FBI and as the Branch Chief of Cyber Integrity at the Executive Office of the President of the United States. In the months during which FTI served as an expert in this matter, culminating in submission of the affidavit, FTI spent a total of 100.2 hours. The rates of FTI personnel working on the matter ranged from $621/hr to $1,155/hr.  Plaintiffs respectfully submit that in light of the importance of this litigation to the survival of Miss America and Ms. Fleming in her role as CEO/owner, the technical complexity of the work, and the nature of Defendants' sophisticated deception, FTI's rates and hours were appropriate. *See* also Chew Declaration ¶25.a. The total cost for FTI's work was **$97,862.68**.  As a further testament to the reasonableness of FTI's fees, Plaintiffs paid FTI's bills in full. *See* Fleming Decl. ¶ 10.

Plaintiffs also respectfully request recovery of expert costs related to the retention of Mr. Larry Stewart. Plaintiffs engaged Mr. Stewart as an expert in Forensic Document Examination to provide a formal Rule 26 expert report in connection with the fraudulent operating agreements (to include an examination of certain documentary qualities for the operating agreements). **Plaintiffs would not have engaged Mr. Stewart but for the fraudulent operating agreements submitted by Defendants**. Mr. Stewart has more than 45 years of experience conducting such examinations. Mr. Stewart is a former laboratory director and chief forensic officer for the U.S. Secret Service, where he oversaw laboratory analysis in the areas of questioned document analysis. Mr. Stewart is the current chief forensic scientist and president of Global Forensic Services, LLC. Mr. Stewart's hourly rate is $560. In my experience, Mr. Stewart's expert hourly rate is reasonable given his background and credentials. Plaintiffs identified Mr. Stewart through well-known expert witness firm IMS, who established Mr. Stewart's rate (lending further support to its reasonableness). Mr. Stewart spent **26.5 hours** examining the operating agreements and drafting a preliminary Rule 26

report. The total cost incurred by Plaintiffs for Mr. Stewart's services, and for which Plaintiffs seek to recover in full, are **$14,840**. *See* Chew. Decl. ¶ 26.b.

Plaintiffs also respectfully request recovery of expert costs related to the retention of Professor Daniel Kleinberger. Plaintiffs engaged Professor Kleinberger as an expert in LLC law to provide a formal Rule 26 expert report in connection with the fraudulent operating agreements (to include an analysis of the substance of the operating agreements in the context of other corporate records involving the LLCs at issue and Florida LLC law). **Plaintiffs would not have engaged Professor Kleinberger but for the fraudulent operating agreements submitted by Defendants**. *See* Chew Decl. 16, ¶ 25.c. Professor Kleinberger's hourly rate is $1,160, which is reasonable given his background and credentials as one of the nation's foremost experts on LLCs. *Id.* Moreover, Plaintiffs identified Professor Kleinberger through well-known expert witness firm IMS, who established Professor Kleinberger's rate (lending further support to its reasonableness). Professor Kleinberger spent **41.8 hours** examining relevant documents and drafting a Rule 26 report. The total cost incurred by Plaintiffs for Professor Kleinberger's services, and for which Plaintiffs seek to recover in full, was **$48,488** (Plaintiffs have paid this full amount).

In addition, Plaintiffs' former counsel at Carlton Fields invoiced Plaintiffs approximately **$191,778** relating to litigating the legitimacy of the operating agreements based on **185.3 hours** of work. *See* Chew Declaration, ¶ 26 and Exhibit 5.[7]

Beyond those fees/costs relating directly to litigating the operating agreements, it is imperative to note that these operating agreements have been so critical and pervasive in Mr. Straub's claim to ownership, that there would be no litigation at all without them. As such,

---

[7] Entries in Carlton Fields' invoices associated with the litigation of the operating agreements are highlighted in blue and attached as Exhibit 5 to the Chew Declaration.

Plaintiffs further request that the Court award **$2,869,817.80** in fees that Plaintiffs would not have incurred but for the creation and submission of the fraudulent operating agreements. *See* Chew Decl. Exhibits 3, 4, 5, 10–13.

