**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 24-81507-CV-MIDDLEBROOKS

ROBIN FLEMING, MISS AMERICA IP,
INC., MISS AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC,

      Plaintiffs,

v.

GLENN F. STRAUB, CRAIG T. GALLE,
KATHLEEN A. FIALCO, and
PALM BEACH POLO, INC.,

      Defendants.

_____/

**DEFENDANT GLENN F. STRAUB'S MOTION FOR RECONSIDERATION**
**OF THE ORDER ON SANCTIONS (ECF No. 210)**

**INTRODUCTION**

Defendant, GLENN F. STRAUB ("**Mr. Straub**"), by and through undersigned counsel,

respectfully moves this Court to reconsider its Order on Sanctions entered on March 9, 2026 (ECF

No. 210). Because the Order is interlocutory as to Mr. Straub—Plaintiffs' affirmative claims

remain pending and fee proceedings are ongoing (ECF Nos. 215–219)—the Court retains inherent

authority to reconsider it at any time before final judgment. *See, Harper v. Lawrence Cnty.*, 592

F.3d 1227, 1231–32 (11th Cir. 2010); *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315

(11th Cir. 2000).

Mr. Straub does not seek to relitigate the Court's findings regarding the Operating

Agreements. Rather, this Motion addresses a narrow but dispositive issue: the Court's dismissal

of the *entire* Amended Counterclaim with prejudice is inconsistent with the Court's own finding,

made during the second day of the evidentiary hearing, that the underlying ownership dispute is "apparently a legitimate dispute" with "arguments on both sides" and involves "probably legitimate issues." (Mot. Sanctions Hrg. Tr. 178:2–8, Feb. 2, 2026.)

The sanction of dismissal with prejudice of the entire counterclaim filed on October 3, 2025 (ECF No. 112)—rather than a tailored sanction directed at the specific misconduct—is manifestly unjust because it extinguishes ownership claims that even this Court and Plaintiffs' own counsel acknowledged have independent merit and viability. Notably, Plaintiffs' counsel did not even request dismissal of the entire counterclaim; he asked only for "a striking of at least some portion of the counterclaims." (*Id.* at 180:6–8.) The Order thus imposes a sanction more severe than what the moving party itself sought.

## <u>ARGUMENT</u>

I.  **THE COURT'S OWN FINDINGS AND THE PARTIES' CONCESSIONS ESTABLISH THAT THE OWNERSHIP DISPUTE HAS MERIT INDEPENDENT OF THE OPERATING AGREEMENTS**

On the second day of the evidentiary hearing, February 2, 2026, after having heard the testimony of Robin Fleming, Mr. Straub, and Craig Galle, and after reviewing exhibits spanning the formation and history of the Miss America entities, the Court made the following observations:

> There is a — apparently a legitimate dispute over ownership. I can see from the documents that people presented there are arguments on both sides, whether he was a banker and apparently there were some changes in terms of who was going to own what early on, and that regressed, and whether he was a funder or a banker, and whether he was somehow an owner.
>
> Those are probably legitimate issues, and so the lawsuit — she is the one that filed this case, and a lot of the attorney fees would go to that.

(*Id.* at 178:2–9.)

These were not preliminary or uninformed observations. They were made after a full day of testimony on January 30, 2026, and during the second day of evidentiary proceedings, by a

Court that had already observed the witnesses, reviewed the documentary evidence, and formed impressions about the merits of the underlying dispute.

Plaintiffs' own counsel reinforced this assessment. In the same colloquy, Mr. Chew discussed the possibility of segregating fees, stating: "In other words, not all the attorney's fees for the lawsuit because there is still a viable dispute about ownership, but that part of the ownership question that relies on the operating agreements and the meeting minutes." (Mot. Sanctions Hrg. Tr. at 178:16–19.) Even the party that moved for sanctions thus recognized that the ownership dispute has *independent viability* apart from the Operating Agreements.

