**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-81507-CV-MIDDLEBROOKS

ROBIN FLEMING, MISS AMERICA IP,
INC., MISS AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC,

      Plaintiffs,

v.

GLENN F. STRAUB, CRAIG T. GALLE,
KATHLEEN A. FIALCO, and
PALM BEACH POLO, INC.,

      Defendants.
_____/

## ORDER GRANTING IN PART ATTORNEY'S FEES

THIS CAUSE is before the Court upon Plaintiff's Motion for Attorney's Fees (DE 215),

filed March 31, 2026. Defendant has filed a response. (DE 230).  For the following reasons, the

motion for attorney's fees is granted in part.

I. Background

The long history of this case is well-summarized in prior orders. As my March 9, 2026

Order awarding Plaintiffs' sanctions ("Sanctions Order," DE 210) set forth, Plaintiffs are entitled

to reasonable expenses, including attorney's fees and costs, against Glenn T. Staub and Craig

Galle, jointly and severally.  I found that Defendants Straub and Galle fabricated operating

agreements and meeting minutes for the Miss America entities and filed those documents in

multiple courts "in an effort to gain an advantage in a dispute over ownership." (Sanctions Order

at 1, 7). I granted Plaintiffs' Motion for Sanctions and identified four categories of recoverable

fees:

1.  Fees associated with the sanctions motion and related hearings;

2.  Fees associated with defending Defendants' counterclaims;

3.  Fees associated with the bankruptcy proceedings;

4.  Fees associated with litigating the legitimacy of the operating agreements and minutes.

*Id.* at 37.

Plaintiffs seek **$4,773,638.44** in fees and costs, plus **$129,084.50** for preparing the fee petition. Defendants contend the request is "grossly excessive," inadequately supported, and contrary to governing standards. Defendants suggest a 91.09% reduction in attorneys' fees, totaling $533,446.25.

II. Discussion

When awarding sanctions under its inherent authority, a court may award only those fees the opposing party "would not have incurred but for the bad faith." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017). The award must be compensatory, not punitive. *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1347 (11th Cir. 2024).

The Eleventh Circuit requires courts to calculate sanctions-based fee awards using the lodestar method, which multiplies a reasonable hourly rate by the number of hours reasonably expended. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (1988).

A. Reasonable Hourly Rates

Plaintiffs request partner rates between $1,230 and $1,310 for Sheppard Mullin and up to $1,275 for Carlton Fields. Plaintiffs emphasize the complexity of the litigation, the experience of their counsel, and the fact that they applied across-the-board discounts to their standard rates. Plaintiffs also note that the South Florida legal market has, in recent years, moved closer to national-level rates for complex litigation.

2

I recognize these developments. And I do not question counsel's experience, the quality of their work, or the seriousness of the issues presented in this case. I also acknowledge that Plaintiffs' counsel voluntarily reduced their standard rates before billing their clients. I must, however, independently determine a reasonable hourly rate for purposes of a compensatory sanctions award. The fact that a client may agree to pay premium rates, or that such rates may be charged in other jurisdictions, does not control my lodestar analysis. My task is to identify rates that fairly compensate Plaintiffs for the fees they would not have incurred but for Defendants' misconduct, while ensuring that the award remains compensatory rather than punitive.

After reviewing the record, the nature of the work performed, the level of skill required, the quality of the submissions, and my own familiarity with the demands of this litigation, I conclude that the requested rates—some exceeding $1,200 per hour even after discounts—are higher than necessary to achieve the compensatory purpose of the sanction. The reduced rates adopted below reflect a reasonable balance between counsel's experience and my obligation to exercise restraint in sanctions awards.  I therefore adopt the following reasonable hourly rates:

Senior Partners        $700/hour

Mid-Level Partners    $600/hour

Junior Partners        $500/hour

Senior Associates      $400/hour

Junior Associates      $300/hour

Paralegals / Support   $150/hour

B. <u>Reasonable Number of Hours</u>

In applying the reduced hourly rates, I do not undertake a line-by-line recalculation of each timekeeper's entries. The billing records submitted span four law firms, dozens of attorneys and

staff, and thousands of individual entries, many of which contain block-billed or vague descriptions, duplication, or other deficiencies that make precise recalculation impractical and unnecessary. The reasonable hourly rates act as an anchor for the lodestar analysis. As will be shown *infra*, I will apply a uniform across-the-board reduction to the total hours claimed.

