**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CASE NO. 24-81507-cv-MIDDLEBROOKS/MAYNARD

ROBIN FLEMING, MISS AMERICA IP, INC., MISS AMERICA'S SCHOLARSHIP FOUNDATION, INC., and MAO IP HOLDING COMPANY, LLC,

Plaintiffs,

v.

GLENN F. STRAUB and PALM BEACH POLO, INC.,

Defendants.
______________________________/

**PLAINTIFFS' MEMORANDUM OF LAW REGARDING EFFECT OF THE COURT'S SANCTIONS ORDER [ECF NO. 210] AT TRIAL**

Pursuant to the Court's Order Setting Briefing Schedule and Trial Date (ECF No. 442), Plaintiffs Robin Fleming, Miss America IP, Inc. ("MAIP"), Miss America's Scholarship Foundation, Inc., and MAO IP Holding Company, LLC (collectively, the "Plaintiffs"), by and through their undersigned counsel, hereby respectfully submit this memorandum of law regarding the effect of this Court's Order on Sanctions (ECF No. 210) (the "Sanctions Order") at trial of this matter.

## INTRODUCTION

This Court has found, by clear and convincing evidence, that Defendants abused the judicial process and attempted to perpetrate a fraud by fabricating evidence, which they attached to their pleading in this case as proof that Mr. Straub owns Miss America. The question before the Court now is how to address that misconduct at trial. As explained below, the Court's inherent

power in this respect is broad, and an appropriate remedy for Defendants' wrongdoing is to instruct the jury about the nature of the fraud. Specifically, the Court should instruct the jury that Defendants' fabrication of evidence is an established fact in this case, and further that the jury may infer from that fabrication that Mr. Straub is not the owner of Miss America, he knew that he is not the owner, and Mr. Straub and his co-conspirator in creating the false documents, former-defendant Craig Galle, are not credible witnesses. Such a remedy is not only fitting, in light of all the circumstances, but necessary to safeguard the integrity of the litigation.

## BACKGROUND

In the early stages of this case, Defendants attached to their Amended Answer two documents that, they asserted, proved Mr. Straub's ownership of the Miss America entities: (1) a "Limited Liability Company Agreement of Miss America Competitions, LLC," dated December 28, 2022,[1] and (2) a "Limited Liability Company Agreement of Miss America IP, LLC," also dated December 28, 2022. ECF No. 65-2, 65-3 (collectively, the "Operating Agreements"); *see* ECF No. 65, ¶¶ 10, 11. This was not the first time Mr. Straub had used these documents to assert ownership of Miss America. In fact, he attached them as exhibits to (i) a verified complaint filed in Florida state court in April 2024, (ii) a certificate filed in New Jersey state court in June 2024, and (iii) a November 2024 response to Ms. Fleming's motion to dismiss his bankruptcy petition, putatively on behalf of Miss America. *See* Sanctions Order 22–24. But there was a problem: the Operating Agreements were a sham. As it turned out, rather than being executed in December 2022 as they purported, the Operating Agreements were fabricated in April 2024 by Craig Galle, Mr. Straub's

[1] As the Court is aware, there is no entity named "Miss America Competitions, LLC"—this plural version of the name is traceable to a typo on the Florida Division of Corporations' website that appeared months *after* the corporate entities at issue were formed. *See* ECF No. 97 at 4.

longtime friend and attorney. *Id.* at 17–22. Plaintiffs brought Defendants' fraud to the Court's attention and sought sanctions. *See generally* ECF No. 97.