As set forth *supra* and detailed in the Court's Sanctions Order, the fraudulent operating agreements are at the heart of this entire dispute – Straub could not have gone on his litigation and public relations campaign claiming to be the owner of Miss America without them. The fraudulent operating agreements gave Straub's claims of ownership, and his defamatory claims that Ms. Fleming was masquerading as the owner of Miss America, the legitimacy necessary to interfere with Miss America's operations, harm Ms. Fleming's reputation, and bring the ownership dispute before multiple courts. ***But for*** these fraudulent operating agreements, Plaintiffs would never have needed to file this action. As such, Plaintiffs respectfully request they be awarded the full balance of the legal fees and costs incurred to date in connection with this action.

Proving Plaintiffs' claims in this action necessarily requires disproving Straub's claim of ownership, which is based almost exclusively on the false operating agreements for the Miss America Entities.  Accordingly, Plaintiffs' pleadings, conduct in discovery, and efforts to prepare for an adjudication of their claims on the facts materially and inextricably overlapped with the categories of work identified in the Court's Sanctions Order – namely, proving the operating agreements and meeting minutes to be false, defending against Defendants' Counterclaims based on Straub's claim of ownership, and marshalling evidence for the Sanctions Motion and attendant evidentiary hearings.  Examples of this overlapping work are set forth below:

a.        Discovery in General.[8]   In conducting discovery, Plaintiffs, of course, sought to marshal evidence in support of their affirmative claims and to defend against Defendants' Counterclaims.  Both of these endeavors necessarily involved proving Ms. Fleming's ownership of the Miss America Entities and, thus, the falsity of the operating agreements and meeting minutes Straub has relied on to demonstrate ownership. By way of example, Plaintiffs filed a motion to compel [ECF No. 117] November 13, 2025. A focal point of that motion was obtaining versions of the fraudulent operating agreements with metadata, emails identified in Mr. Galle's affidavit [ECF No. 104-1] submitted in opposition to the Sanctions Motion, and Mr. Galle's legal invoices which would document the time he supposedly spent preparing the operating agreements and meeting minutes, and other related documents. Those documents were also the subject of multiple meet-and-confers. Furthermore, and as the Court is aware, Plaintiffs' dogged efforts were necessary to ultimately obtain this key evidence, as Defendants failed to produce the "smoking gun" April 2024 emails showing that Mr. Galle sent unsigned copies of the purported "original" operating agreements and meeting minutes to Straub's secretary in April 2024 until a day before the sanctions hearing commenced on January 30, 2026.  The Court should, accordingly, award Plaintiffs at least a portion of the fees and expenses incurred in conducting discovery in this action. In light of these facts, Plaintiffs request that the Court award 20% of the balance (*i.e.* **$573,963.56**)[9], to capture discovery that was directly related to the categories enumerated by the Court.

Plaintiffs' Defamation Claims. Not only did the fraudulent operating agreements enable Straub to effectively defame Ms. Fleming, necessary elements of pleading and proving Ms.

---

[8] The fees sought in this category are not otherwise captured in the fee requests Plaintiffs have submitted to the Court as it pertains to Categories 1-3.

[9] $2,869,817.80 x .2 = $573,963.56

Fleming's defamation claim is demonstrating that Straub's claim that Ms. Fleming was fraudulently claiming to own Miss America is false and that such false claims caused Ms. Fleming damages. Again, this necessarily requires demonstrating the false nature of the operating agreements that Straub cited to in support of his claim of ownership and the manner in which they were cited and/or distributed to Straub's audience.   Accordingly, the work conducted on prosecuting Ms. Fleming's defamation claim against Defendants, which includes third-party discovery and the retention of damages experts, also flows from the Defendants' fraudulent conduct addressed by the Sanctions Order. In light of these expenses, Plaintiffs request **$350,000** in connection with this work.[10]

## V.      **Fees Incurred In Preparing the Fee Petition**

In addition to the fees and costs set forth above, Plaintiffs respectfully request award of the fees incurred in connection with the preparation of this fee petition in the amount of **$129,084.50.** *See, e.g.*, *Martin v. Automobili Lamborghini Exclusive, Inc.*, No. 98-6621-CIV, 2006 WL 8563447, at \*5 (S.D. Fla. July 6, 2006), *report and recommendation adopted*, No. 98-6621-CIV, 2006 WL 8563445 (S.D. Fla. Sept. 12, 2006) ("time spent in preparing a fee application is compensable.").