Perhaps most significantly, when Mr. Chew articulated the sanctions he believed were appropriate, he did not request dismissal of the entire counterclaim. He asked instead for "serious sanctions in the form of monetary attorney's fees, adverse jury inference, and a striking of at least *some portion* of the counterclaims." (*Id.* at 180:5–8) (emphasis added). The Order's sanction of complete dismissal with prejudice thus exceeds what even the movant sought—a telling indicator that it is disproportionate.

Defendants' counsel likewise told the Court: "[T]his lawsuit is a legitimate dispute over ownership. It is going to play out somewhere at some point and a jury will make a decision." (*Id.* at 180:8–10.) Both sides recognized at the hearing that the ownership dispute is viable independent of the Operating Agreements.

Yet the Order on Sanctions dismisses the *entire* Amended Counterclaim with prejudice, permanently extinguishing Mr. Straub's ability to litigate the very ownership claims that this Court found to be "apparently legitimate" and that both parties' counsel acknowledged the ownership claim remains "viable." This result is internally inconsistent and constitutes clear error warranting reconsideration.

## II. DISMISSAL OF THE ENTIRE COUNTERCLAIM IS A DISPROPORTIONATE SANCTION UNDER GOVERNING ELEVENTH CIRCUIT LAW

The Eleventh Circuit has long held that the "sanction imposed should fit the interests jeopardized and the harm caused by the violation." *Zocaras v. Castro*, 465 F.3d 479, 485 (11th Cir. 2006). Dismissal with prejudice is "the most severe of all possible sanctions" and should be reserved for cases where no lesser sanction would suffice. *Oniha v. Delta Air Lines, Inc.*, 2022 WL 580933, at *2 (11th Cir. Feb. 25, 2022); *Frazier v. Se. Ga. Health Sys., Inc.*, 2024 WL 4357399, at *2 (11th Cir. Oct. 1, 2024), cert. denied, 145 S. Ct. 1930 (2025); *Stewart v. VMSB, LLC*, 2020 WL 3977150, at *3 (S.D. Fla. July 13, 2020) (denying sanction of dismissal where party moving for sanctions failed to show that lesser sanctions are inadequate to correct the conduct).

The absence of such a finding is grounds for reversal. *See, Collins v. Lake Helen, LP*, 249 Fed.Appx. 116, 121 (11th Cir. 2007) (reversing dismissal where "there is nothing in the magistrate judge's report indicating that he considered other sanctions and found them inadequate to address the problem at hand"); *Warner v. Tinder, Inc.*, 675 Fed.Appx. 945, 947 (11th Cir. 2017) (reversing dismissal where "the district court failed to make the necessary findings that [the party] engaged in a clear pattern of delay or willful conduct and that lesser sanctions—if indeed any were warranted—were insufficient.").

The Order contains no finding that lesser sanctions would be inadequate. To the contrary, the movant's own counsel proposed lesser sanctions—monetary fees, adverse inference, and partial striking—as sufficient to address the misconduct. (Mot. Sanctions Hrg. Tr. 180:5–8.) Where the injured party itself identifies lesser sanctions as adequate, the Court's failure to explain why those sanctions would not suffice constitutes an abuse of discretion under the second prong.

The Court's own fee analysis implicitly recognizes this distinction. In applying *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), the Order segregated Operating Agreement-

related fees from broader litigation fees, expressly acknowledging that Plaintiffs' Complaint "contains a number of claims and theories of recovery" and that "others, such as the defamation claims, are unrelated to this misconduct." (ECF No. 210 at 36 n.3). If the Court recognized the need for granular, claim-by-claim analysis in determining the scope of fee-shifting, the same analytical rigor should apply—and with even greater care—to the far more severe sanction of dismissal with prejudice. The Order, however, treats the counterclaim as uniformly "infected" without engaging in this analysis.[1]

### III.   THE UNDISPUTED FACTS REGARDING THE OPERATING AGREEMENTS' CREATION BEAR ON PROPORTIONALITY

Even accepting the Court's findings regarding Mr. Straub's credibility, the undisputed facts concerning the Operating Agreements bear directly on whether dismissal with prejudice is a proportionate sanction or whether lesser sanctions would adequately vindicate the Court's authority.