Defendants argue that the billing records of Carlton Fields, Moore & Lee, and Jayaram PLLC should be excluded entirely because no representative from those firms submitted a declaration attesting to the accuracy or contemporaneity of their time records. (DE 230 at 8–9). Although the absence of firm-level authentication is a significant evidentiary deficiency, I decline to impose the harsh remedy of categorical exclusion. The invoices themselves are sufficiently detailed, contemporaneous on their face, and internally coherent to permit meaningful review. Moreover, my obligation under *Goodyear* is to award fees that are compensatory, not punitive. A categorical exclusion of all work performed by these firms—much of which falls squarely within the four categories authorized by the Sanctions Order—would risk under-compensating Plaintiffs for fees they would not have incurred but for Defendants' misconduct. Instead, I will account for the authentication issue, along with the other deficiencies identified, in determining the extent of an across-the-board reduction in the overall fees.

Next, Defendants identify material discrepancies between the Chew Declaration and the billing exhibits. For example, Plaintiffs claim 307 hours for Sheppard Mullin's counterclaim defense, but the orange-highlighted entries reflect only approximately 72.5 hours—a 234.5-hour shortfall. Additionally, Plaintiffs claim $100,474 in bankruptcy-related fees for Carlton Fields, but the green-highlighted entries total only $83,834. These discrepancies undermine the reliability of the petition and justify a global percentage reduction.

Furthermore, I find that Plaintiffs' request for $2,869,817.80 in additional "inextricably intertwined" fees exceeds the scope of the Sanctions Order and violates *Goodyear*'s requirement of a specific causal link.  Indeed, Plaintiffs concede that Sheppard Mullin's work "from the outset of the case until approximately November 2025" was limited to defamation (DE 215 at 16 n.10). The Sanctions Order expressly excludes defamation claims. (Order at 36 n.3). Moreover, to the extent Plaintiffs seek fees for responding to Defendants' Rule 11 motion, those fees are not recoverable because they were not caused by the sanctionable conduct. These categories are excluded in full.

Moreover, I find that the billing records submitted by Plaintiffs reflect pervasive deficiencies that warrant a substantial across-the-board reduction. The invoices contain extensive block billing, with multiple discrete tasks combined into single entries (*e.g.*, Ex. 3, DE 217-3). Numerous entries are vague, using descriptions such as "strategize," "work on matter," or "various tasks," which prevent meaningful review (*Id.*; Ex. 5, DE 217-5). The records also show overstaffing, including three senior Carlton Fields partners billing for the same 1.1-hour hearing on December 11, 2025, followed by overlapping internal debriefs (Ex. 5). Finally, the records include clerical and administrative tasks billed as attorney rates, such as preparing pro hac vice filings, assembling exhibits, and coordinating service (Ex. 3; Ex. 4, DE 217-4; Ex. 5). These deficiencies justify a 35% across-the-board reduction to all hours within the four compensable categories.

The next category of fees relate to experts. Plaintiffs seek $161,190.68 in expert costs, including hourly rates up to $1,155. While expert costs may be recoverable, I find the requested amounts high, and the documentation limited. I apply a 35% reduction.

Finally, I find the Plaintiffs' request for 144.4 hours ($129,084.50) to prepare the fee petition to be excessive.  My determination that a 35% reduction is warranted accounts for this.

Applying the reduced hourly rates, the 35% across-the-board reduction, and the exclusion of non-compensable categories, I award Plaintiffs the following:

1) Attorneys' Fees Awarded: $2,094,823.43

2) Expert Costs Awarded: $104,773.94

3) Fee-Petition Preparation Time: $83,904.93

**TOTAL AWARD: $2,282,50230**

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Plaintiffs' Petition for Attorneys' Fees (DE 215) is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiffs are awarded attorneys' fees and costs in the amount of **$2,282,502.30**.

3. Judgment will be separately entered.

**SIGNED** in Chambers at West Palm Beach, Florida, this 5th day of June, 2026.

Donald M. Middlebrooks
United States District Judge