To resolve Plaintiffs' sanctions motion, and more fundamentally to determine "whether someone knowingly submitted false documents to this [C]ourt and other courts" (Sanctions Order 6), the Court held a two-day evidentiary hearing on January 30 and February 2, 2026. *See* ECF Nos. 142, 182, 188. A month later, the Court entered the Sanctions Order, finding that Mr. Galle had indeed fabricated the Operating Agreements, as well as minutes of meetings purportedly held by Miss America Pageant, LLC and MAIP on December 28, 2022, and January 5, 2023—all at Mr. Straub's direction. Sanctions Order 12–24.[2] The purpose of this fraud was "[t]o gain an advantage in" the "dispute over ownership" of Miss America at the heart of this case. *Id.* at 1. Concluding that "[b]oth Mr. Straub and Mr. Galle exercised bad faith in fabricating the Operating Agreements and minutes," the Court dismissed Defendants' counterclaims with prejudice and awarded Plaintiffs attorneys' fees associated with, *inter alia*, defending against the counterclaims and litigating the fraudulent nature of the documents. *Id.* at 27–38.

On September 29, 2026, the Court ordered the parties to sequentially brief the issue of "how the alleged fabrication of documents and the existing sanctions order . . . will be treated at trial," which is set to begin on November 30. ECF No. 442. This memorandum contains Plaintiffs' proposal in response to the Court's request.

**ARGUMENT**

As explained below, the jury is entitled to know of Defendants' fabrication of evidence, from which the jury may infer Defendants' knowledge that their ownership claim is false. Such

[2] In reaching these conclusions, the Court expressly found neither Mr. Galle nor Mr. Straub to be credible. *See* Sanctions Order 8. Mr. Straub, in particular, "resorted to obfuscation" and "did not answer questions directly"—"evasiveness" that the Court found to be "deliberate." *Id.*

instructions are well within the Court's inherent powers to vindicate judicial authority in the face of a party's misconduct—of which fabricated evidence is a particularly egregious form.

**I. The Court Has Inherent Power to Remedy Defendants' Bad-Faith Misconduct.**

It is beyond dispute that the courts have "inherent authority" to punish "bad-faith behavior in the proceedings before them." *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1304 (11th Cir. 2020).[3] A court appropriately exercises this power to remedy "[a]cts which degrade the judicial system, including," as particularly relevant here, "lying to the Court." *In re $39,422 in U.S. Currency*, 574 F. Supp. 3d 1117, 1119 (M.D. Fla. 2021) (citation omitted) (striking answer and entering default judgment in response to fabrication of evidence). "[T]he 'key to unlocking a court's inherent power is a finding of bad faith.'" *Higgs*, 969 F.3d at 1304 (citation omitted).

Here, there can be no doubt that Defendants acted in bad faith in fabricating the Operating Agreements and meeting minutes—as the Court has already found. "As it pertains to this case, 'the concept of bad faith clearly embraces fabricating . . . evidence and then lying about doing so.'" *Frazier v. Se. Ga. Health Sys., Inc.*, 2024 WL 889994, at *7 (S.D. Ga. Mar. 1, 2024) (citation omitted), *aff'd*, 2024 WL 4357399 (11th Cir. Oct. 1, 2024); *see In re $39,422*, 574 F. Supp. 3d at 1119–20 (concluding that the submission of "fabricated evidence to the Court" amounts to "bad faith"). Indeed, "the conduct in this case—doctoring evidence—is '*most often*' the cause for invoking the inherent powers doctrine." *Frazier*, 2024 WL 889994, at *8; *see id.* at *9 (explaining that reliance on fabricated evidence in a party's pleading "alone is enough to justify the Court's use of its inherent authority"); *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249,

[3] The Court may exercise this power *sua sponte*. *See Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212–13 (11th Cir. 2015) ("[D]istrict courts have the inherent power to bring up the question of sanctions and answer it.").

1269 (S.D. Fla. 2007) ("[T]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence."), *aff'd*, 290 F. App'x 324 (11th Cir. 2008).

## II. The Appropriate Remedy for Defendants' Fabrication of Evidence Is to Instruct the Jury Accordingly.

Having established by clear and convincing evidence that Defendants' fabrication of evidence was in bad faith, so as to unlock the Court's inherent powers, the question then becomes what to do about it. It is "within the district court's sound exercise of discretion" to select a remedy. *In re $39,422*, 574 F. Supp. 3d at 1120 (citation omitted). In analyzing what course to chart, the Court "may consider all the circumstances surrounding the alleged violations, including a party's misconduct in related cases." *Qantum*, 473 F. Supp. 2d at 1274–75.