Preparing the petition included a detailed review of years of legal invoices involving multiple law firms, years of expert invoices, applying privilege and other confidentiality redactions, and detailed calculations of rates, discounts, and hours, all of which needed to be allocated to specific categories of recovery set forth in the Court's Sanctions Order.  In a word, the undertaking of compiling and preparing records in support of this petition was significant.[11]

---

[10] For the first 11 months of its engagement, Sheppard's representation was limited to defamation issues, during which Plaintiffs incurred fees of $221,390.50. Chew Decl. 19.

[11] Billing records supporting the more than 144.4 hours of work upon which this fee request is based are attached as Exhibit 14 to the Chew Declaration. This amount is not inclusive of the additional hours counsel expended on March 31, 2026 finalizing and reviewing the fee petition.

VI.     **The Attorneys' Fees Sought By Plaintiffs Are Reasonable.**

a.  **Legal Standard for Reasonableness of Attorneys' Fee Awards**

Florida has adopted the federal lodestar approach as the starting point in calculating an award of attorneys' fees. *Bell v. US.B. Acquisition Co., Inc.*, 734 So. 2d 403, 406–07 (Fla. 1999) (discussing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985)). The lodestar method requires this Court to first determine an attorney's reasonable hourly rate, and then, multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin*, 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005).

The Court may use its expertise and consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman,* 836 F.2d at 1303 (internal citations removed). Courts may also rely on rates approved by other courts for attorneys of comparable experience. *See, e.g., Reiffer v. Active Certification Servs. LLC*, No. 1:21-CV-20177, 2021 WL 5772166, at *4 (S.D. Fla. Nov. 8, 2021), *report and recommendation adopted,* No. 21-20177-CIV, 2021 WL 5771156 (S.D. Fla. Dec. 6, 2021). Of course, one significant indicator of the reasonableness of Plaintiffs' hourly rates and the hours expended is, as here, where they were "'fees that commercial parties would have included and paid knowing that they had to cover the outlay themselves.'" *Venture Inv. Props., LLC v. Scottsdale Ins. Co.*, 2017 WL 3822101, at *12 (M.D. Fla. Aug. 8, 2018), *report and recommendation adopted*, 2017 WL 3732006 (M.D. Fla. Aug. 30, 2017) (internal citation removed). "Ultimately, courts should assess 'what a reasonable, paying client would be willing to pay.'" *Hendershott v. Ostuw*, No. 20-CV-80006, 2023 WL 11879719, at *2 (S.D. Fla. Mar. 2, 2023) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of*

*Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008) (The court must "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively.")); *Century Sur. Co. v. All Am. Lube of Boca, Inc.*, No. 21-CV-81935-AMC, 2023 WL 4972923, at \*5 (S.D. Fla. June 1, 2023) ("Ultimately, courts should assess 'what a reasonable, paying client would be willing to pay' bearing in mind '*all* of the case-specific variables that ... courts have identified as relevant to the reasonableness of attorney's fees,' including the *Johnson* factors.").

In addition, the Court has discretion to adjust the lodestar figure higher or lower considering the following "*Johnson* factors":

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Loranger*, 10 F.3d at 781 n.6.

### b. Reasonableness of Plaintiff's Requested Attorneys' Fees

#### i. Counsel's Hourly Rates are Reasonable in Light of this "Bet the Company" Litigation

The hourly rates charged by Plaintiffs' counsel were reasonable and commensurate with prevailing rates charged by similarly experienced attorneys at other law firms with national practices. As set forth in Mr. Chew's declaration, the lawyers and professionals that worked on this case possess significant experience, with Mr. Chew, a fellow of the American College of Trial Lawyers and a band 1 nationwide rating for defamation and reputation management from Chambers High Net Worth, leading his core team of five lawyers that handled this case who

collectively have over 70 years of experience. The team's relevant experience is set forth in Mr. Chew's declaration along with each member's professional biographies which are attached to the declaration as Exhibit 1. This experienced and highly qualified team was essential and indeed necessary to counter Defendants' complex scheme to defraud Ms. Fleming, Miss America, and the courts, making their fees all the more reasonable.