First, the earlier versions of the Operating Agreements bear only a typed or stamped signature—not Mr. Straub's wet signature. (ECF No. 210 at ¶20(d) (the April 11 MAC Operating Agreement's signature page includes "two signature lines . . . both of which have only a typed or stamped signature for Mr. Straub").) This is significant. If Mr. Straub had been orchestrating a fraud, one would expect him to personally wet-sign documents he intended to pass off as authentic in multiple courts. The use of a stamp signature is not evidence of Mr. Straub's direct involvement in their physical creation.

---

[1] The following counts were contained in the dismissed Second Amended Counterclaim:
Count I: Fraud in the Inducement
Count II: Violation of Section 44.406, Florida Statutes
Count III: Breach of Fiduciary Duty
Count IV: Defamation
Count V: Accounting

Second, when the ownership dispute with Ms. Fleming arose in April 2024, Mr. Straub did not produce the Operating Agreements himself. He called Mr. Galle and asked whether the documents were "finished" and "whose name is on the document." (ECF No. 210 at ¶19.) The Order treats this call as evidence that Mr. Straub directed the fabrication. But it is equally consistent with a client asking his long-time attorney of thirty years to produce corporate documentation that the client assumed already existed. A client's request for proof of ownership does not—standing alone—establish knowledge that the resulting documents would be fabricated. At a minimum, such evidence falls short of the clear and convincing standard.

None of this excuses Mr. Straub's role or undermines the Court's finding that he signed the April 16 Operating Agreements. But these circumstances are directly relevant to whether the most extreme sanction is warranted. The Court properly distinguished between the culpability of the parties and their counsel; a similar calibration should apply to Mr. Straub's culpability relative to Mr. Galle's, particularly where the most severe sanction—permanent extinguishment of claims the Court itself acknowledged to be legitimate—is at issue.

## IV. THE DISPOSITIVE SANCTION IS PREMATURE BECAUSE THE MERITS OF THE OWNERSHIP DISPUTE REMAIN UNRESOLVED

The Order imposes the ultimate sanction—dismissal with prejudice—before the underlying ownership dispute has been adjudicated on the merits. This is premature because the proportionality and appropriateness of a dispositive sanction cannot be properly assessed until the Court determines whether the fabricated documents actually altered the outcome of any claim. *See, Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (sanctions must be "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'").

The distinction matters enormously. If, after a full trial on the merits, Mr. Straub is found to be the owner of the Miss America entities based on independent evidence—his funding of the acquisition, his direction of the entity formation, the course of dealing between the parties—then the fabricated Operating Agreements, while inexcusable, were unnecessary embellishments of a true fact rather than instruments that manufactured a false claim from whole cloth. In that scenario, the documents caused no prejudice to the merits determination, and a dispositive sanction would be grossly disproportionate to the actual harm.

Conversely, if Mr. Straub is not the owner, the documents caused real harm by delaying proceedings and imposing costs—but those harms are fully redressable through fee-shifting and evidentiary preclusion. Either way, the Court should resolve the merits *before* deciding whether the most severe sanction is warranted.

The Advisory Committee Notes to Rule 11 expressly contemplate that courts may "defer [their] ruling (or [their] decision as to the identity of the persons to be sanctioned) until final resolution of the case." Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendment). The 1983 Amendment Notes further identify as a relevant factor "whether [the misconduct] infected the entire pleading, or only one particular count or defense." These directives reflect the principle that the appropriate scope and severity of sanctions—particularly the most extreme sanction of dismissal with prejudice—is best assessed in light of the misconduct's actual impact on the proceedings.