### A. Defendants' egregious and widespread misconduct calls for a strict remedy.

Here, two facts in particular compel the conclusion that a strict remedy is called for: the centrality of the fraud to the merits, and its scope across multiple forums.

To start, "Defendants' misconduct was closely intertwined with the merits of the case." *Id.* at 1278. As the Court concluded, the fabrications were designed to give Defendants the upper hand in the parties' dispute over ownership, which is the core of the case. The propriety of punishment "is heightened when the misconduct relates to the pivotal or 'linchpin' issue in the case." *Frazier*, 2024 WL 889994, at *7 (citation omitted); *Qantum*, 473 F. Supp. 2d at 1269. This factor alone "militates heavily" for a strong remedy. *Qantum*, 473 F. Supp. 2d at 1278.

The need for such a remedy is only amplified by the scope of Defendants' misconduct. *See, e.g.*, *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1219 (S.D. Fla. 2023) (Middlebrooks, J.) (considering party's "pattern of misusing the courts" in applying inherent power), *aff'd*, 161 F.4th 671 (11th Cir. 2025). Defendants' attempt to mislead this Court is egregious standing alone, but the fraud was not so limited. As the Court found, Defendants attempted to defraud no fewer than

three other courts—the Florida state court, the New Jersey state court, and the bankruptcy court—by using the same fabricated Operating Agreements to further their ownership claim. "[T]he multiple instances of fraud here 'transcend[ ] the interests of the parties in the underlying action' and 'violate[ ] the judicial process' such 'that imposition of a harsh penalty is appropriate not only to reprimand the offender, but also to deter future parties from trampling upon the integrity of the court.'" *In re $39,422*, 574 F. Supp. 3d at 1120 (citation omitted).

**B. The Court should instruct the jury regarding Defendants' fraud.**

Plaintiffs submit that the Court should exercise its inherent power to advise the jury of Defendants' fraud in two ways. First, the Court should instruct the jury that the Court has already determined that Defendants fabricated the Operating Agreements and the meeting minutes in bad faith, and that the fact of that fabrication is established in this case. Second, the Court should instruct the jury that they may infer from the fabrication of those documents that: (a) Mr. Straub is not the owner of Miss America; (b) Mr. Straub knew that he was not the owner of Miss America when he first claimed ownership and caused the fraudulent documents to be fabricated; and (c) that testimony from Mr. Straub and/or Mr. Galle on the issue of ownership, or any other subject, is not credible. Such instructions are well within the Court's inherent power. *See, e.g.*, *Higgs*, 969 F.3d at 1306–07 (recognizing that district court had authority to "direct[] that the matters . . . be taken as established for purposes of the action" and to issue "a permissive adverse-inference instruction"). Indeed, such instructions are common remedies for the spoliation of evidence. *See, e.g.*, *Hyundai Motor Am. Corp. v. EFN West Palm Motor Sales, LLC*, 343 F.R.D. 230, 246 (S.D. Fla. 2022) (ordering that jury would be instructed that the plaintiff "improperly lost, destroyed, and spoliated" the evidence at issue, and that the jury "shall presume" that the lost evidence "would have been favorable to Defendants and unfavorable to [the plaintiff] in this lawsuit"); *Ala. Aircraft*

*Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 747 (N.D. Ala. 2017) ("If this case goes to trial, the court will instruct the jury that it *may* presume that the lost information . . . was unfavorable to Boeing."), *aff'd in relevant part*, 2022 WL 433457 (11th Cir. Feb. 14, 2022). The same instructions are at least as appropriate here because, as the Court aptly observed, Defendants' conduct "is akin to spoliation of evidence, although worse." Hr'g Tr. 11:2–3; *see id.* at 37:17–20.[4]