First, it bears noting that the fees Plaintiffs seek to collect for Sheppard are already significantly discounted. Plaintiffs received an across-the-board discount of 15% off of Sheppard's standard rates, and on top of that discount, in several months (including invoices for December 2025, January 2026, and February 2026, submitted herewith), Plaintiffs received an additional 10% discount. *See* Chew Declaration, ¶ 10.

Second, Sheppard's rates were reasonable given counsels' experience and the complexity of this matter. Those rates, set out in detail in Exhibit 2 to Mr. Chew's declaration, are as follows:[12]

| | | | | Calendar Year 2025 | | |
|---|---|---|---|---|---|---|
| ID | Atty Name | Title | Grad Year | Sheppard Mullin Standard Rate | Avg. Client Rate | AmLaw 50 Avg. Rate for Florida* |
| 004635 | Chew, Benjamin G. | Equity Partner ** | 1988 | $1,530 | $1,230 | $1,354 |
| 004637 | Crawford, Andrew C. | Non- Equity Partner *** | 2015 | $1,305 | $1,077 | $1,174 |
| 004632 | Meyers, Jessica N. | Non- Equity Partner *** | 2015 | $1,260 | $1,067 | $1,174 |
| 004668 | Doyle, John G. | Associate ** | 2005 | $1,105 | $913 | $1,093 |
| 004679 | Franco, Nina C. | Associate ** | 2023 | $825 | $677 | $841 |
| 008766 | Williams, Peña-Emilia | Other **** | - | $505 | $415 | $476 |
| 009366 | Figueras, Michelle S. | Other **** | - | $550 | $332 | $476 |

---

[12] During the course of the representation, Sheppard's fee rates increased effective January 1, 2026.

| ID | Atty Name | Title | Grad Year | Calendar Year 2026 | | |
|---|---|---|---|---|---|---|
| | | | | Sheppard Mullin Standard Rate | Avg. Client Rate | AmLaw 50 Avg. Rate for Florida* |
| 004635 | Chew, Benjamin G. | Equity Partner ** | 1988 | $1,715 | $1,310 | $1,493 |
| 004637 | Crawford, Andrew C. | Non- Equity Partner *** | 2015 | $1,490 | $1,143 | $1,300 |
| 004632 | Meyers, Jessica N. | Non- Equity Partner *** | 2015 | $1,410 | $1,143 | $1,300 |
| 004668 | Doyle, John G. | Associate ** | 2005 | $1,295 | $990 | $1,151 |
| 004679 | Franco, Nina C. | Associate ** | 2023 | $1,010 | $774 | $931 |
| 008766 | Williams, Peña-Emilia | Other **** | - | $570 | $437 | $521 |
| 009366 | Figueras, Michelle S. | Other **** | - | $605 | $347 | $521 |

The rates charged by Plaintiffs' lawyers and professionals are within the standard range for other AmLaw50 firms in several Florida markets, including Jacksonville, Miami, Fort Lauderdale, Naples, Orlando, Tallahassee, and Tampa. *See* Chew Declaration, ¶ 11. A review of relevant information from "Financial Insights," a benchmarking program by Thomson Reuters which compiles fee-based data, indicates that the rates sought here for the five Sheppard attorneys are **below** the AmLaw50 average rates for attorneys of comparable experience in the specified cities (all of which are located in the Eleventh Circuit). *See id.*; *see also* Chew Decl. Exhibit 2. As at least one court has noted, "the South Florida legal market has changed drastically in the last several years . . . . That top-end firms will be able to charge national hourly rates in South Florida, now, is an inevitable consequence of that development." *United States Sugar Corp. v. Com. & Indus. Ins. Co*, No. 22-21737-CIV, 2023 WL 4953191, at *7 (S.D. Fla. Aug. 3, 2023). Indeed, in *U.S. Sugar Corp.*, Judge Scola evaluated the rates of three attorneys from Mayer Brown, another AmLaw50 firm like Sheppard, finding the respective rates of $1,058/hr, $995/hr, and $932/hr to be reasonable. *See id.* at *7 (holding "[t]he Court does not find it appropriate, however, to reduce the rates charged by Mayer Brown's senior attorneys" due in part to the fact that the client actually

paid the rates and in part to the fact that national rates from large firms are reasonable in the Southern District of Florida).[13]