The Supreme Court's but-for causation requirement in *Goodyear*, 581 U.S. at 108–10, necessarily implies that the impact of misconduct must be assessed before a dispositive sanction is imposed. Where the Court cannot yet determine whether the fabricated documents were "but for" causes of the counterclaim's existence—because the ownership claim may rest on

independent grounds—the proportionality of a dispositive sanction cannot be evaluated.  It should also be noted that section 605.0102(45), Florida Statutes, allow for oral operating agreements.  The statute states:

> Operating agreement" means an agreement, whether referred to as an operating agreement or not, **which may be oral, implied**, in a record, or in any combination thereof, of the members of a limited liability company, including a sole member, concerning the matters described in s. 605.0105(1).

This Court's own observations confirm the prematurity of a dispositive sanction. The Court acknowledged "apparently a legitimate dispute over ownership" with "arguments on both sides." (Mot. Sanctions Hrg. Tr. 178:2–4.) Where the Court itself cannot determine at the sanctions stage whether the ownership claim is meritorious, it necessarily cannot determine whether the fabricated documents were "pivotal" to a meritorious claim or merely superfluous to one. The Order's conclusion that the documents are "the heart of the Counterclaim" (ECF No. 210 at 36) is a merits determination masquerading as a sanctions finding—and it is one the Court made without the benefit of full discovery, dispositive motion practice, or trial.

At minimum, the Court should have considered lesser sanctions such as precluding reliance on the Operating Agreements and minutes, imposed fee-shifting, drawing an adverse inference, and then proceeded to evaluate the counterclaim on its remaining independent merits, including counts that were not dependent on the Operating Agreements. If those merits proved wanting, dismissal at summary judgment or trial would be appropriate on the substance. If those merits proved viable, the fee sanction would fully vindicate the Court's authority without extinguishing a legitimate claim.

### V.   IF MR. STRAUB IS THE OWNER, THE OPERATING AGREEMENTS' FORM IS IMMATERIAL TO OWNERSHIP

A fundamental premise of the Order on Sanctions is that the Operating Agreements were fabricated to "fraudulently bolster Mr. Straub's claim of ownership." (ECF No. 210 at 7.) However, an operating agreement does not *create* ownership of a Florida LLC—it *documents* ownership. Under the Florida Revised Limited Liability Company Act, § 605.0401, Fla. Stat., membership is determined by the terms of the operating agreement or, in the absence of such terms, by contributions, conduct, and the parties' course of dealing.

If Mr. Straub funded the acquisition of Miss America assets, directed the formation of the entities, and controlled their operations—all of which are disputed factual questions this Court recognized as "probably legitimate issues"—then his ownership exists by operation of law and fact, regardless of whether any particular operating agreement is authentic.

The evidentiary record at the sanctions hearing itself contains evidence bearing on these independent ownership questions. Mr. Galle testified that Mr. Straub had the financial resources to fund the Miss America acquisition and that the Miss America Organization conducted background checks on the "funder" of the transaction—identifying a Straub family member, not Ms. Fleming. (Mot. Sanctions Hrg. Tr. 28:15–29:9.) Ms. Fleming was not being "considered providing any financial backing for this deal." (*Id.* at 28:20–21.) This evidence is wholly independent of the Operating Agreements and goes directly to the question of who owned the entities.

To the extent the Operating Agreements were revised or updated versions of documents reflecting an existing ownership arrangement, as the defense has maintained, Mr. Straub had the right as sole member to adopt, modify, or restate the operating agreements of entities he owned. While the Court found the documents were not created when claimed, the question of whether Mr.

Straub *was in fact the owner* remains a distinct factual issue that the Order on Sanctions does not—and, based on the evidence at the sanctions hearing, could not—resolve against him.