Almost identical instructions were endorsed in a case with facts similar to, though less egregious than, this one. In *Mackrell v. Butler*, 351 F.R.D. 258 (M.D. Ga. 2026), the defendant, a correctional officer, served false answers to the plaintiff's interrogatories regarding her conduct that led to the death of the plaintiff's decedent. As a consequence, the court not only accepted certain adverse facts as true but also decided to instruct the jury (1) that the facts were established, (2) that the defendant had given "a written statement under oath and lied," and (3) that the jury could "consider the fact that Defendant previously lied under oath about important facts in this case when deciding whether Defendant's testimony during the trial is credible." *Id.* at 265–66.

The instructions Plaintiffs request are not merely within the Court's arsenal—they are tailored to the particular facts of the case and Defendants' misconduct. For example, taking the fabrication of the Operating Agreements and meeting minutes as established, and so instructing the jury, would ensure the validity of the judicial process. Having found that Defendants tried to perpetrate a brazen fraud, the Court must "remedy the harm to the public interest in preserving the integrity of the courts and in deterring future misconduct." *Neal v. IMC Holdings, Inc.*, 2008 WL 11334050, at *6 (N.D. Ga. Oct. 20, 2008) (citation omitted), *R. & R. adopted*, 2009 WL 10669622 (N.D. Ga. Mar. 31, 2009). To do that, Defendants must be held to account for their actions; the

---

[4] At the hearing on September 29, 2026, the Court expressly contemplated that the way to address Defendants' fraud would be "through some sort of instruction to the jury." Hr'g Tr. 37:13–15.

Court should not—as Defendants somewhat incredibly suggested—simply exclude the fabricated documents from the case, along with "any reference or discussion about them." Hr'g Tr. 10:18–23.[5] Defendants' fabrication of documents purporting to show Mr. Straub's ownership is critical evidence directly related to the merits of the case, including, *inter alia*, the third cause of action for common law fraud regarding the false MAC and MAIP documents (ECF No. 377 at 76), as well as the federal and state RICO claims involving wire fraud. Beyond that, the creation and widespread circulation of these fraudulent documents to Miss America stakeholders, press, the bankruptcy court, and so on caused Plaintiffs substantial harm and are thus directly relevant to damages. The categorical exclusion of evidence relating to the fraudulent documents would significantly prejudice Plaintiffs' ability to prosecute their case.[6] Moreover, such an outcome "would merely place [Defendants] in the same position that [they] w[ere] [in] prior to" their fraud. *Rusos v. Primo Pizza, Inc.*, 2013 WL 12383445, at *6 (S.D. Fla. Feb. 14, 2013) (rejecting such a remedy as inadequate), *R. & R. adopted*, 2013 WL 12383446 (S.D. Fla. Mar. 22, 2013). Far from vindicating judicial authority and punishing malfeasance, Defendants' proposed solution "would convey a message to [Defendants] and other litigants 'that they have everything to gain and nothing to lose' by engaging in misconduct." *Neal*, 2008 WL 11334050, at *6 (citation omitted).

[5] Given Defendants' apparent position that their fabrication of evidence should be excluded entirely from the trial, the Court should make clear that Plaintiffs are permitted to introduce evidence of that fraud and of the Court's finding that the documents at issue were fabricated. *Cf. Wandner v. Am. Airlines*, 79 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015) (explaining, in spoliation context, that "[p]arties are permitted to ask trial courts to permit them to introduce into evidence at trial the *circumstances* surrounding their opposition's failure to retain and produce evidence"). Indeed, as explained below, Defendants' fabrication of evidence is relevant in its own right as evidence of guilty mind.

[6] Plaintiffs addressed this at length in their opposition to Defendants' motion *in limine* on the subject of the Sanctions Order and hereby incorporate those arguments by reference. *See* ECF No. 331 at 5-13.