Though not definitive, the fact that Plaintiffs agreed to and paid Sheppard's invoices are further indicia of the reasonableness of Plaintiffs' hourly rates. *See Hendershott*, 2023 WL 11879719, at \*2 ("Ultimately, courts should assess 'what a reasonable, paying client would be willing to pay.'"); *see also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001); *Metal Group USA LLC v. Seapack, Inc.*, No. 18-22639-CIV, 2019 WL 5291183, at \*6 (S.D. Fla. Sept. 8, 2019), *report and recommendation adopted*, No. 18-22639-CIV, 2019 WL 11505386 (S.D. Fla. Oct. 7, 2019).

In addition to Sheppard's fees, Plaintiffs also seek recovery for fees paid to three other law firms in connection with this case: Carlton Fields, Moore and Lee, and Jayaram Law. As discussed further below, none of the work performed by these law firms was duplicative of that performed by Sheppard's attorneys, who did not take over as lead counsel for this case until November 2024. *See* Chew Declaration, ¶ 16. For reference, and as relevant to this fee petition, Carlton Fields was, *inter alia*, responsible for the motions to dismiss and answer to Defendants' counterclaims (except for the defamation count), as well as drafting and filing the motion for sanctions. Sheppard was responsible for arguing the motion for sanctions, quarterbacking expert reports, preparing for and taking all depositions, and preparing for and handling the sanctions hearing. Sheppard has utilized two firms as local counsel – Moore & Lee and Jayaram PLLC – whose role has largely been limited

---

[13] Mayer Brown's rates were incurred for work performed from June 2019 through February 2022 (*see U.S. Sugar Corp,* 2023 WL 4953191, at \*5) and undoubtably would be higher in 2025 and 2026, which is when the work was performed in this case. In fact, the Financial Insights data indicates that between 2025 and 2026 alone, the average AmLaw50 rate for Florida increased by 10%. *See* Exhibit 2. Applying such a year-over-year increase to Mayer Brown's 2019-2022 rates from the *Sugar Corp.* case would place those rates, which Judge Scola found to be reasonable, **above** Sheppard's proposed rates in this matter.

to final review and handling filings.  In summary, the rates charged per hour by those firms are as follows:

| Carlton Fields[14] | |
|---|---|
| Gene Rossi (Senior Partner) | $1,275.00 |
| Justin L. Chretien (Partner) | $1,100.00 |
| Bruce J. Berman (Partner) | $1,050.00 |
| Stephen J. Jorden (Partner) | $975.00 |
| Natalie A. Napierala (Partner) | $840.00 |
| Ilan A. Nieuchowicz (Partner) | $800.00 |
| Moore and Lee, P.C.[15] | |
| Charlie Lee (Partner) | $1,280.00 |
| Maia Dombey (Associate) | $595.00 |
| Jayaram PLLC | |
| John Gravante (Partner) | $850.00 |

The rates for each of these firms are comparable to or lower than those charged by Sheppard and thus are also reasonable.

---

[14] These rates are taken from the billing records of Carlton Fields filed simultaneously herewith as **Exhibit 5** to the Chew Declaration.  In addition to the Partner rates listed, the billing records show several associates of varying levels and paralegals from Carlton Fields who billed time to this matter and charged the following rates: Austin L. Jackson ($575.00); Clifford J. Perez ($445.00/hr); Jillian A. Blumenthal ($450.00/hr); Elisheva Klestzick ($445.00); Jillian Blumenthal ($450.00/hr); Samantha Lambe ($350.00); Carolyn Pratt ($330.00).