## VI.  THE COUNTERCLAIM INCLUDES CLAIMS NOT DEPENDENT ON THE OPERATING AGREEMENTS

The Order states that the fraudulent documents "infect every part" of the counterclaim. (ECF No. 210 at 36.) Respectfully, this conclusion is too broad. The Second Amended Counterclaim seeks relief entirely premised on Fleming's separate conduct and alternative legal grounds. Specifically, the Counterclaim seeks damages based on: (i) Oral representations and the Asset Purchase Agreement ("**APA**"): *i.e.*, Fleming's oral promises that she would only be an employee and not seek ownership, which induced Straub to fund the APA; (ii) Statutory confidentiality violations: *i.e.*, that Fleming and her counsel allegedly disclosed confidential communications from a July 29, 2024 mediation to third parties and the media; (iii) Independent tortious conduct: *i.e.*, damages for false statements Fleming allegedly published to the media accusing Straub of crimes and fraud; and (iv) Duties owed as an employee/executive: *i.e.*, the Breach of Fiduciary Duty and Accounting counts are based on Fleming's role as an "executive, manager, and/or officer" of the companies—not as a member bound by an operating agreement—and her alleged hijacking of corporate assets and records.

Because Counter-Plaintiffs consistently frame Fleming's relationship to the companies as strictly that of an employee or independent contractor and base their claims on external torts and the APA rather than corporate formation documents, the causes of action stand wholly independent of the operating agreements.

The Court should have considered whether lesser sanctions—such as precluding reliance on the Operating Agreements and meeting minutes, imposing an adverse inference, and awarding

fees—would adequately address the misconduct while preserving Mr. Straub's right to litigate claims the Court itself acknowledged to be legitimate.

## VII.  THE STANDARD FOR RECONSIDERATION IS MET.

A motion for reconsideration is an extraordinary remedy, used sparingly to correct manifest errors of law or fact or to prevent manifest injustice. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). Reconsideration is warranted where the Court has made an "error of apprehension," which by necessity includes issuance of a ruling that cannot be reconciled with its own findings. *Id.* Because the Order on Sanctions is interlocutory—Plaintiffs' affirmative claims against Mr. Straub remain pending and fee proceedings are ongoing—the Court retains broad inherent authority to reconsider it at any time. *See, Harper* 592 F.3d at 1231–32.

This Motion does not relitigate prior arguments or express mere disagreement with the Court's reasoning. It identifies a dispositive internal inconsistency that constitutes an error of apprehension requiring correction.

During the evidentiary hearing underlying the sanctions Order, the Court found that the ownership dispute presented "arguments on both sides" and involved "probably legitimate issues." (Mot. Sanctions Hrg. Tr. 178:2–8.) Plaintiffs' counsel likewise acknowledged that "there is still a viable dispute about ownership" (*id.* at 178:16–17) and proposed only "a striking of at least some portion of the counterclaims" (*id.* at 180:6–8)—not dismissal of the entire pleading. Yet the Order dismisses the counterclaim with prejudice in its entirety, extinguishing those same claims. That result cannot be reconciled with the Court's contemporaneous findings and presents a facial inconsistency warranting reconsideration.

The resulting injustice is clear. Dismissal with prejudice operates as a final adjudication on the merits, barring Mr. Straub from pursuing claims the Court itself recognized as viable—not

because they were adjudicated on their merits, but as a sanction tied to discrete evidentiary misconduct. While the Court has already imposed severe and appropriate sanctions—fee-shifting, evidentiary preclusion, and findings of fabrication—the additional step of extinguishing the entire counterclaim lacks a sufficient nexus to the misconduct and imposes a disproportionate penalty. Nothing in the record suggests that lesser sanctions were inadequate to protect the integrity of the proceedings. On the contrary, the moving party itself proposed lesser sanctions and the Court's own findings support them.

Reconsideration is therefore necessary to correct this internal inconsistency and prevent manifest injustice.

## RELIEF REQUESTED

Mr. Straub respectfully requests that this Court:

1.      Reconsider the dismissal with prejudice of the entire Second Amended Counterclaim and authorize reinstatement of the counterclaim.

2.      Modify the sanction to preclude Defendants from relying on the Operating Agreements and meeting minutes as evidence in this action, while permitting the counterclaim to proceed on ownership theories independent of those documents;

3.      Grant such other and further relief as the Court deems just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel certifies that counsel has conferred (or attempted to confer) with opposing counsel in a good faith effort to resolve the issues raised in this Motion, and has been unable to reach agreement.