Treating Defendants' fraud as established would also accord with fundamental principles of issue preclusion. The Court's findings in the Sanctions Order were the product of an extensive and deliberative process that culminated in a two-day evidentiary hearing where all parties presented evidence and elicited live testimony. This thorough adjudication of the issue of Defendants' fabrication of evidence is "sufficiently firm to be accorded conclusive effect." *Powranzas v. Jones Utility & Contracting Co. Inc.*, 822 F. App'x 926, 928–29 (11th Cir. 2020) (citation omitted). Indeed, issue preclusion "includes many dispositions which, though not final . . . , have nevertheless been fully litigated." *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964) (Friendly, J.). The Sanctions Order is just such a disposition.[7] When, as here, "litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* at 953; *see Swentek v. USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987) ("Finality for purposes of collateral estoppel is a flexible concept and 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" (citation omitted)), *abrogated in other part by Mikels v. City of Durham, N.C.*, 183 F.3d 323 (4th Cir. 1999).

The "permissive adverse-inference instruction" Plaintiffs seek—one of "the most restrained" options available—is similarly well-fitted to the case. *Higgs*, 969 F.3d at 1306. Instructing the jury that they may infer Mr. Straub knows he is not the owner of Miss America and the two perpetrators of the fraud – Mr. Straub and Mr. Galle – are not credible "is but another method of stating the principle that the fabrication of testimony raises a presumption against the

---

[7] That the Sanctions Order was the product of judicial fact-finding is of no moment, as issue preclusion can apply to "[t]he determination of an issue by a judge in a proceeding conducted without a jury." *Christo v. Padgett*, 223 F.3d 1324, 1340 n.49 (11th Cir. 2000) (citation omitted); *see also Frazier*, 2024 WL 889994, at *15–17 (concluding that a party is not entitled to have the issue of fabrication determined by a jury).

party guilty of such practice." *Allen v. United States*, 164 U.S. 492, 500 (1896). The Eleventh Circuit in fact has approved the use of a similar instruction adverse to a party who knowingly doctored evidence to improve her own case. *United States v. Hernandez*, 831 F. App'x 932 (11th Cir. 2020) (affirming conviction over challenge to instruction that jury could consider defendant's distortion of her handwriting in samples as "probative of consciousness of guilt").

* * *

Because "Defendants attempted to obtain judicial relief based upon fraudulent means," it is necessary to make clear "that the courts are not open to persons who would seek justice by fraudulent means." *Qantum*, 473 F. Supp. 2d at 1278. The remedies Plaintiffs propose—instructing the jury that (1) it is established that Defendants fabricated the documents at issue and (2) the jury may infer from that fabrication that Mr. Straub knows he does not own Miss America and Mr. Straub and Mr. Galle are not credible—are appropriately tailored to the circumstances. Indeed, though undoubtedly strict, the proposed instructions are far less severe than the "typical" punishment for a defendant who fabricates evidence: the "entry of default judgment against him." *In re $39,422*, 574 F. Supp. 3d at 1120.

**III. The Sanctions Order May Be Admissible.**

Separate and apart from the jury instructions that the Court should give regarding Defendants' fabrication of evidence, discussed above, the Court should also make clear that the Sanctions Order itself may be admissible for a proper purpose. As Plaintiffs have explained elsewhere, a court's own orders may be admissible in certain circumstances, particularly if the court properly instructs the jury on the purpose(s) for which the evidence may be used. *See, e.g.*, *United States v. Ratfield*, 342 F. App'x 510, 513–14 (11th Cir. 2009) (holding admission of judge's prior orders against defendant's client was not abuse of discretion); *see also BPI Sports, LLC v.*