[15] Attorney John Gravante was initially employed with Moore and Lee, P.C. but transferred law firms during the course of the litigation. The rate charged by Mr. Gravante during his time at Moore and Lee was $795.00/hr.

### ii. The Hours Expended Were Reasonable and Necessary to Counter Defendants' Complex Fraud

In light of the reasonable hourly rate charged by Plaintiffs' counsel, the next step in computing the lodestar is determining the reasonable amount of hours Plaintiffs expended in litigating the claims. *See Norman*, 836 F.2d at 1301. Given the complexity of the case, its procedural history, and the volume and nature of the work, the hours spent by Plaintiffs' counsel and legal professionals for which Plaintiffs seek reimbursement, are reasonable.

In evaluating the reasonableness of the fees Plaintiffs incurred, Plaintiffs submit that this Court must take into account not only the complexity of the issues presented in this case, but also the fact that Defendant Straub and his counsel, former Defendant Galle, forced Plaintiffs to incur far greater fees than would have otherwise been incurred (if any for that matter). After all, as this Court found, it is the fraudulent operating agreements that formed the very basis for Straub's claims of ownership. Moreover, it was Straub and Galle's actions that caused the proliferation of these protracted legal matters, which subjected Plaintiffs to the costs they now seek to recover, and more. Defendants' actions that most significantly impacted the costs now before the Court include the following:

- Altering EIN paperwork to keep Ms. Fleming from seeing Straub's name associated with the Miss America Competition, LLC (Sanctions Order 12, ¶ 18);

- Drafting a fraudulent operating agreement for Miss America Competition, LLC and presenting it to Ms. Fleming on April 12, 2024 (*See id.* at 13-14, ¶¶ 2–25);

- Drafting additional fraudulent Operating Agreements for both Miss America Competition LLC and Miss America IP, LLC and distributing them to Plaintiffs' counsel on or about April 16, 2024 claiming ownership (*See id.* at 14–15, ¶¶ 26–28, 30);

- Drafting fraudulent meeting minutes on April 22, 2024, and using them in furtherance of their claim to ownership (*See id.* at 16, ¶ 31–32);

- Using the false operating agreements to seek an injunction against Ms. Fleming in the Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida ( *See id.* at 16, ¶¶ 33, 44);

- Using the false operating agreements in the Superior Court of New Jersey, Case No. ATL-L-202-24, on June 12, 2024, as purported evidence of Straub's ownership of the Miss America LLCs (*See id.* at 22-23, ¶ 45);

- Filing a petition in Bankruptcy in the U.S. Bankruptcy Court for the Southern District of Florida on November 22, 2024, and using the false operating agreements to counter Ms. Fleming's "Emergency Motion to Dismiss" (*See id.* at 16, ¶¶ 46);

- Using the false operating agreements as a basis for their counterclaims (*See id.* at 16, ¶¶ 54).

In determining the number of hours Plaintiffs reasonably expended, the Court should first look to the detailed billing records kept by counsel. *Nitram, Inc. v. Indus. Risk Insurers*, 154 F.R.D. 274, 277 (M.D. Fla. 1994) ("So long as the time entries for billing do not offend the court as being unnecessarily vague and ambiguous as to be deemed unconscionable, the requested fee award will be deemed reasonable."). Redacted versions of Sheppard's invoices are attached for the Court's review as Exhibit 3 to the Chew Declaration. As reflected in those entries, each timekeeper recorded his/her time contemporaneously in increments of tenths of an hour and provided a detailed description of the services rendered by task. As discussed herein, and in the declarations of Ben Chew and Robin Fleming, it was Defendants' misconduct that necessitated each of Plaintiffs' counsels' actions to protect the Plaintiffs from the fraudulent activities of Defendants. Further, the fees and costs incurred were exacerbated by the discovery misconduct of Defendants who, despite having months to comply with Plaintiffs' discovery request and a Court order to produce all relevant documents by December 26, 2025, did not turn over the documents showing clearly that Galle and Straub created the fake operating agreements and meeting minutes in April 2024 until a day before the January 30, 2026 sanctions hearing.  Accordingly, this Court should

consider Plaintiffs' billing records as prima facie evidence of the time reasonably required to advance Plaintiff's case and to defend against Defendants' fraudulently based counterclaims.