Dated: April 27, 2026.        Respectfully submitted,

WEISS, HANDLER & CORNWELL, P.A.
*Attorneys for Glenn F. Straub, Craig T. Galle, and*
*Palm Beach Polo, Inc.*
One Boca Place
2255 Glades Road, Suite 205-E
Boca Raton, FL 33431
Telephone: (561) 997-9995

By:/s/Henry B. Handler
    HENRY B. HANDLER, ESQ.
    Florida Bar No.: 259284
    hbh@whcfla.com
    filings@whcfla.com
    vp@whcfla.com
    WILLIAM J. CORNWELL, ESQ.
    Florida Bar No.: 782017
    wjc@whcfla.com
    gp@whcfla.com
    HARRY WINDERMAN, ESQ.
    Florida Bar No.: 209562
    hw@whcfla.com
    gg@whcfla.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I filed the foregoing with the Court by uploading to the CM/ECF system for the Southern District of Florida and that a true and correct copy of the foregoing has been furnished via Notice of Electronic Filing to all registered parties and counsel, on this 27th day of April 2026.

WEISS, HANDLER & CORNWELL, P.A.
*Attorneys for Glenn F. Straub, Craig T. Galle, and Palm Beach Polo, Inc.*
One Boca Place
2255 Glades Road, Suite 205-E
Boca Raton, FL 33431
Telephone: (561) 997-9995

By:/s/Henry B. Handler
    HENRY B. HANDLER, ESQ.
    Florida Bar No.: 259284
    hbh@whcfla.com
    filings@whcfla.com
    vp@whcfla.com
    WILLIAM J. CORNWELL, ESQ.
    Florida Bar No.: 782017
    wjc@whcfla.com
    gp@whcfla.com
    HARRY WINDERMAN, ESQ.
    Florida Bar No.: 209562
    hw@whcfla.com
    gg@whcfla.com

## SERVICE LIST

| | |
|---|---|
| Benjamin G. Chew<br>Andrew C. Crawford<br>John G. Doyle<br>Nina Franco<br>Jessica N. Meyers<br>Camille M. Vasquez<br>Sheppard, Mullin, Richter & Hampton LLP<br>2099 Pennsylvania Ave., NW, Suite 100<br>Washington, DC 20006<br>bchew@sheppardmullin.com<br>acrawford@sheppardmullin.com | John J. Anastasio<br>Law Office of John J. Anastasio<br>3601 SE Ocean Blvd., Suite 203<br>Stuart, FL 34996<br>john@psllaw.net |

| | |
|---|---|
| jdoyle@sheppardmullin.com<br>nfranco@sheppardmullin.com | |
| Jessica N. Meyers<br>Sheppard, Mullin, Richter & Hampton LLP<br>30 Rockefeller Plaza<br>New York, NY 10112<br>jmeyers@sheppardmullin.com | Maia Dombey<br>Diaz Reus and Targ LLP<br>100 SE 2nd St., Suite 3400<br>Miami, FL 33131<br>mdombey@diazreus.com |
| Barry Scott Richard<br>Barry Richard Law Firm<br>101 East College Ave., Suite 400<br>Tallahassee, FL 32301<br>barryrichard@barryrichard.com | Charlie C. H. Lee<br>Moore & Lee, P.C.<br>1751 Pinnacle Dr., Suite 1100<br>McLean, VA 22102<br>c.lee@mooreandlee.com |
| John Preston Seiler<br>Seiler, Sautter, Zaden, Rimes & Wahlbrink<br>2850 N. Andrews Ave.<br>Fort Lauderdale, FL 33311<br>jseiler@sszrlaw.com | Larry Allen Zink<br>Zink, Zink & Zink Co LPA<br>3711 Whipple Ave., N.W.<br>Canton, OH 44718<br>zinklaw3711@yahoo.com |