*Thermolife Int'l, LLC*, 2021 WL 2946170, at *3–4 (S.D. Fla. July 14, 2021) (granting motion for sanctions based on defendant's fabrication of evidence "to advance his case" and ordering that "jury w[ould] be advised of [the defendant's] attempt to manufacture favorable evidence and its effect on his overall credibility"). Indeed, the Sanctions Order demonstrates not merely that Defendants fabricated evidence, but that they attempted to use it to advance their position as to the putative ownership of the Miss America entities *in this litigation*. The Sanctions Order is, thus, probative of Defendants' intent to defraud, their knowledge that their ownership claim is bogus, and a pattern of perjury to serve their own ends. *See, e.g.*, *United States v. Baptiste*, 618 F. App'x 593, 597 (11th Cir. 2015) ("[E]vidence of prior acts in which the Defendant had also, without permission, used a credit card that was not hers, for the purpose of her own financial gain, revealed an intent and knowledge similar to those same mental states at issue in the present case."); *United States v. Trujillo*, 2023 WL 2989085, at *2–3 (S.D. Fla. Apr. 18, 2023) (holding that evidence of defendants' participation in similar fraud scheme was relevant to show "knowledge of the means to conceal fraudulent schemes," "knowledge of the criminality of the scheme and their consciousness of guilt," and "intent and knowledge of the scheme").

At the very least, Plaintiffs should be permitted to use the Sanctions Order at trial (i) to impeach Defendants as appropriate, and (ii) should Defendants otherwise open the door to it. Additionally, the Court should have the opportunity to take judicial notice of the Sanctions Order "for the limited purpose of recognizing the 'judicial acts' taken in the order." *In re Lickman*, 301 B.R. 739, 740 n.1 (Bankr. M.D. Fla. 2003) (citation omitted). Any claimed prejudice from admission of the Sanctions Order, meanwhile, may be mitigated by "an appropriate limiting instruction," as courts have routinely held. *United States v. Ellisor*, 522 F.3d 1255 (11th Cir. 2008); *accord Baptiste*, 618 F. App'x at 598–99; *United States v. Brown*, 665 F.3d 1239, 1247–48 (11th

Cir. 2011) ("A limiting instruction can diminish any unfair prejudice caused by the evidence's admission."); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 918214, at *2 (N.D. Fla. Mar. 10, 2021) ("Any potentially prejudicial effect from the admission of this evidence may be mitigated by an appropriate cautionary instruction to the jury[.]").

## CONCLUSION

In determining how to effectuate the Sanctions Order at trial, it is essential to keep in view the nature of Defendants' misconduct in this case. Defendants "fabricated evidence," "referenced and relied upon the fabricated evidence in pleadings filed in this Court" (and others), and then "fraudulently testified to its authenticity under oath." *Frazier*, 2024 WL 889994, at *9. In so doing, Defendants "abused the judicial process" and "committed fraud upon the court." *Id.* Such egregious bad faith requires a remedy exacting enough to repair the damage Defendants have done to the integrity of this litigation. The jury instructions Plaintiffs propose fit that bill. The Court should therefore adopt Plaintiffs' proposed remedy.

Dated: October 5, 2026

By: PLAINTIFFS ROBIN FLEMING
MISS AMERICA IP, INC., MISS
AMERICA'S SCHOLARSHIP
FOUNDATION, INC., and MAO IP
HOLDING COMPANY, LLC

/s/ Maia Dombey
Charlie C.H. Lee (Florida Bar No. 96671)
Maia Dombey (Florida Bar No. 1024869)
c.lee@mooreandlee.com
m.dombey@mooreandlee.com
**MOORE & LEE, P.C.**
3835 PGA Boulevard
Suite 201
Palm Beach, FL 33410

Tel: (703) 927-2425
(703) 940-3763

Benjamin G. Chew (*pro hac vice*)
Jessica N. Meyers (*pro hac vice*)
Andrew C. Crawford (*pro hac vice*)
John G. Doyle (*pro hac vice*)
Nina C. Franco (*pro hac vice*)
Peter B. Baumhart (*pro hac vice*)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
bchew@sheppard.com
jmeyers@sheppard.com
acrawford@sheppard.com
jdoyle@sheppard.com
nfranco@sheppard.com
pbaumhart@sheppard.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ Maia Dombey