Sheppard's total attorneys' fees paid by Plaintiffs in this case from October 2024 through February 28, 2026, are **$1,946,313.4**.[16] Total costs (including expert costs) are **$353,810.02**. Plaintiffs request an award of those full amounts, broken down as follows (and detailed further below):

    i.   **$500,195.85** related to the **sanctions proceedings**;

    ii.   **$193,429.08** related to the **defense of counterclaims**;

    iii.   **$215,317.55** related to litigating the legitimacy of the **operating agreements,** and **$1,391,180.94** relating to other aspects of the case which never would have been brought but for the fraudulent operating agreements**.**

Carlton Fields' total attorneys' fees incurred by Plaintiffs in this case (and the related Bankruptcy case) from October 2024 through February 28, 2026, are $3,959,194.50 (including costs of $15,812.18). Based on a review of these invoices, the fees and costs can be broken down as follows:[17]

    i.   **$345,428.50** related to the **sanctions motion/proceedings**;

    ii.   **$167,969** related to the **Bankruptcy proceeding**;

    iii.   **$267,422.50** related to the **defense of counterclaims**;

---

[16] Sheppard's total fees in connection with this action are $2,104,599. However, Sheppard has applied numerous discounts, bringing the total amount billed to Plaintiffs to $1,956,313.4. Plaintiffs have paid this amount in full.

[17] *See* Chew Declaration, ¶18.

      iv.    **$191,778** related to the legitimacy of the **operating agreements** and **$1,418,046.86** relating to other aspects of the case which never would have been brought but for the fraudulent operating agreements.

Local counsel's total fees are **$82,870.16**, which is the combined total for Moore & Lee ($55,915) and Jayaram PLLC ($26,520 in fees and $435.16 in costs). Based on a review of these invoices, these fees can be broken down as follows:

      i.    **$22,280.16** in fees and costs ($21,845 in fees and $435.16 in costs) directly related to the **sanctions motion**; and

      ii.    **$60,590.00** relating to aspects of the case which never would have been brought but for the fraudulent operating agreements.

In addition, Plaintiffs also request the recovery of the fees incurred in preparing this petition: **$129,084.50.**

## VII.    Plaintiffs' Fee Request Is Supported by the *Johnson* Factors

The twelve *Johnson* factors, as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and applied by courts in this Circuit,[18] weigh in favor of Plaintiffs' fee request:

      a.    <u>Time and labor required</u>.  The time and labor incurred in connection with this case are detailed in the Chew declaration and the attached billing records. Defending against the entirety of Defendants' counterclaim and proving the fraudulent nature of the operating agreements, culminating in a two-day trial, were significant undertakings that involved, *inter alia*, a comprehensive grasp of the timeline of related events and corporate documents, the contents of multiple iterations of the operating agreements themselves, and examination of metadata (or

---

[18] *See, e.g.*, *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1089–90 (11th Cir. 2022).

absence of metadata), Defendant Craig Galle's billing records, and other documents. This further involved coordination and guidance from multiple expert witnesses, including a metadata expert and expert on Florida LLC law. The process was complicated by Defendants' conduct, including shifting stories about the documents and obstructive behavior in the discovery process. The time demand throughout the duration of this case (approximately 17 months at the time of this submission) has been substantial.

b.      Novelty and difficulty of questions.  Proving the fraudulent nature of the operating agreements involved extensive, detailed, and nuanced analysis of a wide range of issues, including technical issues such as metadata (or absence of metadata), Florida LLC law, and other document inconsistencies. The case in general also involves complicated questions of fact and law, including RICO and trademark claims that necessitated involvement of a national law firm with such expertise.

c.      Skill requisite to perform the legal service properly.  The Sheppard attorneys working on this matter possess the skills necessary to perform the work involved in this high-stakes dispute with potentially hundreds of millions of dollars and the continued existence of Miss America at stake. As set forth above, Defendants' engaged in a complex fraud designed to strip Ms. Fleming of her title as CEO and to bankrupt the organization all in an effort to give Straub control.

d.      Preclusion of other employment. Representation of Plaintiffs did not preclude Sheppard attorneys from other employment, though this case required particularly significant time expenditures by the Sheppard team in December 2025 and January 2026.

e.      The customary fee for similar work in the community.  For the reasons set forth above, the rates charged by the Sheppard attorneys for its representation fall well within the range

for work of a similar level of sophistication and complexity on a case of this magnitude. *See also* Chew Declaration, Exhibit 2.

        f.        <u>Contingent or fixed fee</u>.  Sheppard charged Plaintiffs on an hourly basis. Sheppard's fee was not contingent on the outcome of this proceeding.

        g.        <u>Time limitations imposed by the client or circumstances</u>.  No extraordinary time limitations were imposed by this proceeding.

        h.        <u>Amount involved and results obtained</u>.  Defendants asserted a counterclaim seeking substantial damages "in excess of $20,000,000." As discussed supra, in the Sanctions briefing, and in this Court's Sanctions Order, Defendants' fabricated operating agreements were the foundation of a complex and prolific fraud perpetrated on four separate courts, requiring Defendants to not only battle the allegations in this Court, but to unwind and counter judicial proceedings and findings in Florida and New Jersey. Only through the diligent and persistent efforts of Plaintiffs' counsel, were Plaintiffs able to successfully prove the fraud by the Defendants, obtaining dismissal of the counterclaim with prejudice coupled with this fee award.

        i.        <u>Experience, reputation, and ability of the attorneys</u>.  Plaintiffs' counsel are highly skilled commercial and reputation litigation attorneys as detailed in Exhibit 1.  That expertise and professionalism was required to counter Defendants' fraudulent conduct, which until now, went unchecked and allowed Defendants to wreak havoc on the courts and on the Miss America organization.  It was this expertise that was required to counter Defendants' offensive and to navigate this challenging and complex case.

        j.        <u>"Undesirability" of the case</u>. The case is not undesirable.

        k.        <u>Nature and length of the professional relationship with the client</u>. Sheppard has represented Plaintiffs since October 2024, shortly before this action commenced.

l.      <u>Awards in similar cases</u>.  Numerous courts in this jurisdiction have found rates similar to Sheppard's to be reasonable. *See, e.g., U.S. Sugar Corp.,* 2023 WL 4953191, at \*5, \*7 (finding $1,058/hr, $995/hr, and $932/hr. as reasonable rates for senior attorneys); *Infogroup Inc. v. Off. Depot Inc.*, No. 23-cv-80358, 2024 WL 4110526, at \*3 (S.D. Fla. Aug. 21, 2024) (finding rates of $800/hour for an associate at DLA Piper, $850/hour for a senior associate at Hogan Lovells, and $900/hour for a Hogan Lovells Partner reasonable); *Finkelstein v. Mt. Sinai Med. Ctr. of Fla., Inc.*, No. 23-CV-20188, 2025 WL 3280340, at \*13–14 (S.D. Fla. Nov. 25, 2025) (finding rates of $850/hour for Kramer Levin Partner and $755/hour for Kramer Levin Senior Associate reasonable).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award it $4,773,638.44 in attorneys' fees and costs. In addition, Plaintiffs request the award of the fees incurred as a result of filing this petition, in the amount of $129,084.50.

Dated: March 31, 2026

Respectfully submitted,

/s/ *Charlie C.H. Lee*
Charlie C.H. Lee (Florida Bar No. 96671)
Maia Dombey (Florida Bar No. 1024869)
MOORE & LEE, P.C.
3835 PGA Boulevard, Suite 201
Palm Beach Gardens, Florida 33410
Telephone: (703) 927-2425
c.lee@mooreandlee.com

Benjamin G. Chew (*pro hac vice*)
Jessica N. Meyers (*pro hac vice*)
Andrew C. Crawford (*pro hac vice*)
John G. Doyle (*pro hac vice*)
Nina C. Franco (*pro hac vice*)

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
bchew@sheppardmullin.com
jmeyers@sheppardmullin.com
acrawford@sheppardmullin.com
jdoyle@sheppardmullin.com
nfranco@sheppardmullin.com

*Attorneys for Plaintiffs*